Appeal Nos. 2017-1425, -1426, -1427, -1428

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

## BASF CORPORATION,

*Appellant*,

v.

## UMICORE AG & Co. KG,

*Appellee*.

**Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board
IPR2015-01121, IPR2015-01123, IPR2015-01124, and IPR2015-01125**

## OPENING BRIEF OF APPELLANT

Anish R. Desai
Brian E. Ferguson
Megan H. Wantland
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, D.C. 20005
(202) 682-7000

April 28, 2017              *Counsel for Appellants*

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

BASF Corp. v. Umicore AG & Co. KG, 17-1425, -1426, -1427, -1428

**<u>CERTIFICATE OF INTEREST FOR BASF CORP.</u>**

Counsel for BASF Corp. hereby certifies the following:

1.      The full name of every party or amicus represented by me is:

      BASF Corporation.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

      None.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

      BASF Corp. is a Delaware corporation whose shares are not publicly traded. BASF Corp is a wholly owned subsidiary of BASF Americas Corporation.  BASF Americas Corporation is a wholly owned subsidiary of BASFIN Corporation, both of which are Delaware corporations.  BASFIN Corporation is a majority owned subsidiary of BASF USA Holding LLC, a Delaware limited liability company. BASF USA Holding LLC is a wholly owned subsidiary of BASF Nederland BV, a Dutch limited liability company.  BASF Nederland BV is a wholly owned subsidiary of BASF SE, a publicly traded European company. No publicly held corporation owns 10% or more of BASF Corporation's stock.

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this Court are:

      WEIL, GOTSHAL & MANGES, LLP: Brian E. Ferguson, Anish R. Desai, Megan H. Wantland, Gary Coad (formerly at Weil).

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ................................................................. 1

JURISDICTIONAL STATEMENT .................................................................. 2

STATEMENT OF THE ISSUES .................................................................... 3

STATEMENT OF THE CASE ....................................................................... 6

STATEMENT OF THE FACTS ...................................................................... 9

    A.    Overview of Zeolites ..................................................................... 9

    B.    Zeolite Catalysts for Reducing $NO_x$ Emissions ................................. 11

    C.    The Patented Invention .................................................................. 15

    D.    The Prior Art at Issue ................................................................... 18

        1.    U.S.P.N. 6,709,644 to Zones ................................................. 18

        2.    U.S.P.N. 4,046,888 to Maeshima ........................................... 19

        3.    U.S.P.N. 4,503,023 to Breck .................................................. 21

    E.    Final Written Decisions ................................................................. 22

        1.    IPR2015-01121 and -01123 .................................................. 22

        2.    IPR2015-01124 and -01125 .................................................. 25

SUMMARY OF THE ARGUMENT ............................................................... 27

STANDARD OF REVIEW .......................................................................... 32

ARGUMENT ......................................................................................... 33

    A.    The Board Erred in Finding the Challenged Claims Obvious
        Based on Zones in view of Maeshima ............................................... 33

        1.    Umicore's petition did not include evidence or argument
            for why the generic statement in Zones constitutes a
            specific disclosure of using a high SAR CuCHA for $NH_3$-
            SCR of $NO_x$ ...................................................................... 33

        2.    The Board's conclusion that the generic teaching in
            Zones constitutes a specific teaching of using a high SAR
            CuCHA for $NH_3$-SCR of $NO_x$ is not supported by
            substantial evidence ................................................................ 38

            a.    The Zones Declaration ................................................. 39

        b.     Umicore's Expert Testimony ....................................................... 40

        c.     Oral Hearing Statements ................................................... 41

    3.    The Board's ultimate conclusion of obviousness must be reversed because it is premised on the erroneous finding that Zones discloses using a CuCHA for $NH_3$-SCR of $NO_x$ ............................................................................................. 42

B.    The Board Erred in Finding the Challenged Claims Obvious Based on Maeshima in view of Breck ................................................. 43

    1.    The Board did not apply the law in finding that a POSITA would have been motivated to use a CuCHA for $NH_3$-SCR of $NO_x$ based on Maeshima ..................................... 43

    2.    The Board Erred by Failing to Consider the Objective Indicia of the Elapsed Time Between the Invention and the Prior Art ............................................................................. 48

CONCLUSION ................................................................................................... 51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apotex, Inc. v. Merck Sharp*,
    IPR2015-00419, slip. op. 9 (PTAB June 25, 2015)..........................................45

*Arendi S.A.R.L. v. Apple Inc.*,
    832 F.3d 1355 (Fed. Cir. 2016) ..........................................32, 43, 44

*Atofina v. Great Lakes Chem. Corp.*,
    441 F.3d 991 (Fed. Cir. 2006) ..........................................35

*Dell Inc. v. Acceleron*,
    LLC, 818 F.3d 1293 (Fed. Cir. 2016)..........................................38

*Fustibal LLC v. Bayer Healthcare LLC*,
    IPR2016-01490, slip op. 17 (PTAB Feb. 8, 2017)..........................................46

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*,
    821 F.3d 1359 (Fed. Cir. 2016) ..........................................28, 36, 38

*In re Lemay*,
    660 Fed. Appx. 919 (Fed. Cir. Sept. 19, 2016) ..........................................32

*Leo Pharm. Prods. v. Rea*,
    726 F.3d 1346 (Fed. Cir. 2013) ..........................................31, 49, 50

*In re Magnum Oil Tools Int'l, Ltd.*,
    829 F.3d 1364 (Fed. Cir. 2016) ..........................................32

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004) ..........................................41

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,
    719 F.3d 1346 (Fed. Cir. 2013) ..........................................46

*Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*,
    678 F.3d 1280 (Fed. Cir. 2012) ..........................................30, 44, 45

*Randall Mfg. v. Rea,*
  733 F.3d 1355 (Fed. Cir. 2013) ..........................................................32

*Standard Oil Co. v. Am. Cyanamid Co.,*
  774 F.2d 448 (Fed. Cir. 1985) ............................................................40

*Torrent Pharmaceuticals v. Merck,*
  IPR2014-00559, slip op. 10 (PTAB Oct. 1, 2014) .............................45

*Wasica Fin. GmbH v. Cont'l Auto. Sys.,*
  2017 U.S. App. LEXIS 5767 (Fed. Cir. Apr. 4, 2017)..............................*passim*

**Statutes**

28 U.S.C. § 1295(a)(4)(A) ..........................................................................2

35 U.S.C. §§ 141, 319.................................................................................2

35 U.S.C. § 141(c) ......................................................................................2

35 U.S.C. § 142 ..........................................................................................2

35 U.S.C. § 318(a) ......................................................................................2

**Other Authorities**

37 C.F.R. § 90.3(a)......................................................................................2

## <u>STATEMENT OF RELATED CASES</u>

No other appeal in or from this same consolidated proceeding was previously before this Court or any other appellate court.  Appellant BASF Corporation ("BASF") and its undersigned counsel are unaware of any other actions now pending in this or any other court that may directly affect or be directly affected by this Court's decision in the present consolidated appeal.

## JURISDICTIONAL STATEMENT

Pursuant to 35 U.S.C. § 141(c), BASF appeals from the Final Written Decision of the Patent Trial and Appeal Board (the "Board") issued under 35 U.S.C. § 318(a), in the *inter partes* review proceedings IPR2015-01121 and IPR2015-01125, regarding U.S. Patent No. 7,601,662 ("the '662 patent"), and *inter partes* review proceedings IPR2015-01123 and IPR2015-01124 regarding U.S. Patent No. 8,404,203 ("the '203 Patent").  BASF timely filed notices of appeal from the decision in each of the underlying proceedings on December 27, 2016 pursuant to 35 U.S.C. § 142 and 37 C.F.R. § 90.3(a).  This Court has jurisdiction under 35 U.S.C. §§ 141, 319, and 28 U.S.C. § 1295(a)(4)(A).

## STATEMENT OF THE ISSUES

This appeal concerns BASF patents directed to a zeolite catalyst used to reduce harmful nitrogen oxides ($NO_x$) in diesel engine exhaust.  It is undisputed that researchers in the field were skeptical that a zeolite selective catalytic reduction ("SCR") catalyst could be developed with sufficient durability and activity to be commercially used to treat diesel engine exhaust.  The claimed invention in the '662 and '203 Patents was a breakthrough that allowed BASF to commercialize a zeolite SCR catalyst to treat exhaust in diesel engines.  The '662 and '203 Patents claim a catalyst comprising an aluminosilicate copper-exchanged zeolite having the CHA framework ("CuCHA") having a high silica-to-alumina ratio ("SAR") (>15) and a copper to aluminum ratio between 0.25 and 1.0, which is effective to selectively catalyze the reduction of oxides of nitrogen in the presence of ammonia ("$NH_3$-SCR of $NO_x$").

Umicore AG & Co. KG's ("Umicore") obviousness theory in the -01121 and -01123 Petitions was based on the assertion that U.S. Patent No. 6,709,644 ("Zones") explicitly discloses using a high SAR CuCHA for $NH_3$-SCR of $NO_x$, while U.S. Patent No. 4,046,888 ("Maeshima") provides the amount of copper to use for $NH_3$-SCR of $NO_x$.  But Umicore conceded at the oral hearing that none of the prior art references at issue in this case disclose the use of a high SAR CuCHA zeolite for $NH_3$-SCR of $NO_x$.  The Board erred as a matter of law by holding the

claims unpatentable as obvious based on a theory regarding Zones that is found nowhere in the petition or supporting evidence.  Moreover, the Board's finding that the generic teaching in Zones was sufficient to disclose the specific use of a high SAR CuCHA for $NH_3$-SCR of $NO_x$ is not supported by substantial evidence.

In the -01124 and -01125 petitions, Umicore's obviousness theory hinged on the argument that one of ordinary skill in the art would have selected a CuCHA catalyst based on the disclosure in Maeshima (and increased the SAR based on the teaching in U.S. 4,503,023 ("Breck")).  It is undisputed that Maeshima does not disclose a CuCHA example or any information that would have led one of ordinary skill in the art to select the copper and chabazite.  Rather, Maeshima discloses nine possible zeolites and eleven possible metals, which presents 99 possible combinations.  The law requires "a reason or motivation" for why "a chemist would have selected a prior art compound as a lead," yet the Board's decision simply plucked out CuCHA from among the 99 possible combinations in Maeshima.  Breck cannot supply this missing motivation, as it does not disclose CuCHA, nor does it disclose or suggest using a CHA or CuCHA for $NH_3$-SCR of $NO_x$.  Finally, the Board further erred by failing to consider the objective indicia of the time elapsed between the claimed invention (2007) and the prior art (Maeshima, 1977 and Breck, 1985).

Thus, the issues presented in this appeal are:

4

1.      Whether the Board erred as a matter of law by finding that the generic teaching in Zones was sufficient to disclose the specific use of CuCHA for $NH_3$-SCR of $NO_x$ claimed in the '662 and '203 Patents when Umicore did not present such an argument in the petition?

2.      Whether the Board's finding that a person of ordinary skill in the art would understand the generic teaching in Zones to constitute a disclosure of the specific use of CuCHA for $NH_3$-SCR of $NO_x$ was supported by substantial evidence?

3.      Whether the Board failed to follow the law in finding that a person of ordinary skill in the art would have been motivated to select a CuCHA based on the disclosure in Maeshima?

4.      Whether the Board erred as a matter of law by failing to consider the objective indicia of time elapsed between the prior art and the claimed invention in finding that Maeshima and Breck render the claimed invention obvious?

## STATEMENT OF THE CASE

On April 30, 2015, Umicore filed two petitions for *inter partes* review of the '662 Patent. The two petitions, docketed as IPR2015-01121 and IPR2015-01125, each challenged claims 1-24, 30, and 32-50 of the '662 Patent. Umicore also filed on that same day two petitions for *inter partes* review of the '203 Patent. The two petitions, docketed as IPR2015-01123 and IPR2015-01124, each challenged claims 1-31 of the '203 Patent. On August 4, 2015, BASF filed preliminary responses to the petitions, and on October 29 and November 2, 2015, the Board instituted all four *inter partes* reviews, but not as to all requested claims.

On October 26, 2016, the Board issued a Final Written Decision in IPR2015-01121 finding claims 1-8 and 30 of the '662 Patent obvious based on Zones and Maeshima, and claims 12-24 and 32-50 obvious based on Zones, Maeshima, and Patchett. Appx1; Appx4; Appx35. On the same day the Board issued a Final Written Decision in IPR2015-01125 finding claims 1, 2, 5, 6 and 30 of the '662 Patent obvious based on Maeshima and Breck, and claims 12-24 and 32-38 obvious based on Maeshima, Breck and Patchett. Appx119; Appx123; Appx155.

On October 31, 2016, the Board issued a Final Written Decision in IPR2015-01123 finding claims 1, 14, 15, 17-22, 26, and 27 of the '203 Patent obvious based on Zones and Maeshima, and claims 2-13, 16, 23-25, and 28-31

obvious based on Zones, Maeshima, and Patchett. Appx37; Appx42; Appx75. On the same day the Board issued a Final Written Decision in IPR2015-01124 finding claims 1, 14, 15, 19, 20, 26 and 27 of the '203 Patent obvious based on Maeshima and Breck, and claims 2-13, 16, 23-25, and 28-31 obvious based on Maeshima, Breck, and Patchett. Appx77; Appx83; Appx117.

The tables below summarize the instituted grounds in each petition and the outcome in the Final Written Decision ("FWD").

### IPR2015-01121 ('662 patent)

| Statutory Ground | References | Instituted Claims | FWD |
|---|---|---|---|
| § 103 | Zones and Maeshima | 1-8, 30 | Granted |
| § 103 | Zones, Maeshima, and Patchett | 12-24, 32-50 | Granted |

### IPR2015-01125 ('662 patent)

| Statutory Ground | References | Instituted Claims | FWD |
|---|---|---|---|
| § 103 | Maeshima and Breck | 1, 2, 5, 6, and 30 | Granted |
| § 103 | Maeshima, Breck, and Patchett | 12-24 and 32-38 | Granted |
| § 103 | Dědeček and Breck | 1, 2, 5, 6, and 30 | Denied |
| § 103 | Dědeček, Breck, and Patchett | 12-24 and 32-38 | Denied |

**IPR2015-01123 ('203 patent)**

| Statutory Ground | References | Instituted Claims | FWD |
|---|---|---|---|
| § 103 | Zones and Maeshima | 1, 14, 15, 17-22, 26, 27 | Granted |
| § 103 | Zones, Maeshima, and Patchett | 2-13, 16, 23-25, 28-31 | Granted |

**IPR2015-01124 ('203 patent)**

| Statutory Ground | References | Instituted Claims | FWD |
|---|---|---|---|
| § 103 | Maeshima and Breck | 1, 14, 15, 19, 20, 26, and 27 | Granted |
| § 103 | Maeshima, Breck, and Patchett | 2-13, 16, 23-25, 28-31 | Granted |
| § 103 | Dědeček and Breck | 1, 14, 15, 19, 20, 26, and 27 | Denied |
| § 103 | Dědeček, Breck, and Patchett | 2-13, 16, 23-25, 28-31 | Denied |

## STATEMENT OF THE FACTS

**A.  Overview of Zeolites**

Zeolites are crystalline framework materials that contain pores of a molecular size.  Appx3165; Appx3184.  They have a wide array of commercial uses, including catalyzing hydrocarbon reactions, water filtration, and more recently, catalyzing the reduction of nitrogen oxide emissions in automobile diesel engine exhaust.

The International Zeolite Association currently recognizes 231 different zeolite framework types.  Appx3185; Appx3473-3474.  Each zeolite framework has its own structural characteristics, such as the pore size, pore shape, and pore connectivity.  Appx3185.  As shown in the figures below, the structure of a zeolite differs dramatically between zeolite frameworks.  Appx3185-3186.

**CHA**                    **FAU**



There are four basic pore size classifications for zeolites: small, medium, large, and extra-large.  Appx3186.  For example, the CHA framework is a small pore size

zeolite, having a pore diameter of approximately 3.8 Angstroms (Å), the FAU

framework is a large pore size zeolite (7.4 Å), and the VFI framework is an extra-

large pore size zeolite (12.7 Å). *Id.*

Zeolites exist naturally and can also be synthesized. For example, SSZ-13

and SSZ-62 are synthetic zeolites that have the CHA framework, while chabazite is

a natural zeolite that has the CHA framework. Appx3195-3196; Appx3199;

Appx1356 (4:34-51). Likewise, zeolite-Y is a synthetic zeolite having the FAU

framework, while faujasite is a natural zeolite that has the FAU framework.

A3199. The crystal structures of aluminosilicate zeolites are built of $AlO_4$ and

$SiO_4$ tetrahedra that are linked by the sharing of oxygen atoms. Appx3186-3187.

The tetrahedron containing the aluminum atom is charge balanced by association

with a cation, which is most commonly $Na^+$ or $K^+$. *Id.* It is well known that metals

can be introduced into the zeolite by replacing some of the cations in the zeolite

with metal cations, such as copper ($Cu^{2+}$), iron ($Fe^{3+}$), or any other suitable

alternative metal ion. *Id.* There are a near-limitless number of metal-exchanged

zeolite compositions that can be made through combination of different framework

types and metals. *Id.*

The behavior of a zeolite for a particular process, such as the $NH_3$-SCR of

$NO_x$, is complex. Appx3187. The fact that one zeolite framework behaves in a

certain way for a particular reaction does not mean that other frameworks will

perform in the same manner. This is because the behavior of a zeolite for a particular process depends on a variety of factors, including framework type, Bronsted acidity, silica-to-alumina ratio ("SAR"), the type, concentration, and siting of metal exchange ions, and of course, the nature and conditions of the process itself. *Id*.

## B.    Zeolite Catalysts for Reducing NO$_x$ Emissions

Nitrogen oxide (NO$_x$) emissions in the atmosphere are caused by combustion processes in stationary (e.g., power plants) or mobile sources (e.g., automobiles). For many years, commercial catalytic systems used noble-metal based three-way catalysts for purification of car emissions in gasoline engines and vanadia-on-titania based SCR catalysts for stationary source emissions.[1] Appx3057; Appx3292; Appx3300-3301. Three-way catalysts used in gasoline engines cannot be used in a diesel engine, and there are performance issues with respect to the use of vanadia-on-titania based SCR catalysts in diesel engines. Appx3292; Appx3300-3301. Thus, researchers have sought alternative materials to serve as SCR catalysts for treating diesel engine exhaust.

The possibility of using a metal-exchanged zeolite catalyst to reduce NO$_x$ emissions in diesel engines was explored well before the '662 Patent provisional application was filed in 2007. In 1995, Centi et al., published a study on the use of

---

[1] Neither of these catalysts are zeolite catalysts.

copper-based catalysts for transformation of nitrogen oxides.  Appx3055.  The

study included a discussion of copper-based zeolite catalysts and highlighted the

limitations that stood in the way of commercialization:

> [S]everal unresolved problems limit the outlook for successful use of zeolites in automotive converters: (i) hydrothermal stability, (ii) sensitivity to poisoning, (iii) possibility of manufacturing suitable shapes with sufficient mechanical resistance to thermal stress and vibrations, (iv) high light-off temperature and limited temperature window, (v) possible formation of harmful byproducts, and (vi) necessity of post-engine hydrocarbon additions to reach the optimum hydrocarbon/NO ratio required to meet current and future legislative regulations on NO emissions. A low hydrothermal stability, in particular, is the more critical weakness of copper-containing zeolites.

Appx3059.

In 2004, 2005, 2006, and 2008, additional papers, all by different

researchers, confirmed the limitations with metal-exchanged zeolites that stood in

the way of commercial adoption for treating nitrogen oxide emissions in

automobiles:

> Gabrielsson, *Urea-SCR in automotive applications* (2004) (Appx3372)
>
> "One can be quite pessimistic about the use of zeolites for several reasons:
> (i) The catalyst types have been tested in the SCR reaction since the eighties without a commercial breakthrough.
> (ii) Zeolites have been extensively tested in the so-called HC-SCR reaction with insufficiently long-term stability."

Appx3376-3377.

Tolonen et al., *The effect of NO2 on the activity of fresh and aged zeolite catalysts in the NH3-SCR reaction* (2005) (Appx3292)

"The aim of this study was to obtain knowledge about the activity of zeolite-based catalysts in the $NH_3$-SCR reaction with excess of oxygen. The limited hydrothermal stability of zeolites may restrict their use…."

Appx3293.

Park et al., *Hydrothermal stability of CuZSM5 catalyst in reducing NO by NH3 for the urea selective catalytic reduction process* (2006) (Appx3348)

"CuZSM5 has been reported as one of the most promising catalysts for the SCR of NOx from light- and heavy- duty diesel engines with urea.  However, the hydrothermal stability of the catalyst is another critical issue to be resolved for the commercial application of urea SCR technology to automotive engines. CuZSM5 after hydrothermal aging under simulated flue gas stream at temperature above 600° C with 10% water reveals significant catalyst deactivation."

Appx3357.

Brandenberger et al., *The State of the Art in Selective Catalytic Reduction of NOx by Ammonia Using Metal-Exchanged Zeolite Catalysts* (2008) (Appx3299)

"One of the major requirements for the practical application of zeolites in the SCR process is their durability under hydrothermal conditions, which is not yet sufficient. There is no guarantee that a zeolite-based catalyst will be found that meets all of the diverse requirements for future SCR systems on diesel vehicles. Research is now targeting catalysts that combine both high activity at low temperatures and hydrothermal stability at high temperatures."

Appx3326.

The absence of a breakthrough with respect to metal-exchanged zeolite SCR catalysts was clearly not for the lack of research. As explained in a 2008 paper authored by researchers at the Ford Motor Company, "there is a need to develop thermally robust SCR catalysts" and "[i]mprovements in the thermal durability of Cu/zeolite based SCR formulations has [*sic*] been highly desirable and pursued by many research institutes and catalyst suppliers." Appx2815-2816.

The pessimism concerning the viability of metal-exchanged zeolite SCR catalysts extended to even the highest levels of research. In 2005, Dr. Stanley Roth, the research group leader for $NO_x$ control catalysts at Engelhard Corporation[2], attempted to obtain funding from the Department of Energy for purposes of studying the use of copper-loaded zeolites for the selective catalytic reduction of $NO_x$. Appx2801-2802. The grant proposal was wait-listed because the DOE concluded that zeolites lacked the stability needed to be commercially viable for $NH_3$-SCR of $NO_x$ in a diesel engine. Appx2802. Dr. Roth was also told that "some reviewers, and [the] DOE grant manager simply think Cu-exchanged zeolites are far to [sic, too] unstable to water to be commercially feasible, so they do not want to fund work in the area." *Id*. Dr. Roth's contact also quoted one of the reviewers as stating "the PI's completely side step the issue of catalysts deactivation in the presence of water; I believe this to be the primary reason why

---

[2] Engelhard was acquired by BASF in 2006.

metal-exchanged zeolites have limited application. It is interesting to note that not a single metal-zeolite for SCR was commercialized in the USA in the 1990's…." Appx2803.

There is a wealth of literature evaluating the properties of various zeolite frameworks for the $NH_3$-SCR of $NO_x$, none of which was cited or mentioned in Umicore's petition or associated expert declaration. Appx3192-3195. This literature is directed to various zeolite frameworks, such as MFI, MOR, BEA, FER, Y, USY, and ZSM-5, but almost entirely absent from the research and patent literature is investigation regarding the CHA framework. *Id*.

## C. The Patented Invention

After an extensive examination of over 900 zeolite materials, including twelve different framework types, different silica-to-alumina ratios, and different metal ions and concentrations, the inventors of the '662 and '203 Patents arrived at the breakthrough sought by the industry. Appx2826-2827. The '662 and '203 Patents capture their discovery: a high SAR (>15), copper-exchanged aluminosilicate zeolite having the CHA framework ("CuCHA") that is used for the $NH_3$-SCR of $NO_x$. Appx2827; Appx1369 (1:56-2:3); Appx1396 (23:9-15, 23:51-54). As explained in the specification, "the copper chabazite catalysts made in accordance with one or more embodiments of the present invention provide a

catalyst material which exhibits excellent hydrothermal stability and high catalytic activity over a wide temperature range." Appx1355 (1:66-2:3).

Claims 1-8, 12-24, 30 and 32-50 of the '662 Patent and claims 15-24, 27, 28, and 31 of the '203 Patent remain at issue in this appeal. BASF is not appealing the Board's decision with respect to the claims 1-14, 26, 29, and 30 of the '203 Patent. Claim 1 of the '662 Patent, and claims 14 and 15 of the '203 Patent, are reproduced below:

'662 Patent

1. A catalyst comprising: an aluminosilicate zeolite having the CHA crystal structure and a mole ratio of silica to alumina from about 15 to about 150 and an atomic ratio of copper to aluminum from about 0.25 to about 1, the catalyst effective to promote reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$ selectively.

'203 Patent

14. [A process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen wherein said process comprises contacting the gas stream with a catalyst comprising a zeolite having the CHA crystal structure and a mole ratio of silica to alumina from about 15 to about 100 and an atomic ratio of copper to aluminum from about 0.25 to about 0.50][3], wherein the process further comprises adding a reductant to the gas stream.

15. The process of claim 14, wherein the reductant comprises ammonia or an ammonia precursor.

---

[3] Dependent claim 14 depends from claim 1. The limitations of claim 1 are shown in the brackets.

In 2006, BASF supplied to the Ford Motor Company samples of a high SAR CuCHA catalyst for evaluation.  Appx2828-2929.  The CuCHA samples had a SAR of about 30 and a Cu/Al ratio of about 0.45.  Appx2829.  Ford published the results of the evaluation in a 2008 journal paper, which describes the CuCHA catalyst as having "***remarkable*** high temperature hydrothermal stability up to 950° C while maintaining low temperature NOx activity."  Appx2815 (emphasis added); *see also* Appx2829-30.  Additionally, in 2010, a paper published in the Journal of Catalysis also confirmed the properties of the claimed CuCHA catalyst:

> In the very recent patent literature, $Cu^{2+}$ ion-exchanged SSZ-13 (Cu-SSZ-13) has been reported to exhibit $NO_x$ conversions of 90-100% over a wide temperature range in the $NH_3$-SCR process, and its activity exceeded 80% even after extensive high-temperature hydrothermal aging…***Our results confirm that the activity and selectivity of the Cu-SSZ-13 catalyst for both NOx SCR with $NH_3$ and $NH_3$ oxidation are superior*** to those of both Cu-beta and Cu-ZSM-5.

Appx3144 (emphasis added); *see also* Appx3147 (citing '662 Patent).

BASF has commercially sold a high SAR CuCHA catalyst for use in the $NH_3$-SCR of $NO_x$ in diesel engines since 2010 and practices at least claims 1-8, 12-15, 18, 21, 23, 39-41, 47, 44, and 50 of the '662 Patent and claims 15-24, 27, 28, and 31, '203 Patent.  Appx3243-3245; Appx3274-3276; Appx3492-3495.  The '662 Patent has also been licensed to another catalyst supplier, Johnson Matthey Inc.  Appx3493.

**D.    The Prior Art at Issue**

**1.  U.S.P.N. 6,709,644 to Zones**

Zones is a U.S. patent issued in 2004 that is directed to the synthesis of a CHA zeolite called SSZ-62 having a small crystallite size.[4]  Appx1435; Appx1436 (1:18-30); Appx3195-96.  The SSZ-62 synthetic CHA zeolite can be prepared such that it has an SAR between 10 and 50.  Appx1436 (2:5-7, 2:30-39).  The new feature of SSZ-62 is the small crystallite size, not that it has a high SAR.  Appx3196.  Another patent, U.S.P.N. 4,544,538 (also to Zones), issued nearly twenty years earlier and discloses the synthesis of SSZ-13, which is also a synthetic CHA zeolite that can also have a SAR of 50.  Appx2711 (2:55-56); Appx2713 (3:44-45); Appx3195-3196.

Zones discloses that SSZ-62 can be used in a "process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen" and "may contain a metal or metal ions (such as cobalt, copper or mixtures thereof) capable of catalyzing the reduction of the oxides of nitrogen."  Appx1436 (1:54-64).  There is no further teaching in Zones regarding the "reduction of oxides of nitrogen."  Appx1436-1439; Appx3196-3198.  The only other discussion in Zones regarding the use of SSZ-62 relates to the condensation of alcohols, preparing

---

[4] Crystallite size and pore size are not synonyms.  Crystallite size refers to the size of the entire zeolite crystal and can vary between zeolite compositions having the same framework type.  (A3198.)  In contrast, pore size is determined by the framework type.  *Id.*

18

dimethylamine, and converting methanol—none of which have anything do with the $NH_3$-SCR of $NO_x$.  Appx3196.  Umicore conceded at the oral hearing that Zones does not disclose using SSZ-62 for $NH_3$-SCR of $NO_x$.  Appx253 (97:12-14) ("So when counsel says none of the references mention high SAR copper chabazites for ammonia SCR, that's correct.").

## 2. U.S.P.N. 4,046,888 to Maeshima

Maeshima is a U.S. patent that issued in 1977, and is directed to the $NH_3$-SCR of $NO_x$ in stationary sources, such as a power plant.   Appx1397; Appx1399 (2:9-12).  Maeshima includes a list of five natural zeolites, one of which is natural chabazite, and four synthetic zeolites.  This list is reproduced below.

Suitable natural zeolites are:

Mordenite: (Ca, $K_2$, $Na_2$) $[AlSi_5O_{12}]$ $_2 \cdot 7H_2O$
Erionite: ($K_2$, $Na_2$, Ca) $[AlSi_3O_8]$ $_2 \cdot 6H_2O$
Natrolite: $Na_2[Al_2Si_3O_{10}] \cdot 2H_2O$
Chabazite: (Ca, $Na_2$) $[Al_2Si_4O_{12}] \cdot 6H_2O$
Faujasite: $Na_2Ca [Al_2Si_4O_{12}]$ $_2 \cdot 16H_2O$

   The natural zeolites contain alkaline earth metals, with alkali metals.
   As the synthetic zeolites, there may be used synthetic faujasite and synthetic mordenite. The synthetic faujasites include:
Zeolite-A: $1.0 \pm 0.2M_{2/n}O$ :$Al_2O_3$ :$1.85 \pm 0.5SiO_2$. :$YH_2O$ (wherein M represents a metal, $n$ represents a valence of M and Y represents a number of about 6 or below).
Zeolite-X: $1.0 \pm 2M_{2/n}O$ :$Al_2O_3$:$5 \pm 0.5SiO_2$:$YH_2O$ (wherein M represents a metal of a valence of from 1 to 3, inclusive, $n$ represents a valence of M and Y represents a number of about 8 or below).
Zeolite-Y: $0.9 \pm 0.2Na_2O$:$Al_2O_3$:$WSiO_2$:$YH_2O$ (wherein W represents a number between 3 and 6, inclusive, and Y represents a number of about 9 or below).
The synthetic mordenites include, for example:
Zeolite-L: $1.0 \pm 0.1M_{2/n}O$ :$Al_2O_3$:$0.4 \pm 0.5SiO_2$:$YH_2O$ (wherein M represents a metal, $n$ represents a valence of M, and Y represents a number from 0 to 7, inclusive).

Appx1400 (4:6-35). The above identification of natural chabazite, which has a low SAR[5] and a small pore size, is the ***only disclosure*** in the Maeshima regarding a zeolite having the CHA framework. Appx1398-1403; Appx3199.

Maeshima discloses that the preferred zeolite for $NH_3$-SCR of $NO_x$ has a large pore size (6-13 Å). Appx1400 (4:36-43). Chabazite, which has a pore size of 3.8 Å, is ***not*** a large pore size zeolite. Appx3186; Appx3469; Appx3490. Maeshima also discloses a list of eleven ion-exchange metals, four of which are preferred—copper, iron, chromium, and vanadium. Appx1400 (4:51-54); Appx1401 (6:4-9). The only example of a metal-exchanged zeolite disclosed in Maeshima is copper-exchanged zeolite Y, which has the FAU framework. Appx1402-403 (8:15-10:2); Appx3199. Umicore's expert declarant, Dr. Lercher, testified on cross-examination that "[Maeshima] certainly has not pointed to chabazite to be a very effective material" and concurred that there are no examples of a CuCHA zeolite in Maeshima. Appx3380; Appx3397 (66:21-67:4). BASF's expert declarant, Dr. Tsapatsis, explained that "there is no information in Maeshima that would cause a person of ordinary skill in the art to single out CuCHA from the list of disclosed zeolites and metals." Appx3199-3200.

---

[5] Natural chabazite has a low SAR (~6). (A1892; A1480-81; A198[42:5-7]; A240[84:13-21].)

### 3.  U.S.P.N. 4,503,023 to Breck

Breck is a U.S. patent that issued in 1985 and describes a method for increasing the SAR of an existing zeolite by extracting the alumina and replacing it with silica (called de-alumination).[6]   Appx1404; Appx1409 (3:24-48); Appx3202-3203.  With regard to the de-alumination process, Breck lists ten zeolites as "[e]specially preferred" including "zeolite Y, zeolite rho, zeolite W, zeolite N-A, zeolite L, and the mineral and synthetic analogs of mordenite[,] clinoptilolite, chabazite, offretite and erionite."[7]  Appx1409 (4:60-63).

Breck includes a generic statement that the "zeolite compositions of the prevent invention are useful in all adsorption, ion-exchange and catalytic processes."  Appx1431 (47:44-47).  The parties and the Board agreed that Breck does not disclose or suggest using a CuCHA zeolite for $NH_3$-SCR of $NO_x$. Appx148 ("[W]e agree with Patent Owner neither Dedecek nor Breck disclose or suggest using a copper chabazite for ammonia SCR."); Appx3205-3206; Appx3409 (114:11-115:14).

---

[6] De-alumination to increase the SAR of an existing zeolite material is not to be confused with a process for synthesizing a zeolite to have a particular SAR.

[7] Only one example is a CHA zeolite, LZ-218 which is synthetic, and for that example, Breck shows the de-alumination technique was only able to increase the SAR from 8.52 to 11.13, which falls outside of the claimed range in the '662 and '203 Patents.  Appx1425 (37:39-38:10); Appx3204-3205.

**E.    Final Written Decisions**

**1.    IPR2015-01121 and -01123**

The Board's decision that Zones and Maeshima render the claims of the '662 and '203 Patents obvious hinged on the erroneous conclusion that Zones discloses using a CuCHA zeolite for $NH_3$-SCR of $NO_x$.

In summarizing the parties' positions, the Board did not identify any evidence put forth by Umicore that Zones discloses using a CuCHA zeolite for $NH_3$-SCR of $NO_x$.  Appx6; Appx10-11.  The Board further noted BASF's position that Zones does not disclose any specific reactions, such as $NH_3$-SCR of $NO_x$, and that Umicore and its expert had simply "assume[d] that a person of ordinary skill in the art 'would use [Zones'] CHA material for ammonia SCR, when, in fact, Zones does not teach that."  Appx12.

The Board's analysis on the issue of whether Zones discloses using its CHA zeolite for $NH_3$-SCR of $NO_x$ consisted entirely of the following sentence—

> Although Zones does not explicitly list specific reactions for the reduction of oxides of nitrogen, such as the use of CHA zeolites for ammonia SCR, the evidence of record suggest that a person of ordinary skill in the art would have understood the reference to the "reduction of oxides of nitrogen" to include ammonia SCR of NOx. Ex.2009, ¶ 8; Ex.2027, 36:16-37:25; Tr. 46:21-23.

Appx14.[8]   The evidence of record cited by the Board in the above sentence

included the declaration of the inventor of the Zones patent, Dr. Stacey Zones, that

was submitted during the prior *inter partes* reexamination of the '662 Patent.

Appx3032-3035.  In that declaration, Dr. Zones explicitly stated that his patent did

not teach specific reactions for the reduction of oxides of nitrogen, and provided a

non-exhaustive list of reactions that, "in his view," were included within the phrase

"reduction of oxides of nitrogen":

> 8.  In my view, the phrase "reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen" in the [Zones] patent refers to and teaches ***a number of different reactions, including*** the reduction of NO without reducing agents, such as in the presence of CO (for example, a three-way catalyst), the decomposition of NO in the presence of oxygen, and $N_2O$ decomposition, the selective catalytic reduction of NO in the presence of an ammonia reducing agent and oxygen, and the selective catalytic reduction of NO in the presence of a hydrocarbon reducing agent and oxygen. ***The [Zones] patent does not teach specific reactions for the reduction of oxides of nitrogen in the presence of oxygen***.

Appx3033 (emphasis added).  In this same reexamination where the above

declaration from Dr. Zones was first considered, the PTO examiner concluded as

follows:

> While Zones teaches at col. 1, lines 61-65 that its CHA zeolite, such as SSZ-62, may contain a metal ion, such as copper, "capable of

---

[8] In the -01123 decision, the Board did not address this disclosure in Zones, and instead stated that "Petitioner contends that 'Zones discloses all other required claim limitations' except 'zeolites with Cu/Al ratios within the claimed ranges.'" Appx48.

catalyzing the reduction of oxides of nitrogen," no amount is ever exemplified for such catalysis, and ***Zones does not teach using its catalyst for ammonia SCR of NOx***.

Appx2896-2897 (emphasis added).

The Board also cited the cross-examination testimony of Umicore's expert declarant, Dr. Lercher, that "Zones does not limit its finding to a particular process.…he limits its finding to particular catalysts, and that catalyst can be used for reducing NOX with hydrocarbons[,] [i]t can reduce NOX with ammonia or it can do any other reaction that had not been discovered at that point or will be discovered in the future." Appx3389 (36:19-37:3). Dr. Lercher further stated that he could only think of "[a]t least two" processes encompassed within the phrase "reduction of oxides of nitrogen." Appx3389 (37:16-25).

Finally, the Board cited argument by BASF at the oral hearing, where BASF simply reiterated what is stated in the Zones declaration. Appx202 (46:21-23). The Board, however, did not cite in its decision the portions from that same Q&A at the oral hearing where it was explained by BASF that (i) the generic teaching in Zones was not sufficient to disclose the species of using a CuCHA for $NH_3$-SCR of $NO_x$; and (ii) the Examiner during the reexamination considered the very same declaration from Dr. Zones and arrived at the correct conclusion that Zones does not teach using SSZ-62 for $NH_3$-SCR of $NO_x$. Appx203 (47:1-48:2).

24

### 2.    IPR2015-01124 and -01125

The Board's decision that the claims of the '662 and '203 Patents were obvious in view of Maeshima and Breck was premised on the legally erroneous conclusion that one of ordinary skill in the art would have been motivated by the disclosure in Maeshima to start with a CuCHA for $NH_3$-SCR of $NO_x$. As noted above, Maeshima lists natural chabazite among eight other natural and synthetic zeolites, but prefers large pore size zeolites, such as faujasite. Appx1400 (4:6-43). Also listed are eleven possible metals, four of which—copper, iron, chromium, and vanadium—are preferred. Appx1400 (4:51-54); Appx1401 (6:4-7).

The Board's analysis that a person of ordinary skill in the art would have selected CuCHA was based entirely on the fact that copper and natural chabazite are included among the list of possible zeolites and metals in Maeshima. Appx132-133. There was, however, no analysis for *why* a person of ordinary skill in the art would have chosen the combination of copper and natural chabazite from among the 99 possible combinations of zeolites and metals, when in fact Maeshima does not actually propose that specific combination. *Id*. Furthermore, the Board neglected to address the uncontested evidence and argument that a 1990 prior art patent, U.S. 4,961,917 ("Byrne"), does discuss the use of iron- and copper-exchanged low SAR natural chabazite for $NH_3$-SCR of $NO_x$, but specifically counsels against using the CHA framework for that reaction because of insufficient

catalytic activity attributed to the small pore size of the framework.  Appx2636; Appx2640 (4:65-5:1) ("catalysts comprising copper-promoted small to medium pore zeolites such as ZSM-5, naturally occurring chabazite and clinoptilolite, resulted in 10 to 40 percent reduction in SCR process activity."); Appx2641 (5:23-26) ("A 60 percent reduction in SCR process activity is typical for $Fe_2O_3$ containing natural chabazite."); *see also* Appx1031-1032.

# SUMMARY OF THE ARGUMENT

The claimed invention in the '662 and '203 Patents was a breakthrough that allowed BASF to commercialize a zeolite SCR catalyst to treat exhaust in diesel engines when others had expressed skepticism of that possibility for many years. The '662 and '203 Patents claim an aluminosilicate copper-exchanged zeolite having the CHA framework ("CuCHA"), a high silica-to-alumina ratio ("SAR") (>15), a copper to aluminum ratio between 0.25 and 1.0, that is used for the selective catalytic reduction of oxides of nitrogen in the presence of ammonia ("$NH_3$-SCR of $NO_x$").   The Board's decision that these claims are obvious is based on numerous errors.

<u>First</u>, the Board erred as a matter of law by attempting to fill in a fatal omission in the obviousness theory presented in the -01121 and -01123 petitions with respect to the combination of Zones and Maeshima.   In its petition, Umicore advanced a singular theory of obviousness with respect to the independent claim— Zones discloses the use of a high SAR CuCHA for $NH_3$-SCR of $NO_x$, and Maeshima provides the information regarding the amount of copper to include. But, it is undisputed that Zones does not in fact disclose the use of a high SAR CuCHA for $NH_3$-SCR of $NO_x$, and Umicore submitted no evidence with its petition showing that it does.  The Board attempted to fix this flaw in Umicore's petition by concluding that "[a]lthough Zones does not explicitly list specific

reactions for the reduction of oxides of nitrogen, such as the use of CHA zeolites

for ammonia SCR, the evidence of record suggests that a person of ordinary skill in

the art would have understood the reference to the 'reduction of oxides of nitrogen'

to include ammonia SCR of NOx." Appx14. This was legal error. Umicore's

petition contains no such argument regarding the disclosure in Zones. Instead, in

its petition Umicore simply presumed that Zones provided the ***explicit*** disclosure

of using copper exchanged SSZ-62 for $NH_3$-SCR of $NO_x$. Because Umicore was

indisputably wrong on that point, the Board was required to find the claims

patentable over Zones and Maeshima. *Intelligent Bio-Systems, Inc. v. Illumina*

*Cambridge, Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016) ("It is of the utmost

importance that petitioners in the IPR proceedings adhere to the requirement that

the initial petition identify 'with particularity' the 'evidence that supports the

grounds for the challenge to each claim.' [T]he expedited nature of IPRs bring with

it an obligation for petitioners to make their case in their petition to institute.")

(internal citation omitted); *see also Wasica Fin. GmbH v. Cont'l Auto. Sys.*, 2017

U.S. App. LEXIS 5767, *29 (Fed. Cir. Apr. 4, 2017) ("Rather than explaining how

its original petition was correct, Continental's subsequent arguments amount to an

entirely new theory of *prima facie* obviousness absent from the petition. Shifting

arguments in this fashion is foreclosed by statute, our precedent, and Board

guidelines.").

Second, the Board's finding that "a person of ordinary skill in the art would have understood the reference to the 'reduction of oxides of nitrogen' to include ammonia SCR of NOx" is not supported by substantial evidence. There is instead a complete *absence* of evidence in the record supporting the Board's conclusion about the understanding of one of ordinary skill in the art. The Board cited to a declaration submitted during a prior *inter partes* reexamination by Dr. Stacey Zones, an individual with *extraordinary* skill in the art. While Dr. Zones provided his view of some reactions that are encompassed within the phrase "reduction of oxides of nitrogen," he specifically declared that his patent "does not teach specific reactions for the reduction of oxides of nitrogen in the presence of oxygen." Appx3033. Thus, Dr. Zone's declaration cannot constitute "substantial evidence" supporting the Board's conclusion. Indeed, the Board's reliance on the Zones declaration is puzzling given that Umicore, in its petition, did not even cite to the Zones declaration. Rather, Umicore *objected* to the declaration as "hav[ing] no bearing on one of ordinary skill in the art's understanding of the prior art." Appx3496; Appx3516. Moreover, during the prior reexamination in which Dr. Zones' declaration was submitted, the examiner concluded that "Zones does not teach using its catalyst for ammonia SCR of NOx." Appx2875; Appx2896-97. This finding by the examiner was never challenged by Umicore and remains correct today. The Board's further citation to the cross-examination testimony of

Umicore's expert, Dr. Lercher, that the phrase "reduction of oxides of nitrogen" includes "at least two" reactions likewise does not support its *sua sponte* finding regarding the understanding of one of ordinary skill in the art.  If anything, the inability of Umicore's expert to identify the complete members of the genus when asked at his deposition demonstrates that a person of ordinary skill in the art ***would not*** immediately envisage all members of the class.

Third, in the -01124 and -01125 petitions, the Board's conclusion of obviousness hinged on the finding that one of ordinary skill in the art would have selected a CuCHA catalyst based on the disclosure in Maeshima (and increased the SAR based on the teaching in Breck).  It is undisputed that Maeshima does not disclose a CuCHA example or any teaching that would have led one of ordinary skill in the art to select the CHA framework.  Instead, Maeshima discloses nine possible zeolites and eleven possible metals, which gives 99 possible combinations.  The law requires "a reason or motivation" for why "a chemist would have selected a prior art compound as a lead." *Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1292 (Fed. Cir. 2012).  The Board did not follow this law, but rather selected CuCHA from among the 99 possible combinations in Maeshima simply because that is what is claimed in the '662 and '203 Patents.  Under the proper legal standard, the Board's decision must be reversed.

Finally, the Board's decision regarding Maeshima and Breck failed to consider the objective indicia of time elapsed between the claimed invention and the prior art. More than two decades separate the issuance of these two prior art patents and the filing of the '662 Patent. In those intervening decades, it is undisputed that researchers in the field sought to resolve the activity issues with metal-exchanged zeolites for $NH_3$-SCR of $NO_x$, but were unable to. It is also undisputed that the invention disclosed in the '662 and '203 Patents was met with praise and allowed BASF to commercialize a specific metal-exchanged zeolite catalyst (high SAR CuCHA) for $NH_3$-SCR of $NO_x$. The time between the claimed invention and the prior art, coupled with the skepticism and failures disclosed in the prior art in the time between, casts a spotlight on the hindsight employed in finding the claimed invention obvious. BASF relied on this objective indicator of non-obviousness, which was sanctioned by this Court's decision in *Leo Pharm. Prods. v. Rea*, 726 F.3d 1346, 1356-1357 (Fed. Cir. 2013), but the Board's decision included no discussion whatsoever of this compelling evidence of nonobviousness.

## STANDARD OF REVIEW

Obviousness is a question of law based on underlying facts. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1373 (Fed. Cir. 2016). The Board's ultimate determination of obviousness is reviewed *de novo* and its underlying factual findings for substantial evidence. *Id*. Whether the Board properly applied the law is also a legal question subject to *de novo* review. *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) ("we review the Board's compliance with governing legal standards de novo…."). "'Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence.'" *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1360 (Fed. Cir. 2016) (quoting *In re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012)). "It is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. at 1360-61 (quoting *In re Applied Materials, Inc.*, 692 F.3d 1289, 1294 (Fed. Cir. 2012)). When no substantial evidence supports the PTAB's findings, the Court may reverse its findings without remanding the matter. *In re Lemay*, 660 Fed. Appx. 919, 922 (Fed. Cir. Sept. 19, 2016).

# ARGUMENT

**A.   The Board Erred in Finding the Challenged Claims Obvious Based on Zones in view of Maeshima**

> **1.   Umicore's petition did not include evidence or argument for why the generic statement in Zones constitutes a specific disclosure of using a high SAR CuCHA for $NH_3$-SCR of $NO_x$**

It is ***unanimous*** that the disclosure in Zones of using SSZ-62 for "reduction of oxides of nitrogen" is not an explicit or inherent disclosure of using a high SAR CHA zeolite for $NH_3$-SCR of $NO_x$.  Umicore admitted at the hearing that "none of the references mention high SAR copper chabazites for ammonia SCR…." Appx253 (97:12-14).  The examiner during the prior *inter partes* reexamination determined that "Zones does not teach using its catalyst for ammonia SCR of NOx." Appx2896-2897.   BASF's expert in this IPR proceeding explained that "Zones does not specifically discuss the $NH_3$ SCR of NOx or using a CuCHA for the $NH_3$ SCR of NOx." Appx3213-3214.  And finally, the Board concluded that "Zones does not explicitly list specific reactions for the reduction of oxides of nitrogen, such as the use of CHA zeolites for ammonia SCR…."  Appx14.

This unanimity should have been fatal to Umicore's petition because the ***sole*** theory of obviousness advanced in the -01121 and -01123 petitions was premised on Zones explicitly teaching the use of its CHA zeolite for $NH_3$-SCR of $NO_x$. Specifically, Umicore's theory of obviousness was that Zones discloses the use of a high SAR CuCHA for $NH_3$-SCR of $NO_x$, and Maeshima supplies the information

regarding the amount of copper. *See e.g.*, Appx293 ("Applying Maeshima's teachings regarding copper addition to the Zones catalyst results in a catalyst with the SAR value and Cu/Al ratio within the scope of claim 1."); Appx1535-1536 ("Zones discloses virtually all of the limitations required by claims 1-11 and 30 of the '662 patent. This includes the use of zeolites with the CHA crystal structure and the claimed SAR values in an SCR process. While Zones does not expressly reference catalysts with Cu/Al ratios within the claimed ranges…"); Appx10. There was no argument or evidence presented in the petitions that Zones inherently disclosed using its CHA zeolite for $NH_3$-SCR of $NO_x$. Nor was there any evidence or argument for why the generic teaching in Zones of "reduction of oxides of nitrogen" constitutes a specific disclosure of using a CuCHA for $NH_3$-SCR of $NO_x$. *See* Appx292-293; Appx1513-1519; Appx1535-1536.

Instead, as noted in BASF's response and again at the oral hearing, Umicore assumed in the petition, incorrectly, that Zones explicitly disclosed using its CHA zeolite, SSZ-62, for $NH_3$-SCR of $NO_x$. Appx838-839 ("[T]he use of the CHA structure for the $NH_3$-SCR of $NO_x$ is a key aspect of the 662 invention, yet Petitioner and its expert simply presume that a person of ordinary skill in the art would have selected and modified a CHA zeolite for the $NH_3$ SCR of NOx."), Appx850 ("While Zones discloses the synthesis of a CHA zeolite, SSZ-62, it plainly includes no teachings regarding the properties of the CHA framework or a

CuCHA with respect to the NH$_3$ SCR of NOx."); Appx3213-3214 ("Zones does not specifically discuss the NH$_3$ SCR of NOx or using a CuCHA for the NH$_3$ SCR of NOx."); Appx206 (50:5-15).

The law "is well established that the disclosure of a genus in the prior art is not necessarily a disclosure of every species that is a member of that genus." *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006).  In order to find that the generic teaching in Zones disclosed the species of using CuCHA for NH$_3$-SCR of NO$_x$, Umicore would have had to address whether "one of ordinary skill in the art would 'at once envisage each member of this limited class.'"  *Wasica Finance*, 2017 U.S. App. LEXIS 5767, *26 (quoting *AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.,* 764 F.3d 1366, 1379 (Fed. Cir. 2014)).  No such evidence or argument can be found in the petitions or the associated expert declarations submitted by Umicore.

At the Oral Hearing, recognizing this gaping omission from the petitions, Umicore's attorney attempted to advance a new theory based on ***attorney argument*** that the phrase "reduction of oxides of nitrogen" encompasses just two processes:

> You have hydrocarbon reduction. You have nitrogen reduction. That's the universe that Zones, which, by the way, is a patent assigned to Chevron, so it is in kind of, we're talking combustion engine industry. We're talking about hydrocarbon reduction or nitrogen reduction.

*** 

35

> So Zones, in teaching two possible reductions, reductants at most, whatever this list on [sic] 27 means, five. In that circumstance under the case law, it is teaching nitrogen -- NH-3 or ammonia reduction.

Appx255 (99:19-24); Appx256 (100:1-14). The problem for Umicore is that there is no evidence in the record to support this attorney argument. Equally problematic, Umicore's new theory presented at the Oral Hearing is ***completely absent*** from the petition. Indeed, no discussion regarding the number of processes one of ordinary skill in the art would understand are encompassed within the phrase "reduction of oxides of nitrogen" is found anywhere in Umicore's petitions or expert declarations.

Any attempt by Umicore to try and now cure the flaw in the obviousness theory set forth in its petition by arguing that the Zones declaration (Appx3032-3035) shows that the disclosure in the Zones patent using SSZ-62 for the "reduction of oxides of nitrogen" is a sufficient disclosure of using SSZ-62 for each species in the genus would be wholly improper. Umicore never once cited to or mentioned the Zones declaration in either its petition or reply brief. *Intelligent Bio-Systems, Inc.*, 821 F.3d at 1369 ("It is of the utmost importance that petitioners in the IPR proceedings adhere to the requirement that the initial petition identify 'with particularity' the 'evidence that supports the grounds for the challenge to each claim.' [T]he expedited nature of IPRs bring with it an obligation for petitioners to make their case in their petition to institute.") (internal citation

omitted).  Quite to the contrary, Umicore actually **objected** to the Zones declaration (labeled Ex. 2009 in the proceedings below), including the specific paragraph relied on by the Board, on the basis that it was "irrelevant and inadmissible, and ha[s] no bearing on one of ordinary skill in the art's understanding of the prior art." Appx3516.

**5.    Ex. 2009 – 2/7/2011 Declaration of Stacey Zones.** Petitioner objects to Patent Owner's and/or Dr. Tsapatsis's use of following paragraphs of Ex. 2009:

| Paragraph | Objection |
|---|---|
| ¶¶ 6-12 | **FRE 402.** These paragraphs are irrelevant for the purpose cited.  The paragraphs include numerous statements and opinions made by a named inventor of a prior art patent regarding the purported scope of the disclosure in the patent.  These opinions are irrelevant and inadmissible, and have no bearing on one of ordinary skill in the art's understanding of the prior art. |

Petitioner's Objections to Evidence (Appx3516)

The evidence and arguments forming the *prima facie* case of obviousness must be set forth in the Petition.  It is not the role of the Board or the Court to fill in flaws in the petition and attempt to make out the *prima facie* case of obviousness for the petitioner.  *See e.g., Wasica Finance*, 2017 U.S. App. LEXIS 5767, * 29 ("Rather than explaining how its original petition was correct, Continental's subsequent arguments amount to an entirely new theory of *prima facie* obviousness

absent from the petition. Shifting arguments in this fashion is foreclosed by statute, our precedent, and Board guidelines."); *Intelligent Bio-Systems, Inc.*, 821 F.3d at 1369 ("[T]he expedited nature of IPRs bring with it an obligation for petitioners to make their case in their petition to institute."); *Dell Inc. v. Acceleron*, LLC, 818 F.3d 1293, 1301 (Fed. Cir. 2016) (vacating a finding of unpatentability when the Board relied on an argument first made during oral hearing).  Because Umicore never made the argument in its petition, the Board's finding that one of ordinary skill in the art would have understood that the generic teaching in Zones constitutes a specific disclosure of using a CHA zeolite for $NH_3$-SCR of $NO_x$ was legally erroneous and must be reversed.

2.    **The Board's conclusion that the generic teaching in Zones constitutes a specific teaching of using a high SAR CuCHA for $NH_3$-SCR of $NO_x$ is not supported by substantial evidence**

Despite the fact that Umicore's petition did not include any evidence or argument that the generic teaching in Zones of using SSZ-62 for "reduction of oxides of nitrogen" was sufficient to disclose the specific use of a high SAR CHA zeolite for $NH_3$-SCR of $NO_x$, the Board nonetheless endeavored to make that finding on its own.  That effort fails, because it is not supported by substantial evidence.  The Board concluded "that a person of ordinary skill in the art would have understood the reference to the 'reduction of oxides of nitrogen' to include ammonia SCR of NOx," and cited the Zones declaration (Appx3033), the

38

deposition testimony of Umicore's expert (Appx3389 at 36:16-37:25), and a

portion of the argument by BASF at the oral hearing (Appx202 at 46:21-23).

Appx14.  As explained in the previous section, it was improper for the Board to fill

in the gap in the petition with evidence that was not cited in Umicore's petition or

reply brief.  Nonetheless, this evidence is wholly insufficient to support the

Board's conclusion regarding the understanding of *one of ordinary skill in the art*.

### a.  The Zones Declaration

First, the lone paragraph of the Zones declaration cited by the Board is

prefaced with the phrase "[i]n my view…."  Appx3033.  At the time of the

declaration, Dr. Zones had "been involved in research and development of

molecular sieves and zeolites…for more than thirty years," had "received the

Donald W. Breck award from the International Zeolite Association for [his] work

related to molecular sieves," and was a "named inventor on 115 United States

patents pertaining to the synthesis and/or use of molecular sieves."  Appx3032.

Dr. Zones is a person of *extraordinary* skill in the art, and there is nothing in his

declaration to suggest that he was expressing his view from the perspective of one

of *ordinary* skill in the art.  Appx5 (defining the level of ordinary skill as a person

"hav[ing] at least a Master's degree in chemistry or related discipline, and hav[ing]

knowledge of the structure and chemistry of molecular sieves like zeolites….").

As noted above, Umicore itself objected to the paragraph of the Zones declaration

relied on by the Board on the basis that it "ha[s] no bearing on one of ordinary skill in the art's understanding of the prior art." Appx3516. Thus, by Umicore's own admission, Dr. Zones' declaration cannot constitute substantial evidence of the understanding of one of ordinary skill in the art. *See Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985) ("[i]nventors, as a class, according to the concepts underlying the Constitution and the statutes that have created the patent system, possess something . . . which sets them apart from the workers of *ordinary skill*, and one should not go about determining obviousness under § 103 by inquiring into what *patentees* (i.e., inventors) would have known or would likely have done") (emphases in original). In addition, the Zones declaration does not purport to identify *all* of the reactions encompassed within the phrase "reduction of oxides of nitrogen," which is needed in order to assess whether the disclosure of the genus is sufficient to disclose the species. *See e.g., Wasica Finance*, 2017 U.S. App. LEXIS 5767, * 26 ("Continental's petition did not identify the 'any modulating scheme' genus, ***did not establish its size*** ….") (emphasis added).

### b. Umicore's Expert Testimony

Second, the Board cited the cross-examination testimony of Umicore's expert, who testified that the phrase "reduction of oxides of nitrogen" encompasses "at least two" reactions. Appx3389 (36:16-37:25). This testimony does nothing to

advance the ball beyond what is set forth in the Zones declaration as it does not

identify the members of the genus.  If anything, the inability of Umicore's expert

to identify all members of the genus when asked at his deposition demonstrates

that a person of ordinary skill in the art **would not** immediately envisage all

members of the class.  *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370

F.3d 1354, 1367 (Fed. Cir. 2004) ("A prior art reference that discloses a genus still

does not inherently disclose all species within that broad category."); *Wasica*

*Finance*, 2017 U.S. App. LEXIS 5767, * 26 ("[A] disclosed genus may anticipate a

claimed species when the genus is so small that one of ordinary skill in the art

would 'at once envisage each member of this limited class.'") (quoting *AbbVie*

*Inc.,* 764 F.3d at 1379).  As previously noted, Umicore's expert made no attempt in

his declarations to specify the reactions that are encompassed within the phrase

"reduction of oxides of nitrogen."

### c.  Oral Hearing Statements

Finally, the Board refers to a portion of the argument made by BASF at the

oral hearing pointing out that the Zones declaration identifies reactions that are

included within the phrase "reduction of oxides of nitrogen."  Appx202 (46:21-23).

This argument does not constitute substantial evidence supporting the finding

made by the Board because BASF was simply acknowledging what is in the Zones

declaration.  Notably, the Board's decision failed to account for the argument by

BASF on the very next page of the hearing transcript where it was pointed out that the disclosure of the genus in Zones was insufficient to disclose the species, that the Zones declaration was before the Examiner during the prior reexamination, who concluded that "Zones does not teach using its catalyst for ammonia SCR," and finally that "there is no evidence that has been put forward by Petitioner in this IPR proceeding that would warrant changing [the Examiner's] decision." Appx203 (47:1-14).

Accordingly, the Board's decision "that a person of ordinary skill in the art would have understood the reference to the 'reduction of oxides of nitrogen' to include ammonia SCR of NOx" is not supported by substantial evidence, and should be reversed.

**3.    The Board's ultimate conclusion of obviousness must be reversed because it is premised on the erroneous finding that Zones discloses using a CuCHA for $NH_3$-SCR of $NO_x$**

The Board's erroneous conclusion regarding the disclosure in Zones requires reversal of the ultimate determination of obviousness based on Zones in view of Maeshima.  The determination of obviousness was predicated on the finding that Zones teaches using its high SAR CHA zeolite for $NH_3$ SCR of $NO_x$.  Appx14-15. There is no basis for a remand because (i) Umicore's -01121 and -01123 petitions

asserted obviousness under the sole theory[9] that Zones explicitly discloses using a high SAR CuCHA zeolite for $NH_3$-SCR of $NO_x$ with respect to claims 1-8, 12-24, 30 and 32-50 of the '662 Patent and claims 15-24, 27, 28, and 31 of the '203 Patent, which require a high SAR CuCHA zeolite for $NH_3$-SCR of $NO_x$; and (ii) Umicore conceded at the hearing that "none of the references mention high SAR copper chabazites for ammonia SCR…." Appx253 (97:12-14). Because Umicore presented no other theory of invalidity, there is nothing further to consider on remand. Accordingly, reversal is the appropriate relief. *Arendi*, 832 F.3d at 1366-67.

**B.    The Board Erred in Finding the Challenged Claims Obvious Based on Maeshima in view of Breck**

   **1.    The Board did not apply the law in finding that a POSITA would have been motivated to use a CuCHA for $NH_3$-SCR of $NO_x$ based on Maeshima**

The Board's determination of obviousness in the -01124 and -01125 petitions was premised on the finding that one of ordinary skill in the art would have been motivated to start with a CuCHA for the $NH_3$-SCR of $NO_x$ based on Maeshima (and then increase the SAR based on the teaching in Breck). Appx91-92; Appx132-133. This finding, however, was based *solely* on the fact that natural

---

[9] The second obviousness ground in each of the -01121 and -01123 petition added the Patchett reference in combination with Zones and Maeshima. The Patchett reference was used solely to address limitations relating to the emissions treatment system found in certain dependent claims.

chabazite and copper are listed among possible zeolites and possible metals in

Maeshima. *Id*. This evidence is insufficient under the proper legal standard,

which was not applied by the Board.

"In determining whether a chemist would have selected a prior art

compound as a lead, the analysis is guided by evidence of the compound's

pertinent properties…such as activity and potency…." *Otsuka Pharm. Co.*, 678

F.3d at 1292 (internal citations omitted). "Absent a reason or motivation based on

such prior art evidence…the analysis would impermissibly rely upon *ex post*

reasoning." *Id*. Under the proper legal standard, it was simply not possible for

Umicore to meet its burden that a person of ordinary skill in the art would have

selected CuCHA given these undisputed facts:

1) Maeshima includes a list of nine zeolites and eleven metals, which yields 99 possible combinations. Appx1400 (4:6-35, 4:51-54); Appx3199-3200.

2) Maeshima prefers large pore size zeolites, which excludes chabazite, and prefers four metals—copper, iron, chromium, and vanadium. Appx1400 (4:36-43); Appx3186; Appx3199; Appx3398-3399 (73:13-74:3).

3) Maeshima does not disclose a CuCHA example, nor does it provide any teaching regarding the properties of CuCHA for $NH_3$-SCR of $NO_x$. Appx1397-1403; Appx3199; Appx3397 (66:17-67:4) (Umicore's expert testifying that Maeshima "certainly has not pointed to chabazite to be a very effective material.").

4) Bryne, a patent issued in 1990, discloses that copper-exchanged naturally occurring chabazite has poor activity for $NH_3$-SCR of $NO_x$ because of its small pore size. Appx2640 (4:65-5:1); Appx2641 (5:23-26); Appx3194-3195.

5) Breck does not disclose CuCHA, nor does it disclose or suggest using a CHA or CuCHA for $NH_3$-SCR of $NO_x$.  Appx3205-3206; Appx3409 (114:11-115:14); Appx148 ("we agree with Patent Owner neither Dedecek nor Breck disclose or suggest using a copper chabazite for ammonia SCR.").

Lacking from the Board's decision is any evidence of ***why*** a person of ordinary skill in the art would have chosen CuCHA as "[the] most promising to modify in order to improve upon its… activity to obtain a compound with better activity." *Otsuka Pharm. Co.*, 678 F.3d at 1291 (citing *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1357 (Fed. Cir. 2007)).  Instead, Umicore and the Board plucked copper and natural chabazite out from among the possible zeolites and metals listed in Maeshima because that zeolite framework and metal combination is claimed in the '662 and '203 Patents.  This is precisely the type of hindsight driven analysis that the law is designed to avoid, and which has led the Board to deny similarly deficient obviousness analyses.  *See e.g.*, *Torrent Pharmaceuticals v. Merck*, IPR2014-00559, slip op. 10 (Paper 8, Institution Decision) (PTAB Oct. 1, 2014) ("Petitioner fails to explain how a skilled artisan would have identified those two compounds from the list of 147 exemplary compounds (A through EQ) as the lead compounds, especially because [the prior art] does not identify either…in its list of 16 '[p]referred compounds.'"); *Apotex, Inc. v. Merck Sharp*, IPR2015-00419, slip. op. 9 (Paper 14, Institution Decision) (PTAB June 25, 2015) ("Petitioner does not explain sufficiently why a skilled artisan would have picked compound 96 over hundreds of other compounds.");

*Fustibal LLC v. Bayer Healthcare LLC*, IPR2016-01490, slip op. 17 (Paper 9,

Institution Decision) (PTAB Feb. 8, 2017) (denying Petition which "merely

assumes—without explanation—that the POSA would select sorafenib for

modification").

The Board attempted to justify its hindsight analysis by noting that "[t]he

fact that Maeshima and Breck disclose other types of zeolites does not diminish the

fact that they expressly identify chabazite as an acceptable catalyst." Appx133.

But, BASF never argued that the Board should ignore the identification of natural

chabazite in Maeshima.  Rather, BASF's position was, and remains, that the law

requires an explanation for why a person would have chosen natural chabazite *and*

copper from among the list of possible zeolites and possible metals in Maeshima.

That explanation was never provided by Umicore or the Board.

Had the Board attempted to explain ***why***, it would have found that the prior

art, considered as whole, led one of ordinary skill in the art away from selecting

natural chabazite as the lead material.  Specifically, the Board would have had to

address the portions of the prior art that weigh against obviousness.  *Novo Nordisk*

*A/S v. Caraco Pharm. Labs., Ltd.,* 719 F.3d 1346, 1365 (Fed. Cir. 2013) ("In the

search for scientific truth '[o]ne cannot ... pick and choose among isolated

disclosures in the prior art to deprecate the claimed invention.'…it is necessary to

consider prior art that supports unobviousness of the claimed invention, as well as

that which weighs against it.") (internal citations omitted).  For example, the Board

highlighted that copper is among one of four preferred metals in Maeshima.

Appx132.  Yet, the Board failed to account for the preference in Maeshima for

large pore size zeolites, which would exclude chabazite.  Appx132-133.  Further,

in considering the motivation to select natural chabazite as the lead, the Board

entirely failed to address the disclosure in a 1990 prior art patent, Byrne, which

specifically counsels against the use of copper-exchanged naturally occurring

chabazite for $NH_3$-SCR of $NO_x$ because of its poor catalytic activity attributed to

the small pore size.[10]  Appx2640 (4:65-5:1); Appx2641 (5:23-26); Appx3194-

---

[10] The Board's analysis of the dependent claims discussed Byrne and found that it
did not teach away from "use of *high SAR* CHA zeolites to treat engine exhaust."
Appx142 (emphasis in original).  This finding is inapposite to the issue of whether
a person of ordinary skill in the art would have been motivated to start with the *low
SAR* natural chabazite disclosed in Maeshima.  Even so, the Board's conclusion
regarding Byrne for the dependent claims was contrary to the complete evidence.
While the Board cited to a statement in Byrne that "the utilization of high ratios of
silica to alumina is known to enhance acid resistance of the zeolite and to provide
enhanced resistance of the zeolite to acid sulfur poisoning" Appx142, it neglected
to account for the remainder of that same paragraph in Byrne showing that higher
SAR *does not* correlate with increased catalytic activity.  Appx2641 at 5:50-54
("However, fresh copper promoted USY zeolites with silica to alumina ratios of,
respectively, 8 and 30 provided 85% and 39% conversions of $NO_x$, suggesting that
at least for USY, silica to alumina ratios should be significantly less than 30.").
The Board also failed to address the undisputed, later in time prior art, showing
that increased SAR does not correlate with increased catalytic activity for all
zeolite frameworks in all SCR reactions.  Appx1064-1065.  Specifically, BASF
pointed to a 1989 paper disclosing that "the catalytic activity of mordenite
decreases with increasing Si/Al atomic ratio in the reductions of NO and of $NO_x$"
(Appx3370) and a 2006 paper disclosing that for Cu-ZSM-5 "the lowest [silica to

3195.  In other words, the Board failed to consider why a person of ordinary skill in the art would ignore the large pore size zeolite preference in Maeshima while adopting the metal preference in Maeshima, and all the while disregarding the later in time prior art reference, Byrne, that explains that copper-exchanged natural chabazite is ineffective for $NH_3$-SCR of $NO_x$ because of its small pore size.  As there is no reasoned explanation for why a person of ordinary skill in the art would resolve these inconsistencies in the prior art in order to arrive at the claimed invention in the '662 and '203 Patents, it follows that the selection of copper-exchanged natural chabazite as the lead is the product of ***hindsight***.  Under the proper legal standard, the Board's finding that a person of ordinary skill in the art would have selected CuCHA as the lead material based on Maeshima must be reversed.

### 2.    The Board Erred by Failing to Consider the Objective Indicia of the Elapsed Time Between the Invention and the Prior Art

Maeshima issued in 1977 and Breck issued in 1985.  More than two decades separate the issuance of these prior art patents and the filing of the application that ultimately led to the '662 and '203 Patents.  In those intervening decades, it is undisputed that researchers in the field continually sought to resolve the  activity issues with metal-exchanged zeolites for SCR reactions, but as of the filing date of

---

alumina] ratio, reveals the highest $NO_x$ conversion, and, as the ratio increases, the conversion decreases" (Appx3342).  *See also* Appx3238-3239.

the '662 Patent, remained uncertain as to whether metal-exchanged zeolites could be applied commercially because of those issues. *Supra* pp. 11-15. Nowhere in the intervening decades is there a disclosure in the prior art of using a high SAR CuCHA for $NH_3$-SCR of $NO_x$. Appx253 ("none of the references mention high SAR copper chabazites for ammonia SCR…."); Appx3192-3195. It is also undisputed that the invention disclosed in the '662 and '203 Patents was met with praise and allowed BASF to commercialize a metal-exchanged zeolite—high SAR CuCHA—where others had previously failed and expressed skepticism. *Supra* pp. 16-17. BASF has sold since 2010, and continues to sell, high SAR CuCHA falling within the scope of the claims, and has also licensed the '662 Patent to another catalyst supplier, Johnson Matthey Inc. *Supra* p. 17.

In *Leo Pharm. Prods.*, 726 F.3d at 1359, this Court confirmed that "[t]he length of the intervening time between the publication dates of the prior art and the claimed invention can also qualify as an objective indicator of nonobviousness." BASF specifically relied on this line of reasoning in the Patent Owner Response (Appx1036-1037), but the Board failed entirely to address the issue in the Final Written Decision. Instead, the Board incorrectly dismissed the objective indicia evidence as irrelevant because it purportedly lacked nexus to the claimed invention. The Board's decision does not cite or even attempt to distinguish the *Leo Pharma* case.

49

The reasoning behind *Leo Pharma* is sound and applies precisely to the situation here. If one of ordinary skill in the art would have been motivated based on a 1977 patent (Maeshima) to select CuCHA for $NH_3$-SCR of $NO_x$, and if one of ordinary skill in the art would reasonably expect based on a 1985 patent (Breck) that increasing the SAR predictably improves catalytic activity of zeolites for the $NH_3$-SCR of $NO_x$, why in the intervening decades are there repeated publications discussing the ineffectiveness of metal-exchanged zeolites and their limited usefulness? And why was the use of a high SAR CuCHA for $NH_3$-SCR of $NO_x$ met with praise when patented by BASF? The logical answer is that the combination of a high SAR CuCHA for $NH_3$-SCR of $NO_x$ was ***not*** obvious to a person of ordinary skill in the art in 2007. *Leo Pharm. Prods.*, 726 F.3d at 1359 ("The intervening time between the prior art's teaching of the components and the eventual preparation of a successful composition speaks volumes to the nonobviousness of the '013 patent."). The Board failed to consider this objective indicator of non-obviousness, and thus, erred as a matter of law in finding that the claims of the '662 and '203 Patents were obvious in view of decades-old prior art. The Board's decision with respect to the combination of Maeshima and Breck should be reversed, or at a minimum remanded for the Board to properly account for the evidence supporting an objective indicia of non-obviousness.

## **CONCLUSION**

For the foregoing reasons, BASF respectfully requests that the Court reverse the Board's conclusion that claims 1-8, 12-24, 30 and 32-50 of the '662 Patent and claims 15-24, 27, 28, and 31 of the '203 are unpatentable as obvious.

Respectfully submitted,

Dated: April 28, 2017

/s/ Anish R. Desai
Anish R. Desai
Brian E. Ferguson
Megan H. Wantland
Weil Gotshal & Manges LLP
1300 Eye Street N.W., Suite 900
Washington, DC 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
Email: anish.desai@weil.com

*Attorneys for Appellant*

# ADDENDUM

Trials@uspto.gov                                        Paper No. 53
571-272-7822                                    Entered: October 26, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

UMICORE AG & CO. KG,
Petitioner,

v.

BASF CORPORATION,
Patent Owner.

————————

Case IPR2015-01121
Patent 7,601,662

————————

Before CHRISTOPHER L. CRUMBLEY, JO-ANNE M. KOKOSKI, and
JEFFREY W. ABRAHAM, *Administrative Patent Judges.*

ABRAHAM, *Administrative Patent Judge.*

FINAL WRITTEN DECISION
*35 U.S.C. § 318 and 37 C.F.R. § 42.73*

IPR2015-01121
Patent 7,601,662

## I. INTRODUCTION

Umicore AG & Co. KG ("Petitioner") filed a Petition seeking *inter partes* review of claims 1–24, 30, and 32–50 of U.S. Patent No. 7,601,662 B2 (Ex. 1001, "the '662 patent"), as amended by *Ex parte* Reexamination Certificate No. US 7,601,662 C1 ("Reexam. Cert."). Paper 1 ("Pet."). BASF Corporation ("Patent Owner ") filed a Preliminary Response to the Petition. Paper 7. On October 29, 2015, we instituted an *inter partes* review of claims 1–8, 12–24, 30, and 32–50 as discussed below. Paper 8 ("Dec. on Inst.").

After institution, Patent Owner filed a Patent Owner Response (Paper 24, "PO Resp."), and Petitioner filed a Reply (Paper 36, "Reply"). An oral hearing was held on July 28, 2016, and a transcript of the hearing has been entered into the record of the proceeding as Paper 52 ("Tr.").

We have jurisdiction under 35 U.S.C. § 6. This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73. For the reasons that follow, we determine that Petitioner has shown by a preponderance of the evidence that claims 1–8, 12–24, 30, and 32–50 are unpatentable.

## II. BACKGROUND

### A. Related Proceedings

Petitioner identifies pending *inter partes* review Case IPR2015-01125, also pertaining to the '662 patent. Pet. 1. In addition to IPR2015-01125, Patent Owner identifies pending *inter partes* review Cases IPR2015-01123 and -01124, pertaining to U.S. Patent No. 8,404,203 B2, which issued from a divisional of the application that issued as the '662 patent. Paper 5, 2.

2

## B. The '662 Patent

The '662 patent, titled "Copper CHA Zeolite Catalysts," originally issued on October 13, 2009, with an *ex parte* reexamination certificate issuing on June 7, 2013. The '662 patent states that "synthetic and natural Zeolites and their use in promoting certain reactions, including the selective reduction of nitrogen oxides with ammonia in the presence of oxygen, are well known in the art," and that "[m]etal-promoted Zeolite catalysts including, among others, iron-promoted and copper-promoted Zeolite catalysts, for the selective catalytic reduction of nitrogen oxides with ammonia are known." Ex. 1001, 1:26–33.

The '662 patent discloses catalysts that comprise zeolites having a CHA crystal structure and include copper, which may be part of an exhaust gas treatment system. *Id.* at 1:55–61. According to the '662 patent, "novel copper chabazite catalysts are provided which exhibit improved $NH_3$ SCR of NOx." *Id.* at 1:64–66. Several embodiments described in the '662 patent depict a catalyst comprising a zeolite having the CHA crystal structure, a specific mole ratio of silica to alumina (e.g., greater than about 15), and a specific atomic ratio of copper to aluminum (e.g., greater than about 0.25). *Id.* at 4:24–29.[1] The '662 patent teaches that the catalyst compositions can be disposed on a substrate, which usually comprises a honeycomb structure. *Id.* at 6:55–59. According to the Specification, the CuCHA zeolite catalysts of the '662 patent are said to have increased hydrothermal stability (i.e.,

---

[1] For purposes of this decision, we follow the parties' convention of using "SAR" to refer to the mole ratio of silica to alumina, and "Cu/Al ratio" to refer to the atomic ratio of copper to aluminum required in the claims.

IPR2015-01121
Patent 7,601,662

greater stability when subjected to thermal aging) as compared to other Cu-zeolite catalysts. *Id.* at 5:1–16, 5:49–52.

### C. Illustrative Claim

Claim 1 is the only independent claim challenged, and is reproduced below:

> 1. A catalyst comprising:
>
> an aluminosilicate zeolite having the CHA crystal structure and a mole ratio of silica to alumina from about 15 to about 150 and an atomic ratio of copper to aluminum from about 0.25 to about 1, the catalyst effective to promote the reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$ selectively.

Ex. 1001, Reexam. Cert. 1:56–2:3 (annotations and emphasis omitted).

### D. References

Petitioner relies on the following references:

Zones et al., US 6,709,644 B2, issued March 23, 2004 ("Zones," Ex. 1004).

Maeshima et al., US 4,046,888, issued September 6, 1977 ("Maeshima," Ex. 1002).

Patchett et al., US 2006/0039843 A1, published February 23, 2006 ("Patchett," Ex. 1005).

### E. Reviewed Grounds of Patentability

The Board instituted trial to review the patentability of the challenged claims on the following grounds:

| References | Statutory Basis | Claims Challenged |
|---|---|---|
| Zones and Maeshima | § 103 | 1–8 and 30 |
| Zones, Maeshima, and Patchett | § 103 | 12–24 and 32–50 |

4

IPR2015-01121
Patent 7,601,662

*F. Level of Ordinary Skill in the Art*

Petitioner's declarant, Dr. Lercher, testified that a person of ordinary skill in the art "would have at least a Master's degree in chemistry or a related discipline, and have knowledge of the structure and chemistry of molecular sieves like zeolites, including factors that impact their stability and activity." Ex. 1008 ("Lercher Declaration") ¶ 66. Patent Owner's declarant, Dr. Tsapatsis, stated that he agrees with the level of ordinary skill in the art advanced by Dr. Lercher. Ex. 2018 ("Tsapatsis Declaration") ¶ 22.

We credit the testimony provided by the declarants for both parties and hold that one of skill in the art would possess at least a Master's degree in chemistry or a related discipline, and have knowledge of the structure and chemistry of molecular sieves like zeolites, including factors that impact their stability and activity. This level of ordinary skill is reflected not only by the information presented by the parties, but also by the prior art of record. *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001) (the prior art itself can reflect the appropriate level of ordinary skill in the art).

III. ANALYSIS

*A. Claim Construction*

In an *inter partes* review, claim terms in an unexpired patent are interpreted according to their broadest reasonable construction in light of the specification of the patent in which they appear. 37 C.F.R. § 42.100(b); *see Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144–46 (2016) (upholding the use of the broadest reasonable interpretation standard). We determine that no express claim construction is required for purposes of this Decision. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795,

5

IPR2015-01121
Patent 7,601,662

803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").

### B. References

### 1. Zones

Zones discloses aluminosilicate zeolites having the CHA crystal structure. Ex. 1004, 1:7–23 and Abstract (referring specifically to the chabazite structure). Zones teaches that its zeolite may have an SAR greater than 10. *Id.* at 1:7–10. Zones further discloses that its zeolite may be prepared from a mixture of reactants having SAR values ranging from 20 to 50, and preferably SAR values ranging from 25 to 40. *Id.* at 2:34 (Table 1); *see also id* at 7:34–35, claim 3 (reciting an SAR of at least 30). Zones also discloses

> an improved process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen wherein said process comprises contacting the gas stream with a zeolite, the improvement comprising using as the zeolite a zeolite having the CHA crystal structure, a mole ratio greater than about 10 of silicon oxide to aluminum oxide and having a crystallite size of 0.5 micron or less. The zeolite may contain a metal or metal ions (such as cobalt, copper or mixtures thereof) capable of catalyzing the reduction of the oxides of nitrogen . . . . In a preferred embodiment, the gas stream is the exhaust stream of an internal combustion engine.

*Id.* at 1:54–67.

Zones states that metals may be introduced into the zeolite "via standard ion exchange techniques" (*id.* at 4:25–27) or the zeolite can be "impregnated with metals" (*id.* at 4:36–40). Zones teaches that the zeolite may contain a metal cation "preferably in the range of from about 0.05 to 5 % by weight." *Id.* at 5:25–28.

6

### 2. *Maeshima*

Maeshima "relates to a method for selectively reducing nitrogen oxides contained in exhaust gases from stationary sources, such as flue gas from the combustion furnace of power plants, by using ammonia as a reducing agent." Ex. 1002, 2:9–13. According to Maeshima, this is accomplished by contacting a gaseous exhaust mixture with a catalyst in the presence of ammonia. *Id.* at 2:6–8. Maeshima teaches that the catalyst can be a crystalline aluminosilicate or a "product obtained by exchanging an alkali metal ion in a crystalline alumino-silicate with at least one metal cation having an activity of reducing nitrogen oxides." *Id.* at 3:33–38. Maeshima lists "Chabazite," among others, as a suitable natural zeolite to be used in the described method. *Id.* at 4:6–12. Maeshima includes copper in its list of the most preferred metal components that can be incorporated into the zeolite catalysts (*id.* at 6:4, 4:51–52), noting that "[t]he ion exchange ratio is not particularly critical, but it is generally preferred that the ion exchange ratio be about 60 to about 100%" (*id.* at 4:44–52) and also disclosing that the amount of the active metal component in the catalyst may be a "catalytically effective amount," ranging from about 1 to about 20% by weight, preferably about 2 to about 10% by weight (*id.* at 6:13–17).

### 3. *Patchett*

Patchett relates to an emissions treatment system and method for reducing nitrogen oxides emissions in the exhaust stream produced from an internal combustion engine. Ex. 1005 ¶ 1. Patchett teaches that "[a] proven NOx abatement technology applied to stationary sources with lean exhaust conditions is Selective Catalytic Reduction (SCR) using ammonia ($NH_3$) or an $NH_3$ precursor." *Id.* ¶ 3.

7

IPR2015-01121
Patent 7,601,662

Patchett discloses one embodiment of an emissions treatment system that includes an injector for inserting ammonia into an exhaust stream upstream from a first substrate with an SCR catalyst composition and an $NH_3$ destruction catalyst composition (comprising a platinum group metal component) disposed thereon. *Id.* ¶¶ 18–19. Patchett teaches that the SCR catalyst composition can contain a copper-exchanged zeolite and the substrate may be a honeycomb flow-through substrate. *Id.* ¶¶ 21, 23. According to Patchett, a copper-exchanged zeolite "typically [has] an effective SCR catalyst operating temperature range of from about 150 to 550 ºC." *Id.* at ¶ 69.

### C. *Analysis of Grounds of Unpatentability*

#### 1. *Claims 1–8 and 30*

As noted above, independent claim 1 recites a catalyst having the CHA crystal structure and specific SAR and Cu/Al values, which is effective to promote the reaction of ammonia with nitrogen oxides. Dependent claims 2–8 recite narrowed SAR and Cu/Al values, and dependent claim 30 recites an exhaust gas treatment system that comprises the catalyst of claim 2. Petitioner argues that that the subject matter of claims 1–8 and 30 would have been obvious over Zones[2] in view of Maeshima.

Petitioner provides detailed explanations and the declaration of Dr. Lercher to show how the references disclose or suggest each claim limitation. Pet. 10–23. In our Decision on Institution, we determined that Petitioner had made a threshold showing that the prior art discloses or

---

[2] Petitioner acknowledges that Zones was cited and considered by the Examiner during reexamination of the '662 patent, but points out that the combination of Zones and Maeshima was not before the Examiner in the reexamination. Pet. 4.

IPR2015-01121
Patent 7,601,662

suggests all limitations of claims 1–8 and 30 sufficient for us to conclude
that there was a reasonable likelihood that Petitioner would prevail in
showing that the subject matter of the challenged claims would have been
obvious in view of Zones and Maeshima. Dec. on Inst. 7–16.

In its Response, Patent Owner does not challenge Petitioner's
arguments and evidence demonstrating that the prior art discloses or
suggests all limitations of the challenged claims. To the contrary, Patent
Owner acknowledges that the limitations in the claims were well-known in
the art. *E.g.*, PO Resp. 20 ("There was certainly nothing new in 2004 about
a zeolite having the CHA structure and a SAR up to 50."), 24 ("[I]t was
known decades earlier, in 1985, that a high SAR CHA zeolite can be metal
exchanged."), 38 (stating that "it is undisputed that a high SAR CHA zeolite
and the ion-exchange of copper in zeolite catalysts were well known in the
art since at least 1985"); Tr. 8:11–14, 38:9–14. Thus, the record contains the
same arguments and evidence regarding whether the prior art discloses or
suggests the limitations of the challenged claims as it did at the time of our
Decision on Institution.

Based upon our review of the totality of the record after trial, we agree
with Petitioner's arguments and evidence presented in the Petition regarding
whether Zones and Maeshima disclose or suggest the limitations of claims
1–8 and 30. *See* Pet. 10–23. Thus, we determine that the preponderance of
the evidence supports a finding that Petitioner has demonstrated that all
limitations of claims 1–8 and 30 are disclosed or suggested by Zones and
Maeshima.

In view of this, in our analysis below we focus on the remaining
issues disputed by the parties, namely (i) whether Petitioner has shown one

9

**Appx9**

IPR2015-01121
Patent 7,601,662

of ordinary skill in the art would have been motivated to combine the teachings of Zones and Maeshima to arrive at the claimed CuCHA catalyst (PO Resp. 2, 25–30; Pet. 15–17) and (ii) whether Petitioner has shown that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Zones and Maeshima (PO Resp. 3, 30–32; Pet. 16–17).

    *i.    Motivation to Combine Zones and Maeshima*

        *a. Petitioner's Arguments*

Petitioner argues that "[o]ne of ordinary skill in the art as of February 2007 would have been motivated to combine Zones with Maeshima to arrive, with a reasonable expectation of success, at the subject matter of the claims." Pet. 15 (internal footnote omitted). Petitioner contends that Zones discloses zeolites with the CHA crystal structure and a high SAR value for the reduction of oxides of nitrogen. *Id.* at 10, 15–16; Tr. 15:5–7. Dr. Lercher notes that Zones "does recognize that 'the zeolite may contain a metal or metal ions (such as . . . copper . . .)'." Ex. 1008 ¶ 152 (quoting Ex. 1004, 1:61–63). Petitioner thus argues that Zones teaches the addition of copper, but does not explicitly disclose adding copper up to its ion exchange maximum. Tr. 16:1–5; Pet. 15–16.

Petitioner contends that a person of ordinary skill in the art would have known to add a metal up to its ion exchange maximum, and directs us to Maeshima, which, according to Petitioner, "says it directly." Tr. 16:6–9, 117:21–22, 118:10–14, 119:14–16; Ex. 1008 ¶ 153; Pet. 16. Petitioner further contends that Maeshima discloses the incorporation of copper into aluminosilicate zeolites with the CHA crystal structure, and describes "the benefit of copper loading" (Pet. 16), which, according to Dr. Lercher,

10

IPR2015-01121
Patent 7,601,662

includes "enhanc[ing] the effectiveness of a zeolite when catalyzing the reduction of nitrogen oxides" (Ex. 1008 ¶ 153). *See also* Tr. 116:12–24 (arguing that "effective" in this context means "effective to convert NOx, which is the limitation of the claim"). Petitioner also argues that a person of ordinary skill in the art would have known that higher SAR zeolites were less susceptible to sulfate poisoning. Reply 17 (citing Ex. 1003, 47:47–53).

According to Petitioner, "[b]y directing one of ordinary skill to include copper in its zeolites to render them able to reduce NOx in diesel exhaust, Zones sufficiently motivates those of skill to look to prior art references like Maeshima that discuss appropriate levels of copper loading to apply to an SCR catalyst." *Id.* at 22; Tr. 97:18–19 ("Zones itself tells you what the motivation to combine with Maeshima is. It is to add copper."); 100:10–15. Additionally, Petitioner argues that Zones and Maeshima are in the same technical field and directed to solving the same technical problem—catalyzing the reduction of nitrogen oxides—which would further motivate a person of ordinary skill in the art to combine the references. Pet. 17.

Petitioner further argues that "the motivation to modify a prior art reference to arrive at the claimed invention need not be the same motivation that the patentee had." Reply 21 (quoting *Alcon Research, Ltd. v. Apotex, Inc.*, 687 F.3d 1362, 1368 (Fed. Cir. 2012)). Thus, according to Petitioner, whether Zones and Maeshima disclose a particular degree of SCR performance or hydrothermal stability is irrelevant, especially because these are not requirements of the claims. *Id.*

11

IPR2015-01121
Patent 7,601,662

### b. Patent Owner's Arguments

Patent Owner asserts that Petitioner's argument on motivation to combine is flawed because "neither reference teaches using a high SAR chabazite for ammonia SCR." Tr. 61:13–16. According to Patent Owner, "the use of the CHA structure for the $NH_3$ SCR of NOx is a key aspect of the 662 invention, yet Petitioner and its expert simply presume that a person of ordinary skill in the art would have selected and modified a CHA zeolite for the $NH_3$ SCR of NOx." PO Resp. 14–15. Patent Owner acknowledges that Zones teaches "the previously well-known proposition that metal-exchanged zeolites can be active for the reduction of oxides of nitrogen," but asserts that Zones does not disclose any specific reactions, such as the $NH_3$ SCR of NOx. PO Resp. 2; Tr. 46:10–11. According to Patent Owner, Dr. Lercher incorrectly assumes that a person of ordinary skill in the art "would use [Zones'] CHA material for ammonia SCR, when, in fact, Zones does not teach that." Tr. 50:12–15.

Patent Owner acknowledges that Maeshima includes chabazite among its list of nine zeolites "suitable" for the $NH_3$ SCR of NOx, but argues that Maeshima ultimately points one of ordinary skill in the art in the direction of a different zeolite, one having a low SAR and large pore size. PO Resp. 21, 28. Patent Owner argues that Zones, which is not about $NH_3$ SCR of NOx specifically, teaches using a high SAR, lower pore size CHA zeolite. Id. at 26. Thus, according to Patent Owner, "there is simply no reason why one of ordinary skill in the art would have been motivated to combine the high SAR CHA zeolite disclosed in Zones with the ion-exchange ratio teaching in Maeshima for a low SAR, large pore size zeolite." Id. at 3.

12

**Appx12**

IPR2015-01121
Patent 7,601,662

Patent Owner further argues that a person of ordinary skill in the art would not be motivated to combine the teachings of Zones and Maeshima because "neither reference provides any suggestion that doing so would improve the zeolite for the SCR of NOx." *Id.* at 26. Patent Owner argues that none of the prior art references include any teachings regarding the *properties* of the CHA framework with regard to $NH_3$ SCR of NOx. *Id.* at 18, 27–28. In this regard, Patent Owner argues that although Maeshima teaches using chabazite for ammonia SCR (Tr. 59:4–6), Maeshima does not say anything about how well chabazite works for the SCR of NOx. Tr. 57:22–23; 58:8–9. Additionally, Patent Owner argues that neither Zones nor Maeshima suggests that the claimed features of CHA structure, SAR, and Cu/Al ratio will improve the activity or stability of the zeolite. PO Resp. 3, 26, 29.

Patent Owner cites to Byrne[3] as the only prior art reference that discloses the properties of the CHA framework with regard to $NH_3$ SCR of NOx. PO Resp. 18. According to Patent Owner, Byrne teaches not to use chabazite for this reaction because of susceptibility to sulfate poisoning, and instead discloses that zeolites having large pore sizes should be used. *Id.* at 27 (citing Ex. 1010 at 4:63–5:26); Tr. 50:20–23 (arguing that Byrne teaches to avoid using a copper chabazite for ammonia SCR). Patent Owner points out that other references teach that different zeolite frameworks, other than CHA, were being studied for $NH_3$ SCR of NOx. PO Resp. 19. In this regard, Patent Owner argues that "Petitioner's theory of obviousness is in direct conflict with the fact that it was known more than a decade before the 662 Patent was filed that the low hydrothermal stability of metal-exchanged

---

[3] Byrne, U.S. Patent No. 4,961,917, issued Oct. 9, 1990 (Ex. 1010).

IPR2015-01121
Patent 7,601,662

zeolites limited their usefulness for the $NH_3$ SCR of NOx." *Id.* at 5. According to Patent Owner, the claimed CuCHA catalyst is a solution to this problem. *Id.*

### c. Analysis

Evidence of a motivation to combine prior art references "may flow from the prior art references themselves [or] the knowledge of one of ordinary skill in the art." *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000). It is undisputed that Zones discloses the synthesis of a high SAR CHA zeolite that may contain copper, which is "capable of catalyzing the reduction of the oxides of nitrogen." Ex. 1004, 1:54–64. Zones explains that its zeolite can be used in an "improved process for the reduction of oxides of nitrogen contained in a gas stream," wherein the gas stream is the exhaust stream of an internal combustion engine. *Id.* at 1:54–67.

Although Zones does not explicitly list specific reactions for the reduction of oxides of nitrogen, such as the use of CHA zeolites for ammonia SCR, the evidence of record suggests that a person of ordinary skill in the art would have understood the reference to the "reduction of oxides of nitrogen" to include ammonia SCR of NOx. Ex. 2009, ¶ 8; Ex. 2027, 36:16–37:25; Tr. 46:21–23.

Maeshima discloses "various modifications and improvements" to methods for catalytic reduction of nitrogen oxides, including "a selective reduction method in which ammonia is used as the reducing [a]gent." Ex. 1002, 1:19–26. In fact, Patent Owner states that "Maeshima itself . . . teach[es] metal-exchanged zeolites that are active for the $NH_3$ SCR of NOx." PO Resp. 30. Like Zones, Maeshima discloses removing nitrogen

14

IPR2015-01121
Patent 7,601,662

oxides from a gas by contacting the gaseous mixture with a catalyst. Ex. 1002, 2:5–9. Maeshima states that "it is necessary to perform removal of nitrogen oxides while eliminating influences of sulfur oxides and oxygen." *Id.* at 2:36–38. Maeshima includes chabazite among its list of zeolites that are "suitable" catalysts for the ammonia reduction of nitrogen oxides. *Id.* at 4:6–11. Maeshima also discloses "a product obtained by exchanging an alkali metal ion in a crystalline alumino-silicate with at least one metal cation having an activity of reducing nitrogen oxides" (*id.* at 3:35–38), wherein the active metal can be copper, and the ion exchange ratio is preferably about 60 to about 100% (*id.* at 4:44–52).

In view of this, we credit Dr. Lecher's testimony that "it was well known in the prior art that copper should be beneficially incorporated into a catalyst in an amount approaching a 100% ion-exchange rate" and that "[i]t was also well known that up to a point, increased amounts of copper, including that achieved by a utilizing a 100% ion-exchange ratio or rate, enhance the effectiveness of a zeolite when catalyzing the reduction of nitrogen oxides." Ex. 1008 ¶ 153. This statement is consistent with not only the prior art references, but also with testimony from Patent Owner's declarant, Dr. Tsapatsis, who admitted that it was well-known that metals, such as copper, can be introduced into zeolites and make a zeolite active for the SCR of NOx. Ex. 1019, 113:25–114:14; Ex. 2018 ¶ 94. Dr. Tsapatsis further admitted that a person of ordinary skill in the art would have known that a 60–100 % ion exchange ratio range was acceptable for incorporation of copper into any zeolite. Ex. 1019, 114:23–115:19.

15

IPR2015-01121
Patent 7,601,662

Thus, we find that both the prior art references themselves, as well as the knowledge of a person of ordinary skill in the art, provide adequate reasons to combine Zones and Maeshima.[4]

In arguing that Maeshima directs a person of ordinary skill towards the "especially preferred" low SAR (2–6), large pore size (6–13 Angstroms) aluminosilicates, in contrast to the high SAR, small pore size CHA zeolite of Zones (PO Resp. 28), Patent Owner ignores the full disclosure of Maeshima, which describes preferred aluminosilicates as having "pore diameters in the range of about 3–15 A and $SiO_2/Al_2O_3$ molar ratios of above about 2" and explicitly includes chabazites as suitable catalysts for SCR of NOx (Ex. 1002, 3:68–4:11). *See Medichem, S.A. v. Rolabo*, S.L., 437 F.3d 1157, 1166 (Fed. Cir. 2006) (explaining that in an obviousness analysis, "the prior art must be considered as a whole for what it teaches"); *see also Merck & Co. v. Biocraft Labs. Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989) ("[I]n a section 103 inquiry, 'the fact that a specific [embodiment] is taught to be preferred is not controlling, since all disclosures of the prior art, including unpreferred embodiments, must be considered.'" (quoting *In re Lamberti*, 545 F.2d 747, 750 (CCPA 1976))). Thus, contrary to Patent Owner's contentions, the combined teachings of Zones and Maeshima disclose using a high SAR CHA zeolite for ammonia SCR.

---

[4] We are not persuaded by Patent Owner's argument that Petitioner does not explain "what a person of ordinary skill in the art would be attempting to achieve in combining Zones and Maeshima." PO Resp. 30. Patent Owner cites to no legal authority establishing that this particular question, separate and apart from the question of whether Petitioner has established a reason to combine the prior art references, is part of an obviousness inquiry under 35 U.S.C. § 103.

16

IPR2015-01121
Patent 7,601,662

Patent Owner's arguments that the prior art references fail to provide any suggestion that combining the high SAR and CHA framework of Zones with the ion exchange ratio of Maeshima "would improve the zeolite for the SCR of NOx" is unconvincing. PO Resp. 26. Although finding an improved zeolite for the SCR of NOx may have been the inventors' motivation, "[t]he skilled artisan need not be motivated to combine [the prior art] for the same reason contemplated by [the inventors]." *In re Kahn*, 441 F.3d 977, 990 (Fed. Cir. 2006); *see also KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 420, (2007) (stating that it is error to look "only to the problem the patentee was trying to solve").

As to Patent Owner's arguments regarding sulfur poisoning discussed in Byrne, we note that another prior art reference, Breck,[5] discloses silicon substituted zeolites (including chabazites), which, "because they are more highly siliceous than their precursors[,] they are not only more thermally and hydrothermally stable than those prior known materials but also have increased resistance toward acidic agents such as mineral and organic acids, $SO_2$, $SO_3$, $NO_x$ and the like." Ex. 1003, 4:60–63, 47:44–53.[6] We also note that Byrne states "[a]s indicated by the prior art noted above, the utilization of high ratios of silica to alumina is known to enhance acid resistance of the zeolite and to provide enhanced resistance of the zeolite to acid sulfur poisoning." Ex. 1010, 5:39–44, *see also id.* at 1:28–33 (stating that "[t]he

---

[5] Breck, U.S. Patent No. 4,503,023, issued March 5, 1985 (Ex. 1003).
[6] Patent Owner argues that "[y]ou cannot translate what was taught in Breck to catalytic activity, because that's not what is said in Breck." Tr. 69:24–25. Breck, however, states that "[t]he novel zeolite compositions of the present invention are useful in all adsorption, ion-exchange and *catalytic processes* in which their less siliceous precursors have heretofore been suitably employed." Ex. 1003, 47:44–47 (emphasis added).

17

IPR2015-01121
Patent 7,601,662

resistance of the catalyst to sulfurous poisons, particularly sulfur trioxide and sulfuric acid mist, is said to be enhanced by dealuminizing the mordenite to increase the silica to alumina ratio to more than 12, preferably to more than 15"). Furthermore, the Federal Circuit has held that "[a] known or obvious composition does not become patentable simply because it has been described as somewhat inferior to some other product for the same use." *In re Gurley*, 27 F.3d 551, 554 (Fed. Cir. 1994). The same reasoning applies to Patent Owner's arguments regarding additional publications allegedly describing the limited usefulness of metal-exchanged zeolites for the $NH_3$ SCR of NOx.

Thus, upon consideration of the evidence in this record, we determine that Petitioner has demonstrated, by a preponderance of the evidence, that a person of ordinary skill in the art would have had a reason to combine Zones and Maeshima to arrive at the claimed subject matter.

    ii.    *Reasonable Expectation of Success in combining Zones and Maeshima*

Petitioner argues that a person of ordinary skill in the art would have had "every reason to believe that increasing the copper of Zone[s'] zeolites catalysts as instructed by Maeshima would succeed." Pet. 16–17. Petitioner argues that the '662 patent itself acknowledges that "[m]etal promoted zeolite catalysts, including, among others, iron-promoted and copper promoted zeolite catalysts, for the selective catalytic reduction of nitrogen oxides with ammonia are known." Ex. 1001, 1:30–33; Pet. 16. Petitioner also relies on Maeshima's disclosure of incorporating metal cations into zeolites via ion-exchange, including specific amounts of active metals such as copper. Pet. 16. According to Petitioner,

18

IPR2015-01121
Patent 7,601,662

> the combination of Zones and Maeshima amounts to nothing
> more than the application of one particular known modification
> to catalytic zeolites with a known benefit—increasing the
> copper content of aluminosilicate chabazite zeolites to improve
> catalytic activity as taught by Maeshima—to the very materials
> to which this modification is meant to be applied—Zones high
> SAR copper-promoted aluminosilicate zeolites for use in SCR
> processes.

*Id.* at 17.

Patent Owner argues Petitioner has failed to establish a reasonable expectation of success in combining Zones and Maeshima. PO Resp. 31–32. In particular, Patent Owner argues that neither reference offers teachings regarding solving the problem of hydrothermal stability, and, therefore, a person of ordinary skill in the art would not have a reasonable expectation that the combination of Zones and Maeshima would provide "a zeolite catalyst that is active for $NH_3$ SCR of NOx *and* exhibits improved hydrothermal stability as compared to other known zeolite catalysts." *Id.* at 31.

Our reviewing court has held that "the person of ordinary skill need only have a reasonable expectation of success of developing the *claimed invention.*" *Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1292 (Fed. Cir. 2013)) (emphasis added). Patent Owner's arguments are directed to making a zeolite catalyst that exhibits improved hydrothermal stability. Claims 1–8 and 30, however, do not include a limitation regarding hydrothermal stability. We, therefore, agree with Petitioner that "[o]ne of ordinary skill in the art's expectations regarding the hydrothermal stability of Zones' and Maeshima's catalysts is irrelevant." Reply 23.

Claims 1–8 and 30 require that the catalyst is "effective to promote the reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$

19

IPR2015-01121
Patent 7,601,662

selectively." According to Patent Owner, "[i]t is undisputed that it was known that zeolites *can* be metal ion-exchanged at a ratio between 60-100%, and that metal-exchanged zeolites are catalytically active." PO Resp. 32. In view of this, Maeshima's teaching that a CHA zeolite is a suitable catalyst for the $NH_3$ SCR of NOx, coupled with its teaching that the catalyst can include an active metal such as copper, ion-exchanged at a ratio of about 60 to about 100%, provides a reasonable expectation of successfully combining Maeshima with Zones' high SAR chabazite catalyst (itself described as being capable of catalyzing the reduction of oxides of nitrogen) to arrive at a zeolite that is catalytically active for the $NH_3$ SCR of NOx.

Accordingly, we find that Petitioner has established by a preponderance of evidence that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Zones and Maeshima to arrive at the claimed invention.

### 2. *Claims 12–24 and 32–50*

Claims 12–24 and 32–38 depend from claim 2, and recite additional limitations such as the catalyst being deposited on a honeycomb substrate (claim 12), the honeycomb substrate comprising a wall flow filter substrate (claim 13) or a flow through substrate (claim 14), coating a portion of the flow through or wall flow substrate with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream (claims 16 and 17), placing the catalyst downstream from a diesel engine and an injector that adds a reductant to an exhaust gas stream (claims 21–24), and including a catalyzed soot filter (claim 32). Ex. 1001, 23:48–24:23, 24:49–65; Reexam. Cert. 2:12–13. Claims 39–50 depend from claim 3 and contain limitations similar to those in claims 12–24. Reexam. Cert. 2:14–59.

20

IPR2015-01121
Patent 7,601,662

Petitioner provides detailed explanations and the declaration of Dr. Lercher to show how the references disclose or suggest each limitation of claims 12–24 and 32–50.  Pet. 23–45.  In its Response, Patent Owner does not challenge Petitioner's arguments and evidence demonstrating that the prior art discloses or suggests all limitations of these claims.  Thus, the record contains the same, and now undisputed and uncontested, arguments and evidence regarding whether the prior art discloses or suggests the limitations of the challenged claims as it did at the time of our Decision on Institution.

Based upon our review of the totality of the record after trial, we agree with Petitioner's arguments and evidence presented in the Petition regarding whether Zones, Maeshima, and Patchett disclose or suggest the limitations of claims 12–24 and 32–50.  *See* Pet. 23–45.  Thus, we determine that the preponderance of the evidence supports a finding that Petitioner has demonstrated that all limitations of the challenged claims are disclosed or suggested by Zones, Maeshima, and Patchett.

In view of this, in our analysis below, we focus on the remaining issues disputed by the parties, namely (i) whether Petitioner has shown why one of ordinary skill in the art would have been motivated to combine the teachings of Zones, Maeshima, and Patchett to arrive at the claimed invention  (PO Resp. 4–5, 33–35; Pet. 30–31) and (ii) whether Petitioner has shown that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Zones, Maeshima, and Patchett (PO Resp. 4–5, 35–37; Pet. 31–32).

21

IPR2015-01121
Patent 7,601,662

> i.    *Motivation to Combine Zones, Maeshima, and Patchett*

Petitioner argues that a person of ordinary skill in the art "would have been motivated to use the high silica, copper promoted zeolites with the CHA crystal structure set forth in Zones and Maeshima as part of Patchett's SCR system to arrive, with a reasonable expectation of success, at the claimed subject matter." Pet. 30. Petitioner notes that Patchett teaches the use of a copper-exchanged zeolite to reduce nitrogen oxides in diesel engine exhaust. *Id.* Petitioner states that Patchett does not specifically reference a CHA zeolite or the claimed SAR and Cu/Al ratios, but does "identify the characteristics of the zeolite that should be employed." *Id.* According to Petitioner, these characteristics include the ability of a catalyst to be used in connection with an internal combustion engine, copper present in an amount of 1–5 % by weight, and a SAR greater than 10. *Id.* at 30–31. Dr. Lercher states that Patchett also teaches the use of zeolites that are resistant to sulfur poisoning and sustain a high level of activity when exposed to high temperatures and hydrothermal conditions. Ex. 1008, ¶ 246 (citing Ex. 1005, ¶ 66).

Petitioner asserts that Zones and Maeshima disclose catalytic material having Patchett's desired characteristics, namely an SAR greater than 10 and approximately 2–10% copper by weight, which can be used in an internal combustion engine. Ex. 1008 ¶ 251. Dr. Lercher states that "due to their increased levels of silica, the zeolites of Zones and Maeshima will provide improved stability when the catalytic materials are exposed to elevated thermal and hydrothermal conditions." *Id.* Therefore, Petitioner contends that "one of ordinary skill in the art would be directed to the catalytic

22

IPR2015-01121
Patent 7,601,662

material of Zones and Maeshima when attempting to implement Patchett's process." Pet. 31.

Petitioner also argues that a person of ordinary skill in the art would have been motivated to combine Zones, Maeshima, and Patchett because these references are "in the same technical field (catalysts and catalytic processes) and are directed to solving the same problem (catalyzing the reduction of nitrogen oxides in gas streams)." *Id.* (citing Ex. 1008 ¶ 252). Petitioner contends that the specific limitations included in claims 12–24 and 32–50, such as coated flow through and wall flow substrates, are "only obvious design choices . . . routinely included as part of a system to treat engine exhaust." *Id.* at 32 (citing Ex. 1008 ¶ 255).

Patent Owner argues that Petitioner ignores the fact that paragraph 66 of Patchett explains that suitable zeolites have a pore size of at least 7 Angstroms. PO Resp. 34 (citing Ex. 1005 ¶ 66). Patent Owner further argues that Byrne and Speronello,[7] incorporated by reference in Patchett and characterized as describing "[s]uitable SCR catalyst compositions" that may be used in Patchett's system, promote the use of zeolites having large pore sizes. *Id.* (citing Ex. 1010, Abstract; Ex. 1011, 6:28–59). Additionally, Patent Owner reiterates its argument that Byrne teaches away from the use of copper-exchanged naturally occurring chabazite for the $NH_3$ SCR of NOx. *Id.* at 33. Patent Owner asserts that Petitioner has not provided an explanation (other than hindsight) for why a person of ordinary skill in the art would disregard the teachings of Patchett, Byrne, and Speronello, and use Zones' CHA zeolite having a small pore size. *Id.* at 34–35.

---

[7] Speronello, U.S. Patent No. 5,516,497, issued May 14, 1996 (Ex. 1011).

23

IPR2015-01121
Patent 7,601,662

As Petitioner points out, however, Zones discloses the use of a high SAR, copper-loaded CHA zeolite in a process for "the reduction of the oxides of nitrogen contained in a gas stream," wherein, in a preferred embodiment, "the gas stream is the exhaust stream of an internal combustion engine." Ex. 1004, 1:54–67; Pet. 32. As discussed above, evidence in the record supports Petitioner's contention that an increased level of silica (i.e., high SAR) in the chabazite zeolites of Zones and Maeshima results in improved resistance to sulfur poisoning and increased hydrothermal stability. Ex. 1008, ¶ 251; Ex. 1003, 4:60–63, 47:44–53; Ex. 1010, 1:28–33, 5:39–44. For example, Breck discloses silicon substituted CHA zeolites which, "because they are more highly siliceous than their precursors[,] they are not only more thermally and hydrothermally stable than those prior known materials but also have increased resistance toward acidic agents such as mineral and organic acids, $SO_2$, $SO_3$, $NO_x$ and the like." Ex. 1003, 4:60–63, 47:44–53.

We credit Dr. Lercher's testimony that zeolites suitable for use in Patchett's system (1) incorporate an active metal such as copper, (2) have an SAR above 10, (3) are resistant to sulfur poisoning, and (4) retain catalytic activity when subject to high temperatures and hydrothermal conditions. Ex. 1008 ¶ 246–249. We also credit Dr. Lercher's explanation that a person of ordinary skill in the art would consider the zeolites of Zones and Maeshima for use in Patchett's system because they can be used to treat the exhaust of an internal combustion engine and possess the aforementioned properties of a catalyst suitable for use in Patchett's system. Ex. 1008 ¶¶ 250–251.

As to Patent Owner's arguments regarding pore size, Patchett explains that

24

IPR2015-01121
Patent 7,601,662

> [i]t has been found that zeolites which are highly resistant to
> sulfate poisoning and provide good activity for both the SCR
> process and the oxidation of ammonia with oxygen, and which
> retain good activity even when subject to high temperatures,
> hydrothermal conditions and sulfate poisons, are zeolites which
> have pores which exhibit a pore diameter of at least about 7
> Angstroms and are interconnected in three dimensions.

Ex. 1005 ¶ 66. Although clearly recognizing a correlation between larger pore size and the desired properties of a zeolite catalyst, we do not consider this language in Patchett to require the use of zeolites having a pore size of at least 7 Angstroms. This is consistent with the fact that Speronello, incorporated by reference in Patchett, discloses the use of "medium to large pore zeolites having pore openings of at least about 4 Angstroms in diameter." Ex. 1011, 6:28–30; PO Resp. 23; Ex. 1005, ¶ 65.

We next address Patent Owner's argument that "Byrne teaches away from using copper-exchanged naturally occurring chabazite for the $NH_3$ SCR of NOx." PO Resp. 33. Byrne discloses that "naturally occurring chabazite" showed a reduction in SCR process activity upon exposure to a gas stream containing varying amounts of $SO_2$, and, therefore, promotes the use of a large pore size zeolite framework. Ex. 1010, 4:57–5:26; Ex 2018 ¶ 133. Byrne, however, also teaches that "the utilization of high ratios of silica to alumina is known to enhance acid resistance of the zeolite and to provide enhanced resistance of the zeolite to acid sulfur poisoning." Ex. 1010, 5:39–43. We are thus not persuaded that a person of ordinary skill in the art, upon reading Byrne, "would be led in a direction divergent from the path that was taken by the applicant," namely the use of *high SAR* CHA zeolites to treat engine exhaust. *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1332 (Fed. Cir. 2008). To the contrary, we credit Dr.

25

IPR2015-01121
Patent 7,601,662

Lercher's testimony, that one of ordinary skill in the art would consider Zones' zeolites to be suitable for use in Patchett's system due to their high SAR. Ex. 1008, ¶ 251; Reply 24.

Thus, despite Zones' catalysts having a smaller pore size than those promoted in Patchett, Byrne, and Speronello, we are persuaded by Petitioner's evidence and arguments demonstrating that a person of ordinary skill in the art would be motivated to combine Zones, Maeshima, and Patchett based on the desired properties of suitable catalysts for use in Patchett, and the corresponding properties being shown in the Zones and Maeshima zeolites. *KSR*, 550 U.S. at 421 ("A person of ordinary skill is also a person of ordinary creativity, not an automaton.").

For all of the foregoing reasons, based upon consideration of the evidence in this record, we determine that Petitioner has demonstrated, by a preponderance of the evidence, that a person of ordinary skill in the art would have had a reason to combine Zones, Maeshima, and Patchett to arrive at the claimed subject matter.

ii.    *Reasonable Expectation of Success in Combining Zones, Maeshima, and Patchett*

Petitioner argues that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Zones, Maeshima, and Patchett because Zones states that its catalysts can be used in an internal combustion engine, which "would indicate to one of ordinary skill in the art that the zeolites of Zones and Maeshima have applicability in and could be successfully used with Patchett." Pet. 32; Ex. 1008 ¶ 258.

In general, Patent Owner argues that Petitioner and Dr. Lercher provide only a cursory opinion regarding an expectation of success, and ignore the reasons stated in the prior art that a CHA material would be

26

IPR2015-01121
Patent 7,601,662

unsuitable for use in Patchett's system.  PO Resp. 35–36 (citing Exhibit 1005 ¶ 66; Exhibit 1010, Abstract, 4:57–5:25; Exhibit 1011, 6:28–59; Ex. 2018 ¶ 133).  For the reasons discussed above, we find that the high SAR, copper-loaded zeolites disclosed in the combined teachings of Zones and Maeshima would be suitable for use in Patchett's system.

Patent Owner makes a separate argument with regard to claims 13, 18–20, 23, 24, 39, 44–46, 49, and 50, which require, *inter alia*, disposing the catalyst on a wall flow filter.  For these claims, Patent Owner argues that Dr. Lercher and Petitioner rely on the disclosure of paragraph 63 of Patchett. PO Resp. 36; Ex. 2018 ¶ 134.  According to Patent Owner, paragraph 63 of Patchett incorporates by reference a patent application (Ex. 1006) that sets forth specific requirements for a SCR catalyst disposed on a wall flow filter, namely that it "maintains its SCR catalytic activity even after prolonged exposure to higher temperatures that are characteristic of filter regeneration. For example, combustion of the soot fraction of the particulate matter often leads to temperatures above 700° C."  PO Resp. 36 (quoting Ex. 1006 ¶ 11); Ex. 2018 ¶ 134; Ex. 1005 ¶ 63.

Patent Owner argues Zones provides no teachings regarding hydrothermal stability for the $NH_3$ SCR of NOx and Maeshima explicitly limits the reaction temperature for its SCR catalysts to between 200 °C and 500 °C.  PO Resp. 36 (citing Ex. 2027, 47:22-48:17; Ex. 1002, 2:22–53; Ex. 2018 ¶ 135).  Thus, "one of ordinary skill in the art would not have any expectation that the zeolites disclosed in Maeshima and Zones would have the hydrothermal stability required for the wall flow filter disclosed in Patchett."  Ex. 2018 ¶ 135; PO Resp. 36.

27

IPR2015-01121
Patent 7,601,662

As discussed above, "the person of ordinary skill need only have a reasonable expectation of success of developing the *claimed invention*." *Allergan,* 726 F.3d at 1292 (emphasis added). Claims 13, 18–20, 23, 24, 39, 44–46, 49, and 50 do not contain a limitation regarding hydrothermal stability, let alone a requirement for thermal stability up to a temperature of 700 °C. Instead, these claims require the catalyst described in claim 1 of the '662 patent be disposed on a wall flow filter.

For the reasons described above, we find that Petitioner has established that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Zones and Maeshima to arrive at the zeolite that is catalytically active for the $NH_3$ SCR of NOx required in claim 1. Furthermore, Zones teaches that its high SAR, copper-loaded CHA zeolite can be used to treat exhaust from an internal combustion engine, and Patchett describes coating a wall flow substrate with a high SAR, copper-loaded zeolite catalyst as part of an emissions treatment system for reducing NOx emissions in the exhaust stream produced from an internal combustion engine. Ex. 1005 ¶¶ 1, 25; Ex. 1004, 1:54–67. These teachings in the prior art provide a reasonable expectation of success in achieving the subject matter of claims 13, 18–20, 23, 24, 39, 44–46, 49, and 50.

Additionally, as Petitioner points out, Breck indicates that high SAR chabazites demonstrate improved hydrothermal stability. Ex. 1003, 47:44–53. Moreover, in the section titled "SCR Catalyst Compositions," Patchett states that its copper-exchanged zeolites that are used as coatings "typically have an effective SCR catalyst operating temperature range from 150 to 550 °C." Ex. 1005 ¶ 69. We note that this temperature range corresponds to the operating temperature range expressly disclosed in Maeshima. This

28

IPR2015-01121
Patent 7,601,662

evidence further suggests that a person of ordinary skill in the art would have had a reasonable expectation of success even though neither Zones nor Maeshima explicitly states that its zeolites are able to be used at temperatures above 700 °C. *See* Reply 25.

Accordingly, Petitioner has demonstrated by a preponderance of the evidence that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Zones, Maeshima, and Patchett to arrive at the claimed subject matter.

### 3. *Objective Indicia of Non-obviousness*

Patent Owner argues that objective indicia of skepticism, unexpected results, and commercial success direct a finding of non-obviousness. PO Resp. 37–54.

#### a. *Commercial Success*

Patent Owner states that it sells the claimed catalyst for use in the $NH_3$ SCR of NOx in diesel engines.[8] Patent Owner contends that the global market for SCR catalysts in diesel engines has doubled in the last five years and provides evidence of "the estimated market share that has been satisfied with the claimed CuCHA catalyst." PO Resp. 45 (citing Ex. 2034 ¶¶ 6–7).

Patent Owner's evidence of the percentage of the global market satisfied by the claimed catalyst is based on sales of "BASF CuCHA catalysts" and "estimates regarding the sales by BASF licensees." Ex. 2034 ¶ 7. As Petitioner correctly notes, and Patent Owner admits, there is no evidence in the record demonstrating that the sales by BASF licensees

---

[8] Patent Owner argues that the catalyst it sells is coextensive with the claims of the '662 patent, and, therefore, the commercial success is presumed to be due to the patented invention. PO Resp. 45.

29

IPR2015-01121
Patent 7,601,662

involve products that fall within the scope of the claims. Reply 19; Tr. 88:21–22. Moreover, Patent Owner has not provided evidence demonstrating what percentage of sales can be attributed to "BASF CuCHa catalysts" as opposed to "sales by BASF licensees." Reply 19–20; Tr. 88:15–89:6. We, therefore, agree with Petitioner that "it is impossible to determine from the evidence [Patent Owner] has presented what percentage of the global SCR market is actually accounted for by claimed products." Reply 19–20. As a result, the lack of specific proof regarding sales of claimed products and market share renders Patent Owner's evidence insufficient for purposes of establishing commercial success. *See In re Applied Materials, Inc.*, 692 F.3d 1289, 1300 (Fed. Cir. 2012); *see also In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) ("The more probative evidence of commercial success relates to whether the sales represent a substantial quantity in th[e] market.").

 *b. Skepticism*

 Patent Owner cites to several documents as evidence of "[s]kepticism about the viability of copper exchanged zeolites." PO Resp. 39–41 (citing Ex. 2012; Ex. 2001; Ex. 2026; Ex. 2021).

 Petitioner argues that the documents Patent Owner cites address the commercial viability of copper exchanged zeolites based on hydrothermal stability. Reply 11–12. Petitioner notes that the challenged claims do not require a commercially viable catalyst or a catalyst that exhibits any particular degree of hydrothermal stability. *Id.* at 12.

 We have reviewed Patent Owner's evidence of skepticism and find it to be insufficient, as it fails to show the skepticism has a sufficient nexus to the claimed invention. *See Muniauction, Inc. v. Thompson Corp.*, 532 F.3d

30

IPR2015-01121
Patent 7,601,662

1318, 1327–28 (Fed. Cir. 2008) (indicating that the requirement of a nexus between the claimed invention and evidence of secondary considerations applies equally to skepticism). To the contrary, the evidence of record shows that doubts about hydrothermal stability and the resulting commercial applicability of copper-zeolite catalysts prompted the skepticism.[9] For example, the Centi paper published in 1995 states that "for practical applications their *low hydrothermal stability* may prevent a *commercial use*." Ex. 2012, 184 (emphasis added). According to the declaration of Mr. Roth, a Department of Energy grant proposal was wait-listed because "Cu-exchanged zeolites lack *hydrothermal stability* needed to be *commercially viable* for SCR of NOx with ammonia for diesel engines." Ex. 2001 ¶ 4 (emphasis added).[10] The other articles Patent Owner cites similarly refer to the lack of a "commercial breakthrough" and limited hydrothermal stability. PO. Resp. 40–41 (citing Ex. 2026, 182; Ex. 2021, 218). As Petitioner points out, the claims require only a CHA zeolite that is effective for the $NH_3$ SCR of NOx.

---

[9] We find this evidence sufficient to rebut any presumption of a nexus between the claimed invention and skepticism that may exist based upon Patent Owner's argument that it is entitled to such a presumption with regard to commercial success. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1330 n. 4 (Fed. Cir. 2016).

[10] This evidence contradicts Patent Owner's argument that "[t]he skepticism was whether you could use a zeolite catalyst in a diesel engine." Tr. 76:21–23. To the contrary, the evidence of record indicates that the skepticism was based on the *hydrothermal stability* and *commercial viability* of catalysts used with diesel engines. We recognize that certain claims (e.g., 47–50) recite using the claimed catalyst downstream from a diesel engine. These claims, however, do not require a specific level of catalyst activity, hydrothermal stability, or commercial viability.

31

IPR2015-01121
Patent 7,601,662

    *c.  Unexpected Results*

Patent Owner contends that "[t]he unexpected properties of the claimed CuCHA catalyst for the SCR of NOx are demonstrated by substantial evidence."  PO Resp. 41.  As evidence of unexpected results, Patent Owner relies on the performance properties (e.g., low temperature activity, high temperature activity and degradation due to hydrothermal aging) of Examples 2, 3, and 4 presented in Table 1 of the '662 patent.  PO Resp. 41–42; Ex. 1001, 13:15–37, Table 1.

These Examples each involve a catalyst having a SAR of 30 and a Cu/Al ratio in the range of 0.33–0.44.  Ex. 1001, 11:39–12:19, Table 1; Reply 14.  Claim 1 of the '662 patent, however, encompasses SAR values from about 15 to about 150, and Cu/Al ratios from about 0.25 to about 1.  Patent Owner admits that "the examples in table 1 are not of the same scope as claim 1."  Tr. 86:23–24.  Thus, it is undisputed that Patent Owner's evidence of unexpected results is not commensurate in scope with independent claim 1.  Instead, Patent Owner argues that the Examples in table 1 "line up with the dependent claims."  *Id.* at 86:24–25.

The claims of the subject patent must be shown to be commensurate in scope with the asserted showing of unexpected results advanced by Patent Owner.  *See In re Grasselli*, 713 F.2d 731, 743 (Fed. Cir. 1983); *In re Peterson*, 315 F.3d 1325, 1330 (Fed. Cir. 2003) ("the applicant's showing of unexpected results must be commensurate in scope with the claimed range"); *In re Clemens*, 622 F.2d 1029, 1035 (CCPA 1980) ("In order to establish unexpected results for a claimed invention, objective evidence of non-obviousness must be commensurate in scope with the claims which the evidence is offered to support.").  Patent Owner, however, does not specify

32

IPR2015-01121
Patent 7,601,662

which dependent claims "line up" with Examples 2, 3, and 4 for purposes of establishing unexpected results, or provide any further information or argument.

Patent Owner also directs us to Byrne and a 2015 paper as additional evidence of unexpected results. PO Resp. 43–44. In response, Petitioner notes that, in view of at least Breck, a person of ordinary skill in the art "would not have found it unexpected that a CHA zeolite could be useful as a catalyst." Reply 17. For the reasons discussed above, we agree with Petitioner. Petitioner also correctly criticizes Patent Owner's reliance on an article from 2015 to show the claimed process yielded unexpected results. *See Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc.*, 769 F.3d 1339, 1340–41 (Fed. Cir. 2014) (per curiam) (Dyk, J., concurring) ("This case presents a question of obviousness, in particular whether evidence postdating the invention can be used to establish unexpected results. The panel holds that it cannot be considered in the circumstances of this case."). Even if we did consider it, Patent Owner has not explained sufficiently why an article debating the mechanism behind *why* CHA zeolites work for $NH_3$ SCR constitutes evidence of unexpected results regarding *how well* the CHA zeolites perform, especially considering the mechanism is not recited in the claims.

Based on the foregoing, we determine that Patent Owner has not offered sufficient evidence to establish unexpected results.

## IV. CONCLUSION

In view of the undisputed evidence that all elements of claims 1–8, 12–24, 30, and 32–50 are in the prior art, our determination that a person of ordinary skill in the art would have had reason to combine the references

33

IPR2015-01121
Patent 7,601,662

with a reasonable expectation of success, and the lack of any persuasive evidence of objective indicia of nonobviousness, we determine that the subject matter of claims 1–8, 12–24, 30, and 32–50 would have been obvious to a person of ordinary skill in the art.

## V. PETITIONER'S MOTION TO EXCLUDE EVIDENCE

Petitioner filed a Motion to Exclude (Paper 42) in which Petitioner seeks to exclude several paragraphs from the Declaration of Dr. Tsapatsis (Ex. 2018), paragraph 11 of the Declaration of Dr. Moini (Ex. 2019), and paragraph 7 of the Declaration of Olivia Schmidt (Ex. 2034). Paper 42, 1.

We do not reach the merits of Petitioner's Motion to Exclude because, as explained above, even if the disputed evidence is considered, Petitioner has shown by a preponderance of evidence that claims 1–8, 12–24, 30, and 32–50 are unpatentable as obvious. Accordingly, Petitioner's Motion to Exclude is dismissed as moot.

## VI. MOTION TO SEAL

Patent Owner filed an unopposed Combined Motion to Seal and Motion for Protective Order. Paper 23. In its motion, Patent Owner seeks entry of a proposed Protective Order that "is consistent with the Default Protective Order of this Board with certain edits applicable to this case." Paper 23, 5. Patent Owner moves to seal portions of Exhibits 2019 and 2034, and asserts that these exhibits contain non-public technical and business information that is confidential to Patent Owner. Paper 23, 2. Petitioner filed a Motion to Seal Exhibit 1020, which contains deposition testimony relating to the confidential information in Exhibit 2034. Paper 38, 1. Patent Owner filed redacted versions of Exhibits 2019 and 2034, and Petitioner filed a redacted version of Exhibit 1020.

34

IPR2015-01121
Patent 7,601,662

Upon review, good cause exists to enter the proposed Protective Order and seal the above information as set forth in the above motions.

## VII. ORDER

For the reasons given, it is hereby

ORDERED that claims 1–8, 12–24, 30, and 32–50 of U.S. Patent No. 7,601,662 are *unpatentable*;

FURTHER ORDERED that Petitioner's Motion to Exclude Evidence (Paper 42) is *dismissed as moot*;

FURTHER ORDERED that Patent Owner's Motion to Seal and Motion for Protective Order (Paper 23) is *granted*;

FURTHER ORDERED that Petitioner's Motion to Seal (Paper 38) is *granted*; and

FURTHER ORDERED that, because this is a final decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

IPR2015-01121
Patent 7,601,662

PETITIONER:

Elizabeth Gardner
Richard L. DeLucia
Orrick, Herrington & Sutcliffe LLP
rdelucia@kenyon.com
E1APTABDocket@orrick.com

PATENT OWNER:

Brian E. Ferguson
Anish Desai
Weil Gotshal & Manges LLP
Brian.ferguson@weil.com
anish.desai@weil.com

36

Trials@uspto.gov                                                 Paper 51
571-272-7822                                    Entered: October 31, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

UMICORE AG & CO. KG,
Petitioner,

v.

BASF CORPORATION,
Patent Owner.

_____

Case IPR2015-01123
Patent 8,404,203 B2

_____

Before CHRISTOPHER L. CRUMBLEY, JO-ANNE M. KOKOSKI, and
JEFFREY W. ABRAHAM, *Administrative Patent Judges.*

KOKOSKI, *Administrative Patent Judge.*

FINAL WRITTEN DECISION
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

IPR2015-01123
Patent 8,404,203 B2

## I. INTRODUCTION

Umicore AG & Co. KG ("Petitioner") filed a Petition ("Pet.") to institute an *inter partes* review of claims 1–31 of U.S. Patent No. 8,404,203 B2 ("the '203 patent," Ex. 1001). Paper 1. On November 2, 2015, we instituted an *inter partes* review of claims 1–31 on two grounds of unpatentability. (Paper 8, "Dec. on Inst."). BASF Corporation ("Patent Owner") filed a Patent Owner Response (Paper 24, "PO Resp."). Petitioner filed a Reply (Paper 34, "Reply").

Petitioner supports its Petition with Declarations by Johannes A. Lercher, Ph.D. ("the Lercher Declaration," Ex. 1008) and Dr. Frank-Walter Schütze ("the Schütze Declaration," Ex. 1015). Patent Owner relies on Declarations by Dr. Michael Tsapatsis ("the Tsapatsis Declaration," Ex. 2018), Dr. Ahmad Moini ("the Moini Declaration," Ex. 2019), and Olivia Schmidt ("the Schmidt Declaration," Ex. 2034).

Petitioner filed a Motion to Exclude (Paper 40) certain paragraphs of the Tsapatsis Declaration, the Moini Declaration, and the Schmidt Declaration. Patent Owner filed an Opposition (Paper 44), and Petitioner filed a Reply (Paper 45).

An oral hearing was held on July 28, 2016. A transcript of the hearing is included in the record (Paper 50, "Tr.").

We have jurisdiction under 35 U.S.C. § 6. This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73. For the reasons that follow, we determine that Petitioner has shown by a preponderance of the evidence that claims 1–31 of the '203 patent are unpatentable.

2

IPR2015-01123
Patent 8,404,203 B2

A.    *The '203 Patent*

The '203 patent, titled "Processes for Reducing Nitrogen Oxides
Using Copper CHA Zeolite Catalysts," is directed to methods of
manufacturing copper CHA[1] zeolite catalysts and their use in exhaust gas
treatment systems. Ex. 1001, 1:19–22. The Specification describes
embodiments where the "catalyst compris[es] a zeolite having the CHA
crystal structure and a mole ratio of silica to alumina greater than about 15
and an atomic ratio of copper to aluminum exceeding about 0.25." *Id.* at
2:13–16. The catalyst can be "deposited on a honeycomb substrate," which
can comprise a wall flow substrate or a flow through substrate. *Id.* at 2:41–
45. The '203 patent also describes embodiments where "at least a portion of
the flow through substrate is coated with CuCHA adapted to reduce oxides
of nitrogen contained in a gas stream flowing through the substrate," and
those where "at least a portion of the flow through substrate is coated with Pt
and CuCHA adapted to oxidize ammonia in the exhaust gas stream." *Id.* at
2:45–51; *see also id.* at 2:53–58 (describing embodiments where at least a
portion of the wall flow substrate "is coated with CuCHA adapted to reduce
oxides of nitrogen contained in a gas stream flowing through the substrate,"
and those where "at least a portion of the wall flow substrate is coated with
Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.").

The '203 patent further describes "a process for the reduction of
oxides of nitrogen contained in a gas stream in the presence of oxygen
wherein said process comprises contacting the gas stream with the catalyst

---

[1] The parties agree that CHA crystal structure is defined by the International
Zeolite Association, and that zeolites having the CHA crystal structure are
also known as "chabazite." Pet. 8; PO Resp. 11.

3

IPR2015-01123
Patent 8,404,203 B2

described above." *Id.* at 3:8–11. Figure 10A of the '203 patent is
reproduced below:



FIG. 10A

Figure 10A is a schematic depiction of an embodiment of the emissions
treatment system described in the '203 patent. *Id.* at 4:11–13. Engine 19
emits an exhaust stream containing gaseous pollutants and particulate
matter, which is conveyed to a position downstream from engine 19 "where
a reductant, i.e., ammonia or an ammonia-precursor, is added to the exhaust
stream." *Id.* at 21:61–66. Aqueous urea, for example, is an ammonia
precursor that enters mixing station 24 on line 25 along with air from line
26. *Id.* at 22:1–3. Valve 23 is used to meter precise amounts of aqueous
urea to be added to the exhaust stream; the aqueous urea is converted to
ammonia in the exhaust stream. *Id.* at 22:3–5. The exhaust stream
containing ammonia is then conveyed to "catalyst substrate 12 (also referred
to herein including the claims as 'the first substrate') containing CuCHA in
accordance with one or more embodiments." *Id.* at 22:6–9. "On passing
through the first substrate 12, the NOx component of the exhaust stream is
converted through the selective catalytic reduction of NOx with $NH_3$ to $N_2$
and $H_2O$." *Id.* at 22:9–12.

The '203 patent also describes an embodiment that "contains a second
substrate 27 interposed between the $NH_3$ injector and the first substrate 12."

4

IPR2015-01123
Patent 8,404,203 B2

*Id.* at 22:18–21, Fig. 10B. The second substrate is coated with a catalyst composition that can be the same as, or different from, that coated on the first substrate. *Id.* at 22:21–24. In another embodiment, an oxidation catalyst is included "upstream of the site of ammonia/ammonia precursor injection." *Id.* at 22:49–51, Fig. 10C. The "oxidation catalyst is disposed on a catalyst substrate 34," and the system can also include first substrate 12 and second substrate 27. *Id.* at 22:51–54. In this embodiment, the exhaust stream is conveyed first through catalyst substrate 34, "where at least some of the gaseous hydrocarbons, CO and particulate matter are combusted to innocuous components." *Id.* at 22:54–57. According to the '203 patent, "the first substrate 12 could be a catalyzed soot filter" with the CuCHA catalyst disposed thereon, and "the second substrate 27 comprising" a CuCHA catalyst "may be located upstream from catalyst substrate 34." *Id.* at 22:62–67.

Claims 1 and 26 are independent claims. Claims 2–25 depend, directly or indirectly, from claim 1, which is reproduced below:

> 1.    A process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen wherein said process comprises contacting the gas stream with a catalyst comprising a zeolite having the CHA crystal structure and a mole ratio of silica to alumina from about 15 to about 100 and an atomic ratio of copper to aluminum from about 0.25 to about 0.50.

Ex. 1001, 23:9–15.

Claims 27–31 depend, directly or indirectly, from claim 26, which is reproduced below:

> 26.    A process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen wherein said process comprises adding a reductant to the gas stream and contacting the gas stream containing the reductant with a catalyst

5

IPR2015-01123
Patent 8,404,203 B2

> comprising a zeolite having the CHA crystal structure and a mole
> ratio of silica to alumina from about 15 to about 150 and an
> atomic ratio of copper to aluminum from about 0.25 to about 1.

*Id.* at 24:29–36.

B.    *The Prior Art*

The pending grounds of unpatentability in this *inter partes* review are

based on the following prior art:

| Reference | Publication | Date | Exhibit No. |
|-----------|-------------|------|-------------|
| Maeshima | US 4,046,888 | Sept. 6, 1977 | 1002 |
| Zones | US 6,709,644 B2 | Mar. 23, 2004 | 1004 |
| Patchett | U.S. App. 2006/0039843 A1 | Feb. 23, 2006 | 1005 |

C.    *Pending Grounds of Unpatentability*

This *inter partes* review involves the following grounds of

unpatentability:

| References | Basis | Claims Challenged |
|------------|-------|-------------------|
| Zones and Maeshima | § 103(a) | 1, 14, 15, 17–22, 26, 27 |
| Zones, Maeshima, and Patchett | § 103(a) | 2–13, 16, 23–25, 28–31 |

Dec. on Inst. 17–18.

## II.   ANALYSIS

A.    *Claim Interpretation*

We interpret claims of an unexpired patent using the "broadest

reasonable construction in light of the specification of the patent in which

[the claims] appear[]."  37 C.F.R. § 42.100(b); *see also Cuozzo Speed*

*Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144–46 (2016) ("We conclude that

6

IPR2015-01123
Patent 8,404,203 B2

[37 C.F.R. § 42.100(b)] represents a reasonable exercise of the rulemaking authority that Congress delegated to the Patent Office."). The Board, however, may not "construe claims during IPR so broadly that its constructions are *unreasonable* under general claim construction principles . . . . '[T]he protocol of giving claims their broadest reasonable interpretation . . . does not include giving claims a legally incorrect interpretation.'" *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1298 (Fed. Cir. 2015) (citation omitted). "Rather, 'claims should always be read in light of the specification and teachings in the underlying patent'" and "[e]ven under the broadest reasonable interpretation, the Board's construction 'cannot be divorced from the specification and the record evidence.'" *Id.* (citations omitted). Only those terms in controversy need to be construed, and only to the extent necessary to resolve the controversy. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

In the Decision on Institution, we determined that the terms in the challenged claims did not need to be construed expressly, and we see no reason to modify that determination in light of the record developed at trial.

B.    *Level of Ordinary Skill in the Art*

The parties agree that a person having ordinary skill in the art would have "at least a Master's degree in chemistry or a related discipline, and have knowledge of the structure and chemistry of molecular sieves like zeolites, including factors that impact their stability and activity." Pet. 12 (citing Ex. 1008 ¶ 69); Ex. 2018 ¶¶ 21–22. This level of skill is consistent with the subject matter before us, the '203 patent, and the prior art of record. Accordingly, we adopt the level of ordinary skill in the art as described by Petitioner and Dr. Lercher, and agreed to by Dr. Tsapatsis, as further

7

IPR2015-01123
Patent 8,404,203 B2

explained by the references themselves. *See Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001) (the level of ordinary skill in the art is usually evidenced by the references themselves).

C.    *Obviousness over Zones and Maeshima*

Petitioner contends that the subject matter of claims 1, 14, 15, 17–22, 26, and 27 would have been obvious under 35 U.S.C. § 103(a) over the combination of Zones and Maeshima. Pet. 9–20. Petitioner provides claim charts and relies on the Lercher and Schütze Declarations in support of its contentions. *Id.*

To prevail on its patentability challenge, Petitioner must establish facts supporting its challenge by a preponderance of the evidence. 35 U.S.C. § 316(e); 37 C.F.R. § 42.1(d). A claim is unpatentable under 35 U.S.C. § 103 if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art to which the subject matter pertains. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007). A party that petitions the Board for a determination of obviousness must show that "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007)).

1.    *Overview of Zones*

Zones is directed to crystalline zeolites that have the CHA structure and a mole ratio of silicon oxide to aluminum oxide greater than 10.

8

IPR2015-01123
Patent 8,404,203 B2

Ex. 1004, 1:7–10. Zones states that the zeolites "can also be made with a mole ratio of silicon oxide to aluminum oxide of at least 30," *id.* at 4:7–9, and describes zeolites that are prepared from a reaction mixture having a ratio of silicon oxide to aluminum oxide of 20–50. *Id.* at 2:24–34.

Zones also describes "an improved process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen" using the described zeolites. *Id.* at 1:54–61. According to Zones, "[t]he zeolite may contain a metal or metal ions (such as cobalt, copper or mixtures thereof) capable of catalyzing the reduction of the oxides of nitrogen, and may be conducted in the presence of a stoichiometric excess of oxygen." *Id.* at 1:61–65. Zones states that, "[i]n a preferred embodiment, the gas stream is the exhaust stream of an internal combustion engine." *Id.* at 1:65–67.

    *2.    Overview of Maeshima*

Maeshima is directed to using catalytic reduction to reduce the concentration of nitrogen oxide in a gaseous mixture. Ex. 1002, 1:6–10. According to Maeshima, "nitrogen oxides are removed from a gas containing the nitrogen oxides and oxygen by contacting the resulting gaseous mixture with a catalyst in the presence of ammonia to reduce the nitrogen oxides selectively." *Id.* at 2:4–8. The gaseous mixture can be exhaust gases from stationary sources, such as flue gases from combustion furnaces in power plants. *Id.* at 2:9–12.

Maeshima describes a process where the catalyst "is contacted with ammonia in an amount excessive over the stoichiometric amount necessary for reduction of nitrogen oxides in an exhaust gas to thereby activate the catalyst" before reducing the amount of ammonia to "a minimum amount necessary for reduction of the nitrogen oxides to thereby effect the catalytic

9

IPR2015-01123
Patent 8,404,203 B2

reduction." *Id.* at 2:15–21. The catalyst can be a crystalline aluminosilicate having a ratio of silicon oxide to aluminum oxide above 2, and can be a chabazite zeolite. *Id.* at 3:67–4:11. The zeolite catalyst also can have an active metal ion, such as copper, incorporated therein, and although "[t]he ion exchange ratio is not particularly critical . . . it is generally preferred that the ion exchange ratio be about 60 to about 100%." *Id.* at 4:44–52.

    3.    *Analysis*

In the Petition, Petitioner challenges the patentability of claims 1, 14, 15, 17–22, 26, and 27 of the '203 patent as obvious under 35 U.S.C. § 103(a) over the combined teachings of Zones and Maeshima. Pet. 9–20. After considering the arguments and evidence presented in the Petition and the Preliminary Response, we instituted trial against claims 1, 14, 15, 17–22, 26, and 27, determining that Petitioner was likely to prevail in showing that the subject matter of the challenged claims would have been obvious over the combined teachings of Zones and Maeshima. Dec. on Inst. 8–13, 17.

Patent Owner, in its Patent Owner Response, does not challenge Petitioner's arguments and evidence that Zones and Maeshima disclose or suggest all of the elements of the challenged claims. On the contrary, Patent Owner acknowledges that at least some of the limitations[2] in the claims were known in the prior art, stating, for example, that "[t]here was certainly nothing new in 2004 about a zeolite having the CHA structure and a SAR up to 50," and "[i]t was already well known that CHA zeolites *can* contain a metal or metal ions." PO Resp. 18; *see also id.* at 22 ("[I]t was known decades earlier, in 1985, that a high SAR CHA zeolite can be metal

---

[2] As the parties do in their papers, we refer to the "mole ratio of silica to alumina" recited in claims 1 and 26 as "SAR" throughout this Decision.

10

IPR2015-01123
Patent 8,404,203 B2

exchanged."), 30 ("It is undisputed that it was known that zeolites *can* be metal ion-exchanged at a ratio between 60–100%, and that metal-exchanged zeolites are catalytically active."), 36 ("it is undisputed that a high SAR CHA zeolite and the ion-exchange of copper in zeolite catalysts were well known in the art since at least 1985"). Thus, with respect to whether Zones and Maeshima disclose or suggest all of the elements of the challenged claims, we are left to consider only the evidence of record as presented in the Petition. *See* Pet. 9–20.

Based on the complete record, we find that Petitioner has presented sufficient evidence showing that Zones and Maeshima disclose or suggest all of the limitations of the challenged claims. For example, claim 1 recites that the zeolite having the CHA crystal structure has a mole ratio of silica to alumina of about 15 to about 100, and is used in a process for the reduction of nitrogen oxides in a gas stream. As Petitioner alleges, Zones describes "an aluminosilicate zeolite, such as SSZ–62 which has the chabazite crystal structure" and also describes "reaction mixtures of zeolite catalysts that have a SAR value greater than 10, ranging from 20–50, and more preferably ranging from 25–40." Pet. 9. Also, Maeshima teaches crystalline aluminosilicate zeolite catalysts, including chabazites, for use in the catalytic reduction of nitrogen oxides in the presence of ammonia. *Id.* at 10. We also have reviewed Petitioner's arguments and evidence for claims 14, 15, 17–22, 26, and 27 (*id.* at 11–20), and find that Petitioner has met its burden of establishing that Zones and Maeshima disclose or suggest all of the limitations of those claims as well. Accordingly, we determine that the preponderance of the evidence supports a finding that Petitioner has

11

IPR2015-01123
Patent 8,404,203 B2

demonstrated that all of the limitations of claims 1, 14, 15, 17–22, 26, and 27 are disclosed or suggested by Zones and Maeshima.

The parties focus their arguments on three main issues: (a) whether Petitioner has shown why a person having ordinary skill in the art would have had reason to combine the teachings of Zones and Maeshima (Pet. 12–15; PO Resp. 2–3, 24–30; Reply 21–22); (b) whether Petitioner has shown that a person having ordinary skill in the art would have a reasonable expectation of success in combining Zones and Maeshima (Pet. 12–15; PO Resp. 3–4, 44–52; Reply 22–23); and (c) whether the objective indicia of skepticism, unexpected results, and commercial success support a finding of non-obviousness (PO Resp. 35–44; Reply 10–20). We address arguments (a) and (b) in turn below, and address the parties' arguments regarding objective indicia of non-obviousness in Section II.E, *infra*.

> a.     *Reason to Combine Zones and Maeshima*

Petitioner contends that a person having ordinary skill in the art "would have been motivated to utilize copper exchanged zeolites in processes for SCR [selective catalytic reduction] in the presence of ammonia using Zones' higher SAR chabazite zeolites to arrive, with a reasonable expectation of success, at the subject matter of the claims." Pet. 12–13. Petitioner contends that "Zones discloses all the other required claim limitations" except "zeolites with Cu/Al ratios within the claimed ranges," and states that

> [o]ne of ordinary skill in the art would also understand that it would be beneficial to follow Maeshima's instruction to use a 60% to 100% ion-exchange rate when adding copper to Zone[s'] zeolite. It was well known that larger amounts of copper ions, including that achieved by copper loading up to the 100% ion-

12

IPR2015-01123
Patent 8,404,203 B2

> exchange rate, enhance the effectiveness of a zeolite when
> catalyzing the reduction of nitrogen oxides.

*Id.* at 13 (citing Ex. 1008 ¶¶ 147–148). According to Petitioner, "[b]y
directing one of ordinary skill to include copper in its zeolites to render them
able to reduce NOx in diesel exhaust, Zones sufficiently motivates those of
skill to look to prior art references like Maeshima that discuss appropriate
levels of copper loading to apply to an SCR catalyst." Reply 22.

Patent Owner argues that a person having ordinary skill in the art
would not have been motivated to combine Zones and Maeshima "because
neither reference provides any suggestion that doing so would improve the
zeolite for the SCR of NOx." PO Resp. 24. Patent Owner argues that "there
is nothing in Zones that suggests to one of ordinary skill in the art that the
CHA framework or the high SAR of SSZ-62 will improve the activity or
stability of a zeolite for the SCR of NOx." *Id.* at 25. Patent Owner further
argues that, "[a]s further contrast to the silence in Zones regarding the
properties of a CHA zeolite for the $NH_3$ SCR of NOx," Byrne[3] "teaches that
small pore zeolites, including a CHA zeolite, should not be used for the $NH_3$
SCR of NOx because of susceptibility to sulfate poisoning." *Id.* (citing
Ex. 1010, 4:57–5:26; Ex. 2018 ¶¶ 75, 105).

Patent Owner also argues that Maeshima "does not include any
teachings about the properties of a CuCHA with regard to the SCR of NOx,"
and that it "points to a low SAR (2–6), large pore size (6–13 Angstroms)
zeolite, such as zeolite Y, and *only* provides examples of that type of metal-
exchanged zeolite for the $NH_3$ SCR of NOx." *Id.* at 26 (citing Ex. 1002,
4:36–43, 8:11–10:2). Patent Owner argues that neither Zones nor Maeshima

---

[3] Byrne, U.S. Patent No. 4,961,917, issued Oct. 9, 1990 (Ex. 1010).

13

IPR2015-01123
Patent 8,404,203 B2

"suggests that the CHA structure, high SAR, or ion-exchange ratio will improve the activity or stability of the zeolite for the $NH_3$ SCR of NOx." *Id.* at 27 (citing Ex. 2018 ¶¶ 110–11). Thus, according to Patent Owner,

> there is no explanation, other than hindsight, for why a person of ordinary skill in the art would have selected the small pore size CHA structure and high SAR from Zones, disregarded the teachings for a low SAR and large pore size in Maeshima, and applied the ion-exchange ratio disclosed in Maeshima.

*Id.*

The Supreme Court requires an expansive and flexible approach in determining whether a patented invention would have been obvious at the time it was made. *See KSR*, 550 U.S. at 415 (2007). The existence of a reason for a person having ordinary skill in the art to modify a prior art reference is a question of fact. *See In re Constr. Equip. Co.*, 665 F.3d 1254, 1255 (Fed. Cir. 2011). In an obviousness analysis, some kind of reason must be shown as to why a person having ordinary skill in the art would have thought of combining or modifying the prior art to achieve the patented invention. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 (Fed. Cir. 2008). A reason to combine or modify the prior art may be found explicitly or implicitly in market forces, design incentives, the "'interrelated teachings of multiple patents'; 'any need or problem known in the field of endeavor at the time of invention and addressed by the patent'; and the background knowledge, creativity, and common sense of the person of ordinary skill." *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed Cir. 2009) (quoting *KSR*, 550 U.S. at 418–21).

Based on our review of the complete record, we find that a person having ordinary skill in the art would have looked to use the copper ion exchange ratios in Maeshima in the CHA zeolites of Zones in a process for

14

IPR2015-01123
Patent 8,404,203 B2

the reduction of nitrogen oxides in a gas stream in the presence of oxygen. Zones describes "an improved process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen" with a zeolite, where the zeolite is "a zeolite having the CHA crystal structure" and a SAR "greater than about 10," which "may contain a metal or metal ions" such as copper. Ex. 1004, 1:54–62. Zones also states that the zeolite is "capable of catalyzing the reduction of oxides of nitrogen," and describes a preferred embodiment where "the gas stream is the exhaust stream of an internal combustion engine." *Id.* at 1:63–67.

Similarly, Maeshima describes removing nitrogen oxides from a gas "by contacting the resulting gaseous mixture with a catalyst in the presence of ammonia to reduce the nitrogen oxides, selectively." Ex. 1002, 2:4–8. Maeshima teaches that the catalyst can be "a product obtained by exchanging an alkali metal ion in a crystalline alumino-silicate with at least one metal cation having an activity for reducing nitrogen oxides," and that the crystalline alumino-silicate can be a natural zeolite such as chabazite. *Id.* at 3:35–38, 4:3–11. Maeshima further teaches preparing a zeolite catalyst having an active metal incorporated therein "by contacting a crystalline aluminosilicate with an aqueous or organic solution of an active metal compound," and that "it is generally preferred that the ion exchange ratio be about 60% to about 100%." *Id.* at 4:44–50. Copper is one example of an active metal that can be incorporated in the zeolite catalyst. *Id.* at 4:51–52.

In light of these disclosures in Zones and Maeshima, we are persuaded by Dr. Lercher's testimony that

> it was well known in the prior art that copper should be beneficially incorporated into a catalyst in an amount approaching a 100% ion-exchange rate. It was also well known

15

IPR2015-01123
Patent 8,404,203 B2

> that up to a point, increased amounts of copper, including that
> achieved by utilizing a 100% ion-exchange ratio or rate, enhance
> the effectiveness of a zeolite when catalyzing the reduction of
> nitrogen oxides. This is stated in Maeshima, which explains that
> when incorporating copper into a zeolite, "it is generally
> preferred that the ion exchange ratio be about 60% to about
> 100%." Use of these known ion exchange ratios with Zones'
> zeolite produces a catalyst with the claimed CHA crystal
> structure, SAR, and Cu/Al ratio that can be used as part of a
> process to selectively reduce nitrogen oxides in a gas stream that
> contains oxygen.

Ex. 1008 ¶ 147 (internal citation omitted). Dr. Lercher's testimony is
consistent with the disclosures in the prior art references. It is also
consistent with Dr. Tsapatsis's testimony that it was well-known that metals,
such as copper, can be introduced into zeolites and make a zeolite active for
the SCR of NOx (Ex. 1019, 113:25–114:14; Ex. 2018 ¶ 94), and that a
person having ordinary skill in the art would have known that a 60% to
100% ion-exchange ratio could be used to incorporate copper into a zeolite
(Ex. 1019, 114:23–115:19). Consequently, we find that the prior art
references themselves, as well as the knowledge of a person of ordinary skill
in the art, provide adequate reasons to combine Zones and Maeshima.[4]

We are not persuaded by Patent Owner's argument that a person
having ordinary skill in the art would not be motivated to combine the high
SAR and CHA framework of Zones with the ion exchange ratio of

---

[4] We are not persuaded by Patent Owner's argument that Petitioner does not
explain "what a person of ordinary skill in the art would be attempting to
achieve in combining Zones and Maeshima." PO Resp. 28. Patent Owner
cites to no legal authority establishing that this particular question, separate
and apart from the question of whether Petitioner has established a reason to
combine the prior art references, is part of an obviousness inquiry under 35
U.S.C. § 103.

16

IPR2015-01123
Patent 8,404,203 B2

Maeshima because "neither reference provides any suggestion that doing so would improve the zeolite for the SCR of NOx." PO Resp. 24. As Petitioner notes, "[t]he '203 patent's claims are directed to a 'process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen' using a catalyst with the CHA structure, a SAR in the range of 15–150 (or 100), and a Cu/Al ratio in the range of 0.25–1 (or 0.5)," and "no further functional or performance properties are required." Reply 3. Moreover, even if the problem the inventors of the '203 patent were trying to solve was improving zeolites for the SCR of NOx, "[t]he skilled artisan need not be motivated to combine [the prior art] for the same reason contemplated by the [inventors]." *In re Kahn*, 441 F.3d 977, 990 (Fed. Cir. 2006); *see also KSR*, 550 U.S. at 420 (stating that it is error to look "only to the problem the patentee was trying to solve").

Patent Owner's argument that Maeshima points a person having ordinary skill in the art to low SAR (2–6), large pore size (6–13 Angstroms) zeolites, and not to the small pore size, high SAR zeolites described in Zones, is similarly unavailing. PO Resp. 26 (citing Ex. 1002, 4:36–43, 8:11–10:2). In making this argument, Patent Owner ignores the complete disclosure of Maeshima, which teaches the use of chabazites for the SCR of NOx using zeolites with a SAR values greater than 2. Ex. 1002, 3:68–4:11 (crystalline aluminosilicates, such as chabazite, "having pore diameters in the range of about 3–15 A and $SiO_2/Al_2O_3$ molar ratios of above about 2 are preferred"); *see also Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1166 (Fed. Cir. 2006) (explaining that in an obviousness analysis, "the prior art must be considered *as a whole* for what it teaches"); *Merck & Co. v. Biocraft Labs. Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989) ("[I]n a section 103

17

IPR2015-01123
Patent 8,404,203 B2

inquiry, 'the fact that a specific [embodiment] is taught to be preferred is not controlling, since all disclosures of the prior art, including unpreferred embodiments, must be considered.'" (quoting *In re Lamberti*, 545 F.2d 747, 750 (CCPA 1976))). Thus, contrary to Patent Owner's argument, the combined teachings of Zones and Maeshima disclose using a high SAR chabazite for ammonia SCR.

With respect to Patent Owner's contention that Byrne teaches "that small pore size zeolites, such as a CHA zeolite, *should not* be used for the $NH_3$ SCR of NOx because of the susceptibility to sulfate poisoning" (PO Resp. 16), we note that Byrne also states that "the utilization of high ratios of silica to alumina is known to enhance acid resistance of the zeolite and to provide enhanced resistance of the zeolite to acid sulfur poisoning" (Ex. 1010, 5:39–44). *See also id.* at 5:48–50 ("A conversion efficiency of 77% was attained by a fresh copper promoted ZSM-5 zeolite having a silica to alumina ratio of 46."). We further note that Breck,[5] also a prior art reference, discloses silicon substituted zeolites (including chabazites) that "have increased resistance toward acidic agents such as mineral and organic acids, $SO_2$, $SO_3$, $NO_x$ and the like" by being "more highly siliceous than their precursors." Ex. 1003, 47:44–53; *see also id.* at 4:50–63 (identifying chabazite in a list of "[e]specially preferred zeolite species" that are "used as starting materials in the present process").[6] In any event, "[a] known or

---

[5] Breck, U.S. Patent No. 4,503,023, issued March 5, 1985 (Ex. 1003).
[6] Patent Owner argues that "[y]ou cannot translate what was taught in Breck to catalytic activity, because that's not what is said in Breck." Tr. 69:24–25. Breck, however, states that "[t]he novel zeolite compositions of the present invention are useful in all adsorption, ion-exchange and *catalytic processes* in which their less siliceous precursors have heretofore been suitably employed." Ex. 1003, 47:44–47 (emphasis added).

18

IPR2015-01123
Patent 8,404,203 B2

obvious composition does not become patentable simply because it has been described as somewhat inferior to some other product for the same use." *In re Gurley*, 27 F.3d 551, 554 (Fed. Cir. 1994). This reasoning applies to Patent Owner's arguments regarding additional publications allegedly describing the limited usefulness of metal-exchanged zeolites for the $NH_3$ SCR of NOx. *See* PO Resp. 16–18.

Accordingly, after considering Petitioner's and Patent Owner's positions, as well as the evidence of record, we determine that Petitioner has shown, by a preponderance of the evidence, that a person having ordinary skill in the art would have had a reason to combine the teachings of Zones and Maeshima to arrive at the claimed subject matter.

> b.    *Reasonable Expectation of Success*

Petitioner contends that a person having ordinary skill in the art would "have every reason to believe that use of the copper content of Maeshima in the zeolites of Zones in an SCR process in the presence of ammonia for treating combustion exhaust gases would succeed." Pet. 13 (citing Ex. 1008 ¶ 149). Petitioner notes that, "as acknowledged in the '203 patent's Background section '[m]etal-promoted zeolite catalysts, including, among others, iron-promoted and copper-promoted zeolite catalysts, for the selective catalytic reduction of nitrogen oxides with ammonia are known.'" *Id.* (quoting Ex. 1001, 1:34–37). Petitioner also points to Maeshima's teachings that metal cations having activity for reducing nitrogen oxides "should be incorporated into the zeolite by ion exchange" in the amount of 60% to 100%. *Id.* at 13–14. Additionally, according to Petitioner, because Zones and Maeshima are "in the same technical field (zeolite catalysts and

19

IPR2015-01123
Patent 8,404,203 B2

the use of these catalysts) and are directed to solving the same problem (catalyzing the reduction of nitrogen oxides)," the combination

> amounts to nothing more that the application of one particular known modification to catalytic zeolites with a known benefit—increasing the copper content of aluminosilicate chabazite zeolites to improve catalytic activity as taught by Maeshima—to the very materials to which this modification is meant to be applied—Zones high SAR copper-promoted aluminosilicate zeolites for use in SCR processes. Thus, application of Maeshima to Zones would be considered nothing more than a routine optimization and an obvious design choice.

*Id.* at 14 (citing Ex. 1008 ¶¶ 152–154).

Patent Owner argues that "there is simply no reasonable expectation" that combining the teachings of Zones and Maeshima would "enhance the effectiveness of a zeolite catalyst by improving the hydrothermal stability in comparison to known zeolites." PO Resp. 4. Patent Owner argues that Zones does not teach hydrothermal stability (*id.* at 29), and that Maeshima "does not teach that increasing the copper content or using a CuCHA will solve the problem of hydrothermal stability for the $NH_3$ SCR of NOx" (*id.* at 30). Therefore, according to Patent Owner, a person having ordinary skill in the art would not have a reasonable expectation of success in combining the teachings of Zones and Maeshima "to make a zeolite catalyst that is active for $NH_3$ SCR of NOx *and* exhibits improved hydrothermal stability as compared to other known zeolites." *Id.* at 29.

We do not consider Patent Owner's argument to be persuasive, because, as Petitioner notes (Reply 3–5), enhanced hydrothermal stability is not an element of the claims. *See Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1292 (Fed. Cir. 2013) ("the person of ordinary skill need only have a reasonable expectation of success of developing the claimed invention").

20

IPR2015-01123
Patent 8,404,203 B2

Patent Owner does not argue that a person having ordinary skill in the art would have been unable to incorporate the copper content of Maeshima in the zeolites of Zones for use in a process for the reduction of nitrogen oxides contained in a gas stream, nor is there any evidence that a person having ordinary skill in the art would have expected such incorporation to be unsuccessful. *See KSR*, 550 U.S. at 421 ("A person of ordinary skill in the art is also a person of ordinary creativity, not an automaton.").

Moreover, Patent Owner's argument that there would not be a reasonable expectation of success in combining Zones and Maeshima because the references do not teach enhancing hydrothermal stability conflates the reason for the current invention with the expectation a person of ordinary skill would have in successfully making the combination of the teachings of the references. Neither the patentee's particular motivation, nor its avowed purpose, controls the obviousness inquiry. *Id.* at 419.

After considering Petitioner's and Patent Owner's positions, as well as the evidence of record, we determine that Petitioner has shown, by a preponderance of the evidence, that a person having ordinary skill in the art would have had a reasonable expectation of success in combing the teachings of Zones and Maeshima to arrive at the claimed subject matter.

D.    *Obviousness over Zones, Maeshima, and Patchett*

Petitioner contends that the subject matter of claims 2–13, 16, 23–25, and 28–31 would have been obvious under 35 U.S.C. § 103(a) over the combination of Zones, Maeshima, and Patchett. Pet. 20–38. Petitioner relies on the Lercher and Schütze Declarations in support of its contentions. *Id.*

21

IPR2015-01123
Patent 8,404,203 B2

   *1.    Overview of Patchett*

   Patchett is directed to an emissions treatment system and method for reducing nitrogen oxides in an exhaust stream produced by an internal combustion engine. Ex. 1005 ¶ 1. According to Patchett, "Selective Catalytic Reduction (SCR) using ammonia ($NH_3$) or an $NH_3$ precursor" is "[a] proven NOx abatement technology applied to stationary sources with lean exhaust conditions." *Id.* ¶ 3. Patchett also states that "SCR is under development for mobile applications, with urea (typically present in an aqueous solution) as the source of ammonia." *Id.*

   The Patchett treatment system includes "an injector for periodically metering ammonia or an ammonia precursor into an exhaust stream" and "a first substrate with a first SCR catalyst composition" positioned downstream from the injector. *Id.* ¶ 18. The first substrate has an inlet end and an outlet end, with the first SCR catalyst composition being "disposed on the wall elements from the inlet end toward the outlet end to a length that is less than the substrate's axial length to form an inlet zone." *Id.* The first SCR catalyst composition can be a copper-exchanged zeolite. *Id.* ¶ 21. An ammonia destruction catalyst composition, preferably containing a platinum component, is disposed on the wall elements of the first substrate from the outlet end toward the inlet end, forming an outlet zone. *Id.* ¶¶ 19–20. Patchett states that the first substrate can be a honeycomb flow-through substrate or a honeycomb wall flow substrate. *Id.* ¶ 23.

   Patchett also teaches that the described treatment system can have "a second substrate interposed and in fluid communication with the injector and the first substrate." *Id.* ¶ 25. The second substrate can be "selected from the group consisting of a honeycomb flow-through substrate, an open-cell foam

22

IPR2015-01123
Patent 8,404,203 B2

substrate and a honeycomb wall flow substrate," but preferably "is a honeycomb flow-through substrate with a second SCR catalyst composition." *Id.* The first and second SCR catalyst compositions may be the same or different, but are the same in a preferred embodiment. *Id.* Patchett also describes an embodiment with an oxidation catalyst, disposed on a catalyst substrate, located upstream of the site of the ammonia/ammonia precursor injection. *Id.* ¶ 64. In this embodiment, the exhaust stream first contacts the oxidation catalyst substrate "where at least some of the gaseous hydrocarbons, CO and particulate matter are combusted to innocuous components" before the exhaust stream is conveyed to the ammonia/ammonia precursor injection site and the first and second catalyst substrates. *Id.*

>    2.    *Analysis*

Patent Owner, in its Patent Owner Response, does not challenge Petitioner's arguments and evidence that the combined teachings of Zones, Maeshima, and Patchett disclose or suggest all of the elements of the challenged claims. Thus, with respect to whether Zones, Maeshima, and Patchett disclose or suggest all of the elements of the challenged claims, we are left to consider only the evidence of record as presented in the Petition. *See* Pet. 20–38.

Based on the complete record, we find that Petitioner has presented sufficient evidence showing that the combined teachings of Zones, Maeshima, and Patchett disclose or suggest all of the limitations of the challenged claims. For example, claim 2, which depends from claim 1, further requires that the gas stream be from an internal combustion engine, and that the catalyst is disposed on a honeycomb flow through filter. As

23

IPR2015-01123
Patent 8,404,203 B2

Petitioner alleges, Patchett "explains that its system is specifically designed to treat diesel engine exhaust" and teaches the use of a honeycomb flow through substrate "coated with an SCR catalyst." Pet. 23. We also have reviewed Petitioner's arguments and evidence for claims 3–13, 16, 23–25, and 28–31 (*id.* at 23–38), and find that Petitioner has met its burden of establishing that the combined teachings of Zones, Maeshima, and Patchett disclose or suggest all of the limitations of those claims as well. Accordingly, we determine that the preponderance of the evidence supports a finding that Petitioner has demonstrated that all of the limitations of claims 2–13, 16, 23–25, and 28–31 are disclosed or suggested by the combination of Zones, Maeshima, and Patchett.

The parties focus their arguments on three main issues: (a) whether Petitioner has shown why a person having ordinary skill in the art would have had reason to combine the teachings of Zones, Maeshima, and Patchett (Pet. 26–28; PO Resp. 31–33); (b) whether Petitioner has shown that a person having ordinary skill in the art would have a reasonable expectation of success in combining Zones, Maeshima, and Patchett (Pet. 28–29; PO Resp. 4–6, 33–34; Reply 24–25); and (c) whether the objective indicia of skepticism, unexpected results, and commercial success support a finding of non-obviousness (PO Resp. 35–44; Reply 10–20). We address arguments (a) and (b) in turn below, and address the parties' arguments regarding objective indicia of non-obviousness in Section II.E, *infra*.

a.    *Reason to Combine Zones, Maeshima, and Patchett*

Petitioner contends that a person having ordinary skill in the art "would have been motivated to use the high silica, copper promoted zeolites with the CHA crystal structure set forth in Zones and Maeshima as part of

24

**Appx60**

IPR2015-01123
Patent 8,404,203 B2

Patchett's SCR system to arrive, with a reasonable expectation of success, at the claimed subject matter." Pet. 26. Petitioner contends that Patchett describes catalytic material "suitable use in connection with an internal combustion engine," in which "[c]opper is preferably present in an amount of 'about 1 to about 5 percent by weight'," and have a SAR greater than 10, and that "Zones and Maeshima describe this very type of catalytic material." *Id.* at 27 (quoting Ex. 1005 ¶ 65). Therefore, according to Petitioner, a person having ordinary skill in the art "would be directed to the catalytic material of Zones and Maeshima when attempting to implement Patchett's process, rendering the combination of these reference particularly obvious and straightforward." *Id.* Petitioner also contends that "Zones, Maeshima, and Patchett are also in the same technical field (catalysts and catalytic processes) and are directed to solving the same problem (catalyzing the reduction of nitrogen oxides in gas streams)," which "would further motivate the combination." *Id.* at 28.

Patent Owner argues that Patchett incorporates Byrne by reference with respect to suitable SCR catalyst compositions, and "Byrne teaches away from using copper-exchanged naturally occurring chabazite for the $NH_3$ SCR of NOx." PO Resp. 31 (citing Ex. 1010, 4:57–5:26). Patent Owner argues that Patchett, Byrne, Speronello[7] (incorporated by reference into Patchett), and Maeshima "all expressly promote the use [of] a large pore size zeolite framework." *Id.* at 32. According to Patent Owner,

> [t]here is no explanation, other than hindsight, for why a person of ordinary skill in the art would disregard the teachings of these four patent publications—all of which pertain directly to the $NH_3$ SCR of NOx *and* undermine the use of small pore size zeolites

---

[7] Speronello, U.S. Patent No. 5,516,497, issued May 14, 1996 (Ex. 1011).

25

IPR2015-01123
Patent 8,404,203 B2

such as CHA zeolite—and instead adopt the zeolite disclosed in
Zones, which does not provide any teachings that would counter
what is disclosed in [Patchett], Byrne, Speronello, and
Maeshima.

*Id.* at 32–33.

Based on our review of the complete record, we find that a person
having ordinary skill in the art would have looked to use the copper ion
exchange ratios in Maeshima in the CHA zeolites in Zones, and use the
resulting zeolite in the Patchett process. As Petitioner notes (Pet. 27), Zones
teaches the use of a high SAR, copper-loaded CHA zeolite in a process for
"the reduction of the oxides of nitrogen contained in a gas stream," where, in
a preferred embodiment, "the gas stream is the exhaust stream of an internal
combustion engine." Ex. 1004, 1:54–67. Evidence in the record also
supports Petitioner's contention that an increased level of silica (i.e., high
SAR) in the chabazite zeolites of Zones and Maeshima results in improved
resistance to sulfur poisoning and increased hydrothermal stability.
Ex. 1008, ¶ 237; Ex. 1003, 4:60–63, 47:44–53; Ex. 1010, 1:28–33, 5:39–44.
For example, Breck discloses silicon substituted zeolites (including
chabazites) that "have increased resistance toward acidic agents such as
mineral and organic acids, $SO_2$, $SO_3$, $NO_x$ and the like" by being "more
highly siliceous than their precursors." Ex. 1003, 47:44–53; *see also id.* at
4:50–63 (identifying chabazite in a list of "[e]specially preferred zeolite
species" that are "used as starting materials in the present process").

In light of the disclosures in the prior art, we credit Dr. Lercher's
testimony that zeolites suitable for use in Patchett's system (1) incorporate
an active metal such as copper, (2) have a SAR above 10, (3) are resistant to
sulfur poisoning, and (4) retain catalytic activity when subject to high

26

IPR2015-01123
Patent 8,404,203 B2

temperatures and hydrothermal conditions. Ex. 1008 ¶¶ 232–234. We also credit Dr. Lercher's explanation that a person of ordinary skill in the art would consider the zeolites of Zones and Maeshima for use in Patchett's system because they can be used to treat the exhaust of an internal combustion engine and possess the aforementioned properties of a catalyst suitable for use in Patchett's system. Ex. 1008 ¶ 237.

With respect to Patent Owner's argument that Patchett "promotes the use [of] a large pore size zeolite framework" (PO Resp. 32), we note that Patchett explains:

> It has been found that zeolites which are highly resistant to sulfate poisoning and provide good activity for both the SCR process and the oxidation of ammonia with oxygen, and which retain good activity even when subject to high temperatures, hydrothermal conditions and sulfate poisons, are zeolites which have pores which exhibit a pore diameter of at least about 7 Angstroms and are interconnected in three dimensions.

Ex. 1005 ¶ 66. While Patchett recognizes a correlation between larger pore size and the recited properties of the zeolite catalyst, we do not understand Patchett to require the use of zeolites having a pore size of at least 7 Angstroms. In particular, Speronello, which Patchett incorporates by reference as describing "[s]uitable SCR catalyst compositions that may be used to coat the inlet zone of the first substrate and/or the second substrate" (Ex. 1005 ¶ 65), teaches the use of "medium to large pore zeolites having pore openings of at least about 4 Angstroms in diameter." Ex. 1011, 6:28–30. According to Dr. Tsapatsis, CHA zeolites have "a small pore size of approximately 3.8 Angstroms (0.38 nm)." Ex. 2018 ¶ 59; *see* PO Resp. 3 n. 3.

27

IPR2015-01123
Patent 8,404,203 B2

We are similarly unpersuaded by Patent Owner's argument that Byrne "teaches away from using copper-exchanged naturally occurring chabazite for the $NH_3$ SCR of NOx." PO Resp. 31. As an initial matter, demonstrating there are differences between the prior art references is insufficient, by itself, to conclude the references teach away from Petitioner's proposed combination. *See In re Beattie*, 974 F.2d 1309, 1312–13 (Fed. Cir. 1992). "Under the proper legal standard, a reference will teach away when it suggests that the developments flowing from its disclosure are unlikely to produce the objective of the [patented] invention." *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1380 (Fed. Cir. 2005). A prior art reference must be considered for everything it teaches by way of technology and is not limited to the particular invention it is describing and attempting to protect. *See EWP Corp. v. Reliance Universal Inc.*, 755 F.2d 898, 907 (Fed. Cir. 1985).

In addition to disclosing that "naturally occurring chabazite" shows a reduction in SCR process activity when exposed to a gas stream containing varying amounts of $SO_2$, thereby promoting the use of a large pore size zeolite framework (Ex. 1010, 4:57–5:26), Byrne also states that "the utilization of high ratios of silica to alumina is known to enhance acid resistance of the zeolite and to provide enhanced resistance of the zeolite to acid sulfur poisoning" (*id.* at 5:39–44). Reading Byrne for everything it teaches, we are not persuaded that Byrne "suggests that the developments flowing from its disclosure are unlikely to produce the objective of the [patented] invention," which, in this case, is the use of high SAR CHA zeolites to treat a gas stream. *Syntex*, 407 F.3d at 1380; *see also In re Gurley*, 27 F.3d at 553 ("A reference may be said to teach away when a

28

IPR2015-01123
Patent 8,404,203 B2

person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant."). As set forth above, we credit Dr. Lercher's testimony that a person having ordinary skill in the art would consider the zeolites of Zones and Maeshima suitable for use in Patchett's system. Ex. 1008 ¶ 237.

Accordingly, after considering Petitioner's and Patent Owner's positions, as well as the evidence of record, we determine that Petitioner has shown, by a preponderance of the evidence, that a person having ordinary skill in the art would have had a reason to combine the teachings of Zones, Maeshima, and Patchett to arrive at the claimed subject matter.

### b.    *Reasonable Expectation of Success*

Petitioner contends that a person having ordinary skill in the art would have a reasonable expectation of success in combining the teachings of Zones, Maeshima, and Patchett because they "generally relate to catalytic materials than can be used as part of an SCR process," and "Zones explains that its catalyst can be used in an internal combustion engine." Pet. 28–29. According to Petitioner, "[t]his would indicate to one of ordinary skill in the art that the zeolites of Zones and Maeshima have applicability in and would be successfully used with Patchett." *Id.* at 29.

Patent Owner reiterates its argument that the prior art demonstrates "that a CHA material would be unsuitable for use" in Patchett's system. PO Resp. 33–34. As set forth above, this argument is unpersuasive because the totality of the evidence demonstrates that the Zones and Maeshima zeolites would be suitable for use in Patchett's system. *See supra* Section II.D.2.a.

29

IPR2015-01123
Patent 8,404,203 B2

With respect to claims 5–7, 24, and 30,[8] "which require disposing the claimed CuCHA catalyst on a wall flow filter," Patent Owner points out that a prior art patent application (Ex. 1006) that is incorporated by reference into Patchett requires that the catalyst maintain catalytic activity after sustained exposure to the higher temperatures of filter regeneration, which can be above 700° C. PO Resp. 34 (quoting Ex. 1006 ¶ 11). Patent Owner argues that "Petitioner does not explain why a person of ordinary skill in the art would have a reasonable expectation of success combining Zones and Maeshima to meet this requirement." *Id.* According to Patent Owner, Zones not teach hydrothermal stability for the $NH_3$ SCR of NOx, and Maeshima "limits the reaction temperature for its SCR catalysts to between 200° C and 500° C." *Id.*

We do not consider Patent Owner's argument to be persuasive because, as Petitioner notes (Reply 3–5), enhanced hydrothermal stability and reaction temperature are not elements of the claims. *See Allergan*, 726 F.3d at 1292. In addition to the SAR and Cu/Al ratios recited in claims 1 and 26 from which the instant claims depend, the claims only require that the catalyst be disposed on a honeycomb wall flow substrate (claims 5–7), or a honeycomb wall flow filter substrate (claims 24 and 30). Patent Owner does not argue that a person having ordinary skill in the art would have been unable to incorporate the copper content of Maeshima in the zeolites of

---

[8] In making this argument, Patent Owner identifies claims 13, 18–20, 23, 24, 39, 44–46, 49, and 50 as the claims that require disposing the claimed CuCHA catalyst on a wall flow filter. PO Resp. 34. As these claims include claims that are either not at issue or do not exist in the '203 patent, we determine this to be typographical error and instead apply the argument to claims in the '203 patent that recite the wall flow filter element.

30

IPR2015-01123
Patent 8,404,203 B2

Zones, and then dispose the resulting zeolite on a honeycomb wall flow substrate or a honeycomb wall flow filter substrate, nor is there any evidence that a person having ordinary skill in the art would have expected such incorporation to be unsuccessful. *See KSR*, 550 U.S. at 421 ("A person of ordinary skill in the art is also a person of ordinary creativity, not an automaton.").

Moreover, Patent Owner's argument that there would not be a reasonable expectation of success in combining Zones, Maeshima, and Patchett because the references do not teach enhancing hydrothermal stability conflates the reason for the current invention with the expectation a person of ordinary skill would have in successfully making the combination of the teachings of the references. Neither the patentee's particular motivation nor its avowed purpose controls the obviousness inquiry. *Id.* at 419.

Nevertheless, as Petitioner points out (Reply 24–25), Breck indicates that high SAR chabazites demonstrate improved hydrothermal stability. Ex. 1003, 47:44–53. Further, in the section titled "SCR Catalyst Compositions," Patchett states that its copper-exchanged zeolites that are used as coatings "typically have an effective SCR catalyst operating temperature range from 150 to 550° C." Ex. 1005 ¶ 69. We note that this temperature range corresponds to the operating temperature range taught in Maeshima. *See* Ex. 1002, 2:48–53. This evidence further suggests that a person of ordinary skill in the art would have had a reasonable expectation of success even though neither Zones nor Maeshima explicitly states that its zeolites are able to be used at temperatures above 700° C. *See* Reply 25.

31

IPR2015-01123
Patent 8,404,203 B2

After considering Petitioner's and Patent Owner's positions, as well as the evidence of record, we determine that Petitioner has shown, by a preponderance of the evidence, that a person having ordinary skill in the art would have had a reasonable expectation of success in combing the teachings of Zones, Maeshima, and Patchett to arrive at the claimed subject matter.

### E.    *Secondary Considerations of Nonobviousness*

As part of our obviousness analysis, we consider the evidence and arguments submitted by Patent Owner regarding secondary considerations of non-obviousness. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966) (secondary considerations include commercial success, long-felt but unsolved needs, failure of others, and unexpected results). Here, Patent Owner raises arguments relating to skepticism, unexpected results, and commercial success. PO Resp. 35–44.

### *1.    Skepticism*

Patent Owner cites to several documents as evidence of "[s]kepticism about the viability of copper-exchanged zeolites." PO Resp. 37–39 (citing Ex. 2012; Ex. 2001; Ex. 2026; Ex. 2021). Petitioner argues that the documents Patent Owner cites address the commercial viability of copper exchanged zeolites based on hydrothermal stability, "[b]ut, none of the claims require a commercially viable catalyst, or a catalyst that exhibits any particular degree of hydrothermal stability." Reply 11–12.

We have reviewed Patent Owner's evidence of skepticism and find it to be insufficient, as it fails to show a sufficient nexus to the claimed invention. *See Muniauction, Inc. v. Thompson Corp.*, 532 F.3d 1318, 1327–28 (Fed. Cir. 2008) (indicating that the requirement of a nexus between the

32

**Appx68**

IPR2015-01123
Patent 8,404,203 B2

claimed invention and evidence of secondary considerations applies equally to skepticism). Instead, the evidence of record shows that doubts about hydrothermal stability and the resulting commercial viability of copper-zeolite catalysts prompted the skepticism.[9] For example, the Centi paper, published in 1995, states that "for practical applications their *low hydrothermal stability* may prevent a *commercial use*." Ex. 2012, 184 (emphasis added). Evidence also shows that Patent Owner's proposal for funding to study copper-loaded zeolites for the SCR of NOx was wait-listed by the Department of Energy because "Cu-exchanged zeolites lack the *hydrothermal stability* needed to be *commercially viable* for SCR of NOx with ammonia for diesel engines." Ex. 2001 ¶ 4 (emphasis added).

This contradicts Patent Owner's argument that "[t]he skepticism was whether you could use a zeolite catalyst in a diesel engine." Tr. 76:21–23. The evidence of record indicates that the skepticism was based on the *hydrothermal stability* and *commercial viability* of catalysts used with diesel engines. The other articles Patent Owner cites similarly refer to the lack of a "commercial breakthrough" and limited hydrothermal stability. PO. Resp. 38–39 (citing Ex. 2026, 182; Ex. 2021, 218). As Petitioner points out, "[t]he claims require only a CuCHA zeolite catalyst that can be used as part of a process for reducing nitrogen oxides." Reply 12.

Accordingly, we find that the evidence presented does not amount to a sufficient showing of skepticism attributable to the claimed invention.

---

[9] We find this evidence sufficient to rebut any presumption of a nexus between the claimed invention and skepticism that may exist based upon Patent Owner's argument that it is entitled to such a presumption with regard to commercial success. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1330 n. 4 (Fed. Cir. 2016).

33

IPR2015-01123
Patent 8,404,203 B2

### 2. Unexpected Results

Patent Owner contends that "[t]he unexpected properties of the claimed CuCHA catalyst for the SCR of NOx are demonstrated by substantial evidence." PO Resp. 39. As evidence of unexpected results, Patent Owner relies on the performance properties (e.g., low temperature activity, high temperature activity, and degradation due to hydrothermal aging) of Examples 2, 3, and 4 presented in Table 1 of the '203 patent. PO Resp. 39–40; Ex. 1001, 11:40–12:22 (Examples 2, 3, and 4), 14:19–67 (Table 1).

As Petitioner points out, these Examples each involve a catalyst having a SAR of 30, and a Cu/Al ratio in the range of 0.33–0.44. Reply 14; see Ex. 1001, 11:40–12:22, 14:19–67, Table 1. The two independent claims of the '203 patent, however, encompass SAR values from about 15 to about 100 (claim 1) or about 15 to about 150 (claim 26), and Cu/Al ratios from about 0.25 to about 0.5 (claim 1) and about 0.25 to about 1 (claim 26). Thus, Patent Owner's evidence of unexpected results is not commensurate in scope with independent claims 1 and 26.

Patent Owner's "showing of unexpected results must be commensurate in scope with" the claims of the '203 patent. See In re Peterson, 315 F.3d 1325, 1330 (Fed. Cir. 2003); see also In re Clemens, 622 F.2d 1029, 1035 (CCPA 1980) ("In order to establish unexpected results for a claimed invention, objective evidence of non-obviousness must be commensurate in scope with the claims which the evidence is offered to support."). Patent Owner, however, does not specify any claims of the '203 patent that are commensurate in scope with Examples 2, 3, and 4 for

34

IPR2015-01123
Patent 8,404,203 B2

purposes of establishing unexpected results, or provide any further information or argument.

Patent Owner also directs us to Byrne and a 2015 paper as additional evidence of unexpected results. PO Resp. 41–42. Petitioner responds, citing Breck, that it was known that higher SAR zeolites were less susceptible to sulfate poisoning, and "one of skill in the art would not have found it unexpected that a CHA zeolite could be useful as a catalyst." Reply 17. For the reasons discussed above, we agree. Petitioner also correctly criticizes Patent Owner's reliance on an article from 2015 to show the claimed process yielded unexpected results. *Id.*; *see Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc.*, 769 F.3d 1339, 1340–41 (Fed. Cir. 2014) (per curiam) (Dyk, J., concurring) ("This case presents a question of obviousness, in particular whether evidence postdating the invention can be used to establish unexpected results. The panel holds that it cannot be considered in the circumstances of this case."). Even if we were to consider the 2015 paper as evidence of unexpected results, Patent Owner has not explained sufficiently why an article debating the mechanism behind *why* CHA zeolites work for $NH_3$ SCR constitutes evidence of unexpected results regarding *how well* the CHA zeolites perform, especially considering the mechanism is not recited in the claims. Accordingly, we find that the evidence presented does not amount to a sufficient showing of unexpected results.

    3.    *Commercial Success*

Patent Owner states that it sells the claimed catalyst for use in the $NH_3$ SCR of NOx in diesel engines, and because "the product sold by Patent Owner, a CuCHA catalyst having a SAR falling within the claimed ranges, is coextensive with the claims of the [']203 patent," "the commercial success

35

IPR2015-01123
Patent 8,404,203 B2

is presumed to be due to the patented invention." PO Resp. 42–43. Patent Owner provides evidence purporting to show that the "size of the global market for SCR catalysts in diesel engines has doubled over the last five years," and that Patent Owner's claimed CuCHA catalyst has satisfied a substantial market share. *Id.* at 43 (citing Ex. 2034 ¶¶ 6–7). According to Patent Owner, "[t]he combination of the increasing market size and substantial market share of the claimed CuCHA catalyst are sufficient to demonstrate that the product has been commercially successful." *Id.* at 43–44.

Patent Owner's evidence of the percentage of the global market satisfied by the claimed catalyst is based on sales of Patent Owner's CuCHA catalysts and estimates regarding the sales by Patent Owner's licensees. Ex. 2034 ¶ 7. As Petitioner notes, and Patent Owner admits, there is no evidence in the record demonstrating that the sales by Patent Owner's licensees involve products that fall within the scope of the claims. Reply 19; Tr. 88:21–22. While Patent Owner provided evidence that Johnson Matthey Inc. is a licensee to related U.S. Patent No. 7,601,662 (Ex. 2034 ¶ 3, n. 1; Ex. 2028), Patent Owner did not provide evidence or definitively confirm that Johnson Matthey is also a licensee to the '203 patent. *See* Tr. 79:1–7 (expressing the belief that Johnson Matthey is a licensee to the '203 patent "[b]ecause they are part of the same family").

Moreover, Patent Owner has not provided evidence demonstrating what percentage of sales can be attributed to Patent Owner's CuCHA catalysts as opposed to sales by Patent Owner's licensees. Ex. 2034 ¶ 7; Reply 19; Tr. 88:15–89:6. We agree, therefore, with Petitioner that "it is impossible to determine from the evidence [Patent Owner] has presented

36

IPR2015-01123
Patent 8,404,203 B2

what percentage of the global SCR market is actually accounted for by claimed products." Reply 20. The lack of specific proof regarding sales of claimed products and market share renders Patent Owner's evidence insufficient for purposes of establishing commercial success. *See In re Applied Materials, Inc.*, 692 F.3d 1289, 1300 (Fed. Cir. 2012); *see also In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) ("The more probative evidence of commercial success relates to whether the sales represent a substantial quantity in th[e] market.").

## III. CONCLUSION

For the foregoing reasons, Petitioner has shown, by a preponderance of the evidence, that claims 1, 14, 15, 17–22, 26, and 27 of the '203 patent are unpatentable under 35 U.S.C. § 103 as obvious over the combined teachings of Zones and Maeshima, and that claims 2–13, 16, 23–25, and 28–31 of the '203 patent are unpatentable under 35 U.S.C. § 103 as obvious over the combined teachings of Zones, Maeshima, and Patchett.

## IV. PETITIONER'S MOTION TO EXCLUDE

Petitioner moves to exclude (1) paragraphs 28, 48, 54, 55, 62–71, 79, 147–150, and 168–177 of the Tsapatsis Declaration (Ex. 2018), (2) paragraph 11 of the Moini Declaration (Ex. 2019), and (3) paragraph 7 of the Schmidt Declaration (Ex. 2034). Paper 40, 1.

We do not reach the merits of Petitioner's Motion to Exclude because, as explained above, even if the disputed evidence is considered, Petitioner has shown by a preponderance of the evidence that claims 1–31 of the

37

IPR2015-01123
Patent 8,404,203 B2

'203 patent are unpatentable as obvious. Accordingly, Petitioner's Motion
to Exclude is dismissed as moot.

## V. MOTIONS TO SEAL

Patent Owner filed an unopposed Combined Motion to Seal and
Motion for Protective Order. Paper 23. In its motion, Patent Owner seeks
entry of the modified protective in Addendum A to its motion that "is
consistent with the Default Protective Order of this Board with certain edits
applicable to this case." *Id.* at 5. Patent Owner submitted a red-lined
version of the modified protective order as Addendum B to its motion,
showing the changes made to the Board's default protective order. *Id.*
Patent Owner moves to seal portions of Exhibits 2019 and 2034, and asserts
that these exhibits contain non-public technical and business information
that is confidential to Patent Owner. *Id.* at 3.

Petitioner filed a Motion to Seal Exhibit 1020, which contains
deposition testimony given by Olivia Schmidt relating to the confidential
information in Exhibit 2034. Paper 36, 1. Petitioner argues that "in the
event the Board grants [Patent Owner's] motion to seal, the Schmidt
transcript should be sealed along with the other exhibits [Patent Owner]
identifies in its motion." *Id.* Patent Owner filed redacted versions of
Exhibits 2019 and 2034, and Petitioner filed a redacted version of
Exhibit 1020.

Upon review, good cause exists to enter the proposed Protective Order
and seal the above information as set forth in the above motions.

38

IPR2015-01123
Patent 8,404,203 B2

## VI. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that claims 1–31 of the '203 patent are deemed to be *unpatentable*;

FURTHER ORDERED that Petitioner's Motion to Exclude (Paper 40) is *dismissed as moot*;

FURTHER ORDERED that Patent Owner's Combined Motion to seal and Motion for Protective Order (Paper 23) is *granted*;

FURTHER ORDERED that the proposed Protective Order (Paper 23, Addendum A) is hereby entered and shall govern the conduct of this proceeding unless otherwise modified;

FURTHER ORDERED that Petitioner's Motion to Seal (Paper 36) is *granted*;

FURTHER ORDERED that the following documents shall be sealed as "Board and Parties Only," and will be kept under seal: the unredacted copies of Exhibits 1020, 2019, and 2034; and

FURTHER ORDERED that, because this is a Final Written Decision, parties to the proceeding seeking judicial review of the Decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

39

IPR2015-01123
Patent 8,404,203 B2

PETITIONER:

Elizabeth Gardner
Richard L. DeLucia
ORRICK, HERRINGTON & SUTCLIFFE LLP
egardner@orrick.com
rdelucia@orrick.com
E1APTABDocket@orrick.com


PATENT OWNER:

Brian E. Ferguson
Anish R. Desai
WEIL, GOTSCHAL & MANGES LLP
brian.ferguson@weil.com
anish.desai@weil.com

40

Trials@uspto.gov                                                    Paper 54
571-272-7822                                          Entered: October 31, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

UMICORE AG & CO. KG,
Petitioner,

v.

BASF CORPORATION,
Patent Owner.

————————

Case IPR2015-01124
Patent 8,404,203 B2

————————

Before CHRISTOPHER L. CRUMBLEY, JO-ANNE M. KOKOSKI, and
JEFFREY W. ABRAHAM, *Administrative Patent Judges.*

KOKOSKI, *Administrative Patent Judge.*

FINAL WRITTEN DECISION
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

IPR2015-01124
Patent 8,404,203 B2

## I. INTRODUCTION

Umicore AG & Co. KG ("Petitioner") filed a Petition ("Pet.") to institute an *inter partes* review of claims 1–31 of U.S. Patent No. 8,404,203 B2 ("the '203 patent," Ex. 1101). Paper 1. On November 2, 2015, we instituted an *inter partes* review of claims 1–31 on four grounds of unpatentability. (Paper 8, "Dec. on Inst."). On November 16, 2015, BASF Corporation ("Patent Owner") filed a Request for Rehearing of our Decision to institute *inter partes* review as to claims 17, 18, 21, and 22 (Paper 11), which we granted on December 7, 2015 (Paper 14, "Dec. on Reh'g"). Patent Owner filed a Patent Owner Response (Paper 26, "PO Resp."). Petitioner filed a Reply (Paper 38, "Reply").

Petitioner supports its Petition with Declarations by Johannes A. Lercher, Ph.D. ("the Lercher Declaration," Ex. 1108) and Dr. Frank-Walter Schütze ("the Schütze Declaration," Ex. 1115). Patent Owner relies on Declarations by Dr. Michael Tsapatsis ("the Tsapatsis Declaration," Ex. 2018), Dr. Ahmad Moini ("the Moini Declaration," Ex. 2019), and Olivia Schmidt ("the Schmidt Declaration," Ex. 2034).

Petitioner filed a Motion to Exclude (Paper 44) certain paragraphs of the Tsapatsis Declaration, the Moini Declaration, and the Schmidt Declaration. Patent Owner filed an Opposition (Paper 48), and Petitioner filed a Reply (Paper 49).

An oral hearing was held on July 28, 2016. A transcript of the hearing is included in the record (Paper 53, "Tr.").

We have jurisdiction under 35 U.S.C. § 6. This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73. For the reasons that follow, we determine that Petitioner has shown by a

2

IPR2015-01124
Patent 8,404,203 B2

preponderance of the evidence that claims 1–16, 19, 20, and 23–31 are unpatentable.

A.    *The '203 Patent*

The '203 patent, titled "Processes for Reducing Nitrogen Oxides Using Copper CHA Zeolite Catalysts," is directed to methods of manufacturing copper CHA zeolite[1] catalysts and their use in exhaust gas treatment systems. Ex. 1101, 1:19–22. The Specification describes embodiments where the "catalyst compris[es] a zeolite having the CHA crystal structure and a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25." *Id.* at 2:13–16. The catalyst can be "deposited on a honeycomb substrate," which can comprise a wall flow substrate or a flow through substrate. *Id.* at 2:41–45. The '203 patent also describes embodiments where "at least a portion of the flow through substrate is coated with CuCHA adapted to reduce oxides of nitrogen contained in a gas stream flowing through the substrate," and those where "at least a portion of the flow through substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream." *Id.* at 2:45–51; *see also id.* at 2:53–58 (describing embodiments where at least a portion of the wall flow substrate "is coated with CuCHA adapted to reduce oxides of nitrogen contained in a gas stream flowing through the substrate," and those where "at least a portion of the wall flow substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.").

---

[1] The parties agree that CHA crystal structure is defined by the International Zeolite Association, and that zeolites having the CHA crystal structure are also known as "chabazite." Pet. 8; PO Resp. 12.

3

IPR2015-01124
Patent 8,404,203 B2

The '203 patent further describes "a process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen wherein said process comprises contacting the gas stream with the catalyst described above." *Id.* at 3:8–11. Figure 10A of the '203 patent is reproduced below:



FIG. 10A

Figure 10A is a schematic depiction of an embodiment of the emissions treatment system described in the '203 patent. *Id.* at 4:11–13. Engine 19 emits an exhaust stream containing gaseous pollutants and particulate matter, which is conveyed to a position downstream from engine 19 "where a reductant, i.e., ammonia or an ammonia-precursor, is added to the exhaust stream." *Id.* at 21:61–66. Aqueous urea, for example, is an ammonia precursor that enters mixing station 24 on line 25 and is mixed with air from line 26. *Id.* at 22:1–3. Valve 23 is used to meter precise amounts of aqueous urea to be added to the exhaust stream, and then the aqueous urea is converted to ammonia in the exhaust stream. *Id.* at 22:3–5. The exhaust stream containing ammonia is then conveyed to "catalyst substrate 12 (also referred to herein including the claims as 'the first substrate') containing CuCHA in accordance with one or more embodiments." *Id.* at 22:6–9. "On passing through the first substrate 12, the NOx component of the exhaust

4

IPR2015-01124
Patent 8,404,203 B2

stream is converted through the selective catalytic reduction of NOx with $NH_3$ to $N_2$ and $H_2O$." *Id.* at 22:9–12.

The '203 patent also describes an embodiment that "contains a second substrate 27 interposed between the $NH_3$ injector and the first substrate 12." *Id.* at 22:18–21, Fig. 10B. The second substrate is coated with a catalyst composition that can be the same as, or different from, that coated on the first substrate. *Id.* at 22:21–24. In another embodiment, an oxidation catalyst is included "upstream of the site of ammonia/ammonia precursor injection." *Id.* at 22:49–51, Fig. 10C. The "oxidation catalyst is disposed on a catalyst substrate 34," and the system can also include first substrate 12 and second substrate 27. *Id.* at 22:51–54. In this embodiment, the exhaust stream is conveyed first through catalyst substrate 34, "where at least some of the gaseous hydrocarbons, CO and particulate matter are combusted to innocuous components." *Id.* at 22:54–57. According to the '203 patent, "the first substrate 12 could be a catalyzed soot filter" with the CuCHA catalyst disposed thereon, and "the second substrate 27 comprising" a CuCHA catalyst "may be located upstream from catalyst substrate 34." *Id.* at 22:62–67.

Claims 1 and 26 are independent claims. Claims 2–16, 19, 20, and 23–25 depend, directly or indirectly, from claim 1, which is reproduced below:

> 1.    A process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen wherein said process comprises contacting the gas stream with a catalyst comprising a zeolite having the CHA crystal structure and a mole ratio of silica

5

IPR2015-01124
Patent 8,404,203 B2

> to alumina from about 15 to about 100 and an atomic ratio of
> copper to aluminum from about 0.25 to about 0.50.

Ex. 1101, 23:9–15.

Claims 27–31 depend, directly or indirectly, from claim 26, which is

reproduced below:

> 26.    A process for the reduction of oxides of nitrogen contained
> in a gas stream in the presence of oxygen wherein said process
> comprises adding a reductant to the gas stream and contacting
> the gas stream containing the reductant with a catalyst
> comprising a zeolite having the CHA crystal structure and a mole
> ratio of silica to alumina from about 15 to about 150 and an
> atomic ratio of copper to aluminum from about 0.25 to about 1.

*Id.* at 24:29–36.

B.    *The Prior Art*

The pending grounds of unpatentability in this *inter partes* review are

based on the following prior art:

| Reference | Description | Date | Exhibit No. |
|-----------|-------------|------|-------------|
| Maeshima | US 4,046,888 | Sept. 6, 1977 | 1102 |
| Breck | US 4,503,023 | Mar. 5, 1985 | 1103 |
| Patchett | US App. 2006/0039843 A1 | Feb. 23, 2006 | 1105 |
| Dĕdeček | *Siting of the Cu$^+$ ions in dehydrated ion exchanged synthetic and natural chabasites: a Cu$^+$ photoluminescence study,* MICROPOROUS AND MESOPOROUS MATERIALS 32: 63–74 | 1999 | 1107 |

6

IPR2015-01124
Patent 8,404,203 B2

C.    *Pending Grounds of Unpatentability*

This *inter partes* review involves the following grounds of
unpatentability:

| References | Basis | Claims Challenged |
|---|---|---|
| Maeshima and Breck | § 103(a) | 1, 14, 15, 19, 20, 26, 27 |
| Maeshima, Breck and Patchett | § 103(a) | 2–13, 16, 23–25, 28–31 |
| Dĕdeček and Breck | § 103(a) | 1, 14, 15, 19, 20, 26, 27 |
| Dĕdeček, Breck, and Patchett | § 103(a) | 2–13, 16, 23–25, 28–31 |

Dec. on Reh'g 3–4.

## II.  ANALYSIS

A.    *Claim Interpretation*

We interpret claims of an unexpired patent using the "broadest
reasonable construction in light of the specification of the patent in which
[the claims] appear[]."  37 C.F.R. § 42.100(b); *see also Cuozzo Speed
Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144–46 (2016) ("We conclude that
[37 C.F.R. § 42.100(b)] represents a reasonable exercise of the rulemaking
authority that Congress delegated to the Patent Office.").  The Board,
however, may not "construe claims during IPR so broadly that its
constructions are *unreasonable* under general claim construction principles. .
. . '[T]he protocol of giving claims their broadest reasonable interpretation .
. . does not include giving claims a legally incorrect interpretation.'"
*Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1298 (Fed. Cir. 2015)
(citation omitted).  "Rather, 'claims should always be read in light of the
specification and teachings in the underlying patent'" and "[e]ven under the
broadest reasonable interpretation, the Board's construction 'cannot be

7

IPR2015-01124
Patent 8,404,203 B2

divorced from the specification and the record evidence.'" *Id.* (citations omitted). Only those terms in controversy need to be construed, and only to the extent necessary to resolve the controversy. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

In the Decision on Institution, we determined that the terms in the challenged claims did not need to be construed expressly, and we see no reason to modify that determination in light of the record developed at trial.

B.    *Level of Ordinary Skill in the Art*

The parties agree that a person having ordinary skill in the art would have "at least a Master's degree in chemistry or a related discipline, and have knowledge of the structure and chemistry of molecular sieves like zeolites, including factors that impact their stability and activity." Pet. 14 n. 2 (citing Ex. 1108 ¶ 69); Ex. 2018 ¶¶ 21–22. This level of skill is consistent with the subject matter before us, the '203 patent, and the prior art of record. Accordingly, we adopt the level of ordinary skill in the art as described by Petitioner and Dr. Lercher, and agreed to by Dr. Tsapatsis, as further explained by the references themselves. *See Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001) (the level of ordinary skill in the art is usually evidenced by the references themselves).

C.    *Obviousness over Maeshima and Breck*

Petitioner contends that the subject matter of claims 1, 14, 15, 19, 20, 26, and 27 would have been obvious under 35 U.S.C. § 103(a) over the combination of Maeshima and Breck. Pet. 10–21. Petitioner provides claim charts and relies on the Lercher and Schütze Declarations in support of its contentions. *Id.*

8

IPR2015-01124
Patent 8,404,203 B2

To prevail on its patentability challenge, Petitioner must establish facts supporting its challenge by a preponderance of the evidence. 35 U.S.C. § 316(e); 37 C.F.R. § 42.1(d). A claim is unpatentable under 35 U.S.C. § 103 if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art to which the subject matter pertains. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007). A party that petitions the Board for a determination of obviousness must show that "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007)).

    *1.    Overview of Maeshima*

Maeshima is directed to a process of using catalytic reduction to reduce the concentration of nitrogen oxide in a gaseous mixture. Ex. 1102, 1:6–10. According to Maeshima, "nitrogen oxides are removed from a gas containing the nitrogen oxides and oxygen by contacting the resulting gaseous mixture with a catalyst in the presence of ammonia to reduce the nitrogen oxides selectively." *Id.* at 2:4–8. The gaseous mixture can be exhaust gases from stationary sources, such as flue gases from the combustion furnaces in power plants. *Id.* at 2:9–12.

Maeshima describes a process where the catalyst "is contacted with ammonia in an amount excessive over the stoichiometric amount necessary for reduction of nitrogen oxides in an exhaust gas to thereby activate the

9

IPR2015-01124
Patent 8,404,203 B2

catalyst" before reducing the amount of ammonia to "a minimum amount necessary for reduction of the nitrogen oxides to thereby effect the catalytic reduction." *Id.* at 2:15–21. The catalyst can be a crystalline aluminosilicate having a ratio of silicon oxide to aluminum oxides above 2, and can be a chabazite zeolite. *Id.* at 3:67–4:11. The zeolite catalyst also can have an active metal ion, such as copper, incorporated therein, and although "[t]he ion exchange ratio is not particularly critical . . . it is generally preferred that the ion exchange ratio be about 60 to about 100%." *Id.* at 4:44–52.

    2.    *Overview of Breck*

    Breck is directed to zeolite compositions and methods for their preparation. Ex. 1103, 1:9–11. In particular, Breck describes "a method for removing framework aluminum from zeolites having $SiO_2/Al_2O_3$ molar ratios of about 3 or greater and substituting therefor silicon from a source extraneous to the starting zeolite." *Id.* at 3:24–28. Breck teaches that synthetic analogs of chabazite are among the "[e]specially preferred zeolite species" used in the process. *Id.* at 4:60–63. Breck describes "novel zeolites denominated as LZ-218 [that] are the more siliceous forms of the prior known zeolite material chabazite" and have a $SiO_2/Al_2O_3$ mole ratio "of greater than 8, preferably in the range of 8 to 20, and the characteristic crystal structure of chabazite." *Id.* at 18:3–16. According to Breck, the described zeolites "have increased resistance toward acidic agents such as mineral and organic acids, $SO_2$, $SO_3$, $NO_x$ and the like" and "are thus highly useful as selective adsorbents for these materials from, for example, gas streams containing same in contact sulfuric acid plants." *Id.* at 47:47–56.

10

IPR2015-01124
Patent 8,404,203 B2

### 3. Analysis

Patent Owner, in its Patent Owner Response, does not challenge Petitioner's arguments and evidence that Maeshima and Breck disclose or suggest all of the elements of the challenged claims. On the contrary, Patent Owner acknowledges that at least some of the limitations[2] in the claims were known in the prior art, stating, for example, that "it is undisputed that a high SAR CHA zeolite and the ion-exchange of copper in zeolite catalysts were well known in the art since at least 1985." PO Resp. 37–38. Thus, with respect to whether Maeshima and Breck disclose or suggest all of the elements of the challenged claims, we are left to consider only the evidence of record as presented in the Petition. *See* Pet. 10–21.

Based on the complete record, we find that Petitioner has presented sufficient evidence showing that Maeshima and Breck disclose or suggest all of the limitations of the challenged claims. For example, claim 1 recites that the zeolite having the CHA crystal structure has a mole ratio of silica to alumina of about 15 to about 100, and an atomic ratio of copper to aluminum of about 0.25 to about 0.50. As Petitioner alleges, "Maeshima states that the zeolite catalysts employed in its process should have a SAR ratio greater than 2," and identifies copper as a metal having an activity for reducing nitrogen oxides that "can be incorporated into the zeolite via ion exchange." Pet. 10. Also, Breck teaches chabazite zeolites that have greater SAR ratios "than the heretofore known zeolite species," and "provides a specific example… of a chabazite catalyst with a SAR ratio 'greater than 8, preferably in the range of 8 to 20.'" *Id.* at 11 (quoting Ex. 1103, 1:9–17,

---

[2] As the parties do in their papers, we refer to the "mole ratio of silica to alumina" recited in claims 1 and 26 as "SAR" throughout this Decision.

11

IPR2015-01124
Patent 8,404,203 B2

18:3–15). We also have reviewed Petitioner's arguments and evidence for claims 14, 15, 19, 20, 26, and 27 (*id.* at 13–21), and find that Petitioner has met its burden of establishing that Maeshima and Breck disclose or suggest all of the limitations of those claims as well. Accordingly, we determine that the preponderance of the evidence supports a finding that Petitioner has demonstrated that all of the limitations of claims 1, 14, 15, 19, 20, 26, and 27 are disclosed or suggested by Maeshima and Breck.

Petitioner contends that it would have been obvious "to utilize Breck's higher silica zeolites with Maeshima's catalytic process to arrive, with a reasonable expectation of success, at the subject matter of the claims." Pet. 14. Petitioner contends that "Maeshima discloses all the other required claim limitations" except "zeolites with a SAR within the claimed ranges" and states that:

> Breck discloses that the SAR of a chabazite zeolite can be increased to within the claimed range. Further, Maeshima and Breck together provide one of ordinary skill in the art with motivation to use an increased silica zeolite in Maeshima's process. Maeshima explains that an exhaust gas stream "generally contains . . . sulfur oxides and oxygen in addition to nitrogen oxides" and it is "necessary to perform removal of nitrogen oxides while eliminating influences" of these materials. Breck's higher silica zeolites accomplish this.

*Id.* at 14–15 (internal citations omitted). Petitioner further contends that Maeshima and Breck are "in the same technical field (zeolite catalysts and the use of these catalysts) and are directed to solving the same problem (identifying materials that can be effectively used in a process for catalyzing the reduction of nitrogen oxides)," which "would further motivate [the] combination." *Id.* at 16. Petitioner also contends that a person having ordinary skill in the art would have a reasonable expectation "that use of

12

IPR2015-01124
Patent 8,404,203 B2

Breck's zeolites in Maeshima's process would succeed" because Breck
"explains that increasing the proportion of silica in its zeolites does not
detrimentally effect the ability to ion-exchange the zeolites, or the utility of
the zeolites in catalytic processes in which lower silica precursors have been
employed." *Id.*

Patent Owner argues that Petitioner "fails to explain why a person of
ordinary skill in the art would start with a CuCHA zeolite for the SCR of
NOx based on the teachings of Maeshima and Breck." PO Resp. 26.  Patent
Owner argues that Petitioner "presumes" that a person having ordinary skill
in the art "would ignore the teaching in Maeshima of using a large pore size
zeolite for the SCR of NOx, and choose to modify a CuCHA zeolite from
among the nine zeolites and four preferred metals in Maeshima, and the ten
zeolites in Breck." *Id.* (internal citations omitted).  According to Patent
Owner, neither Maeshima nor Breck "provides any motivation to use a
CuCHA zeolite for the $NH_3$ SCR of NOx." *Id.*

Patent Owner further argues that "Petitioner's argument that success
would be expected is based on the faulty premise that the de-alumination
technique in Breck" does not detrimentally effect the ability to ion-exchange
the zeolite, or the utility of the catalytic process.  PO Resp. 26–27.  Patent
Owner points to Dr. Tsapatsis's testimony to support its contention that "de-
aluminating a zeolite (*i.e.*, removing aluminum and replacing with silicon)
will detrimentally impact the ability to ion-exchange, and while the removal
of aluminum may improve stability, it comes at the cost of catalytic
activity." *Id.* at 27 (citing Ex. 2018 ¶ 122).  Patent Owner argues that
"Breck explicitly teaches that the de-alumination technique is not efficient
for the CHA framework," and that "there is no example [in Breck] of

13

IPR2015-01124
Patent 8,404,203 B2

increasing the SAR by de-alumination from a starting SAR below 8 to an ending SAR above 15." *Id.* According to Patent Owner, "combining the teachings of Maeshima and Breck would not predictably enhance a zeolite, nor has Petitioner shown that a person of ordinary skill in the art would have a reasonable expectation of success in combining these references." *Id.* at 27.

The Supreme Court requires an expansive and flexible approach in determining whether a patented invention would have been obvious at the time it was made. *See KSR*, 550 U.S. at 415 (2007). The existence of a reason for a person having ordinary skill in the art to modify a prior art reference is a question of fact. *See In re Constr. Equip. Co.*, 665 F.3d 1254, 1255 (Fed. Cir. 2011). In an obviousness analysis, some kind of reason must be shown as to why a person having ordinary skill in the art would have thought of combining or modifying the prior art to achieve the patented invention. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 (Fed. Cir. 2008). A reason to combine or modify the prior art may be found explicitly or implicitly in market forces, design incentives, the "'interrelated teachings of multiple patents'; 'any need or problem known in the field of endeavor at the time of invention and addressed by the patent'; and the background knowledge, creativity, and common sense of the person of ordinary skill." *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1328–29 (Fed Cir 2009) (quoting *KSR*, 550 U.S. at 418–21).

Based on our review of the complete record, we find that a person having ordinary skill in the art would have looked to use a high-SAR CuCHA zeolite for the $NH_3$ SCR of NOx based on the teachings in Maeshima and Breck, and would have had a reasonable expectation of

14

IPR2015-01124
Patent 8,404,203 B2

success in combining the teachings of Maeshima and Breck to arrive at the claimed subject matter. Maeshima teaches (1) that chabazites are suitable catalysts for the $NH_3$ SCR of NOx, (2) that copper is a preferred active metal component having activity to reduce nitrogen oxides, and (3) a generally preferred ion exchange ratio and catalytically effective weight percent amount of the active metal. Ex. 1102, 2:4–9, 4:6–11, 4:48–50, 6:1–4, 6:13-17. Breck describes chabazite zeolites having a SAR up to 20 that can be ion-exchanged, and "have increased resistance toward acidic agents such as mineral and organic acids, $SO_2$, $SO_3$, $NO_x$ and the like." Ex. 1103, 4:56–63, 18:3–16, 47:47–53.

In light of these disclosures in Maeshima and Breck, the evidence of record suggests that a person having ordinary skill in the art, upon reviewing Maeshima and Breck, would have been motivated to use a CuCHA catalyst for the $NH_3$ SCR of NOx. That Maeshima and Breck disclose other types of zeolites does not diminish the fact that they expressly identify chabazite as an acceptable catalyst. *See Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 964 (Fed. Cir. 2014) (the "mere disclosure of alternative preferences does not teach a person of ordinary skill away from the broad swath of compounds within the scope of the [claims at issue]"); *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1166 (Fed. Cir. 2006) (explaining that in an obviousness analysis, "the prior art must be considered *as a whole* for what it teaches"); *Merck & Co. v. Biocraft Labs. Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989) ("[I]n a section 103 inquiry, 'the fact that a specific [embodiment] is taught to be preferred is not controlling, since all disclosures of the prior art, including unpreferred embodiments, must be considered.'" (quoting *In re Lamberti*, 545 F.2d 747, 750 (CCPA 1976))).

15

IPR2015-01124
Patent 8,404,203 B2

We are not persuaded by Patent Owner's argument that "combining the teachings of Maeshima and Breck would not predictably enhance a zeolite," because the claims do not require enhancing a zeolite. PO Resp. 27; *see Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1292 (Fed. Cir. 2013) ("the person of ordinary skill need only have a reasonable expectation of success of developing the claimed invention"). Claims 1, 14, 15, 19, 20, 26, and 27 of the '203 patent only require a CHA zeolite having a SAR value and Cu/Al ratio falling within certain ranges that is used in a process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen, that, in certain claims, also includes adding a reductant to the gas stream. Moreover, obviousness does not require absolute predictability. *In re Lamberti*, 545 F.2d at 750. Only a reasonable expectation that a beneficial result will be achieved is necessary to show obviousness. *In re Longi*, 759 F.2d 887, 897 (Fed. Cir. 1985). Here, the "beneficial result," according to the claims of the '203 patent, is a process for reducing NOx contained in a gas stream using a CHA zeolite with the recited SAR and Cu/Al ratio.

Based on our review of the complete record, including Maeshima's teaching that CHA zeolites are suitable for the $NH_3$ SCR of NOx and Breck's teaching that its highly siliceous catalysts "are useful in all . . . ion-exchange and catalytic processes in which their less siliceous precursors have heretofore been suitably employed" (Ex. 1103, 47:44–47), we credit Dr. Lercher's testimony that "[i]ncreasing the SAR of the zeolite utilized by Maeshima would not detrimentally impact the usefulness of that zeolite in a process for reducing nitrogen oxides." Ex. 1108 ¶ 164; *see id.* ¶ 165.

16

IPR2015-01124
Patent 8,404,203 B2

With respect to Patent Owner's argument that Dr. Lercher "conceded at his deposition that de-aluminating *does* have a detrimental effect on the ability to ion-exchange and the activity of the zeolite" (PO Resp. 27), we note that Dr. Lercher's cited testimony, read in its entirety, reveals that he acknowledged that de-alumination "impacts" both activity and stability of the zeolite, but agreed only that "de-[al]luminating the zeolite *can* decrease the activity" (Ex. 2027, 94:23–95:25 (emphasis added)). This is consistent with testimony from Dr. Tsapatsis that "the resulting properties of a particular zeolite for a particular reaction after de-alumination are not predictable" because of "*the possible detrimental effect* on ion-exchange capacity and activity." Ex. 2018 ¶ 94 (emphasis added). Obviousness, however, "cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success." *Allergan*, 726 F.3d at 1292 (citing *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007)). Here, as Petitioner and Dr. Lercher contend, Breck provides a reasonable probability that increasing the SAR of Maeshima's CHA zeolite in view of the teachings of Breck would result in a high-SAR zeolite that is "useful in all . . . ion-exchange and catalytic processes in which their less siliceous precursors have heretofore been suitably employed," which, according to Maeshima, includes $NH_3$ SCR of NOx. *See* Pet. 16; Ex. 1108 ¶¶ 163–165.

We do not agree with Patent Owner's argument that "there is no evidence that a zeolite having a SAR of 2–6, as disclosed in Maeshima, could be de-aluminated to above 15 using the technique in Breck." PO Resp. 27–28. In making this argument, Patent Owner ignores the complete disclosure of Maeshima, which teaches the use of chabazites for

17

IPR2015-01124
Patent 8,404,203 B2

the SCR of NOx using zeolites with a SAR values greater than 2. Ex. 1102, 3:68–4:11(crystalline aluminosilicates, such as chabazite, "having pore diameters in the range of about 3–15 A and $SiO_2/Al_2O_3$ molar ratios of above about 2 are preferred"). Breck also teaches CHA zeolites having a SAR greater than 8, and preferably in the range of 8–20. Ex. 1103, 18:3–16. Furthermore, as Petitioner points out (Reply 22), Dr. Tsapatsis testified at his deposition that as of 2007, a person having ordinary skill in the art would have known how to make synthetic CHA zeolites with SARs of 30–50. Ex. 1119, 110:19–22, 111:15–112:25. Thus, contrary to Patent Owner's argument, the evidence of record demonstrates that the combined teachings of Maeshima and Breck disclose using a chabazite having a SAR of about 15 or greater, which is all the challenged claims require.

With respect to Patent Owner's argument regarding the relatively low efficiency of Breck's de-alumination method for CHA zeolites (PO Resp. 27–28), we note that Breck indicates that "with chabazite, silicon does replace the removed aluminum in the framework." Ex. 1103, 38:48–49. Thus, although it may be less efficient, the evidence of record suggests that Breck's de-alumination method does work for CHA zeolites, and Breck's preferred SAR for CHA zeolites after de-alumination is 8–20, which overlaps the claimed range.

Patent Owner also argues that Maeshima and Breck are not directed to solving the same problem, because "Maeshima is about the $NH_3$ SCR of NOx in a stationary source" and "makes no reference to the issue of hydrothermal stability," and "Breck is about a process for de-aluminating a zeolite to increase the SAR, but has no teachings regarding the $NH_3$ SCR of NOx." PO Resp. 28. Breck, however, teaches that its highly siliceous

18

IPR2015-01124
Patent 8,404,203 B2

catalysts "are useful in all . . . ion-exchange and catalytic processes in which their less siliceous precursors have heretofore been suitably employed" (Ex. 1103, 47:44–47), and, as Petitioner notes, both Maeshima and Breck "discuss many of the same types of catalytic materials" (Reply 23). We therefore agree with Petitioner that Maeshima and Breck are at least directed to the same technical field, zeolite catalysts (including chabazites) and their uses. Ex. 1102, Abstract, 1:55–63; Ex. 1103, 4:50–63, 47:44–47; Ex. 1108 ¶ 166.

Accordingly, after considering Petitioner's and Patent Owner's positions, as well as the evidence of record, we determine that Petitioner has shown, by a preponderance of the evidence, that a person having ordinary skill in the art would have had a reason to combine the teachings of Maeshima and Breck to arrive at the claimed subject matter, and would have had a reasonable expectation of success in doing so.

D.     *Obviousness over Maeshima, Breck, and Patchett*

Petitioner contends that the subject matter of claims 2–13, 16, 23–25, and 28–31 would have been obvious under 35 U.S.C. § 103(a) over the combination of Maeshima, Breck, and Patchett. Pet. 22–41. Petitioner provides claim charts, and relies on the Lercher and Schütze Declarations in support of its contentions. *Id.*

1.     *Overview of Patchett*

Patchett is directed to an emissions treatment system and method for reducing nitrogen oxides in an exhaust stream produced by an internal combustion engine. Ex. 1105 ¶ 1. According to Patchett, "Selective Catalytic Reduction (SCR) using ammonia ($NH_3$) or an $NH_3$ precursor" is "[a] proven NOx abatement technology applied to stationary sources with

19

IPR2015-01124
Patent 8,404,203 B2

lean exhaust conditions." *Id.* ¶ 3. Patchett also states that "SCR is under development for mobile applications, with urea (typically present in an aqueous solution) as the source of ammonia." *Id.*

The Patchett treatment system includes "an injector for periodically metering ammonia or an ammonia precursor into an exhaust stream" and "a first substrate with a first SCR catalyst composition" positioned downstream from the injector. *Id.* ¶ 18. The first substrate has an inlet end and an outlet end, with the first SCR catalyst composition being "disposed on the wall elements from the inlet end toward the outlet end to a length that is less than the substrate's axial length to form an inlet zone." *Id.* The first SCR catalyst composition can be a copper-exchanged zeolite. *Id.* ¶ 21. An ammonia destruction catalyst composition, preferably containing a platinum component, is disposed on the wall elements of the first substrate from the outlet end toward the inlet end, forming an outlet zone. *Id.* ¶¶ 19–20. Patchett states that first substrate can be a honeycomb flow-through substrate or a honeycomb wall flow substrate. *Id.* ¶ 23.

Patchett also teaches that the described treatment system can have "a second substrate interposed and in fluid communication with the injector and the first substrate." *Id.* ¶ 25. The second substrate can be "selected from the group consisting of a honeycomb flow-through substrate, an open-cell foam substrate and a honeycomb wall flow substrate," but preferably "is a honeycomb flow-through substrate with a second SCR catalyst composition." *Id.* The first and second SCR catalyst compositions may be the same or different, but are the same in a preferred embodiment. *Id.* Patchett also describes an embodiment with an oxidation catalyst, disposed on a catalyst substrate, located upstream of the site of the ammonia/ammonia

20

IPR2015-01124
Patent 8,404,203 B2

precursor injection. *Id.* ¶ 64. In this embodiment, the exhaust stream first contacts the oxidation catalyst substrate "where at least some of the gaseous hydrocarbons, CO and particulate matter are combusted to innocuous components" before the exhaust stream is conveyed to the ammonia/ammonia precursor injection site and on to the first and second catalyst substrates. *Id.*

> 2.    *Analysis*

Patent Owner, in its Patent Owner Response, does not challenge Petitioner's arguments and evidence that the combined teachings of Maeshima, Breck, and Patchett disclose or suggest all of the elements of the challenged claims. Thus, with respect to whether Maeshima, Breck, and Patchett disclose or suggest all of the elements of the challenged claims, we are left to consider only the evidence of record as presented in the Petition. *See* Pet. 22–41.

Based on the complete record, we find that Petitioner has presented sufficient evidence showing that the combined teachings of Maeshima, Breck, and Patchett disclose or suggest all of the limitations of the challenged claims. For example, claim 2, which depends from claim 1, further requires that the gas stream be from an internal combustion engine, and that the catalyst is disposed on a honeycomb flow through filter. As Petitioner alleges, Patchett "explains that its system is specifically designed to treat diesel engine exhaust," and teaches the use of a honeycomb flow through substrate "coated with an SCR catalyst." Pet. 24–25. We also have reviewed Petitioner's arguments and evidence for claims 3–13, 16, 23–25, and 28–31 (*id.* at 25–41), and find that Petitioner has met its burden of establishing that the combined teachings of Maeshima, Breck, and Patchett

21

IPR2015-01124
Patent 8,404,203 B2

disclose or suggest all of the limitations of those claims as well.
Accordingly, we determine that the preponderance of the evidence supports
a finding that Petitioner has demonstrated that all of the limitations of
claims 2–13, 16, 23–25, and 28–31 are disclosed or suggested by the
combination of Maeshima, Breck, and Patchett.

The parties focus their arguments on two main issues: (a) whether
Petitioner has shown why a person having ordinary skill in the art would
have had reason to combine the teachings of Maeshima, Breck, and Patchett
(Pet. 28–31; PO Resp. 31–32); and (b) whether Petitioner has shown that a
person having ordinary skill in the art would have a reasonable expectation
of success in combining Maeshima, Breck, and Patchett (Pet. 31–32;
PO Resp. 4–6, 32–33; Reply 23–25). We address these arguments in turn
below.

a.    *Reason to Combine Maeshima, Breck, and Patchett*

Petitioner contends that a person having ordinary skill in the art
"would have been motivated to use the high silica, copper promoted zeolites
with the CHA crystal structure set forth in Maeshima and Breck as part of
Patchett's SCR system to arrive, with a reasonable expectation of success, at
the claimed subject matter." Pet. 28. Petitioner contends that "Patchett
describes the use of a copper-exchanged zeolite as a catalyst in an SCR
process to reduce nitrogen oxides in diesel engine exhaust," and "explains
that the zeolite should, among other things, be 'resistant to sulfur poisoning'
and 'sustain a high level of activity for the SCR process' even when
subjected to 'high temperatures' and 'hydrothermal conditions.'" *Id.* at 28–
29 (quoting Ex. 1105 ¶ 66). Petitioner contends that Patchett cites to
examples of suitable catalyst compositions that "have a SAR greater

22

IPR2015-01124
Patent 8,404,203 B2

than 10," and states "[c]opper is preferably present in an amount of 'about 1 to 5 percent by weight.'" *Id.* at 29 (quoting Ex. 1105 ¶ 65). According to Petitioner, "Maeshima and Breck describe this very type of catalytic material," and "one of ordinary skill would be directed to the catalytic material of Maeshima and Breck when attempting to implement Patchett's process." *Id.*

Patent Owner argues that Patchett incorporates Byrne[3] by reference with respect to suitable SCR catalyst compositions, and "Byrne teaches away from using copper-exchanged naturally occurring chabazite for the $NH_3$ SCR of NOx." PO Resp. 31 (citing Ex. 1110, 4:57–5:26). Patent Owner argues that Patchett, Byrne, Speronello[4] (incorporated by reference into Patchett), and Maeshima "all expressly promote the use [of] a large pore size zeolite framework." *Id.* at 32. According to Patent Owner, "[t]here is no explanation, other than hindsight, for why a person of ordinary skill in the art would disregard the teachings of these four patent publications—all of which pertain directly to the $NH_3$ SCR of NOx *and* undermine the use of small pore size zeolites such as CHA zeolite." *Id.*

Based on our review of the complete record, we find that a person having ordinary skill in the art would have looked to use the catalytic material taught by Maeshima and Breck in the Patchett process. As Petitioner notes, Maeshima and Breck disclose the use of a high SAR, copper-loaded CHA zeolite for $NH_3$ SCR of NOx. Pet. 29; Ex. 1103, 18:3–20; Ex. 1102, 1:55–63, 4:6–11, 4:44–53, 6:13–17. Breck teaches that an increased level of silica (i.e., high SAR) in the chabazite zeolites of

---

[3] Byrne, U.S. Patent No. 4,961,917, issued Oct. 9, 1990 (Ex. 1110).
[4] Speronello, U.S. Patent No. 5,516,497, issued May 14, 1996 (Ex. 1111).

23

IPR2015-01124
Patent 8,404,203 B2

Maeshima results in improved resistance to sulfur poisoning and hydrothermal stability. Ex. 1108 ¶ 251; Ex. 1103, 4:60–63, 47:44–53.

In light of the disclosures in the prior art, we credit Dr. Lercher's testimony that zeolites suitable for use in Patchett's system (1) incorporate an active metal such as copper, (2) have a SAR above 10, (3) are resistant to sulfur poisoning, and (4) retain catalytic activity when subjected to high temperatures and hydrothermal conditions. Ex. 1108 ¶¶ 246–251. We also credit Dr. Lercher's explanation that a person having ordinary skill in the art would consider the zeolites of Maeshima and Breck for use in Patchett's process because Patchett

> explains that SCR catalysts have been used to treat the exhaust gas emitted by "stationary sources" in the past but that use of these materials has been expanded to "mobile applications" like automobiles. Thus, one of ordinary skill in the art would consider the types of catalytic materials used to treat the exhaust gas of "stationary sources" when implementing [Patchett's] system and process. Maeshima and Breck disclose these types of materials and state that their catalytic materials can be used in SCR processes designed to treat the exhaust of stationary sources like power stations.

Ex. 1108 ¶ 252.

With respect to Patent Owner's argument that Patchett "promote[s] the use [of] a large pore size zeolite framework" (PO Resp. 32), we note that Patchett explains:

> It has been found that zeolites which are highly resistant to sulfate poisoning and provide good activity for both the SCR process and the oxidation of ammonia with oxygen, and which retain good activity even when subject to high temperatures, hydrothermal conditions and sulfate poisons, are zeolites which have pores which exhibit a pore diameter of at least about 7 Angstroms and are interconnected in three dimensions.

24

IPR2015-01124
Patent 8,404,203 B2

Ex. 1105 ¶ 66. While Patchett recognizes a correlation between larger pore size and the recited properties of the zeolite catalyst, we do not understand Patchett to require the use of zeolites having a pore size of at least 7 Angstroms. In particular, Speronello, which Patchett incorporates by reference as describing "[s]uitable SCR catalyst compositions that may be used to coat the inlet zone of the first substrate and/or the second substrate" (Ex. 1105 ¶ 65), teaches the use of "medium to large pore zeolites having pore openings of at least about 4 Angstroms in diameter." Ex. 1111, 6:28–30. According to Dr. Tsapatsis, CHA zeolites have "a small pore size of approximately 3.8 Angstroms (0.38 nm)." Ex. 2018 ¶ 59; *see* PO Resp. 3 n. 2.

We are similarly unpersuaded by Patent Owner's argument that Byrne "teaches away from using copper-exchanged naturally occurring chabazite for the $NH_3$ SCR of NOx." PO Resp. 31. As an initial matter, demonstrating there are differences between the prior art references is insufficient, by itself, to conclude the references teach away from Petitioner's proposed combination. *See In re Beattie*, 974 F.2d 1309, 1312–13 (Fed. Cir. 1992). "Under the proper legal standard, a reference will teach away when it suggests that the developments flowing from its disclosure are unlikely to produce the objective of the [patented] invention." *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1380 (Fed. Cir. 2005). A prior art reference must be considered for everything it teaches by way of technology and is not limited to the particular invention it is describing and attempting to protect. *See EWP Corp. v. Reliance Universal Inc.*, 755 F.2d 898, 907 (Fed. Cir. 1985).

25

IPR2015-01124
Patent 8,404,203 B2

In addition to disclosing that "naturally occurring chabazite" shows a reduction in SCR process activity when exposed to a gas stream containing varying amounts of $SO_2$, thereby promoting the use of a large pore size zeolite framework (Ex. 1110, 4:57–5:26), Byrne also states that "the utilization of high ratios of silica to alumina is known to enhance acid resistance of the zeolite and to provide enhanced resistance of the zeolite to acid sulfur poisoning" (*id.* at 5:39–44). Reading Byrne for everything it teaches, we are not persuaded that Byrne "suggests that the developments flowing from its disclosure are unlikely to produce the objective of the [patented] invention," which, in this case, is the use of high SAR CHA zeolites to catalytically reduce NOx in a gas stream. *Syntex*, 407 F.3d at 1380; *see also In re Gurley*, 27 F.3d at 553 ("A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant."). As set forth above, we credit Dr. Lercher's testimony that a person having ordinary skill in the art would consider the zeolites of Maeshima and Breck suitable for use in Patchett's system. Ex. 1108 ¶¶ 251–252.

Despite the fact that the CHA zeolites in Maeshima and Breck have a smaller pore size than those in Patchett, Byrne, and Speronello, we are persuaded by Petitioner's evidence and arguments demonstrating that a person of ordinary skill in the art would be motivated to combine Maeshima, Breck, and Patchett based on the desired properties of suitable catalysts for use in Patchett, and the corresponding properties being shown in the zeolites resulting from the combined teachings of Maeshima and Breck. *KSR*, 550

26

IPR2015-01124
Patent 8,404,203 B2

U.S. at 421 ("A person of ordinary skill is also a person of ordinary creativity, not an automaton.").

Accordingly, after considering Petitioner's and Patent Owner's positions, as well as the evidence of record, we determine that Petitioner has shown, by a preponderance of the evidence, that a person having ordinary skill in the art would have had a reason to combine the teachings of Maeshima, Breck, and Patchett to arrive at the claimed subject matter.

      *b.*    *Reasonable Expectation of Success*

Petitioner contends that a person having ordinary skill in the art would have a reasonable expectation of success in combining the teachings of Maeshima, Breck, and Patchett because they "all relate to catalytic materials for SCR processes," and "Maeshima explains that its process can be employed at 'gas space velocity of about 2,000 to about 100,000 V/H/V," which "embraces the gas space velocity of the exhaust of an internal combustion engine." Pet. 31. According to Petitioner, this "would indicate to one of ordinary skill in the art that the catalytic process of Maeshima and Breck has applicability beyond the treatment of gas streams emitted by stationary sources." *Id.* at 31–32.

Patent Owner reiterates its argument that the prior art demonstrates "that a CHA material would be unsuitable for use" in Patchett's system. PO Resp. 33–34. As set forth above, this argument is unpersuasive because the totality of the evidence demonstrates that the Maeshima and Breck zeolites would be suitable for use in Patchett's system. *See supra* Section II.D.2.a.

27

IPR2015-01124
Patent 8,404,203 B2

With respect to claims 5–7, 24, and 30,[5] "which require disposing the claimed CuCHA catalyst on a wall flow filter," Patent Owner points out that a prior art patent application (Ex. 1106) that is incorporated by reference into Patchett requires that the catalyst maintain catalytic activity after sustained exposure to the higher temperatures of filter regeneration, which can be above 700° C. PO Resp. 33 (quoting Ex. 1106 ¶ 11). Patent Owner argues that "Petitioner does not explain why a person of ordinary skill in the art would have a reasonable expectation of success combining Maeshima and Breck to meet this requirement." *Id.* According to Patent Owner,

> one of ordinary skill in the art would not have a reasonable expectation of success that the de-alumination process disclosed in Breck would result in a catalytically active zeolite after hydrothermal aging because of the opposing effects de-alumination has on activity and stability. Additionally, Maeshima explicitly limits the reaction temperature for its SCR catalysts to between 200° C and 500° C.

*Id.* at 33–34.

We do not consider Patent Owner's argument to be persuasive because, as Petitioner notes (Reply 3–5), enhanced hydrothermal stability and reaction temperature are not elements of the claims. *See Allergan*, 726 F.3d at 1292. In addition to the SAR and Cu/Al ratios recited in claims 1 and 26 from which the instant claims depend, the claims only require that the catalyst be disposed on a honeycomb wall flow substrate (claims 5–7), or

---

[5] In making this argument, Patent Owner identifies claims 13, 18–20, 23, and 24 as the claims that require disposing the claimed CuCHA catalyst on a wall flow filter. PO Resp. 33. As these claims include claims that are either not at issue or do not recite a wall flow filter, we determine this to be typographical error and instead apply the argument to claims in the '203 patent that recite the wall flow filter element.

28

a honeycomb wall flow filter substrate (claims 24 and 30). Moreover, obviousness does not require absolute predictability. *In re Lamberti*, 545 F.2d at 750. Only a reasonable expectation that a beneficial result will be achieved is necessary to show obviousness. *In re Longi*, 759 F.2d at 897. Here, the "beneficial result," according to the claims 5–7, 24, and 30 of the '203 patent, is a process for reducing NOx contained in a gas stream using a CHA zeolite with the recited SAR and Cu/Al ratio that is disposed on a wall flow filter.

For the reasons described above, including those addressing Patent Owner's de-alumination argument, we find that Petitioner has established that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Maeshima and Breck to arrive at a zeolite that can be used in a process for the reduction of NOx in a gas stream in the presence of oxygen, as required by independent claims 1 and 26. Furthermore, the combined teachings of Maeshima and Breck demonstrate that high SAR, copper-loaded CHA zeolites can be used to treat exhaust from a stationary source, which Patchett states is technology being developed for use in mobile applications. Ex. 1105 ¶ 3; Ex. 1103, 47:44–47; Ex. 1102, 9–13. In this context, Patchett describes coating a wall flow substrate with a high SAR, copper-loaded zeolite catalyst as part of an emissions treatment system for reducing NOx emissions in the exhaust stream produced from an internal combustion engine. Ex. 1105 ¶¶ 1, 25. These teachings in the prior art provide a reasonable expectation of success in achieving the subject matter of claims 5–7, 24, and 30.

Moreover, as Petitioner points out (Reply 24–25), Breck indicates that high SAR chabazites demonstrate improved hydrothermal stability.

29

IPR2015-01124
Patent 8,404,203 B2

Ex. 1003, 47:44–53. Further, in the section titled "SCR Catalyst Compositions," Patchett states that its copper-exchanged zeolites that are used as coatings "typically have an effective SCR catalyst operating temperature range from 150 to 550° C." Ex. 1105 ¶ 69. We note that this temperature range corresponds to the operating temperature range taught in Maeshima. *See* Ex. 1102, 2:48–53. This evidence further suggests that a person of ordinary skill in the art would have had a reasonable expectation of success even though neither Maeshima nor Breck explicitly states that its zeolites are able to be used at temperatures above 700° C. *See* Reply 24–25.

After considering Petitioner's and Patent Owner's positions, as well as the evidence of record, we determine that Petitioner has shown, by a preponderance of the evidence, that a person having ordinary skill in the art would have had a reasonable expectation of success in combing the teachings of Maeshima, Breck, and Patchett to arrive at the claimed subject matter.

E.    *Grounds Based on Dĕdeček*

Petitioner contends that the subject matter of claims 1, 14, 15, 19, 20, 26, and 27 would have been obvious under 35 U.S.C. § 103(a) over the combination of Dĕdeček and Breck, and claims 2–13, 16, 23–25, and 28–31 would have been obvious under § 103(a) over the combined teachings of Dĕdeček, Breck, and Patchett. Pet. 41–54. Petitioner provides claim charts and relies on the Lercher and Schütze Declarations in support of its contentions. *Id.*

1.    *Overview of Dĕdeček*

Dĕdeček describes studies where "$Cu^+$ emission spectra of $Cu^{2+}$ ion exchanged and reduced natural and synthetic CuNa-, CuCa-, CuCs- and

30

IPR2015-01124
Patent 8,404,203 B2

CuBa-chabasites were used to identify cationic sites of the $Cu^+$ luminescence centres in this zeolite." Ex. 1107, Abs. Dědeček states that zeolites containing copper ions have "high catalytic activity in NO and $N_2O$ decomposition and selective catalytic reduction (SCR) of NO with ammonia and hydrocarbons." *Id.* at 63 (internal citations omitted). Dědeček describes synthetic chabazite[6] and natural sedimentary chabazite having 63.89 wt% $SiO_2$ and 17.48 wt% $Al_2O_3$. *Id.* at 64. Dědeček also describes chemical compositions of $Cu^{2+}$ chabazites having ratios of copper to aluminum of 0.28, 0.32, 0.34, and 0.38. *Id.* at 66, Table 3.

  2.  *Analysis*

Petitioner contends that Dědeček teaches the use of chabazite zeolites in the SCR process, and includes "examples of chabazite zeolites with Cu/Al ratios of 0.28, 0.32, 0.34, and 0.38, all of which are within the claimed ranges." Pet. 42 (internal citation omitted). Petitioner further contends that "Breck discloses a high-silica chabazite with a SAR in the range of 8 to 20," which "are highly stable, and can be ion-exchanged and used in catalytic processes just like lower silica precursors." *Id.* According to Petitioner, "[i]ncorporation of Breck's chabazite zeolite into Dedecek, while maintaining the Cu/Al ratios set forth in Dědeček, results in a catalyst with the claimed proportions of silica, alumina, and copper." *Id.* at 42–43.

Petitioner further contends that a person of ordinary skill in the art would have been motivated to combine Dědeček with Breck, and Dědeček with Breck and Patchett, to arrive at the subject matter of the claims, and would have done so with a reasonable expectation of success, primarily

---

[6] Dědeček uses the spelling "chabasite;" for consistency with the '203 patent and other prior art, we will refer to "chabazite."

IPR2015-01124
Patent 8,404,203 B2

relying on arguments similar to those made regarding the combinations of Maeshima and Breck, and Maeshima, Breck, and Patchett, discussed above. Pet. 43–45, 51–53.

Patent Owner argues that neither Dědeček nor Breck teaches the use of CuCHA zeolites for the SCR of NOx.  PO Resp. 28–29.  To support this argument, Patent Owner relies on Dr. Tsapatsis's testimony that

> Dedecek is a paper directed to the study of the siting of $Cu^+$ ions in the chabazite framework.  Breck is patent directed to a process for increasing the SAR of a zeolite by de-alumination.  While both deal in zeolites, they are not directed to solving the same problem, and neither is about the use of zeolites for the SCR of NOx.

Ex. 2018 ¶ 126.  Patent Owner also points to Dr. Lercher's deposition testimony that "Dedecek is about materials; he does not address reactions." PO Resp. 28 (citing Ex. 2027, 79:17–18).

As Patent Owner notes, "Petitioner places great emphasis on the first sentence of the Introduction of Dedecek," which states that "[z]eolites containing Cu ions attract attention owing to their high catalytic activity in NO [1–5] and $N_2O$ decomposition [6] and selective catalytic reduction (SCR) of NO with ammonia [7–9] and hydrocarbons [10–12]."  PO Resp. 20; Ex. 1107, 1.  Although the three papers that correspond to the "[7–9]" cite in Dědeček do discuss the SCR of NOx, they are directed to the use of ZSM-5 zeolites, which do not have the CHA framework.  *See* Ex. 2029, 1 ("The aim of this study is to show differences in the character of the Cu sites active" in the SCR of NO "by investigating the Cu siting in Cu-ZSM-5 of various Cu/Al" and SAR.); Ex. 2030, 1 (applying $Cu^{2+}$-exchanged ZSM-5 zeolites to the SCR of NOx with ammonia in the presence of oxygen); Ex. 2031, 137 (testing the activity of "Cu-ZSM-5 featuring > 100% ion

32

IPR2015-01124
Patent 8,404,203 B2

exchange" for SCR of NOx). Dĕdeček uses CuCHA zeolites only to determine the cationic sites of the $Cu^+$ ions incorporated therein. Ex. 1107, 1.

Breck teaches that its highly siliceous catalysts "are useful in all . . . ion-exchange and catalytic processes in which their less siliceous precursors have heretofore been suitably employed" (Ex. 1103, 47:44–47), but does not specifically identify the SCR of NOx. Thus, the evidence of record demonstrates that neither Dĕdeček nor Breck explicitly teach the use of CuCHA zeolites for the SCR of NOx. This is in contrast to the combination of Maeshima and Breck, discussed above, because Maeshima teaches that "nitrogen oxides are removed from a gas containing the nitrogen oxides and oxygen by contacting the resulting gaseous mixture with a catalyst in the presence of ammonia to reduce the nitrogen oxides selectively," wherein the catalyst can be a copper-exchanged CHA zeolite. Ex. 1102, 2:4–8, 3:67– 4:11, 4:44–52.

Petitioner's arguments regarding the motivation to combine Dĕdeček and Breck are premised on its contention that the references teach the use CuCHA zeolites for the SCR of NOx. Because the evidence of record does not support this contention, we determine that Petitioner does not provide sufficient reasoning as to why one of ordinary skill in the art would combine Dĕdeček and Breck, or Dĕdeček, Breck, and Patchett, to arrive at the claimed subject matter.

Accordingly, on the record before us, we find that Petitioner has not demonstrated by a preponderance of the evidence that the subject matter of claims 1, 14, 15, 19, 20, 26, and 27 would have been obvious over the combined teachings of Dĕdeček and Breck, or that the subject matter of

33

IPR2015-01124
Patent 8,404,203 B2

claims 2–13, 16, 23–25, and 28–31 would have been obvious over the combined teachings of Dĕdĕcek, Breck, and Patchett.

F.    *Secondary Considerations of Nonobviousness*

As part of our obviousness analysis, we consider the evidence and arguments submitted by Patent Owner regarding secondary considerations of non-obviousness. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966) (secondary considerations include commercial success, long-felt but unsolved needs, failure of others, and unexpected results). Here, Patent Owner raises arguments relating to skepticism, unexpected results, and commercial success. PO Resp. 36–45.

1.    *Skepticism*

Patent Owner cites to several documents as evidence of "[s]kepticism about the viability of copper-exchanged zeolites." PO Resp. 38–40 (citing Ex. 2012; Ex. 2001; Ex. 2026; Ex. 2021). Petitioner argues that the documents Patent Owner cites address the commercial viability of copper exchanged zeolites based on hydrothermal stability, "[b]ut, none of the claims at issue in this IPR require a commercially viable catalyst, let alone a catalyst that exhibits any particular degree of hydrothermal stability." Reply 11–12.

We have reviewed Patent Owner's evidence of skepticism and find it to be insufficient, as it fails to show a sufficient nexus to the claimed invention. *See Muniauction, Inc. v. Thompson Corp.*, 532 F.3d 1318, 1327–28 (Fed. Cir. 2008) (indicating that the requirement of a nexus between the claimed invention and evidence of secondary considerations applies equally to skepticism). Instead, the evidence of record shows that doubts about hydrothermal stability and the resulting commercial viability of copper-

34

IPR2015-01124
Patent 8,404,203 B2

zeolite catalysts prompted the skepticism.[7]  For example, the Centi paper, published in 1995, states that "for practical applications their *low hydrothermal stability* may prevent a *commercial use.*"  Ex. 2012, 184 (emphasis added).  Evidence also shows that Patent Owner's proposal for funding to study copper-loaded zeolites for the SCR of NOx was wait-listed by the Department of Energy because "Cu-exchanged zeolites lack the *hydrothermal stability* needed to be *commercially viable* for SCR of NOx with ammonia for diesel engines."  Ex. 2001 ¶ 4 (emphasis added).

This contradicts Patent Owner's argument that "[t]he skepticism was whether you could use a zeolite catalyst in a diesel engine."  Tr. 76:21–23.  The evidence of record indicates that the skepticism was based on the *hydrothermal stability* and *commercial viability* of catalysts used with diesel engines.  The other articles Patent Owner cites similarly refer to the lack of a "commercial breakthrough" and limited hydrothermal stability.  PO. Resp. 39–40 (citing Ex. 2026, 182; Ex. 2021, 218).  As Petitioner points out, "[t]he claims require only a CuCHA zeolite catalyst that can be used as part of a process for reducing nitrogen oxides."  Reply 12.

Accordingly, we are find that the evidence presented does not amount to a sufficient showing of skepticism attributable to the claimed invention.

   2.    *Unexpected Results*

Patent Owner contends that "[t]he unexpected properties of the claimed CuCHA catalyst for the SCR of NOx are demonstrated by

---

[7] We find this evidence sufficient to rebut any presumption of a nexus between the claimed invention and skepticism that may exist based upon Patent Owner's argument that it is entitled to such a presumption with regard to commercial success.  *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1330 n. 4 (Fed. Cir. 2016).

IPR2015-01124
Patent 8,404,203 B2

substantial evidence." PO Resp. 40. As evidence of unexpected results, Patent Owner relies on the performance properties (e.g., low temperature activity, high temperature activity, and degradation due to hydrothermal aging) of Examples 2, 3, and 4 presented in Table 1 of the '203 patent. PO Resp. 40–41; Ex. 1101, 11:40–12:22 (Examples 2, 3, and 4), 14:19–67 (Table 1).

As Petitioner points out, these Examples each involve a catalyst having a SAR of 30, and a Cu/Al ratio in the range of 0.33–0.44. Reply 14; *see* Ex. 1101, 11:40–12:22, 14:19–67, Table 1. The two independent claims of the '203 patent, however, encompasses SARs from about 15 to about 100 (claim 1) or about 15 to about 150 (claim 26), and Cu/Al ratios from about 0.25 to about 0.5 (claim 1) and about 0.25 to about 1 (claim 26). Thus, Patent Owner's evidence of unexpected results is not commensurate in scope with independent claims 1 and 26.

Patent Owner's "showing of unexpected results must be commensurate in scope with" the claims of the '203 patent. *See In re Peterson*, 315 F.3d 1325, 1330 (Fed. Cir. 2003); *see also In re Clemens*, 622 F.2d 1029, 1035 (CCPA 1980) ("In order to establish unexpected results for a claimed invention, objective evidence of non-obviousness must be commensurate in scope with the claims which the evidence is offered to support."). Patent Owner, however, does not specify any claims of the '203 patent that are commensurate in scope with Examples 2, 3, and 4 for purposes of establishing unexpected results, or provide any further information or argument.

Patent Owner also directs us to Byrne and a 2015 paper (Ex. 2020) as additional evidence of unexpected results. PO Resp. 42–43. Petitioner

36

IPR2015-01124
Patent 8,404,203 B2

responds, citing Breck, that it was known that higher SAR zeolites were less susceptible to sulfate poisoning, and a person having ordinary skill in the art "would not have found it unexpected that a CHA zeolite could be useful as a catalyst." Reply 15–16. For the reasons discussed above, we agree. Petitioner also correctly criticizes Patent Owner's reliance on an article from 2015 to show the claimed process yielded unexpected results. *Id.*; *see Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc.*, 769 F.3d 1339, 1340–41 (Fed. Cir. 2014) (per curiam) (Dyk, J., concurring) ("This case presents a question of obviousness, in particular whether evidence postdating the invention can be used to establish unexpected results. The panel holds that it cannot be considered in the circumstances of this case."). Even if we were to consider the 2015 paper as evidence of unexpected results, Patent Owner has not explained sufficiently why an article debating the mechanism behind *why* CHA zeolites work for $NH_3$ SCR constitutes evidence of unexpected results regarding *how well* the CHA zeolites perform, especially considering the mechanism is not recited in the claims. *See* Ex. 2020. Accordingly, we find that the evidence presented does not amount to a sufficient showing of unexpected results.

> 3.    *Commercial Success*

Patent Owner states that it sells the claimed catalyst for use in the $NH_3$ SCR of NOx in diesel engines, and because "the product sold by Patent Owner, a CuCHA catalyst having a SAR falling within the claimed ranges, is coextensive with the claims of the [']203 patent," "the commercial success is presumed to be due to the patented invention." PO Resp. 43–44. Patent Owner provides evidence purporting to show that the "size of the global market for SCR catalysts in diesel engines has doubled over the last five

37

IPR2015-01124
Patent 8,404,203 B2

years," and that Patent Owner's claimed CuCHA catalyst has satisfied a
substantial market share. *Id.* at 44 (citing Ex. 2034 ¶¶ 6–7). According to
Patent Owner, "[t]he combination of the increasing market size and
substantial market share of the claimed CuCHA catalyst are sufficient to
demonstrate that the product has been commercially successful." *Id.* at 43–
44.

    Patent Owner's evidence of the percentage of the global market
satisfied by the claimed catalyst is based on sales of Patent Owner's CuCHA
catalysts and estimates regarding the sales by Patent Owner's licensees.
Ex. 2034 ¶ 7. As Petitioner notes, and Patent Owner admits, there is no
evidence in the record demonstrating that the sales by Patent Owner's
licensees involve products that fall within the scope of the claims. Reply 18;
Tr. 88:21–22. While Patent Owner provided evidence that Johnson Matthey
Inc. is a licensee to related U.S. Patent No. 7,601,662 (Ex. 2034 ¶ 3, n. 1;
Ex. 2028), Patent Owner did not provide evidence or definitively confirm
that Johnson Matthey is also a licensee to the '203 patent. *See* Tr. 79:1–7
(expressing the belief that Johnson Matthey is a licensee to the '203 patent
"[b]ecause [it is] part of the same family" as U.S. Patent No. 7,601,662).

    Moreover, Patent Owner has not provided evidence demonstrating
what percentage of sales can be attributed to Patent Owner's CuCHA
catalysts as opposed to sales by Patent Owner's licensees. Ex. 2034 ¶ 7;
Reply 18; Tr. 88:15–89:6. We agree, therefore, with Petitioner that "it is
impossible to determine from the evidence [Patent Owner] has presented
what percentage of the global SCR market is actually accounted for by
claimed products." Reply 18–19. The lack of specific proof regarding sales
of claimed products and market share renders Patent Owner's evidence

38

IPR2015-01124
Patent 8,404,203 B2

insufficient for purposes of establishing commercial success. *See In re Applied Materials, Inc.*, 692 F.3d 1289, 1300 (Fed. Cir. 2012); *see also In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) ("The more probative evidence of commercial success relates to whether the sales represent a substantial quantity in th[e] market.").

## III. CONCLUSION

For the foregoing reasons, Petitioner has shown, by a preponderance of the evidence, that claims 1, 14, 15, 19, 20, 26, and 27 of the '203 patent are unpatentable under 35 U.S.C. § 103 as obvious over the combined teachings of Maeshima and Breck, and that claims 2–13, 16, 23–25, and 28–31 of the '203 patent are unpatentable under 35 U.S.C. § 103 as obvious over the combined teachings of Maeshima, Breck, and Patchett.

## IV. PETITIONER'S MOTION TO EXCLUDE

Petitioner moves to exclude (1) paragraphs 28, 48, 54, 55, 62–71, 79, 147–150, and 168–177 of the Tsapatsis Declaration (Ex. 2018), (2) paragraph 11 of the Moini Declaration (Ex. 2019), and (3) paragraph 7 of the Schmidt Declaration (Ex. 2034). Paper 44, 1.

We do not reach the merits of Petitioner's Motion to Exclude because, as explained above, even if the disputed evidence is considered, Petitioner has shown by a preponderance of the evidence that claims 1–16, 19, 20, and 23–31 of the '203 patent are unpatentable as obvious. Accordingly, Petitioner's Motion to Exclude is dismissed as moot.

39

IPR2015-01124
Patent 8,404,203 B2

## V. MOTIONS TO SEAL

Patent Owner filed a Combined Motion to Seal and Motion for Protective Order. Paper 25. In its motion, Patent Owner seeks entry of the modified protective in Addendum A to its motion that "is consistent with the Default Protective Order of this Board with certain edits applicable to this case." *Id.* at 5. Patent Owner submitted a red-lined version of the modified protective order as Addendum B to its motion, showing the changes made to the Board's default protective order. *Id.* Patent Owner moves to seal portions of Exhibits 2019 and 2034, and asserts that these exhibits contain non-public technical and business information that is confidential to Patent Owner. *Id.* at 3. Petitioner did not file an opposition to Patent Owner's Combined Motion to Seal and Motion for Protective Order.

Petitioner filed a Motion to Seal Exhibit 1120, which contains deposition testimony given by Olivia Schmidt relating to the confidential information in Exhibit 2034. Paper 40, 1. Petitioner argues that "in the event the Board grants [Patent Owner's] motion to seal, the Schmidt transcript should be sealed along with the other exhibits [Patent Owner] identifies in its motion." *Id.* Patent Owner filed redacted versions of Exhibits 2019 and 2034, and Petitioner filed a redacted version of Exhibit 1120.

Upon review, good cause exists to enter the proposed Protective Order and seal the above information as set forth in the above motions.

40

IPR2015-01124
Patent 8,404,203 B2

## VI. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that claims 1–16, 19, 20, and 23–31 of the '203 patent are deemed to be *unpatentable*;

FURTHER ORDERED that Petitioner's Motion to Exclude (Paper 44) is *dismissed as moot*;

FURTHER ORDERED that Patent Owner's Combined Motion to seal and Motion for Protective Order (Paper 25) is *granted*;

FURTHER ORDERED that the proposed Protective Order (Paper 25, Addendum A) is hereby entered and shall govern the conduct of this proceeding unless otherwise modified;

FURTHER ORDERED that Petitioner's Motion to Seal (Paper 40) is *granted*;

FURTHER ORDERED that the following documents shall be sealed as "Board and Parties Only," and will be kept under seal: the unredacted copies of Exhibits 1120, 2019, and 2034; and

FURTHER ORDERED that, because this is a Final Written Decision, parties to the proceeding seeking judicial review of the Decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

41

IPR2015-01124
Patent 8,404,203 B2

PETITIONER:

Elizabeth Gardner
Richard L. DeLucia
ORRICK, HERRINGTON & SUTCLIFFE LLP
egardner@orrick.com
rdelucia@orrick.com
E1APTABDocket@orrick.com


PATENT OWNER:

Brian E. Ferguson
Anish R. Desai
WEIL, GOTSCHAL & MANGES LLP
brian.ferguson@weil.com
anish.desai@weil.com

42

Trials@uspto.gov                                                    Paper No. 53
571-272-7822                                              Entered: October 26, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

UMICORE AG & CO. KG,
Petitioner,

v.

BASF CORPORATION,
Patent Owner.

_____

Case IPR2015-01125
Patent 7,601,662

_____

Before CHRISTOPHER L. CRUMBLEY, JO-ANNE M. KOKOSKI, and
JEFFREY W. ABRAHAM, *Administrative Patent Judges.*

ABRAHAM, *Administrative Patent Judge.*

*FINAL WRITTEN DECISION*
*35 U.S.C. § 318 and 37 C.F.R. § 42.73*

IPR2015-01125
Patent 7,601,662

# I. INTRODUCTION

Umicore AG & Co. KG ("Petitioner") filed a Petition seeking *inter partes* review of claims 1–24, 30, and 32–50 of U.S. Patent No. 7,601,662 B2 (Ex. 1101, "the '662 patent"), as amended by *Ex parte* Reexamination Certificate No. US 7,601,662 C1 ("Reexam. Cert."). Paper 1 ("Pet."). BASF Corporation ("Patent Owner ") filed a Preliminary Response to the Petition. Paper 8. On October 29, 2015, we instituted an *inter partes* review of claims 1, 2, 5, 6, 12–24, 30, and 32–38 as discussed below. Paper 9 ("Dec. on Inst.").

After institution, Patent Owner filed a Patent Owner Response (Paper 25, "PO Resp."), and Petitioner filed a Reply (Paper 37, "Reply"). An oral hearing was held on July 28, 2016, and a transcript of the hearing has been entered into the record of the proceeding as Paper 52 ("Tr.").

We have jurisdiction under 35 U.S.C. § 6. This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73. For the reasons that follow, we determine that Petitioner has shown by a preponderance of the evidence that claims 1, 2, 5, 6, 12–24, 30, and 32–38 are unpatentable.

## II. BACKGROUND

### A. Related Proceedings

Petitioner identifies pending *inter partes* review Case IPR2015-01121, also pertaining to the '662 patent. Pet. 1. In addition to IPR2015-01121, Patent Owner identifies pending *inter partes* review Cases IPR2015-01123 and IPR2015-01124, pertaining to U.S. Patent No. 8,404,203 B2, which issued from a divisional of the application that issued as the '662 patent. Paper 6, 2.

2

IPR2015-01125
Patent 7,601,662

*B. The '662 Patent*

The '662 patent states that "synthetic and natural Zeolites and their use in promoting certain reactions, including the selective reduction of nitrogen oxides with ammonia in the presence of oxygen, are well known in the art," and that "[m]etal-promoted Zeolite catalysts including, among others, iron-promoted and copper-promoted Zeolite catalysts, for the selective catalytic reduction of nitrogen oxides with ammonia are known." Ex. 1101, 1:26–33.

The '662 patent discloses catalysts that comprise zeolites having a CHA crystal structure and include copper, which may be part of an exhaust gas treatment system. *Id.* at 1:55–61. According to the '662 patent, "novel copper chabazite catalysts are provided which exhibit improved $NH_3$ SCR of NOx." *Id.* at 1:64–66. Several embodiments described in the '662 patent depict a catalyst comprising a zeolite having the CHA crystal structure, a specific mole ratio of silica to alumina (e.g., greater than about 15), and a specific atomic ratio of copper to aluminum (e.g., greater than about 0.25). *Id.* at 4:24–29.[1] The '662 patent teaches that the catalyst compositions can be disposed on a substrate, which usually comprises a honeycomb structure. *Id.* at 6:55–59. According to the Specification, the CuCHA zeolite catalysts of the '662 patent are said to have increased hydrothermal stability (i.e., greater stability when subjected to thermal aging) as compared to other Cu-zeolite catalysts. *Id.* at 5:1–16, 5:49–52.

---

[1] For purposes of this decision, we follow the parties' convention of using "SAR" to refer to the mole ratio of silica to alumina, and "Cu/Al ratio" to refer to the atomic ratio of copper to aluminum required in the claims.

3

IPR2015-01125
Patent 7,601,662

*C. Illustrative Claim*

Claim 1 is the only independent claim challenged, and is reproduced

below:

> 1. A catalyst comprising:
>
> an aluminosilicate zeolite having the CHA crystal structure and a mole ratio of silica to alumina from about 15 to about 150 and an atomic ratio of copper to aluminum from about 0.25 to about 1, the catalyst effective to promote the reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$ selectively.

Ex. 1101, Reexam. Cert. 1:56–2:3 (annotations and emphasis omitted).

*D. References*

Petitioner relies on the following references:

Maeshima et al., US 4,046,888, issued September 6, 1977 ("Maeshima," Ex. 1102).

Breck, deceased et al., US 4,503,023, issued March 5, 1985 ("Breck," Ex. 1103).

Patchett et al., US 2006/0039843 A1, published February 23, 2006 ("Patchett," Ex. 1105).

Dedecek, et al., *Siting of the $Cu^+$ ions in dehydrated ion exchanged synthetic and natural chabasites: a $Cu^+$ photoluminescence study*, 32 MICROPOROUS AND MESOPOROUS MATERIALS 63, (1999) ("Dedecek," Ex. 1107).

4

IPR2015-01125
Patent 7,601,662

### E. Reviewed Grounds of Patentability

The Board instituted trial to review the patentability of the challenged claims on the following grounds:

| References | Statutory Basis | Claims Challenged |
|---|---|---|
| Maeshima and Breck | § 103 | 1, 2, 5, 6, and 30 |
| Maeshima, Breck, and Patchett | § 103 | 12–24 and 32–38 |
| Dedecek and Breck | § 103 | 1, 2, 5, 6, and 30 |
| Dedecek, Breck, and Patchett | § 103 | 12–24 and 32–38 |

### F. Level of Ordinary Skill in the Art

Petitioner's declarant, Dr. Lercher, testifies that a person of ordinary skill in the art "would have at least a Master's degree in chemistry or a related discipline, and have knowledge of the structure and chemistry of molecular sieves like zeolites, including factors that impact their stability and activity." Ex. 1108 ("Lercher Declaration) ¶ 66. Patent Owner's declarant, Dr. Tsapatsis, stated that he agrees with the level of ordinary skill in the art advanced by Dr. Lercher. Ex. 2018 ("Tsapatsis Declaration") ¶ 22.

We credit the testimony provided by the declarants for both parties and hold that one of skill in the art would possess at least a Master's degree in chemistry or a related discipline, and have knowledge of the structure and chemistry of molecular sieves like zeolites, including factors that impact their stability and activity. This level of ordinary skill is reflected not only by the information presented by the parties, but also by the prior art of record. *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001) (the prior art itself can reflect the appropriate level of ordinary skill in the art).

5

### III. ANALYSIS

#### A. Claim Construction

In an *inter partes* review, claim terms in an unexpired patent are
interpreted according to their broadest reasonable construction in light of the
specification of the patent in which they appear. 37 C.F.R. § 42.100(b); *see*
*Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144–46 (2016)
(upholding the use of the broadest reasonable interpretation standard). We
determine that no express claim construction is required for purposes of this
Decision. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795,
803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in
controversy, and only to the extent necessary to resolve the controversy.").

#### B. References

##### 1. Maeshima

Maeshima "relates to a method for selectively reducing nitrogen
oxides contained in exhaust gases from stationary sources, such as flue gas
from the combustion furnace of power plants, by using ammonia as a
reducing agent." Ex. 1102, 2:9–13. According to Maeshima, this is
accomplished by contacting a gaseous exhaust mixture with a catalyst in the
presence of ammonia. *Id.* at 2:6–8. Maeshima teaches that the catalyst can
be a crystalline aluminosilicate or a "product obtained by exchanging an
alkali metal ion in a crystalline alumino-silicate with at least one metal
cation having an activity of reducing nitrogen oxides." *Id.* at 3:33–38.
Maeshima lists "Chabazite," among others, as a suitable natural zeolite to be
used in the described method. *Id.* at 4:6–12. Maeshima includes copper in
its list of the most preferred metal components that can be incorporated into
the zeolite catalysts (*id.* at 6:4, 4:51–52), noting that "[t]he ion exchange

6

IPR2015-01125
Patent 7,601,662

ratio is not particularly critical, but it is generally preferred that the ion exchange ratio be about 60 to about 100%" (*id.* at 4:44–50), and also disclosing that the amount of the active metal component in the catalyst may be a "catalytically effective amount," ranging from about 1 to about 20% by weight, preferably about 2 to about 10 % by weight (*id.* at 6:13–17).

### 2. Breck

Breck relates to "zeolite compositions topologically related to prior known zeolites but which have substantially greater $SiO_2/Al_2O_3$ molar ratios than the heretofore known zeolite species." Ex. 1103, 1:11–14. Breck states that naturally-occurring or synthetic zeolites are well-known in the art and can be used as starting materials for the claimed process, and identifies chabazite as one of several especially preferred zeolite species. *Id.* at 4:50–63. Breck teaches that the stability of zeolites is partly a function of the $SiO_2/Al_2O_3$ ratio (*id.* at 3:9–10), and that:

> [t]he novel zeolite compositions of the present invention are useful in all adsorption, ion-exchange and catalytic processes in which their less siliceous precursors have heretofore been suitably employed. In general, because they are more highly siliceous than their precursors they are not only more thermally and hydrothermally stable than those prior known materials but also have increased resistance toward acidic agents such as mineral and organic acids, $SO_2$, $SO_3$, $NO_x$ and the like.

*Id.* at 47:44–53. Breck discloses examples of "more siliceous forms of the prior known zeolite mineral chabazite," and describes these as having SAR values between 8 and 20. *Id.* at 18:3–15.

### 3. Patchett

Patchett relates to an emissions treatment system and method for reducing nitrogen oxides emissions in the exhaust stream produced from an internal combustion engine. Ex. 1105 ¶ 1. Patchett teaches that "[a] proven

7

IPR2015-01125
Patent 7,601,662

NOx abatement technology applied to stationary sources with lean exhaust conditions is Selective Catalytic Reduction (SCR) using ammonia ($NH_3$) or an $NH_3$ precursor." *Id.* ¶ 3.

Patchett discloses one embodiment of an emissions treatment system that includes an injector for inserting ammonia into an exhaust stream upstream from a first substrate with an SCR catalyst composition and an $NH_3$ destruction catalyst composition (comprising a platinum group metal component) disposed thereon. *Id.* ¶¶ 18–19. Patchett teaches that the SCR catalyst composition can contain a copper-exchanged zeolite and the substrate may be a honeycomb flow-through substrate. *Id.* ¶¶ 21, 23. According to Patchett, a copper-exchanged zeolite "typically [has] an effective SCR catalyst operating temperature range of from about 150 to 550 ºC." *Id.* at ¶ 69.

### 4. Dedecek

Dedecek generally relates to a study of the siting and coordination of $Cu^+$ ions in zeolites.[2] In the section titled "Introduction," Dedecek discloses that "[z]eolites containing Cu ions attract attention owing to their high catalytic activity in NO and $N_2O$ decomposition and selective catalytic reduction (SCR) of NO with ammonia and hydrocarbons." Ex. 1107, 63 (internal citations omitted). Dedecek refers to previous studies conducted on aluminum-rich chabazites, and describes experiments conducted on chabazite materials having Cu concentrations ranging from 0.20 to 7.60 wt

---

[2] According to Dr. Lercher, "[s]iting of copper ions" means locating "[w]here in a zeolite lattice the copper ions are stabilized." Ex. 2027, 77:12–17.

IPR2015-01125
Patent 7,601,662

%, including examples of chabazites having Cu/Al ratios ranging from 0.01 to 0.38. *Id.* at 64–66.

### C. Analysis of Grounds of Unpatentability

#### 1. Claims 1, 2, 5, 6, and 30 over Maeshima and Breck

As noted above, independent claim 1 recites a catalyst having the CHA crystal structure and specific SAR (15–150) and Cu/Al values, which is effective to promote the reaction of ammonia with nitrogen oxides. Dependent claims 2, 5, and 6 recite narrowed SAR (15–100) and Cu/Al values, and dependent claim 30 recites an exhaust gas treatment system that comprises the catalyst of claim 2. Petitioner argues that the subject matter of claims 1, 2, 5, 6, and 30 would have been obvious over Maeshima in view of Breck.

Petitioner provides detailed explanations and the declaration of Dr. Lercher to show how the references disclose or suggest each claim limitation. Pet. 10–23. In our Decision on Institution, we determined that Petitioner had made a threshold showing that the prior art discloses or suggests all limitations of claims 1, 2, 5, 6, and 30 sufficient for us to conclude that there was a reasonable likelihood that Petitioner would prevail in showing that the subject matter of these claims would have been obvious in view of Maeshima and Breck. Dec. on Inst. 8–18.

In its Response, Patent Owner does not challenge Petitioner's arguments and evidence demonstrating that the prior art discloses or suggests all limitations of the challenged claims. To the contrary, Patent Owner acknowledges that the limitations in the claims were well-known in the art. *E.g.*, PO Resp. 39 ("[I]t is undisputed that a high SAR CHA zeolite and the ion-exchange of copper in zeolite catalysts were well known in the

9

IPR2015-01125
Patent 7,601,662

art since at least 1985 . . . ."); Tr. 8:11–14, 38:9–14. Thus, the record contains the same arguments and evidence regarding whether the prior art discloses or suggests the limitations of claims 1, 2, 5, 6, and 30 as it did at the time of our Decision on Institution.

Based upon our review of the totality of the record after trial, we agree with Petitioner's arguments and evidence presented in the Petition regarding whether Maeshima and Breck disclose or suggest the limitations of claims 1, 2, 5, 6, and 30. *See* Pet. 10–23. Thus, we determine that the preponderance of the evidence supports a finding that Petitioner has demonstrated that all limitations of claims 1, 2, 5, 6, and 30 are disclosed or suggested by Maeshima and Breck.

In view of this, in our analysis below, we focus on the following issues disputed by the parties, namely (i) whether Petitioner has shown why one of ordinary skill in the art would have "start[ed] with a CuCHA zeolite for the $NH_3$ SCR of NOx based on the teachings of Maeshima and Breck" (PO Resp. 28; Pet. 15–17) and (ii) whether Petitioner has shown that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Maeshima and Breck (PO Resp. 28–30; Pet. 17–18).

Petitioner argues that Maeshima discloses aluminosilicate zeolites with the CHA crystal structure, the claimed proportion of copper, and an SAR greater than 2, but does not explicitly state that its zeolites have a SAR in the claimed ranges. Pet. 1, 16. Petitioner contends that Breck "discloses that the SAR of a chabazite zeolite can be increased to within the claimed range." *Id.* (citing Ex. 1103, 18:3–15). Petitioner further contends that "[o]ne of ordinary skill in the art as of February 2007 would have been

10

IPR2015-01125
Patent 7,601,662

motivated to combine Maeshima with Breck to arrive, with a reasonable expectation of success, at the subject matter of the claims." *Id.* at 15–16 (internal footnote omitted).

According to Petitioner, "Maeshima explains that an exhaust gas stream 'generally contains . . . sulfur oxides and oxygen in addition to nitrogen oxides' and it is 'necessary to perform removal of nitrogen oxides while eliminating influences' of these materials." *Id.* at 16 (quoting Ex. 1102, 2:34–38). In view of this, Petitioner asserts that a person of ordinary skill in the art would "readily appreciate that Breck's increased SAR zeolites would be particularly well suited for use with Maeshima" because Breck teaches that increasing the proportion of silica in a zeolite increases its resistance to acidic agents such as sulfur oxides in addition to providing thermal and hydrothermal stability. *Id.* at 16–17. Petitioner notes that Breck discloses CHA zeolites with SARs ranging from 8–20. *Id.* at 11, 19; Reply 20. Petitioner asserts that the combination of Maeshima and Breck "would render Maeshima's catalysts and the processes in which they are employed more resistant to sulfur oxides in a gas stream, more effective across a broader temperature range, and more resistant to hydrothermal aging." Pet. 17 (citing Ex. 1108 ¶ 163).

Petitioner further contends that it was well-known that larger amounts of copper ions enhance the effectiveness of a zeolite when catalyzing the reduction of nitrogen oxides, and, therefore, a person of ordinary skill in the art would have recognized the benefits of following Maeshima's instructions regarding copper loading when adding copper to higher silica zeolites, such as those set forth in Breck. *Id.* (citing Ex. 1018 ¶¶ 164–165). Petitioner also argues that Maeshima and Breck are in the same technical field (zeolite

11

IPR2015-01125
Patent 7,601,662

catalysts and the use of these catalysts) and directed to solving the same technical problem (identifying effective materials for catalyzing the reduction of NOx), which would further motivate a person of ordinary skill in the art to combine the references. *Id.* at 17–18.

As to an expectation of success, Petitioner contends that a person of ordinary skill in the art would have had "every reason to believe that increasing the SAR of Maeshima's zeolites catalysts as instructed by Breck would succeed." *Id.* at 17. Specifically, Petitioner argues that Breck explains that increasing the proportion of silica in a zeolite does not detrimentally affect the ability to ion-exchange the zeolite, or the utility of that zeolite in catalytic processes for which "lower silica precursors" had previously been used. *Id.* (citing Ex. 1103, 47:44–47; Ex. 1108 ¶¶ 166–168). Additionally, Petitioner argues that

> the combination of Maeshima and Breck amounts to nothing more than the application of one particular known modification to catalytic zeolites with a known benefit—increasing the silica of chabazite zeolites to improve stability as taught by Breck— to the very materials to which this modification is meant to be applied—Maeshima's copper-promoted aluminosilicate zeolites for use in SCR processes.

*Id.* at 18 (citing Ex. 1108 ¶ 170). Petitioner contends that a person of ordinary skill in the art would have been aware of various methods and techniques for making synthetic zeolites with SARs in the claimed range. Reply 22 (citing Ex. 1119 110:19–22, 111:15–112:25).

Patent Owner argues that Petitioner has failed to explain why a person of ordinary skill in the art reading Maeshima and Breck would have started with a Cu-zeolite having the CHA structure for the SCR of NOx in the presence of ammonia. PO Resp. 28. Patent Owner argues that Maeshima

12

IPR2015-01125
Patent 7,601,662

lists nine zeolites and four preferred metals, and teaches the use of a large pore size zeolite for the $NH_3$ SCR of NOx. *Id.* Patent Owner also argues that Breck discloses ten different zeolites. *Id.* According to Patent Owner, neither Maeshima nor Breck "provides any motivation to use a CuCHA zeolite for the $NH_3$ SCR of NOx." *Id.* (citing Ex. 2018 ¶ 119).

Patent Owner further argues that a person of ordinary skill in the art would not have had a reasonable expectation of success in combining the teachings of Maeshima and Breck. *Id.* Patent Owner contends that Petitioner's argument is "based on the faulty premise that the de-alumination technique in Breck 'does not detrimentally affect the ability to ion-exchange the zeolite, or the utility of the zeolite in catalytic processes in which lower silica precursors have been employed.'" *Id.* at 28–29 (quoting Pet. 17). Patent Owner contends that de-aluminating a zeolite will detrimentally impact the zeolite's ability to ion-exchange and the zeolite's catalytic activity. According to Dr. Tsapatsis,

> [a]lthough Breck does contend that higher SAR may improve stability, there is a diverging effect of de-alumination that is not addressed by Breck. Specifically, the removal of aluminum leaves fewer extra framework ions present in the catalyst, thereby reducing the catalytic activity of the zeolite. Thus, while de-alumination may improve stability, it can also destroy the catalytic activity of the zeolite.

Ex. 2018 ¶ 122.

Patent Owner also argues that Dr. Lercher conceded at his deposition that de-aluminating does have a detrimental effect on the ability of a zeolite to ion exchange and on the activity of the zeolite. PO Resp. 29 (citing Ex. 2027, 94:23–95:25). Thus, according to Patent Owner, "combining the teachings of Maeshima and Breck would not predictably enhance a zeolite,

13

nor has Petitioner shown that a person of ordinary skill in the art would have a reasonable expectation of success in combining these references." *Id.*

Patent Owner points out that Breck discloses only a single example of increasing the SAR of a CHA zeolite, from 8.52 to 11.18, and argues that Breck "explicitly teaches that the de-alumination technique is not efficient for the CHA framework." *Id.* Patent Owner also notes that Breck does not include an example of increasing SAR from below 8 to above 15, as required by the claims of the '662 patent. *Id.* at 29–30. Therefore, according to Dr. Tsapatsis, "a person of ordinary skill in the art would have no expectation that the zeolites disclosed in Maeshima having a SAR between 2 and 6 could be de-aluminated to have a SAR greater than 15." Ex. 2018 ¶ 121; Pet. 30.

Patent Owner also disagrees that Maeshima and Breck are directed at solving the same problem. According to Patent Owner, Maeshima relates to the $NH_3$ SCR of NOx in a stationary source, whereas Breck is about de-alumination of zeolites to increase SAR, and contains no teachings regarding $NH_3$ SCR of NOx. PO Resp. 30; Ex. 2018 ¶ 124.

After considering the record as a whole, we agree with Petitioner that a person of ordinary skill in the art would have been motivated to use a CuCHA zeolite for the $NH_3$ SCR of NOx based on the teachings of Maeshima and Breck, and would have had a reasonable expectation of success in achieving the claimed invention.

As noted above, Maeshima describes chabazite as a suitable catalyst for the selective catalytic reduction of nitrogen oxides in the presence of ammonia. Ex. 1102, 2:4–9, 4:6–11. Maeshima lists copper as an especially preferred "active metal component having an activity of reducing nitrogen

14

IPR2015-01125
Patent 7,601,662

oxides" (*id.* at 6:1–4), and further describes a generally preferred ion exchange ratio and "catalytically effective" weight percent amount of the active metal component (*id.* at 4:48–50, 6:13–17). Maeshima also explains that an exhaust gas stream "generally contains . . . sulfur oxides and oxygen in addition to nitrogen oxides" and it is "necessary to perform removal of nitrogen oxides while eliminating influences of sulfur oxides." *Id.* at 2:34–38).

Breck teaches increasing the SAR value of zeolites including chabazites, and that these zeolites can be ion exchanged. Ex. 1103, 4:50–52, 60–63. Breck also teaches that its zeolite catalysts are useful in "catalytic processes in which their less siliceous precursors have heretofore been suitably employed" and "have increased resistance toward acidic agents such as . . . $SO_2$, $SO_3$ . . . and the like." *Id.* at 47:44–53. The evidence of record thus suggests that a person of ordinary skill in the art, upon reviewing Maeshima and Breck, would have been motivated to use a CuCHA catalyst for the $NH_3$ SCR of NOx. The fact that Maeshima and Breck disclose other types of zeolites does not diminish the fact that they expressly identify chabazite as an acceptable catalyst. *See Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 964 (Fed. Cir. 2014) (the "mere disclosure of alternative preferences does not teach a person of ordinary skill away from the broad swath of compounds within the scope of the [claims at issue]"); *Merck & Co. v. Biocraft Labs. Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989) ("[I]n a section 103 inquiry, 'the fact that a specific [embodiment] is taught to be preferred is not controlling, since all disclosures of the prior art, including unpreferred embodiments, must be considered.'" (quoting *In re Lamberti*, 545 F.2d 747, 750 (CCPA 1976)))*; see also In re Fulton*, 391 F.3d 1195,

15

IPR2015-01125
Patent 7,601,662

1201 (Fed. Cir. 2004) ("The prior art's mere disclosure of more than one alternative does not constitute a teaching away from any of these alternatives because such disclosure does not criticize, discredit, or otherwise discourage the solution claimed . . . .").

As to an expectation of success, our reviewing court has held that "the person of ordinary skill need only have a reasonable expectation of success of developing the *claimed invention.*" *Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1292 (Fed. Cir. 2013) (emphasis added). Claims 1, 2, 5, 6, and 30 require a CHA zeolite having a SAR value and Cu/Al ratio falling within certain ranges that is "effective to promote the reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$ selectively." At his deposition, Dr. Tsapatsis stated that this means that the catalyst must be able to "promote the reaction of ammonia with NOx to form nitrogen and water" and does not require a particular amount of NOx conversion. Ex. 1119, 184:21–185:12.

In view of this, Patent Owner's argument that "combining the teachings of Maeshima and Breck would not predictably enhance a zeolite" is unavailing, as the claims do not require enhancing a zeolite. PO Resp. 29. Additionally, obviousness does not require absolute predictability. *In re Lamberti*, 545 F.2d 747, 750 (CCPA 1976). Only a reasonable expectation that the beneficial result will be achieved is necessary to show obviousness. *In re Longi*, 759 F.2d 887, 897 (Fed. Cir. 1985). Here, the "beneficial result," according to the claims of the '662 patent, is a catalyst that can promote the reaction of ammonia with NOx to form water and nitrogen.

In view of Maeshima's teaching that chabazites are suitable catalysts for the $NH_3$ SCR of NOx, coupled with Breck's disclosure that its highly

16

IPR2015-01125
Patent 7,601,662

siliceous catalysts "are useful in all . . . ion-exchange and catalytic processes in which their less siliceous precursors have heretofore been suitably employed" (Ex. 1103, 47:44–47), we credit Dr. Lercher's testimony that "[i]ncreasing the SAR of the zeolite utilized by Maeshima would not detrimentally impact the usefulness of that zeolite in a process for reducing nitrogen oxides." Ex. 1108 ¶ 167–168.

As to Patent Owner's argument that Dr. Lercher offered contradictory testimony, where he allegedly "conceded at his deposition that de-aluminating *does* have a detrimental effect on the ability to ion-exchange and the activity of the zeolite," (PO Resp. 29), we note that Dr. Lercher's deposition testimony reveals he acknowledged that de-alumination "impacts" both activity and stability of the zeolite, but agreed only that "de-[al]uminating the zeolite *can* decrease the activity" (Ex. 2027, 94:23–95:25) (emphasis added). This is consistent with testimony from Dr. Tsapatsis that "the resulting properties of a particular zeolite for a particular reaction after de-alumination are not predictable" because of "*the possible detrimental effect* on ion-exchange capacity and activity." Ex. 2018 ¶ 94 (emphasis added). Obviousness, however, "cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success." *Allergan*, 726 F.3d at 1292 (citing *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007)). Here, as Petitioner and Dr. Lercher contend, Breck provides a reasonable probability that increasing the SAR of Maeshima's CHA zeolite in view of the teachings of Breck would result in a high-SAR zeolite that is "useful in all . . . ion-exchange and catalytic processes in which their less siliceous precursors have heretofore

17

been suitably employed," which, according to Maeshima, includes $NH_3$ SCR of NOx.

Patent Owner's argument that "there is no evidence that a zeolite having a SAR of 2–6, as disclosed in Maeshima, could be de-aluminated to above 15 using the technique in Breck" is based, at least in part, on the premise that Maeshima teaches using zeolites only having a SAR of 2–6. PO Resp. 30. Maeshima, however, generally teaches that its zeolites preferably have a SAR greater than 2.[3] Ex. 1102, 3:67–4:3. It is only with regard to "especially preferred" embodiments that Maeshima discusses the specific SAR range of 2–6. *Id.* at 4:36–43. Moreover, Breck discloses CHA zeolites having an SAR greater than 8, preferably in the range of 8–20. Ex. 1103, 18:4–16; Ex. 1108 ¶ 157. Neither Patent Owner nor Dr. Tsapatsis address adequately these portions of Breck and Maeshima in concluding that Maeshima's zeolites could not be de-aluminated to have a SAR above 15, instead choosing to focus on the single example of a CHA zeolite discussed in Breck and the specific range of the "especially preferred" embodiments in Maeshima. PO Resp. 29–30; Ex. 2018 ¶¶ 92–97; 121–122.

As to Patent Owner's argument regarding the relatively low efficiency of Breck's de-alumination method for CHA zeolites, we note that Breck indicates that "with chabazite, silicon does replace the removed aluminum in the framework." Ex. 1103, 38:48–49. Thus, although it may be less efficient for chabazite, the evidence of record suggests that Breck's de-alumination method does work for CHA zeolites, and Breck's preferred

---

[3] As Petitioner points out, Dr. Tsapatsis testified at his deposition that as of 2007, a person of ordinary skill in the art would have known how to make synthetic CHA zeolites with an SAR in the range of 30–50. Ex. 1119, 111:23–112:25.

IPR2015-01125
Patent 7,601,662

SAR for CHA zeolites after de-alumination is 8–20, which overlaps the claimed range.

Furthermore, we agree with Petitioner that Maeshima and Breck are at least directed to the same technical field, zeolite catalysts (including chabazites) and their uses. Ex. 1102, Abstract, 1:55–63; Ex. 1103, 4:50–63, 47:44–47; Ex. 1108 ¶ 169.[4]

For all of the foregoing reasons, based upon consideration of the evidence in this record, we determine that Petitioner has demonstrated, by a preponderance of the evidence, that a person of ordinary skill in the art would have had a reason to combine Maeshima and Breck, and would have had a reasonable expectation of successfully combining Maeshima and Breck to arrive at a high SAR CHA zeolite that can promote the $NH_3$ SCR of NOx.

2.    *Claims 12–24 and 32–38 over Maeshima, Breck, and Patchett*

Claims 12–24 and 32–38 depend from claim 2, and recite additional limitations such as the catalyst being deposited on a honeycomb substrate (claim 12), the honeycomb substrate comprising a wall flow filter substrate (claim 13) or a flow through substrate (claim 14), coating a portion of the flow through or wall flow substrate with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream (claims 16 and 17), placing the catalyst downstream from a diesel engine and an injector that adds a reductant to an exhaust gas stream (claims 21–24), and including a catalyzed soot filter (claim 32). Ex. 1101, 23:48–24:23, 24:49–65; Reexam. Cert. 2:12–13.

---

[4] Patent Owner does not address whether these references are directed to the same technical field. Rather, Patent Owner argues only that they are not directed at solving the same problem. PO Resp. 30.

19

IPR2015-01125
Patent 7,601,662

Petitioner provides detailed explanations and the declaration of Dr. Lercher to show how the references disclose or suggest each limitation of claims 12–24 and 32–38.  Pet. 24–42.  In its Response, Patent Owner does not challenge Petitioner's arguments and evidence demonstrating that the prior art discloses or suggests all limitations of these claims.  Thus, the record contains the same arguments and evidence regarding whether the prior art discloses or suggests the limitations of the challenged claims as it did at the time of our Decision on Institution.

Based upon our review of the totality of the record after trial, we agree with Petitioner's arguments and evidence presented in the Petition regarding whether Maeshima, Breck, and Patchett disclose or suggest the limitations of claims 12–24 and 32–38.  *See* Pet. 24–42.  Thus, we determine that the preponderance of the evidence supports a finding that Petitioner has demonstrated that all limitations of these claims are disclosed or suggested by Maeshima, Breck, and Patchett.

In view of this, in our analysis below, we focus on the following disputed issues, namely (i) whether Petitioner has shown why one of ordinary skill in the art would have been motivated to combine the teachings of Maeshima, Breck, and Patchett to arrive at the claimed invention  (PO Resp. 33–34; Pet. 29–31) and (ii) whether Petitioner has shown that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Maeshima, Breck, and Patchett (PO Resp. 34–36; Pet. 31–32).

    *i.*      *Motivation to Combine Maeshima, Breck, and Patchett*

Petitioner argues that a person of ordinary skill in the art "would have been motivated to use the high silica, copper promoted zeolites with the

IPR2015-01125
Patent 7,601,662

CHA crystal structure set forth in Maeshima and Breck as part of Patchett's SCR system to arrive, with a reasonable expectation of success, at the claimed subject matter." Pet. 29. Petitioner notes that Patchett teaches the use of a copper-exchanged zeolite to reduce nitrogen oxides in diesel engine exhaust. *Id.* Petitioner states that Patchett does not specifically reference a CHA zeolite or the claimed SAR and Cu/Al ratios, but does "identify the characteristics of the zeolite that should be employed." *Id.* According to Petitioner, these characteristics include copper present in an amount of 1–5 % by weight, and an SAR greater than 10. *Id.* Petitioner notes that Patchett also explains that the zeolites should be resistant to sulfur poisoning and sustain a high level of activity when exposed to high temperatures and hydrothermal conditions. *Id.;* Ex. 1105 ¶ 66; Ex. 1108 ¶ 257.

Petitioner asserts that Maeshima and Breck disclose catalytic material having Patchett's desired characteristics, namely an SAR of up to 20, approximately 2–10% copper by weight, improved resistance to sulfur oxides, and enhanced hydrothermal stability. Pet. 30; Ex. 1108 ¶ 262; Ex. 1103, 18:3–20, 47:44–53; Ex. 1102, 6:13–17. Therefore, Petitioner contends that "one of ordinary skill in the art would be directed to the catalytic material of Maeshima and Breck when attempting to implement Patchett's process." Pet. 30; Ex. 1108 ¶¶ 261–262.

According to Petitioner, Patchett notes that "SCR catalysts have traditionally been used to remove nitrogen oxides from the gas streams emitted by 'stationary sources,'" and "then explains that this same technology is being expanded to 'mobile applications.'" Pet. 30 (citing Ex. 1105 ¶ 3). Petitioner asserts that Maeshima and Breck disclose catalysts that can be used in SCR processes that treat exhaust gas emitted from stationary

21

IPR2015-01125
Patent 7,601,662

sources, which would "further motivate one of ordinary skill in the art to consider Maeshima and Breck's materials for use with Patchett." Ex. 1108 ¶ 263; Pet. 30.

Petitioner also argues that a person of ordinary skill in the art would have been motivated to combine Maeshima, Breck, and Patchett because these references are "in the same technical field (catalysts and catalytic processes) and are directed to solving the same types of problems (identifying materials and other components that can be used for catalyzing the reduction of nitrogen oxides in gas streams)." Pet. 31 (citing Ex. 1108 ¶ 264.) Petitioner contends that the specific limitations included in claims 12–24 and 32–38, such as coated flow through and wall flow substrates, are "only obvious design choices . . . routinely included as part of an exhaust system." *Id.* (citing Ex. 1108 ¶¶ 266–267).

Patent Owner argues that Petitioner ignores the fact that paragraph 66 of Patchett explains that suitable zeolites have a pore size of a least 7 Angstroms. PO Resp. 33–34 (citing Ex. 1105 ¶ 66). Patent Owner further argues that Byrne[5] and Speronello,[6] incorporated by reference in Patchett and characterized as describing "suitable SCR catalyst compositions" that may be used in Patchett's system, promote the use of zeolites having large pore sizes. *Id.* (citing Ex. 1110, Abstract; Ex. 1111, 6:28–59). Additionally, Patent Owner argues that Byrne teaches away from the use of copper-exchanged naturally occurring chabazite for $NH_3$ SCR of NOx because of susceptibility to sulfate poisoning caused by the small pore size of CHA zeolites. *Id.* at 4–5, 33. Patent Owner asserts that Petitioner has not

---

[5] Byrne, U.S. Patent No. 4,961,917, issued Oct. 9, 1990 (Ex. 1110).
[6] Speronello, U.S. Patent No. 5,516,497, issued May 14, 1996 (Ex. 1111).

22

IPR2015-01125
Patent 7,601,662

provided an explanation (other than hindsight) for why a person of ordinary skill in the art would disregard the teachings of Patchett, Byrne, and Speronello, and use Maeshima and Breck's CHA zeolite having a small pore size. *Id.* at 34.

As Petitioner points out, however, Maeshima and Breck disclose the use of a high SAR, copper-loaded CHA zeolite for $NH_3$ SCR of NOx. Pet. 10, 30; Ex. 1103, 18:3–20; Ex. 1102, 1:55–63, 4:6–11, 4:44–53, 6:13–17. Breck teaches that an increased level of silica (i.e., high SAR) in the chabazite zeolites of Maeshima results in improved resistance to sulfur poisoning and hydrothermal stability. Ex. 1108 ¶ 262; Ex. 1103, 4:60–63, 47:44–53.

We credit Dr. Lercher's testimony that zeolites suitable for use in Patchett's system (1) incorporate an active metal such as copper, (2) have an SAR above 10, (3) are resistant to sulfur poisoning, and (4) retain catalytic activity when subject to high temperatures and hydrothermal conditions. Ex. 1108 ¶ 257–260. We also credit Dr. Lercher's explanation that a person of ordinary skill in the art would consider the zeolites of Maeshima and Breck for use in Patchett's system because they possess the aforementioned properties of a catalyst suitable for use in Patchett's system, and relate to NOx abatement technology applied to stationary sources, which, according to Patchett, is "under development for mobile applications." Ex. 1105 ¶ 3; Ex. 1108 ¶¶ 261–262.

As to Patent Owner's arguments regarding pore size, Patchett explains that

> [i]t has been found that zeolites which are highly resistant to sulfate poisoning and provide good activity for both the SCR process and the oxidation of ammonia with oxygen, and which

23

IPR2015-01125
Patent 7,601,662

> retain good activity even when subject to high temperatures, hydrothermal conditions and sulfate poisons, are zeolites which have pores which exhibit a pore diameter of at least about 7 Angstroms and are interconnected in three dimensions.

Ex. 1105 ¶ 66. Although clearly recognizing a correlation between larger pore size and the desired properties of a zeolite catalyst, we do not consider this language in Patchett to require the use of zeolites having a pore size of at least 7 Angstroms. This is consistent with the fact that Speronello, incorporated by reference in Patchett, discloses the use of "medium to large pore zeolites having pore openings of at least about 4 Angstroms in diameter." Ex. 1111, 6:28–30; PO Resp. 26; Ex. 1105 ¶ 65.

We next address Patent Owner's argument that "Byrne teaches away from using copper-exchanged naturally occurring chabazite for the $NH_3$ SCR of NOx." PO Resp. 33. Byrne discloses that "naturally occurring chabazite" showed a reduction in SCR process activity upon exposure to a gas stream containing varying amounts of $SO_2$, and, therefore, promotes the use of a large pore size zeolite framework. Ex. 1110, 4:57–5:26; Ex 2018 ¶ 133. Byrne, however, also teaches that "the utilization of high ratios of silica to alumina is known to enhance acid resistance of the zeolite and to provide enhanced resistance of the zeolite to acid sulfur poisoning." Ex. 1110, 5:39–43. We are thus not persuaded that a person of ordinary skill in the art, upon reading Byrne, "would be led in a direction divergent from the path that was taken by the applicant," namely the use of *high SAR* CHA zeolites to treat engine exhaust. *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1332 (Fed. Cir. 2008). To the contrary, we credit Dr. Lercher's testimony that one of ordinary skill in the art would consider the zeolites resulting from the combined teachings of Maeshima and Breck to be

24

IPR2015-01125
Patent 7,601,662

suitable for use in Patchett's system due to their high SAR. Ex. 1108 ¶ 262; Reply 24; Ex. 1103, 47:44–53.

Thus, despite the fact that the CHA zeolites in Maeshima and Breck have a smaller pore size than those promoted in Patchett, Byrne, and Speronello, we are persuaded by Petitioner's evidence and arguments demonstrating that a person of ordinary skill in the art would be motivated to combine Maeshima, Breck, and Patchett based on the desired properties of suitable catalysts for use in Patchett, and the corresponding properties being shown in the zeolites resulting from the combined teachings of Maeshima and Breck. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) ("A person of ordinary skill is also a person of ordinary creativity, not an automaton.").

For all of the foregoing reasons, based upon consideration of the evidence in this record, we determine that Petitioner has demonstrated, by a preponderance of the evidence, that a person of ordinary skill in the art would have had a reason to combine Maeshima, Breck, and Patchett to arrive at the claimed subject matter.

ii.    *Reasonable Expectation of Success in Combining Maeshima, Breck, and Patchett*

Petitioner argues that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Maeshima, Breck, and Patchett because they all relate to catalytic materials for SCR processes. Pet. 31–32 (citing Ex. 1102, 2:9–21, 3:33–38; Ex. 1105 ¶¶ 1, 18–34); Ex. 1108 ¶¶ 268–270. Petitioner further argues that

> Maeshima explains that its process can be employed at a "gas space velocity of about 2,000 to about 100,000 V/H/V." (Ex. 1102, Maeshima, at 3:25-27.) This range embraces the gas space velocity of the exhaust of an internal combustion engine,

25

IPR2015-01125
Patent 7,601,662

> and would indicate to one of ordinary skill in the art that the
> catalytic process of Maeshima and Breck has applicability
> beyond the treatment of gas streams emitted by stationary
> sources. (*See* Ex. 1108, Lercher Dec. at ¶ 270.)

Pet. 32.

In general, Patent Owner argues that Petitioner and Dr. Lercher
provide only a cursory opinion regarding an expectation of success, and
ignore the reasons stated in the prior art that a CHA material would be
unsuitable for use in Patchett's system. PO Resp. 34–35 (citing Exhibit
1105 ¶ 66; Exhibit 1110, 4:57–5:25; Exhibit 1111, 6:28–59; Ex. 2018 ¶
137). For the reasons discussed above, we find that Maeshima, in
combination with Breck, discloses high SAR, copper-loaded zeolites that are
suitable for use in Patchett's system. We also credit Dr. Lercher's
uncontested testimony regarding applicability of Maeshima beyond the
treatment of gas streams emitted by stationary sources in view of the gas
space velocity range disclosed in Maeshima. Ex. 1108 ¶ 270.

Patent Owner makes a separate argument with regard to claims 13,
18–20, 23, and 24, which require, *inter alia*, disposing the catalyst on a wall
flow filter. For these claims, Patent Owner argues that Dr. Lercher and
Petitioner rely on the disclosure of paragraph 63 of Patchett. PO Resp. 35–
36; Ex. 2018 ¶ 134. According to Patent Owner, paragraph 63 of Patchett
incorporates by reference a patent application (Ex. 1106) that sets forth
specific requirements for the SCR catalyst disposed on a wall flow filter,
namely that it "maintains its SCR catalytic activity even after prolonged
exposure to higher temperatures that are characteristic of filter regeneration.
For example, combustion of the soot fraction of the particulate matter often

26

**Appx144**

IPR2015-01125
Patent 7,601,662

leads to temperatures above 700° C." PO Resp. 36 (quoting Ex. 1106 ¶ 11); Ex. 2018 ¶ 134; Ex. 1105 ¶ 63.

Patent Owner argues that Petitioner does not explain why a person of ordinary skill in the art would have had a reasonable expectation of successfully combining Maeshima and Breck to meet this high temperature requirement. PO Resp. 35. Patent Owner reiterates that a person of ordinary skill in the art would not expect the de-alumination process of Breck to produce a catalytically active zeolite after hydrothermal aging due to the detrimental effects of de-alumination on activity and stability. PO Resp. 29–30, 35–36. Patent Owner further argues that Maeshima explicitly limits the reaction temperature for its SCR catalysts to between 200 °C and 500 °C. *Id.* at 36 (citing Ex. 2018 ¶ 83).

As discussed above, "the person of ordinary skill need only have a reasonable expectation of success of developing the *claimed invention*." *Allergan,* 726 F.3d at 1292 (emphasis added). Claims 13, 18–20, 23, and 24 do not contain a limitation regarding hydrothermal stability, let alone a requirement for thermal stability up to a temperature of 700 °C. Instead, these claims require the catalyst described in claim 1 of the '662 patent be disposed on a wall flow filter.

For the reasons described above, including those addressing Patent Owner's de-alumination argument, we find that Petitioner has established that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Maeshima and Breck to arrive at a zeolite that is catalytically active for the $NH_3$ SCR of NOx as required in claim 1. Furthermore, the combined teachings of Maeshima and Breck demonstrate that high SAR, copper-loaded CHA zeolites can be used to treat

27

IPR2015-01125
Patent 7,601,662

exhaust from a stationary source, which Patchett states is technology being developed for use in mobile applications. Ex. 1105 ¶ 3; Ex. 1103, 47:44–47; Ex. 1102, 9–13. In this context, Patchett describes coating a wall flow substrate with a high SAR, copper-loaded zeolite catalyst as part of an emissions treatment system for reducing NOx emissions in the exhaust stream produced from an internal combustion engine. Ex. 1105 ¶¶ 1, 25. These teachings in the prior art provide a reasonable expectation of success in achieving the subject matter of claims 13, 18–20, 23, and 24.

Additionally, as Petitioner points out, Breck indicates that high SAR chabazites demonstrate improved hydrothermal stability. Ex. 1103, 47:44–53. Moreover, in the section titled "SCR Catalyst Compositions," Patchett states that its copper-exchanged zeolites that are used as coatings "typically have an effective SCR catalyst operating temperature range of from 150 to 550 °C." Ex. 1105 ¶ 69. We note that this temperature range corresponds to the operating temperature range expressly disclosed in Maeshima. Ex. 1102, 2:48–53. This evidence further suggests that a person of ordinary skill in the art would have had a reasonable expectation of success even though neither Maeshima nor Breck explicitly states that its zeolites are able to be used at temperatures above 700 °C. *See* Reply 25.

Accordingly, Petitioner has demonstrated by a preponderance of the evidence that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Maeshima, Breck, and Patchett to arrive at the claimed subject matter.

### 3.    *Grounds Based on Dedecek.*

Petitioner argues that the subject matter of claims 1, 2, 5, 6, and 30 would have been obvious over Dedecek in view of Breck, and the subject

28

IPR2015-01125
Patent 7,601,662

matter of claims 12–24 and 32–38 would have been obvious over Dedecek in view of Breck and Patchett. Pet. 42–54. Petitioner provides detailed explanations and the declaration of Dr. Lercher to show how the references disclose or suggest each claim limitation. *Id.* at 42–54.

Petitioner contends that "Dedecek generally relates to copper containing aluminosilicate zeolites that have 'high catalytic activity in NO . . . and $N_2O$ decomposition' and can be used in the 'selective catalytic reduction (SCR) of NO with ammonia . . . .'" *Id.* at 42 (quoting Ex. 1107, 63); *see also id.* at 43 (relying on this sentence to support the argument that Dedecek discloses the requirement in claim 1 that the catalyst be "effective to promote the reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$ selectively"). Additionally, Petitioner points out that Dedecek identifies chabazite zeolite catalytic materials having Cu/Al ratios of 0.28, 0.32, 0.34, and 0.38. *Id.*

As to Breck, Petitioner reiterates its arguments made with regard to the combination of Maeshima and Breck discussed above, namely that Breck discloses high-silica chabazites with SARs in the range of 8 to 20, and that these zeolites are highly stable and can be used in the same catalytic processes as their lower silica precursors. *Id.* at 42–43.

Petitioner contends that a person of ordinary skill in the art would have been motivated to combine Dedecek with Breck, and Dedecek with Breck and Patchett, to arrive at the subject matter of the claims, and would have done so with a reasonable expectation of success, again primarily relying on arguments similar to those made regarding the combination of Maeshima and Breck discussed above. *Id.* at 46–47.

29

IPR2015-01125
Patent 7,601,662

Patent Owner challenges Petitioner's combination of Dedecek and Breck, arguing that neither Dedecek nor Breck teach using a copper chabazite for $NH_3$ SCR of NOx. Tr. 91:4–10; PO Resp. 30–31. According to Dr. Tsapatsis, "Dedecek is a paper directed to study of the siting of Cu+ ions in the chabazite framework. Breck is a patent directed to a process for increasing the SAR of a zeolite by de-alumination." Ex. 2018 ¶ 126; PO Resp. 30–31. Patent Owner also notes that Dr. Lercher admitted at his deposition that "Dedecek is about materials; he does not address reactions." PO Resp. 30 (citing Ex. 2027, 79:17–18).

As Patent Owner points out, "Petitioner places great emphasis on the first sentence in the Introduction of Dedecek" (PO Resp. 22), which states that "[z]eolites containing Cu ions attract attention owing to their high catalytic activity in NO [1-5] and $N_2O$ decomposition [6] and selective catalytic reduction (SCR) of NO with ammonia [7-9] and hydrocarbons [10-12]" (Ex. 1107, 1). It is undisputed that references 7–9 cited in this statement are directed to the Cu-ZSM-5 zeolite, which does not have the CHA framework. PO Resp. 23; Tr. 90:25–91: *see* Ex. 2028; Ex. 2029; Ex. 2030. The discussion of chabazite in Dedecek relates only to the siting and coordination of $Cu^+$ zeolites. *See* Ex. 1107, 1.

Breck indicates that its zeolite compositions can be used in "ion-exchange and catalytic processes in which their less siliceous precursors have heretofore been suitably employed" (Ex. 1103, 47:44–47), but does not explicitly reference $NH_3$ SCR of NOx. Because neither Dedecek nor Breck link CHA zeolites with the $NH_3$ SCR of NOx (as Maeshima does, for example), we agree with Patent Owner neither Dedecek nor Breck disclose or suggest using a copper chabazite for ammonia SCR.

30

IPR2015-01125
Patent 7,601,662

Based upon consideration of the evidence in this record, we determine that Petitioner has not demonstrated by a preponderance of the evidence that a person of ordinary skill in the art would have had a reason to combine Dedecek and Breck. Accordingly, we find that Petitioner has not demonstrated that the subject matter of claims 1, 2, 5, 6, and 30 would have been obvious over Dedecek in view of Breck, or the subject matter of claims 12–24 and 32–38 would have been obvious over Dedecek in view of Breck and Patchett.

### 4.    *Objective Indicia of Non-obviousness*

Patent Owner argues that objective indicia of skepticism, unexpected results, and commercial success direct a finding of non-obviousness. PO Resp. 38–55.

#### a. *Commercial Success*

Patent Owner states that it sells the claimed catalyst for use in the $NH_3$ SCR of NOx in diesel engines.[7] PO Resp. 45. Patent Owner contends that the global market for SCR catalysts in diesel engines has doubled in the last five years, and provides evidence of "the estimated market share that has been satisfied with the claimed CuCHA catalyst." PO Resp. 46 (citing Ex. 2034 ¶¶ 6–7).

Patent Owner's evidence of the percentage of the global market satisfied by the claimed catalyst is based on sales of "BASF CuCHA catalysts" and "estimates regarding the sales by BASF licensees." Ex. 2034 ¶ 7. As Petitioner correctly notes, and Patent Owner admits, there is no

---

[7] Patent Owner argues that the catalyst it sells is coextensive with the claims of the '662 patent, and, therefore, the commercial success is presumed to be due to the patented invention. PO Resp. 46

31

IPR2015-01125
Patent 7,601,662

evidence in the record demonstrating that the sales by BASF licensees involve products that fall within the scope of the claims. Reply 18; Tr. 88:21–22. Moreover, Patent Owner has not provided evidence demonstrating what percentage of sales can be attributed to "BASF CuCHA catalysts" as opposed to "sales by BASF licensees." Ex. 2034 ¶ 7; Reply 18; Tr. 88:15–89:6. We, therefore, agree with Petitioner that "it is impossible to determine from the evidence [Patent Owner] has presented what percentage of the global SCR market is actually accounted for by claimed products." Reply 18–19. The lack of specific proof regarding sales of claimed products and market share renders Patent Owner's evidence insufficient for purposes of establishing commercial success. *See In re Applied Materials, Inc.*, 692 F.3d 1289, 1300 (Fed. Cir. 2012); *see also In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) ("The more probative evidence of commercial success relates to whether the sales represent a substantial quantity in th[e] market.").

> b. *Skepticism*

Patent Owner cites to several documents as evidence of "[s]kepticism about the viability of copper exchanged zeolites." PO Resp. 40–42 (citing Ex. 2012; Ex. 2001; Ex. 2026; Ex. 2021).

Petitioner argues that the documents Patent Owner cites address the commercial viability of copper exchanged zeolites based on hydrothermal stability. Reply 12–13. Petitioner notes that the challenged claims do not require a commercially viable catalyst or a catalyst that exhibits any particular degree of hydrothermal stability. *Id.* at 12.

We have reviewed Patent Owner's evidence of skepticism and find it to be insufficient, as it fails to show the skepticism has a sufficient nexus to

32

IPR2015-01125
Patent 7,601,662

the claimed invention. *See Muniauction, Inc. v. Thompson Corp.*, 532 F.3d 1318, 1327–28 (Fed. Cir. 2008) (indicating that the requirement of a nexus between the claimed invention and evidence of secondary considerations applies equally to skepticism). To the contrary, the evidence of record shows that doubts about hydrothermal stability and the resulting commercial applicability of copper-zeolite catalysts prompted the skepticism.[8] For example, the Centi paper published in 1995 states that "for practical applications their *low hydrothermal stability* may prevent a *commercial use.*" Ex. 2012, 184 (emphasis added). According to the declaration of Mr. Roth, a Department of Energy grant proposal was wait-listed because "Cu-exchanged zeolites lack the *hydrothermal stability* needed to be *commercially viable* for SCR of NOx with ammonia for diesel engines." Ex. 2001 ¶ 4 (emphasis added).[9] The other articles Patent Owner cites similarly refer to the lack of a "commercial breakthrough" and limited hydrothermal stability. PO. Resp. 40–41 (citing Ex. 2026, 182; Ex. 2021, 218). As Petitioner points out, the claims require only a CHA zeolite that is effective for the $NH_3$ SCR of NOx.

---

[8] We find this evidence sufficient to rebut any presumption of a nexus between the claimed invention and skepticism that may exist based upon Patent Owner's argument that it is entitled to such a presumption with regard to commercial success. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1330 n. 4 (Fed. Cir. 2016).

[9] This evidence contradicts Patent Owner's argument that "[t]he skepticism was whether you could use a zeolite catalyst in a diesel engine." Tr. 76:21–23. The evidence of record indicates that the skepticism was based on the *hydrothermal stability* and *commercial viability* of catalysts used with diesel engines. We recognize that certain claims (e.g., 21–24) recite using the claimed catalyst downstream from a diesel engine. These claims, however, do not require a specific level of catalyst activity, hydrothermal stability, or commercial viability.

33

IPR2015-01125
Patent 7,601,662

### c. *Unexpected Results*

Patent Owner contends that "[t]he unexpected properties of the claimed CuCHA catalyst for the SCR of NOx are demonstrated by substantial evidence." PO Resp. 42. As evidence of unexpected results, Patent Owner relies on the performance properties (e.g., low temperature activity, high temperature activity and degradation due to hydrothermal aging) of Examples 2, 3, and 4 presented in Table 1 of the '662 patent. PO Resp. 42–43; Ex. 1101, 13:15–37, Table 1.

These Examples each involve a catalyst having a SAR of 30, and a Cu/Al ratio in the range of 0.33–0.44. Ex. 1101, 11:39–12:19, Table 1; Reply 14. Claim 1 of the '662 patent, however, encompasses SAR values from about 15 to about 150, and Cu/Al ratios from about 0.25 to about 1. Patent Owner admits that "the examples in table 1 are not of the same scope as claim 1." Tr. 86:23–24. Thus, it is undisputed that Patent Owner's evidence of unexpected results is not commensurate in scope with independent claim 1. Instead, Patent Owner argues that the Examples in Table 1 "line up with the dependent claims." *Id.* at 86:24–25.

The claims of the subject patent must be shown to be commensurate in scope with the asserted showing of unexpected results advanced by Patent Owner. *See In re Grasselli*, 713 F.2d 731, 743 (Fed. Cir. 1983); *In re Peterson*, 315 F.3d 1325, 1330 (Fed. Cir. 2003) ("the applicant's showing of unexpected results must be commensurate in scope with the claimed range"); *In re Clemens*, 622 F.2d 1029, 1035 (CCPA 1980) ("In order to establish unexpected results for a claimed invention, objective evidence of non-obviousness must be commensurate in scope with the claims which the evidence is offered to support."). Patent Owner, however, does not specify

34

IPR2015-01125
Patent 7,601,662

which dependent claims "line up" with Examples 2, 3, and 4 for purposes of establishing unexpected results, or provide any further information or argument.

Patent Owner also directs us to Byrne and a 2015 paper as additional evidence of unexpected results. PO Resp. 44–45. In response, Petitioner notes that, in view of at least Breck, a person of ordinary skill in the art "would not have found it unexpected that a CHA zeolite could be useful as a catalyst." Reply 16. For the reasons discussed above, we agree. Petitioner also correctly criticizes Patent Owner's reliance on an article from 2015 to show the claimed process yielded unexpected results. *See Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc.*, 769 F.3d 1339, 1340–41 (Fed. Cir. 2014) (per curiam) (Dyk, J., concurring) ("This case presents a question of obviousness, in particular whether evidence postdating the invention can be used to establish unexpected results. The panel holds that it cannot be considered in the circumstances of this case."). Even if we did consider it, Patent Owner has not explained sufficiently why an article debating the mechanism behind *why* CHA zeolites work for $NH_3$ SCR constitutes evidence of unexpected results regarding *how well* the CHA zeolites perform, especially considering the mechanism is not recited in the claims.

In view of the foregoing, we determine that Patent Owner has not offered sufficient evidence to establish unexpected results.

## IV. CONCLUSION

Based on the undisputed evidence that all elements of claim 1, 2, 5, 6, 12–24, 30, and 32–38 are in the prior art, our determination that a person of ordinary skill in the art would have had reason to combine the references with a reasonable expectation of success, and the lack of any persuasive

35

IPR2015-01125
Patent 7,601,662

evidence of objective indicia of nonobviousness, we determine that the subject matter of claims 1, 2, 5, 6, 12–24, 30, and 32–38 would have been obvious to a person of ordinary skill in the art.

## V. PETITIONER'S MOTION TO EXCLUDE EVIDENCE

Petitioner filed a Motion to Exclude (Paper 43) in which Petitioner seeks to exclude several paragraphs from the Declaration of Dr. Tsapatsis (Ex. 2018), paragraph 11 of the Declaration of Dr. Moini (Ex. 2019), and paragraph 7 of the Declaration of Olivia Schmidt (Ex. 2034). Paper 43, 1.

We do not reach the merits of Petitioner's Motion to Exclude because, as explained above, even if the disputed evidence is considered, Petitioner has shown by a preponderance of evidence that claims 1, 2, 5, 6, 12–24, 30, and 32–38 are unpatentable as obvious. Accordingly, Petitioner's Motion to Exclude is dismissed as moot.

## VI. MOTION TO SEAL

Patent Owner filed an unopposed Combined Motion to Seal and Motion for Protective Order. Paper 24. In its motion, Patent Owner seeks entry of a proposed Protective Order that "is consistent with the Default Protective Order of this Board with certain edits applicable to this case." Paper 24, 5. Patent Owner moves to seal portions of Exhibits 2019 and 2034, and asserts that these exhibits contain non-public technical and business information that is confidential to Patent Owner. Paper 24, 3. Petitioner filed a Motion to Seal Exhibit 1120, which contains deposition testimony relating to the confidential information in Exhibit 2034. Paper 39, 1. Patent Owner filed redacted versions of Exhibits 2019 and 2034, and Petitioner filed a redacted version of Exhibit 1120.

36

IPR2015-01125
Patent 7,601,662

Upon review, good cause exists to enter the proposed Protective Order and seal the above information as set forth in the above motions.

## VII. ORDER

For the reasons given, it is hereby

ORDERED that claims 1, 2, 5, 6, 12–24, 30, and 32–38 of U.S. Patent No. 7,601,662 B2 are *unpatentable*;

FURTHER ORDERED that Petitioner's Motion to Exclude Evidence (Paper 43) is *dismissed as moot*;

FURTHER ORDERED that Patent Owner's Motion to Seal and Motion for Protective Order (Paper 24) is *granted*;

FURTHER ORDERED that Petitioner's Motion to Seal (Paper 39) is *granted*; and

FURTHER ORDERED that, because this is a Final Decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

37

IPR2015-01125
Patent 7,601,662


PETITIONER:

Elizabeth Gardner
Richard L. DeLucia
Orrick, Herrington & Sutcliffe LLP
rdelucia@kenyon.com
E1APTABDocket@orrick.com


PATENT OWNER:

Brian E. Ferguson
Anish Desai
Weil Gotshal & Manges LLP
Brian.ferguson@weil.com
anish.desai@weil.com

38

US007601662B2

(12) **United States Patent**      (10) **Patent No.:**      **US 7,601,662 B2**

Bull et al.                          (45) **Date of Patent:**        **Oct. 13, 2009**

(54) **COPPER CHA ZEOLITE CATALYSTS**

(75) Inventors: **Ivor Bull**, Ludwigshafen (DE);
**Wen-Mei Xue**, Dayton, NJ (US);
**Patrick Burk**, Freehold, NJ (US); **R.
Samuel Boorse**, Skillman, NJ (US);
**William M. Jaglowski**, West Orange, NJ
(US); **Gerald S. Koermer**, Basking
Ridge, NJ (US); **Ahmad Moini**,
Princeton, NJ (US); **Joseph A. Patchett**,
Basking Ridge, NJ (US); **Joseph C.
Dettling**, Howell, NJ (US); **Matthew T.
Caudle**, Hamilton, NJ (US)

(73) Assignee: **BASF Catalysts LLC**, Florham Park, NJ
(US)

( * ) Notice:     Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

(21) Appl. No.: **12/038,423**

(22) Filed:     **Feb. 27, 2008**

(65)          **Prior Publication Data**

US 2008/0226545 A1     Sep. 18, 2008

**Related U.S. Application Data**

(60) Provisional application No. 60/891,835, filed on Feb.
27, 2007.

(51) **Int. Cl.**
*B01J 29/06*          (2006.01)

(52) **U.S. Cl.** ........................ **502/60**; 502/208; 502/214;
423/700

(58) **Field of Classification Search** .................. 502/60,
502/208, 214; 423/700
See application file for complete search history.

(56)           **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,220,632 | A | 9/1980 | Pence et al. |
| 4,440,871 | A | 4/1984 | Lok et al. |
| 4,567,029 | A | 1/1986 | Wilson et al. |
| 4,735,927 | A | 4/1988 | Gerdes et al. |
| 4,735,930 | A | 4/1988 | Gerdes et al. |
| 4,861,743 | A | 8/1989 | Flank et al. |
| 4,867,954 | A | 9/1989 | Staniulis et al. |
| 4,874,590 | A | 10/1989 | Staniulis et al. |
| 4,961,917 | A | 10/1990 | Byrne |
| 5,024,981 | A | 6/1991 | Speronello et al. |
| 5,041,270 | A | 8/1991 | Fujitani et al. |
| 5,096,684 | A | 3/1992 | Guth et al. |
| 5,233,117 | A | 8/1993 | Barger |
| 5,417,949 | A | 5/1995 | McWilliams et al. |
| 5,477,014 | A | 12/1995 | Dunne et al. |
| 5,516,497 | A | 5/1996 | Speronello et al. |
| 5,589,147 | A | 12/1996 | Farnos et al. |
| 5,589,149 | A | 12/1996 | Garland et al. |
| 6,162,415 | A | 12/2000 | Liu et al. |
| 6,171,556 | B1 | 1/2001 | Burk et al. |
| 6,316,683 | B1 | 11/2001 | Janssen et al. |
| 6,319,487 | B1 | 11/2001 | Liu et al. |

| | | | |
|---|---|---|---|
| 6,350,298 | B1 | 2/2002 | Su et al. |
| 6,376,562 | B1 | 4/2002 | Ihm et al. |
| 6,395,674 | B1 | 5/2002 | Fung et al. |
| 6,503,863 | B2 | 1/2003 | Fung et al. |
| 6,569,394 | B2 | 5/2003 | Fischer et al. |
| 6,685,905 | B2 | 2/2004 | Mertens et al. |
| 6,696,032 | B2 | 2/2004 | Mertens et al. |
| 6,709,644 | B2 | 3/2004 | Zones et al. |
| 6,974,889 | B1 | 12/2005 | Verduijn et al. |
| 7,014,827 | B2 | 3/2006 | Mertens et al. |
| 7,049,261 | B2 | 5/2006 | Nam et al. |
| 7,094,389 | B2 | 8/2006 | Cao et al. |
| 7,229,597 | B2 | 6/2007 | Patchett et al. |
| 2002/0016252 | A1* | 2/2002 | Takahashi et al. ............. 502/71 |
| 2003/0069449 | A1* | 4/2003 | Zones et al. ................. 564/463 |
| 2004/0209760 | A1 | 10/2004 | Yoshikawa |
| 2005/0031514 | A1 | 2/2005 | Patchett et al. |
| 2005/0096214 | A1 | 5/2005 | Janssen et al. |
| 2006/0039843 | A1 | 2/2006 | Patchett et al. |
| 2006/0115403 | A1 | 6/2006 | Yuen |
| 2007/0000243 | A1 | 1/2007 | Liu et al. |
| 2007/0043249 | A1 | 2/2007 | Cao et al. |
| 2007/0149385 | A1 | 6/2007 | Liu et al. |
| 2007/0286798 | A1 | 12/2007 | Cao et al. |
| 2008/0241060 | A1 | 10/2008 | Li et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 3941541 A1 | 6/1990 |
| DE | 10059520 | 5/2001 |
| EP | 0396085 | 11/1990 |
| EP | 0624393 A1 | 11/1994 |
| EP | 0773057 A1 | 5/1997 |
| EP | 0950800 A2 | 10/1999 |
| EP | 1837489 A1 | 9/2007 |
| JP | 05-057194 | 12/1992 |
| JP | 6-48725 | 2/1994 |
| WO | WO-99/56859 | 11/1999 |
| WO | WO-03/035549 A1 | 5/2003 |
| WO | WO-2007/004774 A1 | 1/2007 |

(Continued)

OTHER PUBLICATIONS

Li, Yuejin et al., "Selective NH3 Oxidation to N2 in a Wet Stream",
*Applied Catalysis B: Environmental 13*, (1997), p. 131-139.

(Continued)

*Primary Examiner*—Elizabeth D Wood
(74) *Attorney, Agent, or Firm*—Scott S. Servilla; Diehl
Servilla LLC; Melanie L. Brown

(57)          **ABSTRACT**

Zeolite catalysts and systems and methods for preparing and
using zeolite catalysts having the CHA crystal structure are
disclosed. The catalysts can be used to remove nitrogen
oxides from a gaseous medium across a broad temperature
range and exhibit hydrothermal stable at high reaction tem-
peratures. The zeolite catalysts include a zeolite carrier hav-
ing a silica to alumina ratio from about 15:1 to about 256:1
and a copper to alumina ratio from about 0.25:1 to about 1:1.

**38 Claims, 11 Drawing Sheets**

Umicore AG & Co. KG
Exhibit 1001
Page 1 of 28

**US 7,601,662 B2**

Page 2

### FOREIGN PATENT DOCUMENTS

| WO | WO-2007/005308 A2 | 1/2007 |
| WO | WO-2008/019585 A1 | 2/2008 |
| WO | WO-2008/118434 A1 | 10/2008 |
| WO | WO-2008/132452 A2 | 11/2008 |

### OTHER PUBLICATIONS

Rebrov, E. V., et al., "Development of the Kinetic Model of Platinum Catalyzed Ammonia Oxidation in a Microreactor", *Chemical Engineering Journal 90*, (2002), p. 61-76.

Baerlocher, CH. et al., "Atlas of Zeolite Framework Types", *Elsevier—Fifth Revised Edition*, (2001), 5 pages.

Medros, F. G., et al., "Dual-Catalyst System to Broaden the Window of Operability in the Reduction of NOx with Ammonia", *Ind. Eng. Chem. Res. 28*, (1989), p. 1171-1177.

Akolekar, Deepak B., et al., "FTIR Investigations of the Absorption and Disproportionation of NO on Cu-Exchanged Silicoaluminophosphate of Type 34", *J. Chem. Soc., Faraday Trans.*, 94(1), (1998), p. 155-160.

Torre-Abreau, C. et al., "Selective Catalytic Reduction of NO on Copper-Exchanged Zeolites: The Role of The Structure of the Zeolite in the Nature of Copper-Active Sites", *Catalysis Today 54*, (1999), p. 407-418.

Prakash, A. M., et al., "Synthesis of SAPO-34: High Silicon Incorporation in the Presence of Morpholine as Template", *J. Chem. Soc. Faraday Trans. 90*(15), (1994), 2291-2296.

Uzunova, Ellie L., et al., "Adsorption of NO on Cu-SAPO-34 and Co-SAPO-34; A Periodic DFT Study", *J. Phys. Chem C 2008*, 2632-2639.

Ishihara, Tatsumi et al., "Thermostable Molecular Sieves, Silicoaluminophosphate (SAPO)-34, for the Removal of NOx with C3H6 in the Coexistence of O2, H2O, and SO2", *Ind. Eng. Chem. Res.*, 36, (1997), 17-22.

Palella, B. I., et al., "On the hydrothermal stability of CuAPSO-34 microporous catalysts for N2O decomposition: a comparison with CuZSM-5", *Journal of Catalysts 217—Academic Press*, (2003), 100-106.

Frache, A. et al., "Spectroscopic characterisation of microporous aluminophosphate materials with potential application in environmental catalysis", *Catalysis Today 77*, (2003), 371-384.

Frache, A. et al., "Synthesis, Spectroscopic and Catalytic Properties of Cobalt and Copper Ions in Aluminophosphates with Chabasite-Like Structure, Studies of the NO Reactivity", *Studies in Surface Science and Catalysis 140*, (2001), 269-277.

Frache, A. et al., "Catalytic DeNOx activity of cobalt and copper ions in microporous MeALPO-34 and MeAPSO-34", *Catalysis Today* 75(2002), 359-365.

Treacy, M.M. J., et al., "Proceedings of the 12th International Zeolite Conference", *Materials Research Society Conference Proceedings IV*, (Jul. 5-10, 1998), 6 pp.

Akolekar, Deepak B., et al., "FTIR investigations of the adsorption and disproportionation of NO on Cu-exchanged silicoaluminophosphate of type 34", *J. Chem. Soc., Faraday Trans.*, 94(1), (1998), 155-160.

Barger, Paul T., et al., "Hydrothermal Stability of SAPO-34 in the Methanol-to-Olefins Process", *Tha Arabian Journal for Science and Engineering*, vol. 21, No. 2, (Apr. 1996), 10 pp.

Marchese, L. et al., "ALPO-34 and SAPO-34 synthesized by using morpholine as templating agent. FTIR and FT-Raman studies of the host-guest and guest-guest interactions within the zeolitic framework", *Microporous and Mesoporous Materials 30*, (1999), 145-153.

Ishihara, Tatsumi et al., "Copper Ion-Exchanged SAPO-34 as a Thermostable Catalyst for Selective Reduction of NO with C3H6", *Journal of Catalysis 169*, Article No. CA971681, (1997), 93-102.

"Fourth International Congress on Catalysis and Automotive Pollution Control", (Apr. 1997), 7 pp.

Palella, B. I., et al., "On the hydrothermal stability of CuAPSO-34 microporous catalysts for N2O decomposition: a comparison with CuZSM-5", *Journal of Catalysis 217*, (2003), 100-106.

Chen, Jiesheng et al., "Silicoaluminophosphate number eighteen (SAPO-18): a new microporous solid acid catalyst", *Catalysis Letters 28*, (1994), 241-248.

Ishihara, Tatsumi et al., "Copper Ion Exchanged Silicoaluminophosphate (SAPO) as a Thermostable Catalyst for Selective Reduction of NOx with Hydrocarbons", *Studies in Surface Science and Datalysis*, vol. 84, (1994), 1493-1500.

Frache, A. et al., "CuAPSO-34 catalysts for N2O decomposition in the presence of H2O. A study of zeolite structure stability in comparison to Cu-SAPO-34 and Cu-ZSM-5", *Topics in Catalysis* vol. 22, Nos. 1/2, (2003), 5 pp.

Zelenka, P. et al., "Exhaust gas afletreatment systems for diesel engines with respect to future emission legislation", 1993, 13 pp.

PCT International Search Report & Written Opinion for PCT/US2008/055140 dated Aug. 11, 2008, 11 pp.

Barthomeuf, Denise "Journal: NATO ASI Series, Series C: Mathematical and Physical Sciences Issue 444", *Generation of acidicity (amount and strength) in silicoaluminophosphates (SAPO zeolites), Examples of SAPO-5*, pp. 375-390, (1994), 17 pp.

Ashtekar, Sunil et al., "Small-Pore Molecular Sieves SAPO-34 and SAPO-44 with Chabazite Structure: A Study of Silicon Incorporation", *J. Phys. Chem.* 1994, 98, (1994),4878-4883.

Ishihara, Tatsumi et al., "Selective Reduction of Nitrogen Monoxide with Propene over Cu-Silico-aluminophosphate (SAPO) under Oxidizing Atmosphere", *The Chemical Society of Japan* (1992), 2119-2122.

"PCT International Search Report for PCT/US2008/055148", 7 pgs, Oct. 2008.

"PCT Written Opinion for PCT/US2008/055148", 6 pgs, Feb. 2007.

Hartmann, Martin et al., "Transition-Metal Ions in Aluminophosphate and Silicoaluminophosphate Molecular Sieves: Location, Interaction with Adsorbates and Catalytic Properties", *Chem. Rev.* 99 (3), (1999), 635-663.

"Chinese Journal of Catalysis", *Thermal and Hydrothermal Stability of SAPO-34 Molecular Sieve*, vol. 17, No. 6, (Nov. 1996), 9 pgs.

PCT International Search Report and Written Opinion in PCT/US2009/032610, (Jul. 16, 2009), 20 pgs.

Machine Translation from EPO for DE 3941541 A1, 8 pgs.

* cited by examiner

Umicore AG & Co. KG
Exhibit 1001
Page 2 of 28



FIG. 1

Umicore AG & Co. KG
Exhibit 1001
Page 3 of 28



FIG. 1A



FIG. 2

Umicore AG & Co. KG
Exhibit 1001
Page 4 of 28



FIG. 3



FIG. 4

Umicore AG & Co. KG
Exhibit 1001
Page 5 of 28



FIG. 5

Umicore AG & Co. KG
Exhibit 1001
Page 6 of 28



# FIG. 5A

Umicore AG & Co. KG
Exhibit 1001
Page 7 of 28



FIG. 5B



FIG. 6

Umicore AG & Co. KG
Exhibit 1001
Page 8 of 28



FIG. 7



FIG. 8

Umicore AG & Co. KG
Exhibit 1001
Page 9 of 28



# FIG. 9

Umicore AG & Co. KG
Exhibit 1001
Page 10 of 28



FIG. 10A



FIG. 10B

Umicore AG & Co. KG
Exhibit 1001
Page 11 of 28



# FIG. 10C

Umicore AG & Co. KG
Exhibit 1001
Page 12 of 28



FIG. 11



FIG. 12

Umicore AG & Co. KG
Exhibit 1001
Page 13 of 28

US 7,601,662 B2

1

# COPPER CHA ZEOLITE CATALYSTS

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims the benefit of priority under 35 U.S.C. § 119(e) to U.S. Patent Application No. 60/891,835, filed Feb. 27, 2007, which is hereby incorporated by reference in its entirety.

## TECHNICAL FIELD

Embodiments of the invention relate to zeolites that have the CHA crystal structure, methods for their manufacture, and catalysts comprising such zeolites. More particularly, embodiments of the invention pertain to copper CHA zeolite catalysts and methods for their manufacture and use in exhaust gas treatment systems.

## BACKGROUND ART

Zeolites are aluminosilicate crystalline materials having rather uniform pore sizes which, depending upon the type of zeolite and the type and amount of cations included in the zeolite lattice, typically range from about 3 to 10 Angstroms in diameter. Both synthetic and natural zeolites and their use in promoting certain reactions, including the selective reduction of nitrogen oxides with ammonia in the presence of oxygen, are well known in the art.

Metal-promoted zeolite catalysts including, among others, iron-promoted and copper-promoted zeolite catalysts, for the selective catalytic reduction of nitrogen oxides with ammonia are known. Iron-promoted zeolite beta has been an effective catalyst for the selective reduction of nitrogen oxides with ammonia. Unfortunately, it has been found that under harsh hydrothermal conditions, such as reduction of NOx from gas exhaust at temperatures exceeding 500° C., the activity of many metal-promoted zeolites begins to decline. This decline in activity is believed to be due to destabilization of the zeolite such as by dealumination and consequent reduction of metal-containing catalytic sites within the zeolite. To maintain the overall activity of NOx reduction, increased levels of the iron-promoted zeolite catalyst must be provided. As the levels of the zeolite catalyst are increased to provide adequate NOx removal, there is an obvious reduction in the cost efficiency of the process for NOx removal as the costs of the catalyst rise.

There is a desire to prepare materials which offer low temperature SCR activity and/or improved hydrothermal durability over existing zeolites, for example, catalyst materials which are stable at temperatures up to at least about 650° C. and higher.

## SUMMARY

Aspects of the invention are directed to zeolites that have the CHA crystal structure (as defined by the International Zeolite Association), catalysts comprising such zeolites, and exhaust gas treatments incorporating such catalysts. The catalyst may be part of an exhaust gas treatment system used to treat exhaust gas streams, especially those emanating from gasoline or diesel engines.

One embodiment of the present invention pertains to copper CHA catalysts and their application in exhaust gas systems such as those designed to reduce nitrogen oxides. In specific embodiments, novel copper chabazite catalysts are provided which exhibit improved NH₃ SCR of NOx. The copper chabazite catalysts made in accordance with one or

2

more embodiments of the present invention provide a catalyst material which exhibits excellent hydrothermal stability and high catalytic activity over a wide temperature range. When compared with other zeolitic catalysts that find application in this field, such as Fe Beta zeolites, copper CHA catalyst materials according to embodiments of the present invention offer improved low temperature activity and hydrothermal stability.

One embodiment of the invention relates to a catalyst comprising a zeolite having the CHA crystal structure and a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25. In a specific embodiment, the mole ratio of silica to alumina is from about 15 to about 256 and the atomic ratio of copper to aluminum is from about 0.25 to about 0.50. In a more specific embodiment, the mole ratio of silica to alumina is from about 25 to about 40. In an even more specific embodiment, the mole ratio of silica to alumina is about 30. In one particular embodiment, the atomic ratio of copper to aluminum is from about 0.30 to about 0.50. In a specific embodiment, the atomic ratio of copper to aluminum is about 0.40. In a specific embodiment, the mole ratio of silica to alumina is from about 25 to about 40 and the atomic ratio of copper to aluminum is from about 0.30 to about 0.50. In another specific embodiment, the silica to alumina is about 30 and the atomic ratio of copper to alumina is about 0.40.

In a particular embodiment, the catalyst contains ion-exchanged copper and an amount of non-exchanged copper sufficient to maintain NOx conversion performance of the catalyst in an exhaust gas stream containing nitrogen oxides after hydrothermal aging of the catalyst. In one embodiment, the NOx conversion performance of the catalyst at about 200° C. after aging is at least 90% of the NOx conversion performance of the catalyst at about 200° C. prior to aging. In a particular embodiment, the catalyst contains at least about 2.00 weight percent copper oxide.

In at least one embodiment, the catalyst is deposited on a honeycomb substrate. In one or more embodiments, the honeycomb substrate comprises a wall flow substrate. In other embodiments, the honeycomb substrate comprises a flow through substrate. In certain embodiments, at least a portion of the flow through substrate is coated with CuCHA adapted to reduce oxides of nitrogen contained in a gas stream flowing through the substrate. In a specific embodiment, at least a portion of the flow through substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.

In embodiments that utilize a wall flow substrate, at least a portion of the wall flow substrate is coated with CuCHA adapted to reduce oxides of nitrogen contained in a gas stream flowing through the substrate. In other embodiments, at least a portion of the wall flow substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.

In a specific embodiment, a catalyst article comprises a honeycomb substrate having a zeolite having the CHA crystal structure deposited on the substrate, the zeolite having a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25 and containing an amount of free copper exceeding ion-exchanged copper. In one embodiment, the free copper is present in an amount sufficient to prevent hydrothermal degradation of the nitrogen oxide conversion of the catalyst. In one or more embodiments, the free copper prevents hydrothermal degradation of the nitrogen oxide conversion of the catalyst upon hydrothermal aging. The catalyst may further comprise a

Umicore AG & Co. KG
Exhibit 1001
Page 14 of 28

US 7,601,662 B2

| 3 | 4 |

binder. In particular embodiments, the ion-exchanged copper is exchanged using copper acetate.

Other aspects of the invention relate to exhaust gas treatment systems incorporating catalysts of the type described above. Still other aspects relate to a process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen wherein said process comprises contacting the gas stream with the catalyst described above.

Another aspect pertains to an exhaust gas treatment system comprising an exhaust gas stream containing NOx, and a catalyst described above effective for selective catalytic reduction of at least one component of NOx in the exhaust gas stream. Still another aspect pertains to an exhaust gas treatment system comprising an exhaust gas stream containing ammonia and a catalyst as described above effective for destroying at least a portion of the ammonia in the exhaust gas stream.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures for CuCHA prepared according to the methods of Example 1;

FIG. 1A is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures for CuCHA prepared according to the methods of Examples 1 and 1A;

FIG. 2 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures, for CuCHA prepared according to the methods of Example 2;

FIG. 3 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures for CuCHA prepared according to the methods of Example 3;

FIG. 4 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures for CuCHA prepared according to the methods of Example 4;

FIG. 5 is a graph depicting effects of CO, propene, n-octane and water on the CuCHA SCR activity at various temperatures;

FIG. 5A is a graph showing the amount of HCs that are stored, released, deposited as coke and burnt-off coke for a sample tested in accordance with Example 12A;

FIG. 5B is a bar chart showing hydrocarbon performance of CuCHA compared with CuY and Fe beta zeolites in accordance with Example 12A;

FIG. 6 is a graph depicting emissions of $NH_3$, NOx (=NO+ $NO_2$), $N_2O$, and $N_2$ from the AMOX catalyst outlet, given as ppm on a nitrogen atom basis prepared and aged according to the method of Examples 13 and 14;

FIG. 7 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures for CuCHA prepared according to the methods of Example 16;

FIG. 8 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated

(ppm) of CuCHA catalyst as a function of reaction temperatures, for CuCHA prepared according to the methods of Example 17;

FIG. 9 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures for CuCHA prepared according to the methods of Example 18;

FIGS. 10A, 10B, and 10C are schematic depictions of three exemplary embodiments of the emissions treatment system of the invention;

FIG. 11 is UV/VIS of Example 22 and 22A; and

FIG. 12 is $^{27}Al$ MAS NMR spectra of Example 22 and 22A, compared with CHA and aged CHA samples.

DETAILED DESCRIPTION

Before describing several exemplary embodiments of the invention, it is to be understood that the invention is not limited to the details of construction or process steps set forth in the following description. The invention is capable of other embodiments and of being practiced or being carried out in various ways.

In one embodiment of the invention, zeolites having the CHA structure such as chabazite are provided. In one or more embodiments, a zeolite having the CHA crystal structure and a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25 is provided. In specific embodiments, the mole ratio of silica to alumina is about 30 and the atomic ratio of copper to aluminum is about 0.40. Other zeolites having the CHA structure, include, but are not limited to SSZ-13, LZ-218, Linde D, Linde R, Phi, ZK-14, and ZYT-6.

Synthesis of the zeolites having the CHA structure can be carried out according to various techniques known in the art. For example, in a typical SSZ-13 synthesis, a source of silica, a source of alumina, and an organic directing agent are mixed under alkaline aqueous conditions. Typical silica sources include various types of fumed silica, precipitated silica, and colloidal silica, as well as silicon alkoxides. Typical alumina sources include boehmites, pseudo-boehmites, aluminum hydroxides, aluminum salts such as aluminum sulfate, and aluminum alkoxides. Sodium hydroxide is typically added to the reaction mixture, but is not required. A typical directing agent for this synthesis is adamantyltrimethylammonium hydroxide, although other amines and/or quaternary ammonium salts may be substituted or added to the latter directing agent. The reaction mixture is heated in a pressure vessel with stirring to yield the crystalline SSZ-13 product. Typical reaction temperatures are in the range of 150 and 180° C. Typical reaction times are between 1 and 5 days.

At the conclusion of the reaction, the product is filtered and washed with water. Alternatively, the product may be centrifuged. Organic additives may be used to help with the handling and isolation of the solid product. Spray-drying is an optional step in the processing of the product. The solid product is thermally treated in air or nitrogen. Alternatively, each gas treatment can be applied in various sequences, or mixtures of gases can be applied. Typical calcination temperatures are in the 400° C. to 700° C. range.

CuCHA zeolite catalysts in accordance with one or more embodiments of the invention can be utilized in catalytic processes which involve oxidizing and/or hydrothermal conditions, for example in temperatures in excess of about 600° C., for example, above about 700° C. and in the presence of about 10% water vapor. More specifically, it has been found that CuCHA zeolite catalysts which have been prepared in

Umicore AG & Co. KG
Exhibit 1001
Page 15 of 28

US 7,601,662 B2

5

accordance with embodiments of the invention have increased hydrothermal stability compared to CuY and CuBeta zeolites. CuCHA zeolite catalysts prepared in accordance with embodiments of the invention yield improved activity in the selective catalytic reduction of NOx with ammonia, especially when operated under high temperatures of at least about 600° C., for example, about 800° C. and higher, and high water vapor environments of about 10% or more. CuCHA has high intrinsic activity that enables use of lower amounts of catalyst material, which in turn should reduce backpressure of honeycomb substrates coated with washcoats of CuCHA catalysts. In one or more embodiments, hydrothermal aging refers to exposure of catalyst to a temperature of about 800° C. in a high water vapor environments of about 10% or more, for at least about 5 to about 25 hours, and in specific embodiments, up to about 50 hours.

Embodiments of this invention also pertain to a process for abatement of NO$_x$ in an exhaust gas stream generated by an internal combustion engine utilizing CuCHA zeolite catalysts having a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25. Other embodiments pertain to SCR catalysts comprising a CuCHA zeolite catalyst having a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25, and exhaust gas treatment systems incorporating CuCHA zeolite catalysts. Still other embodiments pertain to ammonia oxidation (AMOX) catalysts and exhaust gas treatment systems incorporating AMOX catalyst comprising a CuCHA zeolite catalyst having a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25. According to one or more embodiments, catalysts and systems utilize CuCHA catalysts having ion-exchanged copper and sufficient excess free copper to prevent thermal degradation of the catalysts when operated under high temperatures of at least about 600° C., for example, about 800° C. and higher, and high water vapor environments of about 10% or more.

Experimentation has indicated that improved performance of catalysts in accordance with embodiments of the invention is associated with Cu loading. While Cu can be exchanged to increase the level of Cu associated with the exchange sites in the structure of the zeolite, it has been found that it is beneficial to leave non-exchanged Cu in salt form, for example, as CuSO$_4$ within the zeolite catalyst. Upon calcination, the copper salt decomposes to CuO, which may be referred to herein as "free copper" or "soluble copper." According to one or more embodiments, this free Cu is both active and selective, resulting in low N$_2$O formation when used in the treatment of a gas stream containing nitrogen oxides. Unexpectedly, this "free" Cu has been found to impart greater stability in catalysts subjected to thermal aging at temperatures up to about 800° C.

While embodiments of the invention are not intended to be bound by a particular principle, it is believed that the relatively small channel openings of CHA do not permit large molecular weight hydrocarbons (HCs) typical of diesel fuel to enter and adsorb within the CuCHA structure. Unlike other zeolites like Beta or ZSM5, CHA catalysts prepared according to embodiments of the invention have a relatively low affinity for adsorbing these large molecular weight HC species. This is a beneficial property for use in selective catalytic reduction (SCR) catalysts.

In systems that utilize an SCR downstream from a diesel oxidation catalyst (DOC), the properties of the CuCHA catalysts provide one or more beneficial results according to embodiments of the invention. During start-up and prolonged low temperature operation, the SCR only or a diesel oxidation

6

catalyst (DOC) or DOC and catalyzed soot filter (CSF) upstream of the CuCHA SCR are not fully activated to oxidize the HCs. In accordance with one or more embodiments, because the CuCHA SCR catalyst is not influenced by HCs at low temperature, it remains active over a wider range of the low temperature operation window. According to one or more embodiments, low temperature refers to temperatures about 250° C. and lower.

According to one or more embodiments, the CuCHA catalysts operate within a low temperature window. Over time in an exhaust gas treatment system having a DOC pre-catalyst downstream from the engine followed by an SCR catalyst and a CSF, or a DOC pre-catalyst upstream from a CSF and SCR, the DOC will tend to activate for both low temperature light-off and HC fuel burning. In such systems, it is beneficial if the SCR catalyst can maintain its ability to operate at low temperatures. Since the oxidation catalysts will lose their ability to oxidize NO to NO$_2$, it is useful to provide an SCR catalyst that can treat NO as effectively as NO$_2$. CuCHA catalysts produced in accordance with embodiments of the invention have the ability to reduce NO with NH$_3$ at low temperatures. This attribute can be enhanced by the addition of non-exchanged Cu to the zeolite catalyst.

According to embodiments of the invention, the SCR catalyst can be in the form of self supporting catalyst particles or as a honeycomb monolith formed of the SCR catalyst composition. In one or more embodiments of the invention however, the SCR catalyst composition is disposed as a washcoat or as a combination of washcoats on a ceramic or metallic substrate, for example a honeycomb flow through substrate.

In a specific embodiment of an emissions treatment system the SCR catalyst is formed from a Cu exchanged CHA zeolite material having free copper in addition to ion-exchanged copper.

When deposited on the honeycomb monolith substrates, such SCR catalyst compositions are deposited at a concentration of at least about 0.5 g/in$^3$, for example, about 1.3 g/in$^3$ about 2.4 g/in$^3$ or higher to ensure that the desired NOx reduction is achieved and to secure adequate durability of the catalyst over extended use.

The term "SCR" catalyst is used herein in a broader sense to mean a selective catalytic reduction in which a catalyzed reaction of nitrogen oxides with a reductant occurs to reduce the nitrogen oxides. "Reductant" or "reducing agent" is also broadly used herein to mean any chemical or compound tending to reduce NOx at elevated temperature. In specific embodiments, the reducing agent is ammonia, specifically an ammonia precursor, i.e., urea and the SCR is a nitrogen reductant SCR. However, in accordance with a broader scope of the invention, the reductant can include fuel, particularly diesel fuel and fractions thereof as well any hydrocarbon and oxygenated hydrocarbons collectively referred to as an HC reductant.

Substrates

The catalyst compositions are disposed on a substrate. The substrate may be any of those materials typically used for preparing catalysts, and will usually comprise a ceramic or metal honeycomb structure. Any suitable substrate may be employed, such as a monolithic substrate of the type having fine, parallel gas flow passages extending therethrough from an inlet or an outlet face of the substrate, such that passages are open to fluid flow therethrough (referred to as honeycomb flow through substrates). The passages, which are essentially straight paths from their fluid inlet to their fluid outlet, are defined by walls on which the catalytic material is disposed as a washcoat so that the gases flowing through the passages

Umicore AG & Co. KG
Exhibit 1001
Page 16 of 28

US 7,601,662 B2

7

contact the catalytic material. The flow passages of the monolithic substrate are thin-walled channels, which can be of any suitable cross-sectional shape and size such as trapezoidal, rectangular, square, sinusoidal, hexagonal, oval, circular, etc. Such structures may contain from about 60 to about 400 or more gas inlet openings (i.e., cells) per square inch of cross section.

The substrate can also be a wall-flow filter substrate, where the channels are alternately blocked, allowing a gaseous stream entering the channels from one direction (inlet direction), to flow through the channel walls and exit from the channels from the other direction (outlet direction). AMOX and/or SCR catalyst composition can be coated on the flow through or wall-flow filter. If a wall flow substrate is utilized, the resulting system will be able to remove particulate matter along with gaseous pollutants. The wall-flow filter substrate can be made from materials commonly known in the art, such as cordierite, aluminum titanate or silicon carbide. It will be understood that the loading of the catalytic composition on a wall flow substrate will depend on substrate properties such as porosity and wall thickness, and typically will be lower than loading on a flow through substrate.

The ceramic substrate may be made of any suitable refractory material, e.g., cordierite, cordierite-alumina, silicon nitride, zircon mullite, spodumene, alumina-silica magnesia, zircon silicate, sillimanite, a magnesium silicate, zircon, metalize, alpha-alumina, an aluminosilicate and the like.

The substrates useful for the catalysts of embodiments of the present invention may also be metallic in nature and be composed of one or more metals or metal alloys. The metallic substrates may be employed in various shapes such as corrugated sheet or monolithic form. Suitable metallic supports include the heat resistant metals and metal alloys such as titanium and stainless steel as well as other alloys in which iron is a substantial or major component. Such alloys may contain one or more of nickel, chromium and/or aluminum, and the total amount of these metals may advantageously comprise at least 15 wt. % of the alloy, e.g., 10-25 wt. % of chromium, 3-8 wt. % of aluminum and up to 20 wt. % of nickel. The alloys may also contain small or trace amounts of one or more other metals such as manganese, copper, vanadium, titanium and the like. The surface or the metal substrates may be oxidized at high temperatures, e.g., 1000° C. and higher, to improve the resistance to corrosion of the alloys by forming an oxide layer on the surfaces the substrates. Such high temperature-induced oxidation may enhance the adherence of the refractory metal oxide support and catalytically promoting metal components to the substrate.

In alternative embodiments, one or both of the CuCHA catalyst compositions may be deposited on an open cell foam substrate. Such substrates are well known in the art, and are typically formed of refractory ceramic or metallic materials.

Washcoat Preparation

According to one or more embodiments, washcoats of CuCHA can be prepared using a binder. According to one or more embodiments use of a $ZrO_2$ binder derived from a suitable precursor such as zirconyl acetate or any other suitable zirconium precursor such as zirconyl nitrate. In one embodiment, zirconyl acetate binder provides a catalytic coating that remains homogeneous and intact after thermal aging, for example, when the catalyst is exposed to high temperatures of at least about 600° C., for example, about 800° C. and higher, and high water vapor environments of about 10% or more. Keeping the washcoat intact is beneficial because loose or free coating could plug the downstream CSF causing the backpressure to increase.

8

According to one or more embodiments, CuCHA catalysts can be used as an ammonia oxidation catalyst. Such AMOX catalysts are useful in exhaust gas treatment systems including an SCR catalyst. As discussed in commonly assigned U.S. Pat. No. 5,516,497, the entire content of which is incorporated herein by reference, a gaseous stream containing oxygen, nitrogen oxides and ammonia can be sequentially passed through first and second catalysts, the first catalyst favoring reduction of nitrogen oxides and the second catalyst favoring the oxidation or other decomposition of excess ammonia. As described in U.S. Pat. No. 5,516,497, the first catalysts can be a SCR catalyst comprising a zeolite and the second catalyst can be an AMOX catalyst comprising a zeolite.

As is known in the art, to reduce the emissions of nitrogen oxides from flue and exhaust gases, ammonia is added to the gaseous stream containing the nitrogen oxides and the gaseous stream is then contacted with a suitable catalyst at elevated temperatures in order to catalyze the reduction of nitrogen oxides with ammonia. Such gaseous streams, for example, the products of combustion of an internal combustion engine or of a gas-fueled or oil-fueled turbine engine, often inherently also contain substantial amounts of oxygen. A typical exhaust gas of a turbine engine contains from about 2 to 15 volume percent oxygen and from about 20 to 500 volume parts per million nitrogen oxides, the latter normally comprising a mixture of NO and $NO_2$. Usually, there is sufficient oxygen present in the gaseous stream to oxidize residual ammonia, even when an excess over the stoichiometric amount of ammonia required to reduce all the nitrogen oxides present is employed. However, in cases where a very large excess over the stoichiometric amount of ammonia is utilized, or wherein the gaseous stream to be treated is lacking or low in oxygen content, an oxygen-containing gas, usually air, may be introduced between the first catalyst zone and the second catalyst zone, in order to insure that adequate oxygen is present in the second catalyst zone for the oxidation of residual or excess ammonia.

Metal-promoted zeolites have been used to promote the reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$ selectively over the competing reaction of oxygen and ammonia. The catalyzed reaction of ammonia and nitrogen oxides is therefore sometimes referred to as the selective catalytic reduction ("SCR") of nitrogen oxides or, as sometimes herein, simply as the "SCR process". Theoretically, it would be desirable in the SCR process to provide ammonia in excess of the stoichiometric amount required to react completely with the nitrogen oxides present, both to favor driving the reaction to completion and to help overcome inadequate mixing of the ammonia in the gaseous stream. However, in practice, significant excess ammonia over such stoichiometric amount is normally not provided because the discharge of unreacted ammonia from the catalyst to the atmosphere would itself engender an air pollution problem. Such discharge of unreacted ammonia can occur even in cases where ammonia is present only in a stoichiometric or sub-stoichiometric amount, as a result of incomplete reaction and/or poor mixing of the ammonia in the gaseous stream, resulting in the formation therein of channels of high ammonia concentration. Such channeling is of particular concern when utilizing catalysts comprising monolithic honeycomb-type carriers comprising refractory bodies having a plurality of fine, parallel gas flow paths extending therethrough because, unlike the case of beds of particulate catalyst, there is no opportunity for gas mixing between channels.

According to embodiments of the present invention CuCHA catalysts can be formulated to favor either (1) the SCR process, i.e., the reduction of nitrogen oxides with

Umicore AG & Co. KG
Exhibit 1001
Page 17 of 28

9

ammonia to form nitrogen and $H_2O$, or (2) the oxidation of ammonia with oxygen to form nitrogen and $H_2O$, the selectivity of the catalyst being tailored by controlling the Cu content of the zeolite. U.S. Pat. No. 5,516,497 teaches iron and copper loading levels on zeolites other than copper CHA to obtain selectivity for an SCR reaction and selectivity of the catalyst for the oxidation of ammonia by oxygen at the expense of the SCR process, thereby improving ammonia removal. In accordance with embodiments of the invention, CuCHA copper loading can be tailored to obtain selectivity for SCR reactions and oxidation of ammonia by oxygen and to provide exhaust gas treatment systems utilizing both types of catalyst.

The above principles are utilized by providing a staged or two-zone catalyst in which a first catalyst zone with copper loading on a zeolite, that promotes SCR followed by a second catalyst zone comprising a zeolite having thereon copper loading and/or a precious metal component that promotes oxidation of ammonia. The resultant catalyst composition thus has a first (upstream) zone which favors the reduction of nitrogen oxides with ammonia, and a second (downstream) zone which favors the oxidation of ammonia. In this way, when ammonia is present in excess of the stoichiometric amount, whether throughout the flow cross section of the gaseous stream being treated or in localized channels of high ammonia concentration, the oxidation of residual ammonia by oxygen is favored by the downstream or second catalyst zone. The quantity of ammonia in the gaseous stream discharged from the catalyst is thereby reduced or eliminated. The first zone and the second zones can be on a single catalyst substrate or as separate substrates.

It has been demonstrated that a CuCHA washcoat containing a precious metal, for example, Pt, provides an AMOX catalyst. It is expected that not only was ammonia in gas flowing through the catalyst destroyed, but there was continued removal of NOx by conversion to $N_2$. In a specific embodiment, the zeolite has a ratio of $SiO_2/Al_2O_3$ from about 15 to about 256, and an Al/M ratio between 2 and 10, wherein M represents the total Cu and precious metal. In one embodiment, the precious metal comprises platinum and the platinum content is between 0.02% and 1.0% by weight of the catalyst, and the part loading is from about 0.5 to about 5 $g/in^3$.

According to one or more embodiments of the invention, CuCHA SCR catalysts can be disposed on a wall-flow filter or catalyzed soot filter. CuCHA washcoats can be coated on a porous filter to provide for soot combustion, SCR and AMOX functions.

In one or more embodiments of the present invention, the catalyst comprises a precious metal component, i.e., a platinum group metal component. For example, as noted above, AMOX catalysts typically include a platinum component. Suitable precious metal components include platinum, palladium, rhodium and mixtures thereof. The several components (for example, CuCHA and precious metal component) of the catalyst material may be applied to the refractory carrier member, i.e., the substrate, as a mixture of two or more components or as individual components in sequential steps in a manner which will be readily apparent to those skilled in the art of catalyst manufacture. As described above and in the examples, a typical method of manufacturing a catalyst according to an embodiment of the present invention is to provide the catalyst material as a coating or layer of washcoat on the walls of the gas-flow passages of a suitable carrier member. This may be accomplished by impregnating a fine particulate refractory metal oxide support material, e.g., gamma alumina, with one or more catalytic metal compo-

10

nents such as a precious metal, i.e., platinum group, compound or other noble metals or base metals, drying and calcining the impregnated support particles and forming an aqueous slurry of these particles. Particles of the bulk copper chabazite may be included in the slurry. Activated alumina may be thermally stabilized before the catalytic components are dispersed thereon, as is well known in the art, by impregnating it with, e.g., a solution of a soluble salt of barium, lanthanum, zirconium, rare earth metal or other suitable stabilizer precursor, and thereafter drying (e.g., at 110° C. for one hour) and calcining (e.g., at 550° C. for one hour) the impregnated activated alumina to form a stabilizing metal oxide dispersed onto the alumina. Base metal catalysts may optionally also have been impregnated into the activated alumina, for example, by impregnating a solution of a base metal nitrate into the alumina particles and calcining to provide a base metal oxide dispersed in the alumina particles.

The carrier may then be immersed into the slurry of impregnated activated alumina and excess slurry removed to provide a thin coating of the slurry on the walls of the gas-flow passages of the carrier. The coated carrier is then dried and calcined to provide an adherent coating of the catalytic component and, optionally, the copper CHA material, to the walls of the passages thereof. One or more additional layers may be provided to the carrier. After each layer is applied, or after a the number of desired layers is applied, the carrier is then dried and calcined to provide a finished catalyst member in accordance with one embodiment of the present invention.

Alternatively, the alumina or other support particles impregnated with the precious metal or base metal component may be mixed with bulk or supported particles of the copper chabazite material in an aqueous slurry, and this mixed slurry of catalytic component particles and copper chabazite material particles may be applied as a coating to the walls of the gas-flow passages of the carrier.

In use, the exhaust gas stream can be contacted with a catalyst prepared in accordance with embodiments of the present invention. For example, the CuCHA catalysts made in accordance with embodiments of the present invention are well suited to treat the exhaust of engines, including diesel engines.

Without intending to limit the invention in any manner, embodiments of the present invention will be more fully described by the following examples.

### EXAMPLE 1

A CuCHA powder catalyst was prepared by mixing 100 g of $NH_4^+$-form CHA, having a silica/alumina mole ratio of 30, with 400 mL of a copper(II) sulfate solution of 1.0 M. The pH was adjusted to 3.5 with nitric acid. An ion-exchange reaction between the $NH_4^+$-form CHA and the copper ions was carried out by agitating the slurry at 80° C. for 1 hour. The resulting mixture was then filtered, washed with 800 mL of deionized water in three portions until the filtrate was clear and colorless, which indicated that substantially no soluble or free copper remained in the sample, and the washed sample was dried at 90° C. The above process including the ion-exchange, filtering, washing and drying was repeated once.

The resulting CuCHA product was then calcined at 640° C. in air for 6 hours. The obtained CuCHA catalyst comprised CuO at 2.41% by weight, as determined by ICP analysis. A CuCHA slurry was prepared by mixing 90 g of CuCHA, as described above, with 215 mL of deionized water. The mixture was ball-milled. 15.8 g of zirconium acetate in dilute acetic acid (containing 30% $ZrO_2$) was added into the slurry with agitation.

Umicore AG & Co. KG
Exhibit 1001
Page 18 of 28

US 7,601,662 B2

| 11 | 12 |
|---|---|

The slurry was coated onto 1"D×3"L cellular ceramic cores, having a cell density of 400 cpsi (cells per square inch) and a wall thickness of 6.5 mil. The coated cores were dried at 110° C. for 3 hours and calcined at 400° C. for 1 hour. The coating process was repeated once to obtain a target washcoat loading of 2.4 g/in³.

Nitrogen oxides selective catalytic reduction (SCR) efficiency and selectivity of a fresh catalyst core was measured by adding a feed gas mixture of 500 ppm of NO, 500 ppm of $NH_3$, 10% $O_2$, 5% $H_2O$, balanced with $N_2$ to a steady state reactor containing a 1"D×3"L catalyst core. The reaction was carried at a space velocity of 80,000 hr$^{-1}$ across a 150° C. to 460° C. temperature range.

Hydrothermal stability of the catalyst was measured by hydrothermal aging of the catalyst core in the presence of 10% $H_2O$ at 800° C. for 50 hours, followed by measurement of the nitrogen oxides SCR efficiency and selectivity by the same process as outlined above for the SCR evaluation on a fresh catalyst core.

FIG. 1 is graph showing the NOx conversion and $N_2O$ make or formation versus temperature for this sample. These results are summarized in Table 1. This sample, which did not contain soluble copper prior to calcination as indicated by the color of the filtrate described above, did not show enhanced resistance to thermal aging.

### EXAMPLE 1A

To the coating slurry of Example 1 was added copper sulphate pentahydrate to bring up the total CuO level to 3.2%. The slurry was coated onto monolith and aged and tested for SCR NO$_x$ as outlined above for Example 1, except that the monolith was calcined at 640° C. The catalytic performance was compared with Example 1 in FIG. 1A. The addition of copper sulphate into the coating slurry significantly improved the hydrothermal stability and low temperature activity.

### EXAMPLE 2

A CuCHA powder catalyst was prepared by mixing 17 Kg of NH$_4$$^+$-form CHA, having a silica/alumina mole ratio of 30, with 68 L of a copper(II) sulfate solution of 1.0 M. The pH was adjusted to 3.5 with nitric acid. An ion-exchange reaction between the NH$_4$$^+$-form CHA and the copper ions was carried out by agitating the slurry at 80° C. for 1 hour. The resulting mixture was then filtered and air-dried. The above process including the ion-exchange and filtering was repeated once. Then the wet filter cake was reslurried into 40 L deionized water followed by filtering and drying at 90° C. The resulting CuCHA product was then calcined at 640° C. in air for 6 hours. The obtained CuCHA catalyst comprised CuO at 2.75% by weight.

The slurry preparation, coating and SCR NO$_x$ evaluation were the same as outlined above for Example 1. This example contained free copper, and exhibited improved hydrothermal stability compared with Example 1.

### EXAMPLE 3

CuCHA catalyst comprising 3.36% CuO by weight was prepared by the same process as that in Example 2 followed by an incipient wetness impregnation.

Using the procedure in Example 2, 134 grams of CuCHA at 3.11% CuO by weight was prepared. To this material. was added a copper sulfate solution comprised of 1.64 g of copper sulfate pentahydrate and 105 mL of deionized water. The impregnated sample was dried at 90° C. and calcined at 640° C. for 6 hours.

The slurry preparation, coating and SCR NO$_x$ evaluation are the same as outlined above for Example 1. As shown in FIG. 3, the sample containing more non-exchanged copper exhibited higher low temperature activity in addition to hydrothermal stability.

### EXAMPLE 4

CuCHA catalyst comprising 3.85% CuO by weight was prepared by an incipient wetness impregnation process only. A copper sulfate solution comprised of 18.3 g of copper sulfate pentahydrate and 168 mL of deionized water was impregnated onto 140 g of NH$_4$$^+$-form CHA, having a silica/alumina mole ratio of 30. The impregnated sample was then dried at 90° C. and calcined at 640° C. for 6 hours.

The slurry preparation, coating and SCR NO$_x$ evaluation are the same as outlined above for Example 1. As shown in FIG. 4, Example 4 exhibited a decline in performance between 350° C. and 450° C. after hydrothermal aging.

### EXAMPLE 5

CuCHA catalyst comprising 1.94% CuO by weight was prepared by the same process as that in Example 1, except that this sample was prepared by a single ion-exchange.

The slurry preparation, coating and SCR NO$_x$ evaluation are the same as outlined above for Example 1, except that the hydrothermal stability was not measured.

### EXAMPLE 6

A CuCHA powder catalyst was prepared by mixing 0.2 g of NH$_4$$^+$-form CHA, having a silica/alumina mole ratio of 15, with 16 mL of a copper(II) sulfate solution of 25 mM. An ion-exchange reaction between the NH$_4$$^+$-form CHA and the copper ions was carried out by agitating the slurry at 80° C. for 1 hour. The resulting mixture was then filtered, washed with deionized water and dried at 90° C. The above process including the ion-exchange, filtering, washing and drying was repeated once. The resulting CuCHA product was then calcined at 540° C. in air for 16 hours. The obtained CuCHA catalyst comprised CuO at 4.57% by weight.

The catalyst powder was hydrothermally aged in the presence of 10% $H_2O$ at 800° C. for 50 hours, followed by measurement of the nitrogen oxides SCR efficiency.

Catalyst performance was evaluated using a microchannel catalytic reactor containing a bed of approximately 12.6 mm³ of catalyst. The flow rate (standard temperature and pressure) of 500 cc/min of reactants, consisting of 500 ppm NO$_x$, 500 ppm NH$_3$, 10% $O_2$, 5% $H_2O$, balanced with He, plus 25 cc/min steam was passed over the bed at various temperatures (200, 250, 300, 350, 400, 450 and 500° C.) to determine the reactivity of the catalyst. Conversion of NO$_x$ was determined by 100*(NO$_x$ fed−NO$_x$ out)/(NO$_x$ fed) using a mass spectral analyzer.

### EXAMPLE 7

CuCHA powder catalyst comprising 2.94% CuO by weight was prepared by the same process as that in Example 6, including ion-exchange, filtering, washing, drying, calcinations and hydrothermal aging, except that the silica/alumina mole ratio was 30 and that the ion-exchange process was repeated 4 times.

The SCR NO$_x$ evaluation is the same as outlined above for Example 6.

US 7,601,662 B2

| 13 | 14 |

## EXAMPLE 8

CuCHA powder catalyst comprising 0.45% CuO by weight was prepared by the same process as that in Example 6, including ion-exchange, filtering, washing, drying, calcinations and hydrothermal aging, except that the silica/alumina mole ratio was 50.

The SCR $NO_x$ evaluation is the same as outlined above for Example 6.

## EXAMPLE 9

A CuCHA powder catalyst was prepared by mixing 15.0 g of $NH_4^+$-form CHA. having a silica/alumina mole ratio of 256, with 61 mL of a copper(II) sulfate solution of 0.64 M. An ion-exchange reaction between the $NH_4^+$-form CHA and the

The slurry was coated onto 1"D×3"L cellular ceramic cores, having a cell density of 400 cpsi (cells per square inch) and a wall thickness of 6.5 mil. Two coats were required to obtain a target washcoat loading of 1.6 g/in³. The coated cores were dried at 90° C. for 3 hours, and the cores were calcined at 450° C. for 1 hour after the second drying step.

The hydrothermal aging and SCR evaluation are the same as outlined in Example 1, except aging at was performed 750° C. for 25 hours.

## COMPARATIVE EXAMPLE 11

A Cu/Beta powder catalyst was prepared having silica/alumina ratio is 35 using a procedure similar to the sample prepared in EXAMPLE 10. The hydrothermal aging and SCR evaluation are the same as outlined in Example 1.

A summary of the data for Examples 1-5 and Comparative Examples 10-11 is contained in Table 1 below.

TABLE 1

| | Cu/Al | | $NO_x$ conversion (%) | | | | $N_2O$ make, ppm | |
|---|---|---|---|---|---|---|---|---|
| Example | Atomic ratio | CuO % | 210° C., fresh | 210° C., aged | 460° C., fresh | 460° C., aged | 460° C., fresh | 460° C., aged |
| 1 | 0.30 | 2.41 | 75 | 43 | 95 | 82 | 0.8 | 5.3 |
| 2 | 0.33 | 2.75 | 62 | 59 | 90 | 83 | 3.1 | 9.3 |
| 3 | 0.38 | 3.36 | 74 | 70 | 91 | 81 | 2.7 | 10.5 |
| 4 | 0.44 | 3.85 | 76 | 60 | 88 | 72 | 3.5 | 14.2 |
| 5 | 0.24 | 1.94 | 50 | 30 | 95 | 75 | 0.2 | 5.0 |
| 10 | 0.23 | 4.6 | 43 | 42 | 99 | 96 | 26 | 51 |
| 11 | 0.36 | 2.5 | 92 | 23 | 84 | 53 | 10 | 9.4 |
| 12 | 0.46 | 3.7 | 75 | 78 | 89 | 80 | 5.4 | 11.7 |
| 1A | 0.40 | 3.2 | | 61 | | 82 | | 11.3 |

copper ions was carried out by agitating the slurry at 80° C., for 1 hour. The resulting mixture was then filtered, washed with deionized water and dried at 90° C. The above process including the ion-exchange, filtering, washing and drying was repeated 4 times. The resulting CuCHA product was then calcined at 540° C. in air for 16 hours. The obtained CuCHA catalyst comprised CuO at 2.63% by weight.

The hydrothermal aging and SCR $NO_x$ evaluation was the same as outlined above for Example 6.

## COMPARATIVE EXAMPLE 10

A Cu/Y zeolite powder catalyst was prepared having silica/alumina mole ratio of 5 as described further below.

A Cu/Y powder catalyst was prepared by mixing 500 g of $NH_4^+$-form Zeolite Y, having a silica/alumina mole ratio of ~5, with 2500 mL of a copper(II) sulfate solution of 0.1 M. The pH was between 2.9 and 3.3. An ion-exchange reaction between the $NH_4^+$-form Y zeolite and the copper ions was carried out by agitating the slurry at 80° C. for 1 hour. The resulting mixture was then filtered, washed with deionized water and dried at 90° C. The above process including the ion-exchange, filtering, washing and drying was repeated for a total of 5 exchanges where pH was similar to above. The resulting Cu Zeolite Y product was then calcined at 640° C. in air for 16 hours. The obtained Cu Zeolite Y catalyst comprised CuO at 4.60% by weight.

The Cu/Y slurry was prepared by mixing 200 g of Cu/Y, as described above, with 400 mL of deionized water. The mixture was milled by passing twice through an Eigermill to obtain a slurry which comprised 90% particles smaller than 8 μm. 8.7 g of zirconium acetate in dilute acetic acid (containing 30% $ZrO_2$) was added into the slurry with agitation.

Table 1 indicates that Example 3 exhibited the best combination of low temperature activity, high temperature activity and showed little degradation due to hydrothermal aging.

Table 2 shows the normalized NOx conversion for Examples 6-9, which contained varying $SiO_2/Al_2O_3$ Mole ratios and Cu/Al Atomic ratios. Example 7 exhibited the best performance. While the performance of Examples 6, 8 and 9 was not optimal, it is to be noted that each of the Examples was aged at a rather high temperature of 800° C. Not all catalysts will experience such high temperatures, and it is believed that samples aged at lower temperatures would exhibit acceptable performance at a wider acceptable silica/alumina ratio. For example, in an exhaust gas treatment system having an SCR catalyst downstream of a catalyzed soot filter, the SCR would typically be exposed to high temperatures, e.g., exceeding about 700° C. If the SCR is disposed on the CSF, the SCR may experience temperatures as high as about 800° C., or higher. According to embodiments of the present invention, greater flexibility in locating a catalyst such as an SCR catalyst in an exhaust gas treatment system is provided due to the CuCHA catalysts which exhibit improved hydrothermal stability compared with other types of zeolite materials. Samples having a range of silica to alumina ratio between about 15 and 256 which experience operational temperatures below about 800° C. would be expected to exhibit acceptable low temperature NOx conversion. Thus, according to embodiments of the invention, silica to alumina ratios of about 15 to about 256 are within the scope of the invention, however, narrower ranges having a lower range endpoint of about 10, 20, about 25 and about 30 and a higher range endpoint of 150, 100, 75, 50 and 40 are within the scope of the invention.

Umicore AG & Co. KG
Exhibit 1001
Page 20 of 28

US 7,601,662 B2

15 16

TABLE 2

| Example | $SiO_2/Al_2O_3$ Mole ratio | CuO % | Cu/Al Atomic ratio | $NO_x$ conversion, aged, normalized | | |
|---|---|---|---|---|---|---|
| | | | | 200° C. | 250° C. | 300° C. |
| 6 | 15 | 4.57 | 0.30 | 0.34 | 0.61 | 0.81 |
| 7 | 30 | 2.94 | 0.36 | 1.00 | 1.00 | 0.98 |
| 8 | 50 | 0.45 | 0.089 | 0.39 | 0.54 | 1.00 |
| 9 | 256 | 2.63 | 2.6 | 0.10 | 0.70 | 0.88 |

EXAMPLE 12

CuCHA Inhibition Study

The samples tested in this Example were prepared as follows. A CuCHA powder catalyst was prepared by mixing 250 g of $NH_4^+$-form CHA, having a silica/alumina mole ratio of 30, with 2.0 L of a copper(II) sulphate solution of 0.1 M. The pH was adjusted to 3.0 to 3.4 with nitric acid. An ion-exchange reaction between the $NH_4^+$-form CHA and the copper ions was carried out by agitating the slurry at 80° C. for 1 hour. The resulting mixture was then filtered, washed with deionized water and dried at 90° C. The above process including the ion-exchange, filtering, washing and drying was repeated for a total of 5 times. The resulting CuCHA product was then calcined at 640° C. in air for 16 hours. The obtained CuCHA catalyst comprised CuO at 3.68% by weight.

The impact of CO, propene, n-octane and water on the CuCHA SCR activity at temperatures 170, 200, 250, 300 and 350° C. was investigated. The catalyst cores were tested in a simulated diesel exhaust mixture. The main gas concentrations were as follows: 500 ppm NO, 500 ppm $NH_3$, 10% $CO_2$, 10% $O_2$. The following components were added sequentially to investigate the effect on the NOx conversion: 5% $H_2O$, 300 ppm $C_3H_6$ as Cl, 600 ppm $C_3H_6$ as Cl, 100 ppm Octane as Cl and 500 ppm CO. The space velocity of the experiments was set to 142,000 h$^{-1}$. The reaction was allowed to reach steady state at temperature points of 170° C., 200° C., 250° C., 300° C. and 350° C. and the subsequent conversions and component interactions were recorded. Gas analysis of NO, $NO_2$, $N_2O$, $NH_3$, $CO_2$, $C_3H_6$ and $H_2O$ was performed using an MKS 2030 MultiGas FTIR running at 0.5 cm$^{-1}$ resolution.

The results are summarized in FIG. 5. At low temperatures 170° C. and 200° C., water was the main inhibitor, high level of propen at 200 ppm (600 ppm Cl) was slightly inhibiting at 20° C., 100 ppm propene (300 ppm Cl), CO, and n-octane had no impact. At temperatures higher than 250° C., water was observed to be a promoter. None of the components tested were inhibiting the NOx conversion at 250° C., on the contrary they were all promoters. At 300° C., CO and n-octane promoted the SCR NOx, whereas 600 ppm Cl propene inhibited the reaction. At 350° C., only 600 ppm Cl propene had minor inhibition, and the other components all had positive effect. This performance is believed to be better than the performance of other Cu-promoted SCR catalysts that use medium and large pore zeolites, for example, beta zeolites. SCR catalysts are known to be susceptible to transient poisoning by long chain hydrocarbons, which can fill the pores

with coke. These tests show that the small pore CuCHA zeolite did not exhibit this problem.

EXAMPLE 12A

HC Storage/Release Test

Gases and Apparatus:

A catalyst core of CuCHA coated on a ceramic monolith (400 cpsi/6 mil) presenting a cross section of 144 open cells and 1″ length was first aged for 50 h at 80° C. in 10% $H_2O$, 10% $O_2$, balance nitrogen. Subsequently, the catalyst was placed in a laboratory reactor. The catalyst was exposed to a gas mixture comprising 4% $H_2O$, 14% $O_2$, 100 ppm NO, balance $N_2$ and heated to 100° C. After temperature stabilization at 100° C., a blend of toluene and octane was added via mass flow controller so as to achieve a target concentration of 100 ppm Cl as octane and 100 ppm Cl as toluene at a total space velocity of 104 kh$^{-1}$. The effluent gas was led over an afterburner which was comprised of a Pt/alumina based oxidation catalyst and kept at a constant temperature of 600° C. Any hydrocarbon emissions including partial oxidation products and CO that might be formed over the CuCHA catalyst will be oxidized into $CO_2$ when passed over the afterburner. The $CO_2$ effluent from the afterburner is monitored by an IR $CO_2$ analyzer. In parallel, a slip stream of the effluent from the CuCHA catalyst bypassing the afterburner has been analyzed by a FID-HC analyzer.

Test Protocol:

After the stabilization of the CuCHA catalyst at 100° C. in a mixture of 4% $H_2O$, 14% $O_2$, 100 ppm NO, balance $N_2$, the hydrocarbon blend of octane and toluene was introduced. During 10 min the catalyst temperature was kept at 100° C. During this period, HCs are stored over the catalyst which leads to a $CO_2$ afterburner out signal below the HC inlet concentration. After the storage period, the temperature is raised linearly from 100° C. to 600° C. at a ramp of 30° C./min. The $CO_2$ afterburner signal increases sharply which is due to a release of stored of HCs from the catalyst. Upon completion of the desorption, the $CO_2$ signal returns to the baseline value (=feed gas concentration). As the temperature rises, a small decrease of the afterburner out $CO_2$ below the feed gas level indicates a second type of HC removal which is due to the deposition of carbonaceous deposits formed from toluene and octane over the catalyst. As the temperature increases further any carbonaceous deposits formed will burn off and cause an elevated $CO_2$ afterburner out signal. After the burn off of carbonaceous deposits is completed, the $CO_2$ afterburner signal will eventually return to its baseline value.

Data Analysis:

The $CO_2$ afterburner signal was evaluated quantitatively in order to determine the amount of HCs that are stored, released, deposited as coke and burnt-off coke. The corresponding intersections of the afterburner out $CO_2$ trace shown in FIG. 5A with the HC feed gas concentration were used as integration limits. For the example of CuCHA these integration limits were approximately between 0 and 800 s for the storage, between 800 s and 1000 s for the release, between 1000 s and 1400 s for the coking, respectively. The amount of HCs that were stored, released, deposited as coke and subsequently burnt-off are expressed as mg HC based on the average C:H ratio of the feed stream HCs.

Results:

This experiment was carried out with Cu—Y (after aging for 25 h @ 750° C. in 10% $H_2O$, 10% $O_2$, balance $N_2$) and

Umicore AG & Co. KG
Exhibit 1001
Page 21 of 28

US 7,601,662 B2

17                                                                18

Fe-Beta (after aging for 50 h at 800° C. in 10% H₂O, 10% O₂, balance N₂) SCR catalysts of the same volume under the same conditions. In the case of CuCHA, there appears to be very little coking and consequently there is no noticeable burn-off signal. The results are graphed in FIG. **5**B. It is evident that the CuCHA catalyst stores the least amount of HCs of which most is released as HCs and little is deposited as coke. The Cu—Y catalyst on the contrary did form a substantial amount of carbonaceous deposits in the temperatures range from about 200° C. to 450° C. Part of the built up coke is subsequently burnt-off at higher temperatures.

### EXAMPLE 13

#### Preparation of AMOX Catalyst

An ammonia oxidation catalyst comprising a CuCHA was prepared as in Example 12 and having a copper content of 3.68% measured as CuO, and SiO₂/Al₂O₃ ratio of 30. This material was coated onto a standard monolithic cordierite support, having a square-cell geometry of 400 cells/in³, to provide a total pore volume of 2.40 g/in³ based on monolith bulk volume. This pre-coated monolith was then dipped into a solution of a platinum-containing precursor (a platinum hydroxy amine complex) to fully and uniformly distribute the platinum precursor on the part. The part was dried at 110° C. and then calcined at 450° C. for one hour. This provided a platinum loading on the part of 4.3 g/ft³ based on monolith bulk volume. Thus the catalyst had the following composition: 3.68% CuO+0.10% Pt supported on CuCHA, coated on standard cordierite 400/6 support at total part loading of about 2.4 g/in³. The Al:Cu:Pt atomic ratio in the present catalyst is about 190:90:1. The Al/M ratio (M=Cu+Pt) is equal to about 2.1.

### EXAMPLE 14

#### Testing of Samples of Example 13

Ammonia removal efficiency and oxidation product selectivities of hydrothermally-aged AMOx catalyst cores prepared as described in Example 13 were measured by adding a feed gas mixture of 500 ppm of NH₃, 10% O₂, 5% H₂O, balanced with N₂ (as air) to a steady state reactor containing a 3.0 inch long square-cylindrical catalyst core with a facial cross section containing 144 open cells. The reaction was carried out at a space velocity of 100,000 hr⁻¹ across a 150° C. to 460° C. temperature range. Hydrothermal aging conditions are 10 hours at 700° C. with 10% H₂O in air. FIG. **6** is a graph showing emissions compared with those from a hydrothermally-aged sample of CuCHA. The data show 1) the highly selective NH₃ conversion to N₂ catalyzed by the CuCHA catalyst in the absence of Pt impregnation, and 2) that the NH₃ conversion can be dramatically enhanced by inclusion of the platinum component without compromising the high N₂ selectivity. The latter is significant in that the prior art shows that platinum as a metallic gauze or supported on other oxides or zeolitic supports is generally selective for production of N₂O or NOₓ.

### EXAMPLE 15

Comparison of the CuCHA formulation on a flow through substrate and a wall flow filter at comparable loadings. A wall flow filter was coated with the same catalyst as the flow through catalyst carrier of Example 3 and the two samples measure to compare their catalytic activity.

A CuCHA slurry was prepared by mixing 90 g of CuCHA, as described above, with 215 mL of deionized water. The mixture was ball-milled for 11 hours to obtain a slurry which comprised 90% particles smaller than 10 μm. 15.8 g of zirconium acetate in dilute acetic acid (containing 30% ZrO₂) was added into the slurry with agitation.

The slurry was coated onto 1"D×6"L cellular ceramic wall flow filter cores, having a cell density of 300 cpsi (cells per square inch) and a wall thickness of 12 mil. The coated cores were dried at 120° C. for 3 hours and calcined at 540° C. for 1 hour. The coating process was repeated once to obtain a target washcoat loading of 2.0 g/in³.

Nitrogen oxides selective catalytic reduction (SCR) efficiency and selectivity of a fresh catalyst core was measured by adding a feed gas mixture of 500 ppm of NO, 500 ppm of NH₃, 10% O₂, 5% H₂O, balanced with N₂ to a steady state reactor containing a 1"D×6"L catalyst core. The reaction was carried at a space velocity of 40,000 hr⁻¹ across a 150° C. to 400° C. temperature range.

Hydrothermal stability of the catalyst was measured by hydrothermal aging of the catalyst core in the presence of 10% H₂O at 750° C. for 25 hours, followed by measurement of the nitrogen oxides SCR efficiency and selectivity by the same process as outlined above for the SCR evaluation on a fresh catalyst core.

Table 3 below shows the comparison of the hydrothermally aged SCR performance of the CuCHA coated on a filter versus the CuCHA coated on a flow through catalyst carrier.

### TABLE 3

| | SCR performance comparison (% conversion) of filter and flow through substrates | | | | |
|---|---|---|---|---|---|
| NO | NO₂ | NOₓ | NH₃ | N₂O make (ppm) | Sample Temp (degrees C.) |
| CuCHA on Flow through, aged 50 H @ 800 C. w/ 10% water | | | | | |
| 74.6 | 83.5 | 75.0 | 76.9 | 8.4 | 211 |
| 96.3 | 95.6 | 96.2 | 93.9 | 9.2 | 255 |
| 97.6 | 97.5 | 97.6 | 97.3 | 7.6 | 309 |
| 82.7 | 36.5 | 81.0 | 98.1 | 12.3 | 441 |
| CuCHA on filter, aged 25 H @ 750 C. w/ 10% water | | | | | |
| 74.7 | 81.5 | 75.1 | 76.0 | 8.8 | 207 |
| 96.4 | 96.1 | 96.4 | 96.5 | 9.9 | 255 |
| 98.6 | 97.7 | 98.5 | 96.8 | 8.7 | 304 |
| 96.2 | 90.7 | 95.9 | 98.7 | 8.2 | 352 |
| 91.1 | 62.4 | 89.8 | 99.4 | 11.7 | 400 |

In spite of some differences in exact experimental detail, the comparison clearly supports the equivalence of the catalytic performance of CuCHA on the filter core and the flow through monolith catalyst.

### EXAMPLE 16

An NH₄⁺-CHA slurry was prepared by mixing 608 g of NH₄⁺-CHA, having a silica/alumina mole ratio of 30, with 796 mL of deionized water. The mixture was milled using a Netzsch Mill to obtain a slurry which comprised 90% particles smaller than 8.4 μm. 106 g of zirconium acetate in dilute acetic acid (containing 30% ZrO₂) was added into the slurry with agitation.

The slurry was coated onto 1"D×3"L. cellular ceramic cores, having a cell density of 400 cpsi and a wall thickness of 6.5 mil. The coated cores were dried at 110° C. for 3 hours. The coating process was repeated once to obtain a target washcoat loading of 2.4 g/in³.

Umicore AG & Co. KG
Exhibit 1001
Page 22 of 28

US 7,601,662 B2

19 | 20

This pre-coated monolith was then dipped into a 0.25M solution of copper acetate for 5 minutes at room temperature. The core was gently blown with an air gun and dried at 110° C. for 3 hours and then calcined at 400° C. for 1 hour. This provided a CuO loading on CHA of 2.72 wt. % based on the CHA weight on monolith.

The SCR NOx evaluation of the fresh catalyst was the same as outlined for Example 1. Hydrothermal stability of the catalyst was measured by hydrothermal aging of the catalyst core in the presence of 10% steam at 850° C. for 6 hrs, followed by measurement of the SCR NOx efficiency as outlined for the fresh catalyst.

FIG. **7** is graph showing the NOx conversion and $N_2O$ formation versus temperature for this sample.

### EXAMPLE 17

12.1 g of copper acetate monohydrate was dissolved in 420 g deionized water, then 141 g of $NH_4^+$-CHA, having a silica/alumina mole ratio of 30, was added in. The mixture was milled using a Netzsch Mill to obtain a slurry which comprised 90% particles smaller than 3.5 μm.

The slurry was coated onto 1"Dx3"L cellular ceramic cores, having a cell density of 400 cpsi and a wall thickness of 6.5 mil. The coated cores were dried at 110° C. for 3 hours. The coating process was repeated twice to obtain a target washcoat loading of 2.4 g/in³. The coated cores were then calcined at 400° C. for 1 hour. This provides a CuO loading on CHA of 3.3 wt. %.

The SCR NOx evaluation of the fresh catalyst was the same as outlined for Example 1. Hydrothermal stability of the catalyst was measured by hydrothermal aging of the catalyst core in the presence of 10% steam at 850° C. for 6 hrs, followed by measurement of the SCR NOx efficiency as outlined for the fresh catalyst.

FIG. **8** is graph showing the NOx conversion and $N_2O$ formation versus temperature for this sample.

### EXAMPLE 18

A CuCHA powder catalyst was prepared by ion-exchange with copper acetate. A 0.40 M of copper (II) acetate monohydrate solution was prepared by dissolving 89.8 g of the copper salt in 1.125 L of deionized water at 70° C. 300 g of $NH_4^+$-form CHA was then added to this solution. An ion-exchange reaction between the $NH_4^+$-form CHA and the copper ions was carried out by agitating the slurry at 70° C. for 1 hour. The pH was between 4.8 and 4.5 during the reaction. The resulting mixture was then filtered, washed until the filtrate had a conductivity of <200 μScm⁻¹, which indicated that substantially no soluble or free copper remained in the sample, and the washed sample was dried at 90° C. The obtained CuCHA catalyst comprised CuO at 3.06% by weight and $Na_2O$ at 140 ppm.

The slurry preparation, coating and SCR NOx evaluation were the same as outlined above for Example 1. As shown in FIG. **7**, Example 18 exhibited the same SCR performance as Example 3 that was prepared by twice ion-exchanges with copper sulphate plus an incipient wetness impregnation.

### EXAMPLE 19

CuCHA catalyst comprising 2.99% CuO by weight was prepared by the same process as that in Example 18, except that this sample was prepared in 0.30 M Cu solution.

### EXAMPLE 20

CuCHA catalyst comprising 2.69% CuO by weight was prepared by the same process as that in Example 18, except that the ion-exchange was processed at 45° C.

### EXAMPLE 21

CuCHA catalyst comprising 2.51% CuO by weight was prepared by the same process as that in Example 19, except that the ion-exchange was processed at 45° C.

The Cu loadings of Examples 18-21 are compared with that of Example 1 in Table 4. We see that copper acetate is more efficient than copper sulphate to provide desired Cu loading with a low concentration of copper solution at lower reaction temperature.

TABLE 4

| Example | Cu salt | $Cu^{2+}$ Conc., M | Reaction T, ° C. | CuO wt. % |
|---|---|---|---|---|
| 1 | Cu sulphate | 1.0 | 80 | 2.41 |
| 18 | Cu acetate | 0.40 | 70 | 3.06 |
| 19 | Cu acetate | 0.30 | 70 | 2.99 |
| 20 | Cu acetate | 0.40 | 45 | 2.69 |
| 21 | Cu acetate | 0.30 | 45 | 2.51 |

### EXAMPLE 22

Hydrothermal Aging and Chemical Analysis of Example 2

The Cu/CHA powder prepared in Example 2 was hydrothermally aged in the presence of 10% $H_2O$ in air at 800° C. for 48 hours. The analyzed material from Example 2 is labeled Example 22 in FIGS. **11** and **12** and Tables 5 and 6. The hydrothermally aged sample is labeled Example 22A in Tables 5 and 6 and FIGS. **11** and **12**.

The X-ray powder diffraction patterns were determined by standard techniques. Generator settings are 45 kV and 40 mA. The diffractometer optics consists of a variable divergence slit, incident beam soller slits, a receiving slit, a graphite monochromator, and a scintillation counter using Bragg-Brentano parafocusing geometry. The d-spacings were calculated from the lattice parameters of a=13.58 and c=14.76 Å for Example 22 and a=13.56 and c=14.75 Å for Example 22A. The lattice parameters were determined by scanning the sample with LaB6 mixed in as an internal standard. The data range was 15-38.5 degrees two theta using a step size of 0.01 and counting for 5 seconds. The resulting pattern was run through profile refinement in JADE software. The LaB6 lattice parameters were kept constant at 5.169 A to compensate for sample displacement errors. Table 5 shows the X-ray powder diffraction lines for Example 22 and Example 22A. The CHA crystalline structure retained after 800° C. 48 hours steam aging.

TABLE 5

| | Example 22 | | | Example 22A | |
|---|---|---|---|---|---|
| 2-Theta | d(Å) | I(%) | 2-Theta | d(Å) | I(%) |
| 9.63 | 9.201 | 100% | 9.62 | 9.189 | 100% |
| 13.02 | 6.793 | 37% | 13.04 | 6.782 | 36% |
| 14.15 | 6.252 | 8% | 14.17 | 6.247 | 7% |
| 16.21 | 5.465 | 28% | 16.23 | 5.457 | 26% |

Umicore AG & Co. KG
Exhibit 1001
Page 23 of 28

21                                                    22

TABLE 5-continued

| | Example 22 | | | Example 22A | |
|---|---|---|---|---|---|
| 2-Theta | d(Å) | I(%) | 2-Theta | d(Å) | I(%) |
| 18.01 | 4.921 | 32% | 18.03 | 4.917 | 30% |
| 19.28 | 4.600 | 3% | 19.30 | 4.595 | 3% |
| 20.85 | 4.258 | 89% | 20.88 | 4.251 | 82% |
| 22.29 | 3.985 | 4% | 22.31 | 3.981 | 4% |
| 22.65 | 3.922 | 5% | 22.69 | 3.916 | 4% |
| 23.33 | 3.809 | 8% | 23.37 | 3.804 | 7% |
| 25.27 | 3.521 | 41% | 25.29 | 3.519 | 38% |
| 26.22 | 3.397 | 24% | 26.26 | 3.391 | 23% |
| 27.98 | 3.186 | 5% | 28.03 | 3.181 | 5% |
| 28.53 | 3.126 | 6% | 28.56 | 3.123 | 5% |
| 29.91 | 2.985 | 3% | 29.96 | 2.980 | 3% |
| 30.98 | 2.885 | 57% | 31.03 | 2.880 | 53% |
| 31.21 | 2.864 | 17% | 31.23 | 2.862 | 17% |
| 31.48 | 2.840 | 28% | 31.51 | 2.837 | 26% |
| 31.99 | 2.795 | 4% | 32.04 | 2.792 | 4% |
| 32.75 | 2.733 | 3% | 32.80 | 2.728 | 3% |
| 33.73 | 2.655 | 2% | 33.78 | 2.651 | 2% |
| 33.95 | 2.639 | 4% | 33.98 | 2.637 | 4% |
| 34.92 | 2.568 | 13% | 34.98 | 2.563 | 12% |
| 35.38 | 2.535 | 3% | 35.43 | 2.531 | 2% |
| 36.50 | 2.460 | 9% | 36.54 | 2.457 | 8% |
| 38.72 | 2.324 | 2% | 38.78 | 2.320 | 1% |
| 38.90 | 2.313 | 1% | 38.93 | 2.312 | 1% |
| 39.13 | 2.300 | 2% | 39.18 | 2.297 | 2% |
| 39.56 | 2.276 | 1% | 39.62 | 2.273 | 1% |
| 39.78 | 2.264 | 2% | 39.84 | 2.261 | 2% |

UV/VIS diffuse reflectance spectra expressed by F(R) were collected using a diffuse reflectance attachment with an integrating and reference sphere coated with $BaSO_4$ inside a Cary 300 UV-Vis spectrometer. The UV/VIS of Example 22 and 22A are shown in FIG. 11.

Table 6 lists the $^{29}Si$ MAS NMR (Magic Angle Spinning Nuclear Magnetic Resonance) data and the calculated framework Si/Al atomic ratio of Example 22 and 22A. The data for the CHA and the 800° C., 48 hours, 10% steam-aged CHA are also included for comparison. The data indicate that a degree of de-alumination takes place upon aging of both CHA and Cu/CHA samples. However, the Cu/CHA sample undergoes much less de-alumination upon aging. It is also observed that the Cu-exchange process itself slightly alters the framework Si/Al atomic ratio from 15 to 17.

FIG. 12 shows the $^{27}Al$ MAS NMR (Magic Angle Spinning Nuclear Magnetic Resonance) spectra of Example 22 and 22A, as well as the CHA and aged CHA samples. The spectra indicate that some of the tetrahedral Al species are converted to penta- and octa-coordinated species upon Cu-exchange. The spectra strongly support that the Cu/CHA sample undergoes much less de-alumination upon aging than the CHA sample.

TABLE 6

| | Intensity % | | | | |
|---|---|---|---|---|---|
| Sample | Si(0Al) - 114 ppm | Si(0Al) - 111 ppm | Si(1Al) - 105 ppm | Si(1Al) - 101 ppm | Si/Al |
| CHA | 2 | 71 | 16 | 11 | 15 |
| Aged CHA | 0 | 95 | 1 | 4 | 82 |
| Example 22 | 2 | 75 | 19 | 5 | 17 |
| Example 22A | 4 | 85 | 11 | <1 | 34 |

Exemplary embodiments of emission treatment systems are shown in FIGS. 10A, 10B and 10C. One embodiment of the inventive emissions treatment system denoted as 11A is schematically depicted in FIG. 10A. The exhaust, containing gaseous pollutants (including unburned hydrocarbons, carbon monoxide and NOx) and particulate matter, is conveyed from the engine 19 to a position downstream in the exhaust system where a reductant, i.e., ammonia or an ammonia-precursor, is added to the exhaust stream. The reductant is injected as a spray via a nozzle (not shown) into the exhaust stream. Aqueous urea shown on one line 25 can serve as the ammonia precursor which can be mixed with air on another line 26 in a mixing station 24. Valve 23 can be used to meter precise amounts of aqueous urea which are converted in the exhaust stream to ammonia.

The exhaust stream with the added ammonia is conveyed to the SCR catalyst substrate 12 (also referred to herein including the claims as "the first substrate") containing CuCHA in accordance with one or more embodiments. On passing through the first substrate 12, the NOx component of the exhaust stream is converted through the selective catalytic reduction of NOx with $NH_3$ to $N_2$ and $H_2O$. In addition, excess $NH_3$ that emerges from the inlet zone can be converted through oxidation by a downstream ammonia oxidation catalyst (not shown) also containing CuCHA to convert the ammonia to $N_2$ and $H_2O$. The first substrate is typically a flow through monolith substrate.

An alternative embodiment of the emissions treatment system, denoted as 11B is depicted in FIG. 10B which contains a second substrate 27 interposed between the $NH_3$ injector and the first substrate 12. In this embodiment, the second substrate is coated with an SCR catalyst composition which may be the same composition as is used to coat the first substrate 12 or a different composition. An advantageous feature of this embodiment is that the SCR catalyst compositions that are used to coat the substrate can be selected to optimize NOx conversion for the operating conditions characteristic of that site along the exhaust system. For example, the second substrate can be coated with an SCR catalyst composition that is better suited for higher operating temperatures experienced in upstream segments of the exhaust system, while another SCR composition can be used to coat the first substrate (i.e., the inlet zone of the first substrate) that is better suited to cooler exhaust temperature which are experienced in downstream segments of the exhaust system.

In the embodiment depicted in FIG. 10B, the second substrate 27 can either be a honeycomb flow through substrate, an open cell foam substrate or a honeycomb wall flow substrate. In configurations of this embodiment where the second substrate is a wall flow substrate or a high efficiency open cell foam filter, the system can remove greater than 80% of the particulate matter including the soot fraction and the SOF. An SCR-coated wall flow substrate and its utility in the reduction of NOx and particulate matter have been described, for instance, in co-pending U.S. patent application Ser. No. 10/634,659, filed Aug. 5, 2003, issued as U.S. Pat. No. 7,229, 597, the disclosure of which is hereby incorporated by reference.

In some applications it may be advantageous to include an oxidation catalyst upstream of the site of ammonia/ammonia precursor injection. For instance, in the embodiment depicted in FIG. 10C an oxidation catalyst is disposed on a catalyst substrate 34. The emissions treatment system 11C is provided with the first substrate 12 and optionally includes a second substrate 27. In this embodiment, the exhaust stream is first conveyed to the catalyst substrate 34 where at least some of the gaseous hydrocarbons, CO and particulate matter are combusted to innocuous components. In addition, a significant fraction of the NO of the NOx component of the exhaust is converted to $NO_2$. Higher proportions of $NO_2$ in the NOx component facilitate the reduction of NOx to $N_2$ and $H_2O$ on

Umicore AG & Co. KG
Exhibit 1001
Page 24 of 28

US 7,601,662 B2

23

the SCR catalyst(s) located downstream. It will be appreciated that in the embodiment shown in FIG. 10C, the first substrate 12 could be a catalyzed soot filter, and the SCR catalyst could be disposed on the catalyzed soot filter. In an alternative embodiment, the second substrate 27 comprising an SCR catalyst may be located upstream from catalyst substrate 34.

It will be apparent to those skilled in the art that various modifications and variations can be made to the present invention without departing from the spirit or scope of the invention. Thus, it is intended that the present invention cover modifications and variations of this invention provided they come within the scope of the appended claims and their equivalents.

What is claimed is:

1. A catalyst comprising:
a zeolite having the CHA crystal structure and a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25.

2. The catalyst of claim 1, wherein the mole ratio of silica to alumina is from about 15 to about 256 and the atomic ratio of copper to aluminum is from about 0.25 to about 0.50.

3. The catalyst of claim 2, wherein the mole ratio of silica to alumina is from about 25 to about 40.

4. The catalyst of claim 2, wherein the mole ratio of silica to alumina is about 30.

5. The catalyst of claim 2, wherein the atomic ratio of copper to aluminum is from about 0.30 to about 0.50.

6. The catalyst of claim 2, wherein the atomic ratio of copper to aluminum is about 0.40.

7. The catalyst of claim 2, wherein the mole ratio of silica to alumina is from about 25 to about 40 and the atomic ratio of copper to aluminum is from about 0.30 to about 0.50.

8. The catalyst of claim 2, wherein the mole ratio of silica to alumina is about 30 and the atomic ratio of copper to alumina is about 0.40.

9. The catalyst of claim 2, wherein the catalyst contains ion-exchanged copper and an amount of non-exchanged copper sufficient to maintain NOx conversion performance of the catalyst in an exhaust gas stream containing nitrogen oxides after hydrothermal aging of the catalyst.

10. The catalyst of claim 9, wherein the NOx conversion performance of the catalyst at about 200° C. after aging is at least 90% of the NOx conversion performance of the catalyst at about 200° C. prior to aging.

11. The catalyst of claim 9, wherein the catalyst contains at least about 2.00 weight percent copper oxide.

12. The catalyst of claim 2, wherein the catalyst is deposited on a honeycomb substrate.

13. The catalyst of claim 12, wherein the honeycomb substrate comprises a wall flow filter substrate.

14. The catalyst of claim 12, wherein the honeycomb substrate comprises a flow through substrate.

15. The catalyst of claim 14, wherein at least a portion of the flow through substrate is coated with CuCHA adapted to reduce oxides of nitrogen contained in a gas stream flowing through the substrate.

16. The catalyst of claim 15, wherein at least a portion of the flow through substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.

17. The catalyst of claim 14, wherein at least a portion of the flow through substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.

18. The catalyst of claim 13, wherein at least a portion of the wall flow substrate is coated with CuCHA adapted to reduce oxides of nitrogen contained in a gas stream flowing through the substrate.

24

19. The catalyst of claim 18, wherein at least a portion of the wall flow substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.

20. The catalyst of claim 13, wherein at least a portion of the wall flow substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.

21. An exhaust gas treatment system comprising the catalyst of claim 15 disposed downstream from a diesel engine and an injector that adds a reductant to an exhaust gas stream from the engine.

22. An exhaust gas treatment system comprising the catalyst of claim 17 disposed downstream from a diesel engine and an injector to add a reductant to an exhaust gas stream from the engine.

23. An exhaust gas treatment system comprising the catalyst of claim 18 disposed downstream from a diesel engine and an injector to add a reductant to an exhaust gas stream from the engine.

24. An exhaust gas treatment system comprising the catalyst of claim 20 disposed downstream from a diesel engine and an injector to add a reductant to an exhaust gas stream from the engine.

25. A catalyst article comprising a honeycomb substrate having a zeolite having the CHA crystal structure deposited on the substrate, the zeolite having a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25 and containing an amount of free copper exceeding ion-exchanged copper.

26. The catalyst of claim 25, wherein the free copper is present in an amount sufficient to prevent hydrothermal degradation of the nitrogen oxide conversion of the catalyst.

27. The catalyst of claim 26, wherein the free copper prevents hydrothermal degradation of the nitrogen oxide conversion of the catalyst upon exposure to temperatures in excess of about 800° C. and in the presence of about 10% water vapor.

28. The catalyst of claim 25, further comprising a binder.

29. The catalyst of claim 25, wherein the ion-exchanged copper is exchanged using copper acetate.

30. An exhaust gas treatment system comprising an exhaust gas stream containing NOx, and a catalyst in accordance with claim 2 effective for selective catalytic reduction of at least one component of NOx in the exhaust gas stream.

31. An exhaust gas treatment system comprising an exhaust gas stream containing ammonia and a catalyst in accordance with claim 2 effective for destroying at least a portion of the ammonia in the exhaust gas stream.

32. The catalyst of claim 2, wherein the substrate comprises a high efficiency open cell foam filter.

33. An exhaust gas treatment system comprising the catalyst of claim 2 and further comprising a catalyzed soot filter.

34. The exhaust gas treatment system of claim 33, wherein said catalyzed soot filter is upstream of said catalyst.

35. The exhaust gas treatment system of claim 33, wherein said catalyzed soot filter is downstream of said catalyst.

36. The exhaust gas treatment system of claim 33, further comprising a diesel oxidation catalyst.

37. The exhaust gas treatment system of claim 36, wherein said diesel oxidation catalyst is upstream of said catalyst comprising a zeolite having the CHA crystal structure.

38. The exhaust gas treatment system of claim 36, wherein said diesel oxidation catalyst and catalyzed soot filter are upstream from said catalyst comprising a zeolite having the CHA crystal structure.

\* \* \* \* \*

Umicore AG & Co. KG
Exhibit 1001
Page 25 of 28

(12) **INTER PARTES REEXAMINATION CERTIFICATE** (616th)
**United States Patent**
Bull et al.

(10) **Number:**        **US 7,601,662 C1**
(45) **Certificate Issued:**        **Jun. 7, 2013**

(54) **COPPER CHA ZEOLITE CATALYSTS**

(75) Inventors: **Ivor Bull**, Ludwigshafen (DE);
**Wen-Mei Xue**, Dayton, NJ (US);
**Patrick Burk**, Freehold, NJ (US); **R. Samuel Boorse**, Skillman, NJ (US);
**William M. Jaglowski**, West Orange, NJ (US); **Gerald S. Koermer**, Basking Ridge, NJ (US); **Ahmad Moini**, Princeton, NJ (US); **Joseph A. Patchett**, Basking Ridge, NJ (US); **Joseph C. Dettling**, Howell, NJ (US); **Matthew T. Caudle**, Hamilton, NJ (US)

(73) Assignee: **BASF Catalysts LLC**, Florham Park, NJ (US)

**Reexamination Request:**
No. 95/001,453, Sep. 28, 2010

**Reexamination Certificate for:**
Patent No.: **7,601,662**
Issued: **Oct. 13, 2009**
Appl. No.: **12/038,423**
Filed: **Feb. 27, 2008**

**Related U.S. Application Data**

(60) Provisional application No. 60/891,835, filed on Feb. 27, 2007.

(51) **Int. Cl.**
**B01J 29/06**        (2006.01)
(52) **U.S. Cl.**
USPC ............. **502/60**; 502/208; 502/214; 423/700
(58) **Field of Classification Search**
USPC .......................................................... 502/60
See application file for complete search history.

(56)        **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 95/001,453, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — Alan Diamond

(57)        **ABSTRACT**

Zeolite catalysts and systems and methods for preparing and using zeolite catalysts having the CHA crystal structure are disclosed. The catalysts can be used to remove nitrogen oxides from a gaseous medium across a broad temperature range and exhibit hydrothermal stable at high reaction temperatures. The zeolite catalysts include a zeolite carrier having a silica to alumina ratio from about 15:1 to about 256:1 and a copper to [alumina] *aluminum* ratio from about 0.25:1 to about 1:1.



Umicore AG & Co. KG
Exhibit 1001
Page 26 of 28



FIG. 1A (Amended)



FIG. 2

Umicore AG & Co. KG
Exhibit 1001
Page 27 of 28

US 7,601,662 C1

**1**

# INTER PARTES REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 316

THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.**

ONLY THOSE PARAGRAPHS OF THE SPECIFICATION AFFECTED BY AMENDMENT ARE PRINTED HEREIN.

Column 4, lines 24-33:

In one embodiment of the invention, zeolites having the CHA structure such as chabazite are provided. In one or more embodiments, a zeolite having the CHA crystal structure and a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25 is provided. In specific embodiments, the mole ratio of silica to alumina is about 30 and the atomic ratio of copper to aluminum is about 0.40. Other zeolites having the CHA structure, include, but are not limited to SSZ-13, LZ-218, Linde D, Linde R, Phi, *and* ZK-14[, and ZYT-6].

Column 19, lines 55-61:

The slurry preparation, coating and SCR NO_x evaluation were the same as outlined above for Example 1. As shown in FIG. [7] *9*, Example 18 exhibited the same SCR performance as Example 3 that was prepared by [twice] *two* ion-exchanges with copper sulphate plus an incipient wetness impregnation.

THE DRAWING FIGURES HAVE BEEN CHANGED AS FOLLOWS:

In the legend, the solid diamond and hollow diamond symbols have been switched.

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

Claims **25-29** and **31** are cancelled.

Claims **1**, **2**, **9** and **32** are determined to be patentable as amended.

Claims **3-8**, **10-24**, **30** and **33-38**, dependent on an amended claim, are determined to be patentable.

New claims **39-50** are added and determined to be patentable.

**1**. A catalyst comprising:

[a] *an aluminosilicate* zeolite having the CHA crystal structure and a mole ratio of silica to alumina [greater than] *from* about 15 *to about 150* and an atomic ratio of copper to aluminum [exceeding] *from* about 0.25 to

**2**

about 1, the catalyst effective to promote the reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$ selectively.

**2**. The catalyst of claim **1**, wherein the mole ratio of silica to alumina is from about 15 to about [256 and the atomic ratio of copper to aluminum is from about 0.25 to about 0.50] *100*.

**9**. The catalyst of claim **2**, wherein the catalyst contains ion-exchanged copper and [an amount of] non-exchanged copper [sufficient to maintain NOx conversion performance of the catalyst in an exhaust gas stream containing nitrogen oxides after hydrothermal aging of the catalyst].

**32**. The catalyst of claim [**2**] *1*, wherein the substrate comprises a high efficiency open cell foam filter.

*39. The catalyst of claim 3, wherein the catalyst is deposited on a honeycomb wall flow filter substrate to provide a catalyst article.*

*40. The catalyst of claim 3, wherein the catalyst is deposited on a honeycomb flow through substrate to provide a catalyst article.*

*41. The catalyst article of claim 40, wherein at least a portion of the flow through substrate is coated with CuCHA adapted to reduce oxides of nitrogen contained in a gas stream flowing through the substrate.*

*42. The catalyst article of claim 41, wherein at least a portion of the flow through substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.*

*43. The catalyst article of claim 40, wherein at least a portion of the flow through substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.*

*44. The catalyst article of claim 39, wherein at least a portion of the wall flow substrate is coated with CuCHA adapted to reduce oxides of nitrogen contained in a gas stream flowing through the substrate.*

*45. The catalyst article of claim 44, wherein at least a portion of the wall flow substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.*

*46. The catalyst article of claim 39, wherein at least a portion of the wall flow substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.*

*47. An exhaust gas treatment system comprising the catalyst article of claim 41 disposed downstream from a diesel engine and an injector that adds a reductant to an exhaust gas stream from the engine.*

*48. An exhaust gas treatment system comprising the catalyst article of claim 43 disposed downstream from a diesel engine and an injector to add a reductant to an exhaust gas stream from the engine.*

*49. An exhaust gas treatment system comprising the catalyst article of claim 44 disposed downstream from a diesel engine and an injector to add a reductant to an exhaust gas stream from the engine.*

*50. An exhaust gas treatment system comprising the catalyst article of claim 46 disposed downstream from a diesel engine and an injector to add a reductant to an exhaust gas stream from the engine.*

* * * * *

Umicore AG & Co. KG
Exhibit 1001
Page 28 of 28

(12) **United States Patent**
Bull et al.

(10) Patent No.: **US 8,404,203 B2**
(45) Date of Patent: **Mar. 26, 2013**

(54) **PROCESSES FOR REDUCING NITROGEN OXIDES USING COPPER CHA ZEOLITE CATALYSTS**

(75) Inventors: **Ivor Bull**, Ludwigshafen (DE); **Wen-Mei Xue**, Dayton, NJ (US); **Patrick Burk**, Freehold, NJ (US); **R. Samuel Boorse**, Skillman, NJ (US); **William M. Jaglowski**, West Orange, NJ (US); **Gerald S. Koermer**, Basking Ridge, NJ (US); **Ahmad Moini**, Princeton, NJ (US); **Joseph A. Patchett**, Basking Ridge, NJ (US); **Joseph C. Dettling**, Howell, NJ (US); **Matthew T. Caudle**, Hamilton, NJ (US)

(73) Assignee: **BASF Corporation**, Florham Park, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **12/480,360**

(22) Filed: **Jun. 8, 2009**

(65) **Prior Publication Data**
US 2009/0285737 A1    Nov. 19, 2009

**Related U.S. Application Data**

(62) Division of application No. 12/038,423, filed on Feb. 27, 2008, now Pat. No. 7,601,662.

(60) Provisional application No. 60/891,835, filed on Feb. 27, 2007.

(51) **Int. Cl.**
*B01D 53/56* (2006.01)
*B01D 53/94* (2006.01)

(52) **U.S. Cl.** .................... 423/213.5; 423/177; 423/212; 423/213.2; 423/213.7; 423/235; 423/239.1; 423/239.2

(58) **Field of Classification Search** ................. 423/212, 423/213.2, 213.5, 235, 239.1, 239.2, 177, 423/213.7
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,346,328 | A | 10/1967 | Sergeys et al. |
| 4,220,632 | A | 9/1980 | Pence et al. |
| 4,297,328 | A | 10/1981 | Ritscher et al. |
| 4,440,871 | A | 4/1984 | Lok et al. |
| 4,544,538 | A | 10/1985 | Zones |
| 4,567,029 | A | 1/1986 | Wilson et al. |
| 4,735,927 | A | 4/1988 | Gerdes et al. |
| 4,735,930 | A | 4/1988 | Gerdes et al. |
| 4,861,743 | A | 8/1989 | Flank et al. |
| 4,867,954 | A | 9/1989 | Staniulis et al. |
| 4,874,590 | A | 10/1989 | Staniulis et al. |
| 4,961,917 | A | 10/1990 | Byrne |
| 5,024,981 | A | 6/1991 | Speronello et al. |
| 5,041,270 | A | 8/1991 | Fujitani et al. |
| 5,096,684 | A | 3/1992 | Guth et al. |
| 5,233,117 | A | 8/1993 | Barger |
| 5,313,792 | A | 5/1994 | Katoh et al. |
| 5,417,949 | A | 5/1995 | McWilliams et al. |
| 5,477,014 | A | 12/1995 | Dunne et al. |

| | | | |
|---|---|---|---|
| 5,516,497 | A | 5/1996 | Speronello et al. |
| 5,589,147 | A | 12/1996 | Farnos et al. |
| 5,589,149 | A | 12/1996 | Garland et al. |
| 5,733,837 | A | 3/1998 | Nakatsuji et al. |
| 5,884,473 | A | 3/1999 | Noda et al. |
| 6,139,808 | A | 10/2000 | Mizuno et al. |
| 6,162,415 | A | 12/2000 | Liu et al. |
| 6,171,556 | B1 | 1/2001 | Burk et al. |
| 6,316,683 | B1 | 11/2001 | Janssen et al. |
| 6,319,487 | B1 | 11/2001 | Liu et al. |
| 6,350,298 | B1 | 2/2002 | Su et al. |
| 6,376,562 | B1 | 4/2002 | Ihm et al. |
| 6,395,674 | B1 | 5/2002 | Fung et al. |
| 6,503,863 | B2 | 1/2003 | Fung et al. |
| 6,569,394 | B2 | 5/2003 | Fischer et al. |
| 6,576,203 | B2 | 6/2003 | Abe et al. |
| 6,606,856 | B1 | 8/2003 | Brown et al. |
| 6,685,905 | B2 | 2/2004 | Mertens et al. |
| 6,696,032 | B2 | 2/2004 | Mertens et al. |
| 6,709,644 | B2 | 3/2004 | Zones et al. |
| 6,974,889 | B1 | 12/2005 | Verduijn et al. |
| 7,014,827 | B2 | 3/2006 | Mertens et al. |
| 7,049,261 | B2 | 5/2006 | Nam et al. |
| 7,094,389 | B2 | 8/2006 | Cao et al. |
| 7,182,927 | B2 | 2/2007 | Tran et al. |
| 7,229,597 | B2 | 6/2007 | Patchett et al. |
| 7,601,662 | B2 | 10/2009 | Bull et al. |
| 2001/0038812 | A1 | 11/2001 | Yavuz et al. |

(Continued)

FOREIGN PATENT DOCUMENTS
DE   394541 A1   6/1990
DE   10059520   5/2001

(Continued)

OTHER PUBLICATIONS

Ishihara et al., "Copper Ion-Exchanged SAPO-34 as a Thermostable Catalyst for Selective Reduction of NO with C3H6", Journal of Catalysis, 169, 93-102, 1997.*
Ishihara et al., "Thermostable Molecular Sieves, Silicoaluminophosphate (SAPO)-34, for the Removal of NOx with C3H6 in the Coexistence of O2, H2O, and SO2", Ind. Eng.Cmen. Tes., 36, 17-22, 1997.*
Ishihara et al., "Copper Ion Excahnged Silicoaluminophosphate (SAPO) as a Thermostable Catalyst for Selective Reduction of NOx with Hydrocarbons", Studies in Surface Science and Catalysts, 84, 1493-1500, 1994.*

(Continued)

*Primary Examiner* — Elizabeth Wood
(74) *Attorney, Agent, or Firm* — Melanie L. Brown; Scott S. Servilla; Servilla Whitney

(57) **ABSTRACT**

Zeolite catalysts and systems and methods for preparing and using zeolite catalysts having the CHA crystal structure are disclosed. The catalysts can be used to reduce nitrogen oxides from a gaseous medium across a broad temperature range and exhibit hydrothermal stable at high reaction temperatures. The zeolite catalysts include a zeolite carrier having a silica to alumina ratio from about 15:1 to about 256:1 and a copper to aluminum ratio from about 0.25:1 to about 1:1.

**31 Claims, 11 Drawing Sheets**

Umicore AG & Co. KG
Exhibit 1001
Page 1 of 27

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2001/0043896 | A1 | 11/2001 | Domesle et al. |
| 2002/0016252 | A1 | 2/2002 | Takahashi et al. |
| 2002/0084223 | A1 | 7/2002 | Feimer et al. |
| 2003/0069449 | A1 | 4/2003 | Zones et al. |
| 2004/0082466 | A1 | 4/2004 | Cao et al. |
| 2004/0098973 | A1 | 5/2004 | Tennison et al. |
| 2004/0166035 | A1 | 8/2004 | Noda et al. |
| 2004/0171476 | A1 | 9/2004 | Nam et al. |
| 2004/0209760 | A1 | 10/2004 | Yoshikawa |
| 2005/0031514 | A1 | 2/2005 | Patchett et al. |
| 2005/0096214 | A1 | 5/2005 | Janssen et al. |
| 2006/0039843 | A1 | 2/2006 | Patchett et al. |
| 2006/0115403 | A1 | 6/2006 | Yuen |
| 2007/0000243 | A1 | 1/2007 | Liu et al. |
| 2007/0043249 | A1 | 2/2007 | Cao et al. |
| 2007/0149385 | A1 | 6/2007 | Liu et al. |
| 2007/0286798 | A1 | 12/2007 | Cao et al. |
| 2008/0241060 | A1 | 10/2008 | Li et al. |
| 2008/0317999 | A1 | 12/2008 | Patchett et al. |
| 2009/0048095 | A1 | 2/2009 | Li et al. |
| 2009/0060809 | A1 | 3/2009 | Shioya et al. |
| 2009/0196812 | A1 | 8/2009 | Bull et al. |
| 2010/0092362 | A1 | 4/2010 | Li et al. |
| 2010/0290963 | A1 | 11/2010 | Andersen et al. |
| 2011/0165052 | A1 | 7/2011 | Beutel et al. |
| 2011/0182791 | A1 | 7/2011 | Fedeyko et al. |
| 2011/0200505 | A1 | 8/2011 | Cavataio et al. |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0396085 | 11/1990 |
| EP | 0624393 A1 | 11/1994 |
| EP | 0773057 A1 | 5/1997 |
| EP | 0950800 A2 | 10/1999 |
| EP | 1837489 A1 | 9/2007 |
| JP | 05-057194 | 12/1992 |
| JP | 6-48725 | 2/1994 |
| JP | 05-057194 | 9/1994 |
| WO | WO-99/56859 | 11/1999 |
| WO | WO-03/035549 A1 | 5/2003 |
| WO | WO-2007/004774 A1 | 1/2007 |
| WO | WO-2007/005308 A2 | 1/2007 |
| WO | WO-2008/019585 A1 | 2/2008 |
| WO | WO-2008/118434 A1 | 10/2008 |
| WO | WO-2008/132452 A2 | 11/2008 |

## OTHER PUBLICATIONS

Ishihara et al., "Selective reduction of Nitrogen Monoxide with Propane over Cu-Silicoaluminophosphate (SAPO) under Oxidizing atmosphere", Chemistry Letters, 2119-2122, 1992.*

Li, Yuejin et al., "Selective NH3 Oxidation to N2 in a Wet Stream", Applied Catalysis B: Environmental 13, (1997), 131-139 pp.

Rebrov, E. V., et al., "Development of the Kinetic Model of Platinum Catalyzed Ammonia Oxidation in a Microreactor", Chemical Engineering Journal 90, (2002), 61-76 pp.

Baerlocher, CH. et al., "Atlas of Zeolite Framework Types", Elsevier—Fifth Revised Edition, (2001), 5 pages.

Medros, F. G., et al., "Dual-Catalyst System to Broaden the Window of Operability in the Reduction of NOx with Ammonia", Ind. Eng. Chem. Res. 28, (1989), 1171-1177 pp.

Akolekar, Deepak B., et al., "FTIR Investigations of the Absorption and Disproportionation of NO on Cu-Exchanged Silicoaluminophosphate of Type 34", J. Chem. Soc., Faraday Trans., 94(1), (1998), 155-160 pp.

Torre-Abreu, C. et al., "Selective Catalytic Reduction of NO on Copper-Exchanged Zeolites: The Role of Copper-Active Sites in the Nature of Copper-Active Sites", Catalysis Today 54, (1999), 407-418 pp.

PCT International Search Report for PCT/US2008/055148, 7 pp., Oct. 2008.

PCT Written Opinion for PCT/US2008/055148, 6 pp., Feb. 2007.

Prakash, A. M., et al., "Synthesis of SAPO-34: High Silicon Incorporation in the Presence of Morpholine as Template", J. Chem. Soc. Faraday Trans. 90(15), (1994), 2291-2296 pp.

Uzunova, Ellie L., et al., "Adsorption of NO on Cu-SAPO-34 and Co-SAPO-34; A Periodic DFT Study",J. Phys. Chem C 2008, (2008), 2632-2639 pp.

Ishihara, Tatsumi et al., "Thermostable Molecular Sieves, Silicoaluminophosphate (SAPO)-34, for the Removal of NOx with C3H6 in the Coexistence of O2, H2O, and SO2", Ind. Eng. Chem. Res., 36, (1997), 17-22 pp.

Palella, B. I., et al., "On the hydrothermal stability of CuAPSO-34 microporous catalysts for N2O decomposition: a comparison with CuZSM-5",Journal of Catalysis 217—Academic Press, (2003), 100-106 pp.

Frache, A. et al., "Spectroscopic characterisation of microporous aluminophosphate materials with potential application in environmental catalysis", Catalysis Today 77, (2003), 371-384 pp.

Frache, A. et al., "Synthesis, Spectroscopic and Catalytic Properties of Cobalt and Copper Ions in Aluminophosphates with Chabasite-Like Structure, Studies of the NO Reactivity", Studies in Surface Science and Catalysis 140, (2001), 269-277 pp.

Frache, A. et al., "Catalytic DeNOx activity of cobalt and copper ions in microporous MeALPO-34 and MeAPSO-34", Catalysis Today 75, (2002), 359-365 pp.

Treacy, M.M. J., et al., "Proceedings of the 12th International Zeolite Conference", Materials Research Society Conference Proceedings IV, (Jul. 5-10, 1998), 6 pp.

Akolekar, Deepak B., et al., "FTIR investigations of the adsorption and disproportionation of NO on Cu-exchanged silicoaluminophosphate of type 34", J. Chem. Soc., Faraday Trans., 94(1), (1998), 155-160 pp.

Barger, Paul T., et al., "Hydrothermal Stability of SAPO-34 in the Methanol-to-Olefins Process", Tha Arabian Journal for Science and Engineering, vol. 21, No. 2, (Apr. 1996), 10 pp.

Marchese, L. et al., "ALPO-34 and SAPO-34 synthesized by using morpholine as templating agent. FTIR and FT-Raman studies of the host-guest and guest-guest interactions within the zeolitic framework", Microporous and Mesoporous Materials 30, (1999), 145-153 pp.

Ishihara, Tatsumi et al., "Copper Ion-Exchanged SAPO-34 as a Thermostable Catalyst for Selective Reduction of NO with C3H6", Journal of Catalysis 169, Article No. CA971681, (1997), 93-102 pp. Fourth International Congress on Catalysis and Automotive Pollution Control, (Apr. 1997), 7 pp.

Palella, B. I., et al., "On the hydrothermal stability of CuAPSO-34 microporous catalysts for N2O decomposition: a comparison with CuZSM-5", Journal of Catalysis 217, (2003), 100-106 pp.

Chen, Jiesheng et al., "Silicoaluminophosphate number eighteen (SAPO-18): a new mircoporous solid acid catalyst", Catalysis Letters 28, (1994), 241-248 pp.

Ishihara, Tatsumi et al., "Copper Ion Exchanged Silicoaluminophosphate (SAPO) as a Thermostable Catalyst for Selective Reduction of NOx with Hydrocarbons", Studies in Surface Science and Datalysis, vol. 84, (1994), 1493-1500 pp.

Frache, A. et al., "CuAPSO-34 catalysts for N2O decomposition in the presence of H2O. A study of zeolite structure stability in comparison to Cu-SAPO-34 and Cu-ZSM-5", Topics in Catalysis vol. 22, Nos. 1/2, (2003), 5 pp.

Zelenka, P. et al., "Exhaust gas aftertreatment systems for diesel engines with respect to future emission legislation", 13 pp., 2003.

USPTO Non-Final Office Action mailed Jan. 13, 2009 for U.S. Appl. No. 12/038,423, filed Feb. 27, 2008, 1-9 pp.

Chinese Journal of Catalysis, Thermal and Hydrothermal Stability of SAPO-34 Molecular Sieve, vol. 17, No. 6, (Nov. 1996), 9 pp.

PCT International Search Report and Written Opinion in PCT/ US2009/032610, (Jul. 16, 2009), 20 pp.

Machine Translation of DE 3941541 A1, (Jun. 28, 1990), 8 pp.

Centi, G. et al., "Role of the Nature of Copper Sites in the Activity of Copper-Based Catalyst for NO Conversion", Research on Chemical Intermediates, 17, (1992), 125-135 pp.

Action Closing Prosecution in U.S. Appl. No. 95/001,453, mailed Nov. 18, 2011, 102 pgs.

Non-Final Office Action in U.S. Appl. No. 12/970,545, mailed Dec. 5, 2011, 21 pgs.

Non-Final Office Action in U.S. Appl. No. 12/970,582, mailed Dec. 7, 2011, 25 pgs.

Umicore AG & Co. KG
Exhibit 1001
Page 2 of 27

US 8,404,203 B2

Page 3

Centi, Gabriele et al., "Sustainable Industrial Processes", 81 pgs.

Dedecek, Jiri et al., "Effect of Framework Charge Density on Catalytic Activity of Copper Loaded molecular Sieves of Chabazite Structure in Nitrogen(II) Oxide Decomposition", *Molecular Sieves of Chabazite Structure* Feb. 23, 2000, 343-351.

Halasz, J. et al., "Selective Reduction of NO Over Copper-Containing Modified Zeolites", *Studies in Surface Science and Catalysis*, vol. 96 1995, 675-685.

Heck, Ronald M. et al., "Catalytic Air Pollution Control—Commercial Technology", *Second Edition* 2002, 9 pgs.

Ishihara, Tatsumi et al., "Selective Reduction of Nitrogen Monoxide with Propene Over Cu-Silico-aluminophosphate (SAPO) Under Oxidizing Atmosphere", *Chemistry Letters, The Chemical Society of Japan* 1992, 2119-2122.

Korhonen, Satu T. et al., "Isolated Cu2+ ions: active sites for selective catalytic reduction of NO+", *ChemComm* Nov. 15, 2010, 3 pgs.

McEwen, Jean-Sabin et al., "Selective Catalytic Reduction of NOx by ammonia on metal-exchanged zeolite catalysts", *Prepr. Pap-Am. Chem. Soc., Div. Fuel Chem.*, 55 2011, 2 pgs.

Final Office Action in U.S. Appl. No. 12/612,142, mailed Jun. 10, 2011, 21 pgs.

Anderson, Paul J. et al., "Small pore molecular sieve supported transition metal catalysts for the selective catalytic reduction of NOx with NH₃", Abstract, 1 pg.

Schmieg, Steven J., et al., "Thermal Durability of NH₃-SCR Catalysts for Diesel NOx Reduction", 1 pgs.

Deka, U., et al., "Insight into the nature of the active site in Cu-CHA for NH₃-SCR", University Utrecht, Netherlands, 1 pgs.

Non-Final Office Action in U.S. Appl. No. 12/361,980, mailed Mar. 23, 2011, 24 pgs.

"Chinese Journal of Catalysis", *Thermal and Hydrothermal Stability of SAPO-34 Molecular Sieve*, vol. 17, No. 6 Nov. 1996, 9 pgs.

Final Office Action in U.S. Appl. No. 12/280,360, dated Jul. 26, 2010, 11 pgs.

"Fourth International Congress on Catalysis and Automotive Pollution Control", Apr. 1997, 7.

Gabriele Centi Declaration of Sep. 22, 2010, 11 pgs.

Machine Translation from EPO of DE 394541 A1, 8 pgs.

Non-Final Office Action in U.S. Appl. No. 12/361,980, mailed Sep. 22, 2010, 26 pgs.

PCT International Search Report and Written Opinion in PCT/US2009/032610, Jul. 16, 2009, 20 pgs.

PCT International Search Report and Written Opinion for PCT/US2008/055140, 11.

Reexam Order in Pat. No. 7,601,662, 18 pgs.

Reexamination Request in Pat. No. 7,601,662, 35 pgs.

Request for Inter Partes Reexamination, dated Sep. 28, 2010, 77 pgs. U.S. Appl. No. 10/634,659, filed Aug. 5, 2003.

Non-Final Office Action mailed Jan. 13, 2009 for U.S. Appl. No. 12/038,423 filed mailed Jan. 13, 2009, 16 pgs.

Akolekar, Deepak B. et al., "FTIR investigations of the adsorption and disproportionation of NO on Cu-exchanged silicoaluminophosphate of type 34", *J. Chem. Soc., Faraday Trans.*, 94(1) 1998, 155-160.

Amiridis, Michael D. et al., "Selective catalytic reduction of nitric oxide by hydrocarbons", *Applied Catalysis* 1996, 203-227 pgs.

Ashtekar, Sunil et al., "Small-Pore Molecular Sieves SAPO-34 and SAPO-44 with Chabazite Structure: A Study of Silicon Incorporation", *J. Phys. Chem.* 1994, 98 1994, 4878-4883.

Baerlocher, CH. et al., "Atlas of Zeolite Framework Types", *Elsevier—Fifth Revised Edition* 2001, 5 pages.

Barger, Paul T. et al., "Hydrothermal Stability of SAPO-34 in the Methanol-to-Olefins Process", *Tha Arabian Journal for Science and Engineering*, vol. 21, No. 2 Apr. 1996, 10.

Barthomeuf, Denise, "Journal: NATO ASI Series, Series C: Mathematical and Physical Sciences Issue 444", *Generation of acidity (amount and strength) in silicoaluminophosphates (SAPO zeolites), Examples of SAPO-5* ; pp. 375-390 1994, 17 pgs.

Breck, Donald W., "Zeolite Molecular Sieves", *John Wiley & Sons, a Wiley-Interscience Publication* 1974, 6 pg.

Centi, G. et al., "Role of the Nature of Copper Sites in the Activity of Copper-Based Catalysts for NO Conversion", *Research on Chemical Intermediates*, 17 1992, 125-135 pgs.

Chen, Jiesheng et al., "Silicoaluminophosphate number eighteen (SAPO-18): a new mircoporous solid acid catalyst", *Catalysis Letters 28* 1994, 241-248.

Chung, Sung Y. et al., "Effect of Si/Alratio of Mordenite and ZSM-5 type Zeolite Catalysts on Hydrothermal Stability for NO Reduction by Hydrocarbons", *Studies in Surface Science Catalysis*, vol. 130 2000, 1511-1516.

Dedecek, Jiri et al., "Effect of Framework Charge Density on Catalytic Activity of Copper Loaded Molecular Sieves of Chabazite Structure in Nitrogen (II) Oxide Decomposition", *Collect. Czech. Chem. Commun.* (vol. 65) 2000, 343-351 pgs.

Dedecek, J. et al., "Siting of the Cu+ ions in dehydrated ion exchanged synthetic and natural chabasites: a Cu+ photoluminescence study", *Microporous and Mesoporous Materials 32* 1999, 13 pgs.

Frache, A. et al., "Catalytic DeNOx activity of cobalt and copper ions in microporous MeALPO-34 and MeAPSO-34", *Catalysis Today 75* 2002, 359-365.

Frache, A. et al., "CuAPSO-34 catalysts for N2O decomposition in the presence of H2O. A study of zeolite structure stability in comparison to Cu-SAPO-34 and Cu-ZSM-5", *Topics in Catalysis* vol. 22, Nos. 1/2 2003, 5.

Frache, A. et al., "Spectroscopic characterisation of microporous aluminophosphate materials with potential application in environmental catalysis", *Catalysis Today 77* 2003, 371-384.

Frache, A. et al., "Synthesis, Spectroscopic and Catalytic Properties of Cobalt and Copper Ions in Aluminophosphates with Chabasite-Like Structure, Studies of the NO Reactivity", *Studies in Surface Science and Catalysis 140* 2001, 269-277.

Hartmann, Martin et al., "Transition-Metal Ions in Aluminophosphate and Silicoaluminophosphate Molecular Sieves: Location, Interaction with Adsorbates and Catalytic Properties", *Chem. Rev. 99* (3) 1999, 635-663.

Heck, Ronald M. et al., "Catalytic Air Pollution Control", *A John Wiley & Sons, Inc., Publication—Wiley-Interscience* 2002, 3 pgs.

Ishihara, Tatsumi et al., "Copper Ion Exchanged Silicoaluminophosphate (SAPO) as a Thermostable Catalyst for Selective Reduction of NOx with Hydrocarbons", *Studies in Surface Science and Catalysis*, vol. 84 (1994), 1493-1500.

Ishihara, Tatsumi et al., "Copper Ion-Exchanged SAPO-34 as a Thermostable Catalyst for Selective Reduction of NO with C3H6", *Journal of Catalysis*, vol. 169 1997, 10 pgs.

Ishihara, Tatsumi et al., "Selective Reduction of Nitrogen Monoxide with Propene over Cu-Silico-aluminophosphate (SAPO) under Oxidizing Atmosphere", *The Chemical Society of Japan* (1992), 2119-2122.

Ishihara, Tatsumi et al., "Thermostable Molecular Sieves, Silicoaluminophosphate (SAPO)-34, for the Removal of NOx with C3H6 in the Coexistence of O2, H2O, and SO2", *Ind. Eng. Chem. Res.*, 36 1997, 17-22.

Kim, Moon Hyeon, et al., "Water Tolerance of DeNOₓ SCR Catalysts Using Hydrocarbons: Findings, Improvements and Challenges", *Korean J. Chem. Eng.* 18(5) 2001, 725-740 pgs.

Kwak, Ja H. et al., "Excellent activity and selectivity of Cu-SSZ-13 in the selective catalytic reduction of NOx with NH3", *Journal of Catalysis* 2010, 4 pgs.

Li, Yuejin et al., "Selective NH3 Oxidation to N2 in a Wet Stream", *Applied Catalysis B: Environmental 13* 1997, 131-139.

Lok, B. M. et al., "Silicoaluminophosphate Molecular Sieves: Another New Class of Microporous Crystalline Inorganic Solids", *Journal of the American Chemical Society*, vol. 106 1984, 6092-6093.

Marchese, L. et al., "ALPO-34 and SAPO-34 synthesized by using morpholine as templating agent. FTIR and FT-Raman studies of the host-guest and guest-guest interactions within the zeolitic framework", *Microporous and Mesoporous Materials 30* 1999, 145-153.

Medros, F. G. et al., "Dual-Catalyst System to Broaden the Window of Operability in the Reduction of NOx with Ammonia", *Ind. Eng. Chem. Res.* 28 1989, 1171-1177.

Miller, William R. et al., "Urea selective catalytic reduction", *2010 Factiva, Inc.* 2000, 9 pgs.

Umicore AG & Co. KG
Exhibit 1001
Page 3 of 27

Misono, Makoto, "Catalytic reduction of nitrogen oxides by bifunctional catalysts", *Baltzer Science Publishers* vol. 2, No. 2 Dec. 1998, 24 pgs.

Palella, B. I. et al., "On the hydrothermal stability of CuAPSO-34 mircoporous catalysts for N2O decomposition: a comparison with CuZSM-5", *Journal of Catalysis 217* 2003, 100-106.

Prakash, A. M. et al., "Synthesis of SAPO-34: High Silicon Incorporation in the Presence of Morpholine as Template", *J. Chem. Soc. Faraday Trans. 1994*, 90(15) 1994, 2291-2296.

Rebrov, E. V. et al., "Development of the Kinetic Model of Platinum Catalyzed Ammonia Oxidation in a Microreactor", *Chemical Engineering Journal 90* 2002, 61-76.

Torre-Abreu, C. et al., "Selective Catalytic Reduction of NO on Copper-Exchanged Zeolites: The Role of the Structure of the Zeolite in the Nature of Copper-Active Sites", *Catalysis Today 54* 1999, 407-418.

Treacy, M.M. J. et al., "Proceedings of the 12th International Zeolite Conference", *Materials Research Society Conference Proceedings IV* Jul. 5-10, 1998, 6.

Uzunova, Ellie L. et al., "Adsorption of NO on Cu-SAPO-34 and Co-SAPO-34; A Periodic DFT Study", *J. Phys. Chem C 2008* 2008, 2632-2639.

Watanabe, Yoshihide et al., "Multinuclear NMR Studies on the Thermal Stability of SAPO-34", *Journal of Catalysis* 1993, 430-436 pgs.

Zelenka, P. et al., "Exhaust gas aftetreatment systems for diesel engines with respect to future emission legislation", *Diesel Engine Technology 96* May 1993, 13 pgs.

Declaration by Gabriele Centi, PH.D, 48 pgs.

Declaration by Johannes A. Lercher, PH.D., 13 pgs.

Declaration by Wolfgang Strehlau, PH.D., 18 pgs.

Third Party Comments After Patent Owner's Response After ACP Under 37 CFR 1.951, dated Jan. 18, 2012, 40 pgs.

Non-Final Office Action in U.S. Appl. No. 12/038,423 mailed Jan. 13, 2009, 16 pgs.

Non-Final Office Action in U.S. Appl. No. 12/480,360, dated Feb. 26, 2010, 19 pgs.

Non-Final Office Action in U.S. Appl. No. 12/612,142, mailed Dec. 29, 2010, 26 pgs.

Brandenberger, Sandro et al., "The State of the Art in Selective Catalytic Reduction of NOx by Ammonia Using Metal-Exchanged Zeolite Catalysts", *Catalysis Reviews 50:4* 2008, 41 pgs.

Breck, Donald W., "Zeolite Molecular Sieves", *John Wiley & Sons, A Wiley-Interscience Publication* 1974, 7 pgs.

Cavataio, Giovanni et al., "Cu/Zeolite SCR on High Porosity Filters: Laboratory and Engine Performance Evaluations", *SAE International, Ford Motor Company* 2009, 10 pgs.

Cavataio, Giovanni et al., "Development of Emission Transfer Functions for Predicting the Deterioration of a Cu-Zeolite SCR Catalyst", *SAE International, Ford Motor Company* 2009, 1-17.

Cavataio, Giovanni et al., "Enhanced Durability of a Cu/Zeolite Based SCR Catalyst", *SAE Int. J. Fuels Lubr,* vol. 1, Issue 1 2008, 477-487.

Cavataio, Giovanni et al., "Laboratory Testing of Urea-SCR Formulations to Meet Tier 2 Bin 5 Emissions", *SAE International, 2007 World Congress* 2007, 16 pgs.

Centi, Gabriele et al., "Nature of active species in copper-based catalysts and their chemistry of transformation of nitrogen oxides", *Applied Catalysts A: General 132* 1995, 179-259.

Centi, G., "Review Paper on Zeolites in Corma Treatise", *Zeolites and Catalysts*, vol. 1, 51 pgs.

Chang, Russell et al., "Thermal durabiluty and deactivation of Cuzeolite SCR catalysts", *Johnson Matthey Inc*. , 1 pgs.

Cheng, Yisun et al., "Sulfur Tolerance and DeSOx Studies on Diesel SCR Catalysts", *SAE Int. J. Fuels Lubr.*, vol. 1, Issue 1 2008, 471-476.

Cheng, Yisun et al., "The Effects of SO2 and SO3 Poisoning on Cu/Zeolite SCR Catalysts", *SAE International* 2009, 7 pgs.

Fickel, Dustin W. et al., "Copper Coordination in Cu-SSZ-13 and Cu-SSZ-16 Investigated by Variable-Temperature XRD", *J. Phys. Chem C*, 114 2010, 1633-1640.

Fickel, Dustin W., "Investigating the High-Temperature Chemistry of Zeolites: Dehydrogenation of Zeolites and NH3-SCR of Copper Exchanged Small-Pore Zeolites", *Dissertation* 2010, 1-199.

Girard, James et al., "Influence of Hydrocarbon Storage on the Durabiluty of SCR Catalysts", *SAR International, 2008 World Congress* 2008, 10 pgs.

Long, R. Q. et al., "Selective Catalytic Oxidation (SCO) of Ammonia to Nitrogen over Fe-Exchanged Zeolites", *Journal of Catalysis 201* 2001, 145-152.

Pelella, B. I. et al., "Enhancement of Hydrothermal Stability of Cu-ZSM5 Catalyst for NO Decomposition", *Kinetics and Catalysis*, vol. 47, No. 5 2006, 728-736.

Pluth, J. J. et al., "Positions of Cations and Molecules in Zeolites with the Chabazite Framework. IV Hydrated and Dehydrated Cu2+-Exchanged Chabazite", *Mat. Res. Bull,*, vol. 12 1977, 1001-1007.

Qi, Gongshin et al., "Selective Catalytic Reduction of Nitric Oxide with Ammonia over ZSM-5 Based Catalysts for Diesel Engine Applications", *Catal Lett 121* 2008, 111-117.

Rahkamaa-Tolonen, Katariina et al., "The effect of NO2 on the activity of fresh and aged zeolite catalysts in the NH3-SCR reaction", *Catalysis Today*, 100 2005, 217-222.

Xu, Lifeng et al., "Impact of a Cu-zeolite SCR Catalyst on the Performance of a Diesel LNT+SCR System", *SAE International* 2009, 12 pgs.

Final Office Action in U.S. Appl. No. 12/970,582, dated Mar. 26, 2012, 13 pgs.

Non-Final Office Action in U.S. Appl. No. 12/970,545, dated Mar. 20, 3012, 14 pgs.

Action Closing Prosecution in U.S. Appl. No. 95/001,453, mailed May 11, 2012, 69 pgs.

"Brief on Appeal-Requester", Control No. 95/001,453 Jun. 14, 2012 , 48 pgs.

"Declaration (G) by Alexander Green, Ph.D., Under 37 C.F.R. § 1.132", Control No. 95/001,453 Sep. 12, 2012 , 8 pgs.

Non-Final Office Action in U.S. Appl. No. 13/214,391, dated Oct. 26, 2012, 37 pgs.

* cited by examiner

Umicore AG & Co. KG
Exhibit 1001
Page 4 of 27



FIG. 1

Umicore AG & Co. KG
Exhibit 1001
Page 5 of 27



## FIG. 1A



## FIG. 2

Umicore AG & Co. KG
Exhibit 1001
Page 6 of 27



FIG. 3



FIG. 4

Umicore AG & Co. KG
Exhibit 1001
Page 7 of 27



FIG. 5

Umicore AG & Co. KG
Exhibit 1001
Page 8 of 27



# FIG. 5A

Umicore AG & Co. KG
Exhibit 1001
Page 9 of 27



## FIG. 5B



## FIG. 6

Umicore AG & Co. KG
Exhibit 1001
Page 10 of 27



**FIG. 7**



**FIG. 8**

Umicore AG & Co. KG
Exhibit 1001
Page 11 of 27



FIG. 9

Umicore AG & Co. KG
Exhibit 1001
Page 12 of 27



## FIG. 10A



## FIG. 10B

Umicore AG & Co. KG
Exhibit 1001
Page 13 of 27



## FIG. 10C

Umicore AG & Co. KG
Exhibit 1001
Page 14 of 27



FIG. 11



FIG. 12

Umicore AG & Co. KG
Exhibit 1001
Page 15 of 27

US 8,404,203 B2

1

# PROCESSES FOR REDUCING NITROGEN OXIDES USING COPPER CHA ZEOLITE CATALYSTS

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a divisional of U.S. patent application Ser. No. 12/038,423, filed on Feb. 27, 2008 now U.S. Pat. No. 7,601,662, which claims the benefit of priority under 35 U.S.C. §119(e) to U.S. Provisional Application No. 60/891,835, filed on Feb. 27, 2007, the contents of each of which is hereby incorporated by reference in its entirety.

## TECHNICAL FIELD

Embodiments of the invention relate to zeolites that have the CHA crystal structure, methods for their manufacture, and catalysts comprising such zeolites. More particularly, embodiments of the invention pertain to copper CHA zeolite catalysts and methods for their manufacture and use in exhaust gas treatment systems.

## BACKGROUND ART

Zeolites are aluminosilicate crystalline materials having rather uniform pore sizes which, depending upon the type of zeolite and the type and amount of cations included in the zeolite lattice, typically range from about 3 to 10 Angstroms in diameter. Both synthetic and natural zeolites and their use in promoting certain reactions, including the selective reduction of nitrogen oxides with ammonia in the presence of oxygen, are well known in the art.

Metal-promoted zeolite catalysts including, among others, iron-promoted and copper-promoted zeolite catalysts, for the selective catalytic reduction of nitrogen oxides with ammonia are known. Iron-promoted zeolite beta has been an effective catalyst for the selective reduction of nitrogen oxides with ammonia. Unfortunately, it has been found that under harsh hydrothermal conditions, such as reduction of NOx from gas exhaust at temperatures exceeding 500° C., the activity of many metal-promoted zeolites begins to decline. This decline in activity is believed to be due to destabilization of the zeolite such as by dealumination and consequent reduction of metal-containing catalytic sites within the zeolite. To maintain the overall activity of NOx reduction, increased levels of the iron-promoted zeolite catalyst must be provided. As the levels of the zeolite catalyst are increased to provide adequate NOx removal, there is an obvious reduction in the cost efficiency of the process for NOx removal as the costs of the catalyst rise.

There is a desire to prepare materials which offer low temperature SCR activity and/or improved hydrothermal durability over existing zeolites, for example, catalyst materials which are stable at temperatures up to at least about 650° C. and higher.

## SUMMARY

Aspects of the invention are directed to zeolites that have the CHA crystal structure (as defined by the International Zeolite Association), catalysts comprising such zeolites, and exhaust gas treatments incorporating such catalysts. The catalyst may be part of an exhaust gas treatment system used to treat exhaust gas streams, especially those emanating from gasoline or diesel engines.

One embodiment of the present invention pertains to copper CHA catalysts and their application in exhaust gas sys-

2

tems such as those designed to reduce nitrogen oxides. In specific embodiments, novel copper chabazite catalysts are provided which exhibit improved NH$_3$ SCR of NOx. The copper chabazite catalysts made in accordance with one or more embodiments of the present invention provide a catalyst material which exhibits excellent hydrothermal stability and high catalytic activity over a wide temperature range. When compared with other zeolitic catalysts that find application in this field, such as Fe Beta zeolites, copper CHA catalyst materials according to embodiments of the present invention offer improved low temperature activity and hydrothermal stability.

One embodiment of the invention relates to a catalyst comprising a zeolite having the CHA crystal structure and a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25. In a specific embodiment, the mole ratio of silica to alumina is from about 15 to about 256 and the atomic ratio of copper to aluminum is from about 0.25 to about 0.50. In a more specific embodiment, the mole ratio of silica to alumina is from about 25 to about 40. In an even more specific embodiment, the mole ratio of silica to alumina is about 30. In one particular embodiment, the atomic ratio of copper to aluminum is from about 0.30 to about 0.50. In a specific embodiment, the atomic ratio of copper to aluminum is about 0.40. In a specific embodiment, the mole ratio of silica to alumina is from about 25 to about 40 and the atomic ratio of copper to aluminum is from about 0.30 to about 0.50. In another specific embodiment, the silica to alumina is about 30 and the atomic ratio of copper to alumina is about 0.40.

In a particular embodiment, the catalyst contains ion-exchanged copper and an amount of non-exchanged copper sufficient to maintain NOx conversion performance of the catalyst in an exhaust gas stream containing nitrogen oxides after hydrothermal aging of the catalyst. In one embodiment, the NOx conversion performance of the catalyst at about 200° C. after aging is at least 90% of the NOx conversion performance of the catalyst at about 200° C. prior to aging. In a particular embodiment, the catalyst contains at least about 2.00 weight percent copper oxide.

In at least one embodiment, the catalyst is deposited on a honeycomb substrate. In one or more embodiments, the honeycomb substrate comprises a wall flow substrate. In other embodiments, the honeycomb substrate comprises a flow through substrate. In certain embodiments, at least a portion of the flow through substrate is coated with CuCHA adapted to reduce oxides of nitrogen contained in a gas stream flowing through the substrate. In a specific embodiment, at least a portion of the flow through substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.

In embodiments that utilize a wall flow substrate, at least a portion of the wall flow substrate is coated with CuCHA adapted to reduce oxides of nitrogen contained in a gas stream flowing through the substrate. In other embodiments, at least a portion of the wall flow substrate is coated with Pt and CuCHA adapted to oxidize ammonia in the exhaust gas stream.

In a specific embodiment, a catalyst article comprises a honeycomb substrate having a zeolite having the CHA crystal structure deposited on the substrate, the zeolite having a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25 and containing an amount of free copper exceeding ion-exchanged copper. In one embodiment, the free copper is present in an amount sufficient to prevent hydrothermal degradation of the nitrogen oxide conversion of the catalyst. In one or more

Umicore AG & Co. KG
Exhibit 1001
Page 16 of 27

US 8,404,203 B2

<table>
<tr><td>3</td><td>4</td></tr>
</table>

embodiments, the free copper prevents hydrothermal degradation of the nitrogen oxide conversion of the catalyst upon hydrothermal aging. The catalyst may further comprise a binder. In particular embodiments, the ion-exchanged copper is exchanged using copper acetate.

Other aspects of the invention relate to exhaust gas treatment systems incorporating catalysts of the type described above. Still other aspects relate to a process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen wherein said process comprises contacting the gas stream with the catalyst described above.

Another aspect pertains to an exhaust gas treatment system comprising an exhaust gas stream containing NOx, and a catalyst described above effective for selective catalytic reduction of at least one component of NOx in the exhaust gas stream. Still another aspect pertains to an exhaust gas treatment system comprising an exhaust gas stream containing ammonia and a catalyst as described above effective for destroying at least a portion of the ammonia in the exhaust gas stream.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures for CuCHA prepared according to the methods of Example 1;

FIG. 1A is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures for CuCHA prepared according to the methods of Examples 1 and 1A;

FIG. 2 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures, for CuCHA prepared according to the methods of Example 2;

FIG. 3 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures for CuCHA prepared according to the methods of Example 3;

FIG. 4 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures for CuCHA prepared according to the methods of Example 4;

FIG. 5 is a graph depicting effects of CO, propene, n-octane and water on the CuCHA SCR activity at various temperatures;

FIG. 5A is a graph showing the amount of HCs that are stored, released, deposited as coke and burnt-off coke for a sample tested in accordance with Example 12A;

FIG. 5B is a bar chart showing hydrocarbon performance of CuCHA compared with CuY and Fe beta zeolites in accordance with Example 12A;

FIG. 6 is a graph depicting emissions of $NH_3$, NOx ($=NO+NO_2$), $N_2O$, and $N_2$ from the AMOX catalyst outlet, given as ppm on a nitrogen atom basis prepared and aged according to the methods of Examples 13 and 14;

FIG. 7 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures, for CuCHA prepared according to the methods of Example 16;

FIG. 8 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures, for CuCHA prepared according to the methods of Example 17;

FIG. 9 is a graph depicting nitrogen oxides removal efficiency (%), ammonia consumption (%) and $N_2O$ generated (ppm) of CuCHA catalyst as a function of reaction temperatures for CuCHA prepared according to the methods of Example 18;

FIGS. 10A, 10B, and 10C are schematic depictions of three exemplary embodiments of the emissions treatment system of the invention;

FIG. 11 is UV/VIS of Example 22 and 22A; and

FIG. 12 is $^{27}Al$ MAS NMR spectra of Example 22 and 22A, compared with CHA and aged CHA samples.

### DETAILED DESCRIPTION

Before describing several exemplary embodiments of the invention, it is to be understood that the invention is not limited to the details of construction or process steps set forth in the following description. The invention is capable of other embodiments and of being practiced or being carried out in various ways.

In one embodiment of the invention, zeolites having the CHA structure such as chabazite are provided. In one or more embodiments, a zeolite having the CHA crystal structure and a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25 is provided. In specific embodiments, the mole ratio of silica to alumina is about 30 and the atomic ratio of copper to aluminum is about 0.40. Other zeolites having the CHA structure, include, but are not limited to SSZ-13, LZ-218, Linde D, Linde R, Phi, ZK-14, and ZYT-6.

Synthesis of the zeolites having the CHA structure can be carried out according to various techniques known in the art. For example, in a typical SSZ-13 synthesis, a source of silica, a source of alumina, and an organic directing agent are mixed under alkaline aqueous conditions. Typical silica sources include various types of fumed silica, precipitated silica, and colloidal silica, as well as silicon alkoxides. Typical alumina sources include boehmites, pseudo-boehmites, aluminum hydroxides, aluminum salts such as aluminum sulfate, and aluminum alkoxides. Sodium hydroxide is typically added to the reaction mixture, but is not required. A typical directing agent for this synthesis is adamantyltrimethylammonium hydroxide, although other amines and/or quaternary ammonium salts may be substituted or added to the latter directing agent. The reaction mixture is heated in a pressure vessel with stirring to yield the crystalline SSZ-13 product. Typical reaction temperatures are in the range of 150 and 180° C. Typical reaction times are between 1 and 5 days.

At the conclusion of the reaction, the product is filtered and washed with water. Alternatively, the product may be centrifuged. Organic additives may be used to help with the handling and isolation of the solid product. Spray-drying is an optional step in the processing of the product. The solid product is thermally treated in air or nitrogen. Alternatively, each gas treatment can be applied in various sequences, or mixtures of gases can be applied. Typical calcination temperatures are in the 400° C. to 700° C. range.

CuCHA zeolite catalysts in accordance with one or more embodiments of the invention can be utilized in catalytic processes which involve oxidizing and/or hydrothermal conditions, for example in temperatures in excess of about 600° C., for example, above about 800° C. and in the presence of

Umicore AG & Co. KG
Exhibit 1001
Page 17 of 27

US 8,404,203 B2

5

about 10% water vapor. More specifically, it has been found that CuCHA zeolite catalysts which have been prepared in accordance with embodiments of the invention have increased hydrothermal stability compared to CuY and CuBeta zeolites. CuCHA zeolite catalysts prepared in accordance with embodiments of the invention yield improved activity in the selective catalytic reduction of NOx with ammonia, especially when operated under high temperatures of at least about 600° C., for example, about 800° C. and higher, and high water vapor environments of about 10% or more. CuCHA has high intrinsic activity that enables use of lower amounts of catalyst material, which in turn should reduce backpressure of honeycomb substrates coated with washcoats of CuCHA catalysts. In one or more embodiments, hydrothermal aging refers to exposure of catalyst to a temperature of about 800° C. in a high water vapor environments of about 10% or more, for at least about 5 to about 25 hours, and in specific embodiments, up to about 50 hours.

Embodiments of this invention also pertain to a process for abatement of $NO_x$ in an exhaust gas stream generated by an internal combustion engine utilizing CuCHA zeolite catalysts having a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25. Other embodiments pertain to SCR catalysts comprising a CuCHA zeolite catalyst having a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25, and exhaust gas treatment systems incorporating CuCHA zeolite catalysts. Still other embodiments pertain to ammonia oxidation (AMOX) catalysts and exhaust gas treatment systems incorporating AMOX catalyst comprising a CuCHA zeolite catalyst having a mole ratio of silica to alumina greater than about 15 and an atomic ratio of copper to aluminum exceeding about 0.25. According to one or more embodiments, catalysts and systems utilize CuCHA catalysts having ion-exchanged copper and sufficient excess free copper to prevent thermal degradation of the catalysts when operated under high temperatures of at least about 600° C., for example, about 800° C. and higher, and high water vapor environments of about 10% or more.

Experimentation has indicated that improved performance of catalysts in accordance with embodiments of the invention is associated with Cu loading. While Cu can be exchanged to increase the level of Cu associated with the exchange sites in the structure of the zeolite, it has been found that it is beneficial to leave non-exchanged Cu in salt form, for example, as $CuSO_4$ within the zeolite catalyst. Upon calcination, the copper salt decomposes to CuO, which may be referred to herein as "free copper" or "soluble copper." According to one or more embodiments, this free Cu is both active and selective, resulting in low $N_2O$ formation when used in the treatment of a gas stream containing nitrogen oxides. Unexpectedly, this "free" Cu has been found to impart greater stability in catalysts subjected to thermal aging at temperatures up to about 800° C.

While embodiments of the invention are not intended to be bound by a particular principle, it is believed that the relatively small channel openings of CHA do not permit large molecular weight hydrocarbons (HCs) typical of diesel fuel to enter and adsorb within the CuCHA structure. Unlike other zeolites like Beta or ZSM5, CHA catalysts prepared according to embodiments of the invention have a relatively low affinity for adsorbing these large molecular weight HC species. This is a beneficial property for use in selective catalytic reduction (SCR) catalysts.

In systems that utilize an SCR downstream from a diesel oxidation catalyst (DOC), the properties of the CuCHA catalysts provide one or more beneficial results according to

6

embodiments of the invention. During start-up and prolonged low temperature operation, the SCR only or a diesel oxidation catalyst (DOC) or DOC and catalyzed soot filter (CSF) upstream of the CuCHA SCR are not fully activated to oxidize the HCs. In accordance with one or more embodiments, because the CuCHA SCR catalyst is not influenced by HCs at low temperature, it remains active over a wider range of the low temperature operation window. According to one or more embodiments, low temperature refers to temperatures about 250° C. and lower.

According to one or more embodiments, the CuCHA catalysts operate within a low temperature window. Over time in an exhaust gas treatment system having a DOC pre-catalyst downstream from the engine followed by an SCR catalyst and a CSF, or a DOC pre-catalyst upstream from a CSF and SCR, the DOC will tend to activate for both low temperature light-off and HC fuel burning. In such systems, it is beneficial if the SCR catalyst can maintain its ability to operate at low temperatures. Since the oxidation catalysts will lose their ability to oxidize NO to $NO_2$, it is useful to provide an SCR catalyst that can treat NO as effectively as $NO_2$. CuCHA catalysts produced in accordance with embodiments of the invention have the ability to reduce NO with $NH_3$ at low temperatures. This attribute can be enhanced by the addition of non-exchanged Cu to the zeolite catalyst.

According to embodiments of the invention, the SCR catalyst can be in the form of self supporting catalyst particles or as a honeycomb monolith formed of the SCR catalyst composition. In one or more embodiments of the invention however, the SCR catalyst composition is disposed as a washcoat or as a combination of washcoats on a ceramic or metallic substrate, for example a honeycomb flow through substrate.

In a specific embodiment of an emissions treatment system the SCR catalyst is formed from a Cu exchanged CHA zeolite material having free copper in addition to ion-exchanged copper.

When deposited on the honeycomb monolith substrates, such SCR catalyst compositions are deposited at a concentration of at least about 0.5 g/in³, for example, about 1.3 g/in³ about 2.4 g/in³ or higher to ensure that the desired NOx reduction is achieved and to secure adequate durability of the catalyst over extended use.

The term "SCR" catalyst is used herein in a broader sense to mean a selective catalytic reduction in which a catalyzed reaction of nitrogen oxides with a reductant occurs to reduce the nitrogen oxides. "Reductant" or "reducing agent" is also broadly used herein to mean any chemical or compound tending to reduce NOx at elevated temperature. In specific embodiments, the reducing agent is ammonia, specifically an ammonia precursor, i.e., urea and the SCR is a nitrogen reductant SCR. However, in accordance with a broader scope of the invention, the reductant could include fuel, particularly diesel fuel and fractions thereof as well any hydrocarbon and oxygenated hydrocarbons collectively referred to as an HC reductant.

Substrates

The catalyst compositions are disposed on a substrate. The substrate may be any of those materials typically used for preparing catalysts, and will usually comprise a ceramic or metal honeycomb structure. Any suitable substrate may be employed, such as a monolithic substrate of the type having fine, parallel gas flow passages extending therethrough from an inlet or an outlet face of the substrate, such that passages are open to fluid flow therethrough (referred to as honeycomb flow through substrates). The passages, which are essentially straight paths from their fluid inlet to their fluid outlet, are defined by walls on which the catalytic material is disposed as

Umicore AG & Co. KG
Exhibit 1001
Page 18 of 27

US 8,404,203 B2

7

a washcoat so that the gases flowing through the passages contact the catalytic material. The flow passages of the monolithic substrate are thin-walled channels, which can be of any suitable cross-sectional shape and size such as trapezoidal, rectangular, square, sinusoidal, hexagonal, oval, circular, etc. Such structures may contain from about 60 to about 400 or more gas inlet openings (i.e., cells) per square inch of cross section.

The substrate can also be a wall-flow filter substrate, where the channels are alternately blocked, allowing a gaseous stream entering the channels from one direction (inlet direction), to flow through the channel walls and exit from the channels from the other direction (outlet direction). AMOX and/or SCR catalyst composition can be coated on the flow through or wall-flow filter. If a wall flow substrate is utilized, the resulting system will be able to remove particulate matter along with gaseous pollutants. The wall-flow filter substrate can be made from materials commonly known in the art, such as cordierite, aluminum titanate or silicon carbide. It will be understood that the loading of the catalytic composition on a wall flow substrate will depend on substrate properties such as porosity and wall thickness, and typically will be lower than loading on a flow through substrate.

The ceramic substrate may be made of any suitable refractory material, e.g., cordierite, cordierite-alumina, silicon nitride, zircon mullite, spodumene, alumina-silica magnesia, zircon silicate, sillimanite, a magnesium silicate, zircon, petalite, alpha-alumina, an aluminosilicate and the like.

The substrates useful for the catalysts of embodiments of the present invention may also be metallic in nature and be composed of one or more metals or metal alloys. The metallic substrates may be employed in various shapes such as corrugated sheet or monolithic form. Suitable metallic supports include the heat resistant metals and metal alloys such as titanium and stainless steel as well as other alloys in which iron is a substantial or major component. Such alloys may contain one or more of nickel, chromium and/or aluminum, and the total amount of these metals may advantageously comprise at least 15 wt. % of the alloy, e.g., 10-25 wt. % of chromium, 3-8 wt. % of aluminum and up to 20 wt. % of nickel. The alloys may also contain small or trace amounts of one or more other metals such as manganese, copper, vanadium, titanium and the like. The surface or the metal substrates may be oxidized at high temperatures, e.g., 1000° C. and higher, to improve the resistance to corrosion of the alloys by forming an oxide layer on the surfaces the substrates. Such high temperature-induced oxidation may enhance the adherence of the refractory metal oxide support and catalytically promoting metal components to the substrate.

In alternative embodiments, one or both of the CuCHA catalyst compositions may be deposited on an open cell foam substrate. Such substrates are well known in the art, and are typically formed of refractory ceramic or metallic materials.
Washcoat Preparation

According to one or more embodiments, washcoats of CuCHA can be prepared using a binder. According to one or more embodiments use of a ZrO₂ binder derived from a suitable precursor such as zirconyl acetate or any other suitable zirconium precursor such as zirconyl nitrate. In one embodiment, zirconyl acetate binder provides a catalytic coating that remains homogeneous and intact after thermal aging, for example, when the catalyst is exposed to high temperatures of at least about 600° C., for example, about 800° C. and higher, and high water vapor environments of about 10% or more. Keeping the washcoat intact is beneficial because loose or free coating could plug the downstream CSF causing the backpressure to increase.

8

According to one or more embodiments, CuCHA catalysts can be used as an ammonia oxidation catalyst. Such AMOX catalysts are useful in exhaust gas treatment systems including an SCR catalyst. As discussed in commonly assigned U.S. Pat. No. 5,516,497, the entire content of which is incorporated herein by reference, a gaseous stream containing oxygen, nitrogen oxides and ammonia can be sequentially passed through first and second catalysts, the first catalyst favoring reduction of nitrogen oxides and the second catalyst favoring the oxidation or other decomposition of excess ammonia. As described in U.S. Pat. No. 5,516,497, the first catalysts can be a SCR catalyst comprising a zeolite and the second catalyst can be an AMOX catalyst comprising a zeolite.

As is known in the art, to reduce the emissions of nitrogen oxides from flue and exhaust gases, ammonia is added to the gaseous stream containing the nitrogen oxides and the gaseous stream is then contacted with a suitable catalyst at elevated temperatures in order to catalyze the reduction of nitrogen oxides with ammonia. Such gaseous streams, for example, the products of combustion of an internal combustion engine or of a gas-fueled or oil-fueled turbine engine, often inherently also contain substantial amounts of oxygen. A typical exhaust gas of a turbine engine contains from about 2 to 15 volume percent oxygen and from about 20 to 500 volume parts per million nitrogen oxides, the latter normally comprising a mixture of NO and NO₂. Usually, there is sufficient oxygen present in the gaseous stream to oxidize residual ammonia, even when an excess over the stoichiometric amount of ammonia required to reduce all the nitrogen oxides present is employed. However, in cases where a very large excess over the stoichiometric amount of ammonia is utilized, or wherein the gaseous stream to be treated is lacking or low in oxygen content, an oxygen-containing gas, usually air, may be introduced between the first catalyst zone and the second catalyst zone, in order to insure that adequate oxygen is present in the second catalyst zone for the oxidation of residual or excess ammonia.

Metal-promoted zeolites have been used to promote the reaction of ammonia with nitrogen oxides to form nitrogen and H₂O selectively over the competing reaction of oxygen and ammonia. The catalyzed reaction of ammonia and nitrogen oxides is therefore sometimes referred to as the selective catalytic reduction ("SCR") of nitrogen oxides or, as sometimes herein, simply as the "SCR process". Theoretically, it would be desirable in the SCR process to provide ammonia in excess of the stoichiometric amount required to react completely with the nitrogen oxides present, both to favor driving the reaction to completion and to help overcome inadequate mixing of the ammonia in the gaseous stream. However, in practice, significant excess ammonia over such stoichiometric amount is normally not provided because the discharge of unreacted ammonia from the catalyst to the atmosphere would itself engender an air pollution problem. Such discharge of unreacted ammonia can occur even in cases where ammonia is present only in a stoichiometric or sub-stoichiometric amount, as a result of incomplete reaction and/or poor mixing of the ammonia in the gaseous stream, resulting in the formation therein of channels of high ammonia concentration. Such channeling is of particular concern when utilizing catalysts comprising monolithic honeycomb-type carriers comprising refractory bodies having a plurality of fine, parallel gas flow paths extending therethrough because, unlike the case of beds of particulate catalyst, there is no opportunity for gas mixing between channels.

According to embodiments of the present invention CuCHA catalysts can be formulated to favor either (1) the SCR process, i.e., the reduction of nitrogen oxides with

Umicore AG & Co. KG
Exhibit 1001
Page 19 of 27

9

ammonia to form nitrogen and $H_2O$, or (2) the oxidation of ammonia with oxygen to form nitrogen and $H_2O$, the selectivity of the catalyst being tailored by controlling the Cu content of the zeolite. U.S. Pat. No. 5,516,497 teaches iron and copper loading levels on zeolites other than copper CHA to obtain selectivity for an SCR reaction and selectivity of the catalyst for the oxidation of ammonia by oxygen at the expense of the SCR process, thereby improving ammonia removal. In accordance with embodiments of the invention, CuCHA copper loading can be tailored to obtain selectivity for SCR reactions and oxidation of ammonia by oxygen and to provide exhaust gas treatment systems utilizing both types of catalyst.

The above principles are utilized by providing a staged or two-zone catalyst in which a first catalyst zone with copper loading on a zeolite, that promotes SCR followed by a second catalyst zone comprising a zeolite having thereon copper loading and/or a precious metal component that promotes oxidation of ammonia. The resultant catalyst composition thus has a first (upstream) zone which favors the reduction of nitrogen oxides with ammonia, and a second (downstream) zone which favors the oxidation of ammonia. In this way, when ammonia is present in excess of the stoichiometric amount, whether throughout the flow cross section of the gaseous stream being treated or in localized channels of high ammonia concentration, the oxidation of residual ammonia by oxygen is favored by the downstream or second catalyst zone. The quantity of ammonia in the gaseous stream discharged from the catalyst is thereby reduced or eliminated. The first zone and the second zones can be on a single catalyst substrate or as separate substrates.

It has been demonstrated that a CuCHA washcoat containing a precious metal, for example, Pt, provides an AMOX catalyst. It is expected that not only was ammonia in gas flowing through the catalyst destroyed, but there was continued removal of NOx by conversion to $N_2$. In a specific embodiment, the zeolite has a ratio of $SiO_2/Al_2O_3$ from about 15 to about 256, and an Al/M ratio between 2 and 10, wherein M represents the total Cu and precious metal. In one embodiment, the precious metal comprises platinum and the platinum content is between 0.02% and 1.0% by weight of the catalyst, and the part loading is from about 0.5 to about 5 $g/in^3$.

According to one or more embodiments of the invention, CuCHA SCR catalysts can be disposed on a wall-flow filter or catalyzed soot filter. CuCHA washcoats can be coated on a porous filter to provide for soot combustion, SCR and AMOX functions.

In one or more embodiments of the present invention, the catalyst comprises a precious metal component, i.e., a platinum group metal component. For example, as noted above, AMOX catalysts typically include a platinum component. Suitable precious metal components include platinum, palladium, rhodium and mixtures thereof. The several components (for example, CuCHA and precious metal component) of the catalyst material may be applied to the refractory carrier member, i.e., the substrate, as a mixture of two or more components or as individual components in sequential steps in a manner which will be readily apparent to those skilled in the art of catalyst manufacture. As described above and in the examples, a typical method of manufacturing a catalyst according to an embodiment of the present invention is to provide the catalyst material as a coating or layer of washcoat on the walls of the gas-flow passages of a suitable carrier member. This may be accomplished by impregnating a fine particulate refractory metal oxide support material, e.g., gamma alumina, with one or more catalytic metal compo-

10

nents such as a precious metal, i.e., platinum group, compound or other noble metals or base metals, drying and calcining the impregnated support particles and forming an aqueous slurry of these particles. Particles of the bulk copper chabazite may be included in the slurry. Activated alumina may be thermally stabilized before the catalytic components are dispersed thereon, as is well known in the art, by impregnating it with, e.g., a solution of a soluble salt of barium, lanthanum, zirconium, rare earth metal or other suitable stabilizer precursor, and thereafter drying (e.g., at 110° C. for one hour) and calcining (e.g., at 550° C. for one hour) the impregnated activated alumina to form a stabilizing metal oxide dispersed onto the alumina. Base metal catalysts may optionally also have been impregnated into the activated alumina, for example, by impregnating a solution of a base metal nitrate into the alumina particles and calcining to provide a base metal oxide dispersed in the alumina particles.

The carrier may then be immersed into the slurry of impregnated activated alumina and excess slurry removed to provide a thin coating of the slurry on the walls of the gas-flow passages of the carrier. The coated carrier is then dried and calcined to provide an adherent coating of the catalytic component and, optionally, the copper CHA material, to the walls of the passages thereof. One or more additional layers may be provided to the carrier. After each layer is applied, or after a the number of desired layers is applied, the carrier is then dried and calcined to provide a finished catalyst member in accordance with one embodiment of the present invention.

Alternatively, the alumina or other support particles impregnated with the precious metal or base metal component may be mixed with bulk or supported particles of the copper chabazite material in an aqueous slurry, and this mixed slurry of catalytic component particles and copper chabazite material particles may be applied as a coating to the walls of the gas-flow passages of the carrier.

In use, the exhaust gas stream can be contacted with a catalyst prepared in accordance with embodiments of the present invention. For example, the CuCHA catalysts made in accordance with embodiments of the present invention are well suited to treat the exhaust of engines, including diesel engines.

Without intending to limit the invention in any manner, embodiments of the present invention will be more fully described by the following examples.

EXAMPLE 1

A CuCHA powder catalyst was prepared by mixing 100 g of $NH_4^+$-form CHA, having a silica/alumina mole ratio of 30, with 400 mL of a copper(II) sulfate solution of 1.0 M. The pH was adjusted to 3.5 with nitric acid. An ion-exchange reaction between the $NH_4^+$-form CHA and the copper ions was carried out by agitating the slurry at 80° C. for 1 hour. The resulting mixture was then filtered, washed with 800 mL of deionized water in three portions until the filtrate was clear and colorless, which indicated that substantially no soluble or free copper remained in the sample, and the washed sample was dried at 90° C. The above process including the ion-exchange, filtering, washing and drying was repeated once.

The resulting CuCHA product was then calcined at 640° C. in air for 6 hours. The obtained CuCHA catalyst comprised CuO at 2.41% by weight, as determined by ICP analysis. A CuCHA slurry was prepared by mixing 90 g of CuCHA, as described above, with 215 mL of deionized water. The mixture was ball-milled. 15.8 g of zirconium acetate in dilute acetic acid (containing 30% $ZrO_2$) was added into the slurry with agitation.

Umicore AG & Co. KG
Exhibit 1001
Page 20 of 27

US 8,404,203 B2

11 | 12

The slurry was coated onto 1"D×3"L cellular ceramic cores, having a cell density of 400 cpsi (cells per square inch) and a wall thickness of 6.5 mil. The coated cores were dried at 110° C. for 3 hours and calcined at 400° C. for 1 hour. The coating process was repeated once to obtain a target washcoat loading of 2.4 g/in$^3$.

Nitrogen oxides selective catalytic reduction (SCR) efficiency and selectivity of a fresh catalyst core was measured by adding a feed gas mixture of 500 ppm of NO, 500 ppm of NH$_3$, 10% O$_2$, 5% H$_2$O, balanced with N$_2$ to a steady state reactor containing a 1"D×3"L catalyst core. The reaction was carried at a space velocity of 80,000 hr$^{-1}$ across a 150° C. to 460° C. temperature range.

Hydrothermal stability of the catalyst was measured by hydrothermal aging of the catalyst core in the presence of 10% H$_2$O at 800° C. for 50 hours, followed by measurement of the nitrogen oxides SCR efficiency and selectivity by the same process as outlined above for the SCR evaluation on a fresh catalyst core.

FIG. 1 is graph showing the NOx conversion and N$_2$O make or formation versus temperature for this sample. These results are summarized in Table 1. This sample, which did not contain soluble copper prior to calcination as indicated by the color of the filtrate described above, did not show enhanced resistance to thermal aging.

### EXAMPLE 1A

To the coating slurry of Example 1 was added copper sulphate pentahydrate to bring up the total CuO level to 3.2%. The slurry was coated onto monolith and aged and tested for SCR NO$_x$ as outlined above for Example 1, except that the monolith was calcined at 640° C. The catalytic performance was compared with Example 1 in FIG. 1A. The addition of copper sulphate into the coating slurry significantly improved the hydrothermal stability and low temperature activity.

### EXAMPLE 2

A CuCHA powder catalyst was prepared by mixing 17 Kg of NH$_4$$^+$-form CHA, having a silica/alumina mole ratio of 30, with 68 L of a copper(II) sulfate solution of 1.0 M. The pH was adjusted to 3.5 with nitric acid. An ion-exchange reaction between the NH$_4$$^+$-form CHA and the copper ions was carried out by agitating the slurry at 80° C. for 1 hour. The resulting mixture was then filtered and air-dried. The above process including the ion-exchange and filtering was repeated once. Then the wet filter cake was reslurried into 40 L deionized water followed by filtering and drying at 90° C. The resulting CuCHA product was then calcined at 640° C. in air for 6 hours. The obtained CuCHA catalyst comprised CuO at 2.75% by weight.

The slurry preparation, coating and SCR NO$_x$ evaluation were the same as outlined above for Example 1. This example contained free copper, and exhibited improved hydrothermal stability compared with Example 1.

### EXAMPLE 3

CuCHA catalyst comprising 3.36% CuO by weight was prepared by the same process as that in Example 2 followed by an incipient wetness impregnation.

Using the procedure in Example 2, 134 grams of CuCHA at 3.11% CuO by weight was prepared. To this material. was added a copper sulfate solution comprised of 1.64 g of copper sulfate pentahydrate and 105 mL of deionized water. The impregnated sample was dried at 90° C. and calcined at 640° C. for 6 hours.

The slurry preparation, coating and SCR NO$_x$ evaluation are the same as outlined above for Example 1. As shown in FIG. 3, the sample containing more non-exchanged copper exhibited higher low temperature activity in addition to hydrothermal stability.

### EXAMPLE 4

CuCHA catalyst comprising 3.85% CuO by weight was prepared by an incipient wetness impregnation process only. A copper sulfate solution comprised of 18.3 g of copper sulfate pentahydrate and 168 mL of deionized water was impregnated onto 140 g of NH$_4$$^+$-form CHA, having a silica/alumina mole ratio of 30. The impregnated sample was then dried at 90° C. and calcined at 640° C. for 6 hours.

The slurry preparation, coating and SCR NO$_x$ evaluation are the same as outlined above for Example 1. As shown in FIG. 4, Example 4 exhibited a decline in performance between 350° C. and 450° C. after hydrothermal aging.

### EXAMPLE 5

CuCHA catalyst comprising 1.94% CuO by weight was prepared by the same process as in Example 1, except that this sample was prepared by a single ion-exchange.

The slurry preparation, coating and SCR NOx evaluation are the same as outlined above for Example 1, except that the hydrothermal stability was not measured.

### EXAMPLE 6

A CuCHA powder catalyst was prepared by mixing 0.2 g of NH$_4$$^+$-form CHA, having a silica/alumina mole ratio of 15, with 16 mL of a copper(II) sulfate solution of 25 mM. An ion-exchange reaction between the NH$_4$$^+$-form CHA and the copper ions was carried out by agitating the slurry at 80° C. for 1 hour. The resulting mixture was then filtered, washed with deionized water and dried at 90° C. The above process including the ion-exchange, filtering, washing and drying was repeated once. The resulting CuCHA product was then calcined at 540° C. in air for 16 hours. The obtained CuCHA catalyst comprised CuO at 4.57% by weight.

The catalyst powder was hydrothermally aged in the presence of 10% H$_2$O at 800° C. for 50 hours, followed by measurement of the nitrogen oxides SCR efficiency.

Catalyst performance was evaluated using a microchannel catalytic reactor containing a bed of approximately 12.6 mm$^3$ of catalyst. The flow rate (standard temperature and pressure) of 500 cc/min of reactants, consisting of 500 ppm NO$_x$, 500 ppm NH$_3$, 10% O$_2$, 5% H$_2$O, balanced with He, plus 25 cc/min steam was passed over the bed at various temperatures (200, 250, 300, 350, 400, 450 and 500° C.) to determine the reactivity of the catalyst. Conversion of NO$_x$ was determined by 100*(NO$_x$ fed−NO$_x$ out)/(NO$_x$ fed) using a mass spectral analyzer.

### EXAMPLE 7

CuCHA powder catalyst comprising 2.94% CuO by weight was prepared by the same process as that in Example 6, including ion-exchange, filtering, washing, drying, calcinations and hydrothermal aging, except that the silica/alumina mole ratio was 30 and that the ion-exchange process was repeated 4 times.

Umicore AG & Co. KG
Exhibit 1001
Page 21 of 27

US 8,404,203 B2

13

The SCR NO$_x$ evaluation is the same as outlined above for Example 6.

## EXAMPLE 8

CuCHA powder catalyst comprising 0.45% CuO by weight was prepared by the same process as that in Example 6, including ion-exchange, filtering, washing, drying, calcinations and hydrothermal aging, except that the silica/alumina mole ratio was 50.

The SCR NO$_x$ evaluation is the same as outlined above for Example 6.

## EXAMPLE 9

A CuCHA powder catalyst was prepared by mixing 15.0 g of NH$_4$$^+$-form CHA. having a silica/alumina mole ratio of 256, with 61 mL of a copper(II) sulfate solution of 0.64 M. An ion-exchange reaction between the NH$_4$$^+$-form CHA and the copper ions was carried out by agitating the slurry at 80° C.

for 1 hour. The resulting mixture was then filtered, washed with deionized water and dried at 90° C. The above process including the ion-exchange, filtering, washing and drying was repeated 4 times. The resulting CuCHA product was then calcined at 540° C. in air for 16 hours. The obtained CuCHA catalyst comprised CuO at 2.63% by weight.

The hydrothermal aging and SCR NO$_x$ evaluation was the same as outlined above for Example 6.

## COMPARATIVE EXAMPLE 10

A Cu/Y zeolite powder catalyst was prepared having silica/alumina mole ratio of as described further below.

A Cu/Y powder catalyst was prepared by mixing 500 g of NH$_4$$^+$-form Zeolite Y, having a silica/alumina mole ratio of ~5, with 2500 mL of a copper(II) sulfate solution of 0.1 M. The pH was between 2.9 and 3.3. An ion-exchange reaction between the NH$_4$$^+$-form Y zeolite and the copper ions was carried out by agitating the slurry at 80° C. for 1 hour. The resulting mixture was then filtered, washed with deionized water and dried at 90° C. The above process including the ion-exchange, filtering, washing and drying was repeated for a total of 5 exchanges where pH was similar to above. The resulting Cu Zeolite Y product was then calcined at 640° C. in air for 16 hours. The obtained Cu Zeolite Y catalyst comprised CuO at 4.60% by weight.

The Cu/Y slurry was prepared by mixing 200 g of Cu/Y, as described above, with 400 mL of deionized water. The mixture was milled by passing twice through an Eigermill to obtain a slurry which comprised 90% particles smaller than 8

14

μm. 8.7 g of zirconium acetate in dilute acetic acid (containing 30% ZrO$_2$) was added into the slurry with agitation.

The slurry was coated onto 1"D×3"L. cellular ceramic cores, having a cell density of 400 cpsi (cells per square inch) and a wall thickness of 6.5 mil. Two coats were required to obtain a target washcoat loading of 1.6 g/in$^3$. The coated cores were dried at 90° C. for 3 hours, and the cores were calcined at 450° C. for 1 hour after the second drying step.

The hydrothermal aging and SCR evaluation are the same as outlined in Example 1, except aging at was performed 750° C. for 25 hours.

## COMPARATIVE EXAMPLE 11

A Cu/Beta powder catalyst was prepared having silica/alumina mole ratio is 35 using a procedure similar to the sample prepared in EXAMPLE 10. The hydrothermal aging and SCR evaluation are the same as outlined in Example 1.

A summary of the data for Examples 1-5 and Comparative Examples 10-11 is contained in Table 1 below.

TABLE 1

| Example | Cu/Al Atomic ratio | CuO % | NO$_x$ conversion (%) | | | | N$_2$O make, ppm | |
|---|---|---|---|---|---|---|---|---|
| | | | 210° C., fresh | 210° C., aged | 460° C., fresh | 460° C., aged | 460° C., fresh | 460° C., aged |
| 1 | 0.30 | 2.41 | 75 | 43 | 95 | 82 | 0.8 | 5.3 |
| 2 | 0.33 | 2.75 | 62 | 59 | 90 | 83 | 3.1 | 9.3 |
| 3 | 0.38 | 3.36 | 74 | 70 | 91 | 81 | 2.7 | 10.5 |
| 4 | 0.44 | 3.85 | 76 | 60 | 88 | 72 | 3.5 | 14.2 |
| 5 | 0.24 | 1.94 | 50 | 30 | 95 | 75 | 0.2 | 5.0 |
| 10 | 0.23 | 4.6 | 43 | 42 | 99 | 96 | 26 | 51 |
| 11 | 0.36 | 2.5 | 92 | 23 | 84 | 53 | 10 | 9.4 |
| 12 | 0.46 | 3.7 | 75 | 78 | 89 | 80 | 5.4 | 11.7 |
| 1A | 0.40 | 3.2 | | 61 | | 82 | | 11.3 |

Table 1 indicates that Example 3 exhibited the best combination of low temperature activity, high temperature activity and showed little degradation due to hydrothermal aging. Table 2 shows the normalized NOx conversion for Examples 6-9, which contained varying SiO$_2$/Al$_2$O$_3$ Mole ratios and Cu/Al Atomic ratios. Example 7 exhibited the best performance. While the performance of Examples 6, 8 and 9 was not optimal, it is to be noted that each of the Examples was aged at a rather high temperature of 800° C. Not all catalysts will experience such high temperatures, and it is believed that samples aged at lower temperatures would exhibit acceptable performance at a wider acceptable silica/alumina ratio. For example, in an exhaust gas treatment system having an SCR catalyst downstream of a catalyzed soot filter, the SCR would typically be exposed to high temperatures, e.g., exceeding about 700° C. If the SCR is disposed on the CSF, the SCR may experience temperatures as high as about 800° C., or higher. According to embodiments of the present invention, greater flexibility in locating a catalyst such as an SCR catalyst in an exhaust gas treatment system is provided due to the CuCHA catalysts which exhibit improved hydrothermal stability compared with other types of zeolite materials. Samples having a range of silica to alumina ratio between about 15 and 256 which experience operational temperatures below about 800° C. would be expected to exhibit acceptable low temperature NOx conversion. Thus, according to embodiments of the invention, silica to alumina ratios of about 15 to about 256 are within the scope of the invention, however, narrower ranges having a lower range endpoint of about 10, 20, about 25 and about 30 and a higher range endpoint of 150, 100, 75, 50 and 40 are within the scope of the invention.

Umicore AG & Co. KG
Exhibit 1001
Page 22 of 27

US 8,404,203 B2

15

TABLE 2

| Example | SiO₂/Al₂O₃ Mole ratio | CuO % | Cu/Al Atomic ratio | NOₓ conversion, aged, normalized | | |
|---------|---------|-------|------|-------|-------|-------|
| | | | | 200° C. | 250° C. | 300° C. |
| 6 | 15 | 4.57 | 0.30 | 0.34 | 0.61 | 0.81 |
| 7 | 30 | 2.94 | 0.36 | 1.00 | 1.00 | 0.98 |
| 8 | 50 | 0.45 | 0.089 | 0.39 | 0.54 | 1.00 |
| 9 | 256 | 2.63 | 2.6 | 0.10 | 0.70 | 0.88 |

EXAMPLE 12

Cucha Inhibition Study

The samples tested in this Example were prepared as follows. A CuCHA powder catalyst was prepared by mixing 250 g of NH₄⁺-form CHA, having a silica/alumina mole ratio of 30, with 2.0 L of a copper(II) sulphate solution of 0.1 M. The pH was adjusted to 3.0 to 3.4 with nitric acid. An ion-exchange reaction between the NH₄⁺-form CHA and the copper ions was carried out by agitating the slurry at 80° C. for 1 hour. The resulting mixture was then filtered, washed with deionized water and dried at 90° C. The above process including the ion-exchange, filtering, washing and drying was repeated for a total of 5 times. The resulting CuCHA product was then calcined at 640° C. in air for 16 hours. The obtained CuCHA catalyst comprised CuO at 3.68% by weight.

The impact of CO, propene, n-octane and water on the CuCHA SCR activity at temperatures 170, 200, 250, 300 and 350° C. was investigated. The catalyst cores were tested in a simulated diesel exhaust mixture. The main gas concentrations were as follows: 500 ppm NO, 500 ppm NH₃, 10% CO₂, 10% O₂. The following components were added sequentially to investigate the effect on the NOx conversion: 5% H₂O, 300 ppm C₃H₆ as Cl, 600 ppm C₃H₆ as Cl, 100 ppm Octane as Cl and 500 ppm CO. The space velocity of the experiments was set to 142,000 h⁻¹. The reaction was allowed to reach steady state at temperature points of 170° C., 200° C., 250° C., 300° C. and 350° C. and the subsequent conversions and component interactions were recorded. Gas analysis of NO, NO₂, N₂O, NH₃, CO₂, CO, C₃H₆ and H₂O was performed using an MKS 2030 MultiGas FTIR running at 0.5 cm⁻¹ resolution.

The results are summarized in FIG. 5. At low temperatures 170° C. and 200° C. water was the main inhibitor, high level of propen at 200 ppm (600 ppm Cl) was slightly inhibiting at 200 C, 100 ppm propene (300 ppm Cl), CO, and n-octane had no impact. At temperatures higher than 250° C., water was observed to be a promoter. None of the components tested were inhibiting the NOx conversion at 250° C., on the contrary they were all promoters. At 300° C., CO and n-octane promoted the SCR NOx, whereas 600 ppm Cl propene inhibited the reaction. At 350° C., only 600 ppm Cl propene had minor inhibition, and the other components all had positive effect. This performance is believed to be better than the performance of other Cu-promoted SCR catalysts that use medium and large pore zeolites, for example, beta zeolites. SCR catalysts are known to be susceptible to transient poisoning by long chain hydrocarbons, which can fill the pores with coke. These tests show that the small pore CuCHA zeolite did not exhibit this problem.

16

EXAMPLE 12A

HC Storage/Release Test

Gases and Apparatus:

A catalyst core of CuCHA coated on a ceramic monolith (400 cpsi/6 mil) presenting a cross section of 144 open cells and 1" length was first aged for 50 h at 800 C in 10% H₂O, 10% O2, balance nitrogen. Subsequently, the catalyst was placed in a laboratory reactor. The catalyst was exposed to a gas mixture comprising 4% H₂O, 14% O₂, 100 ppm NO, balance N₂ and heated to 100° C. After temperature stabilization at 100° C., a blend of toluene and octane was added via mass flow controller so as to achieve a target concentration of 100 ppm Cl as octane and 100 ppm Cl as toluene at a total space velocity of 104 kh⁻¹. The effluent gas was led over an afterburner which was comprised of a Pt/alumina based oxidation catalyst and kept at a constant temperature of 600° C. Any hydrocarbon emissions including partial oxidation products and CO that might be formed over the CuCHA catalyst will be oxidized into CO₂ when passed over the afterburner. The CO₂ effluent from the afterburner is monitored by an IR CO₂ analyzer. In parallel, a slip stream of the effluent from the CuCHA catalyst bypassing the afterburner has been analyzed by a FID-HC analyzer.

Test Protocol:

After the stabilization of the CuCHA catalyst at 100° C. in a mixture of 4% H₂O, 14% O₂, 100 ppm NO, balance N₂, the hydrocarbon blend of octane and toluene was introduced. During 10 min the catalyst temperature was kept at 100° C. During this period, HCs are stored over the catalyst which leads to a CO₂ afterburner out signal below the HC inlet concentration. After the storage period, the temperature is raised linearly from 100° C. to 600° C. at a ramp of 20° C./min. The CO₂ afterburner signal increases sharply which is due to a release of stored of HCs from the catalyst. Upon completion of the desorption, the CO₂ signal returns to the baseline value (=feed gas concentration). As the temperature rises, a small decrease of the afterburner out CO₂ below the feed gas level indicates a second type of HC removal which is due to the deposition of carbonaceous deposits formed from toluene and octane over the catalyst. As the temperature increases further any carbonaceous deposits formed will burn off and cause an elevated CO₂ afterburner out signal. After the burn off of carbonaceous deposits is completed, the CO₂ afterburner signal will eventually return to its baseline value.

Data Analysis:

The CO₂ afterburner signal was evaluated quantitatively in order to determine the amount of HCs stored, released, deposited as coke and burnt-off coke. The corresponding intersections of the afterburner out CO₂ trace shown in FIG. 5A with the HC feed gas concentration were used as integration limits. For the example of CuCHA these integration limits were approximately between 0 and 800 s for the storage, between 800 s and 1000 s for the release, between 1000 s and 1400 s for the coking, respectively. The amount of HCs that were stored, released, deposited as coke and subsequently burnt-off are expressed as mg HC based on the average C:H ratio of the feed stream HCs.

Results:

This experiment was carried out with Cu—Y (after aging for 25 h (750 C in 10% H₂O, 10% O₂, balance N₂) and Fe-Beta (after aging for 50 h at 800° C. in 10% H₂O, 10% O₂, balance N₂) SCR catalysts of the same volume under the same conditions. In the case of CuCHA, there appears to be very little coking and consequently there is no noticeable burn-off signal. The results are graphed in FIG. 5B. It is evident that the

Umicore AG & Co. KG
Exhibit 1001
Page 23 of 27

US 8,404,203 B2

17
18

CuCHA catalyst stores the least amount of HCs of which most is released as HCs and little is deposited as coke. The Cu—Y catalyst on the contrary did form a substantial amount of carbonaceous deposits in the temperatures range from about 200° C. to 450° C. Part of the built up coke is subsequently burnt-off at higher temperatures.

## EXAMPLE 13

### Preparation of AMOX Catalyst

An ammonia oxidation catalyst comprising a CuCHA was prepared as in Example 12 and having a copper content of 3.68% measured as CuO, and having $SiO_2/Al_2O_3$ ratio of 30. This material was coated onto a standard monolithic cordierite support, having a square-cell geometry of 400 cells/in$^3$, to provide a total loading of 2.40 g/in$^3$ based on monolith bulk volume. This pre-coated monolith was then dipped into a solution of a platinum-containing precursor (a platinum hydroxy amine complex) to fully and uniformly distribute the platinum precursor on the part. The part was dried at 110° C. and then calcined at 450° C. for one hour. This provided a platinum loading on the part of 4.3 g/ft$^3$ based on monolith bulk volume. Thus the catalyst had the following composition: 3.68% CuO+0.10% Pt supported on CuCHA, coated on standard cordierite 400/6 support at total part loading of about 2.4 g/in$^3$. The Al:Cu:Pt atomic ratio in the present catalyst is about 190:90:1. The Al/M ratio (M=Cu+Pt) is equal to about 2.1.

## EXAMPLE 14

### Testing of Samples of Example 13

Ammonia removal efficiency and oxidation product selectivities of hydrothermally-aged AMOx catalyst cores prepared as described in Example 13 were measured by adding a feed gas mixture of 500 ppm of NH$_3$, 10% O$_2$, 5% H$_2$O, balanced with N$_2$ (as air) to a steady state reactor containing a 3.0 inch long square-cylindrical catalyst core with a facial cross section containing 144 open cells. The reaction was carried out at a space velocity of 100,000 hr$^{-1}$ across a 150° C. to 460° C. temperature range. Hydrothermal aging conditions are 10 hours at 700° C. with 10% H$_2$O in air. FIG. 6 is a graph showing emissions compared with those from a hydrothermally-aged sample of CuCHA. The data show 1) the highly selective NH$_3$ conversion to N$_2$ catalyzed by the CuCHA catalyst in the absence of Pt impregnation, and 2) that the NH$_3$ conversion can be dramatically enhanced by inclusion of the platinum component without compromising the high N$_2$ selectivity. The latter is significant in that the prior art shows that platinum as a metallic gauze or supported on other oxides or zeolitic supports is generally selective for production of N$_2$O or NO$_x$.

## EXAMPLE 15

### Comparison of the CuCHA formulation on a flow through substrate and a wall flow filter at comparable loadings

Comparison of the CuCHA formulation on a flow through substrate and a wall flow filter at comparable loadings. A wall flow filter was coated with the same catalyst as the flow through catalyst carrier of Example 3 and the two samples measure to compare their catalytic activity.

A CuCHA slurry was prepared by mixing 90 g of CuCHA, as described above, with 215 mL of deionized water. The mixture was ball-milled for 11 hours to obtain a slurry which comprised 90% particles smaller than 10 μm. 15.8 g of zir-conium acetate in dilute acetic acid (containing 30% ZrO$_2$) was added into the slurry with agitation.

The slurry was coated onto 1"D×6"L cellular ceramic wall flow filter cores, having a cell density of 300 cpsi (cells per square inch) and a wall thickness of 12 mil. The coated cores were dried at 120° C. for 3 hours and calcined at 540° C. for 1 hour. The coating process was repeated once to obtain a target washcoat loading of 2.0 g/in$^3$.

Nitrogen oxides selective catalytic reduction (SCR) efficiency and selectivity of a fresh catalyst core was measured by adding a feed gas mixture of 500 ppm of NO, 500 ppm of NH$_3$, 10% O$_2$, 5% H$_2$O, balanced with N$_2$ to a steady state reactor containing a 1"D×6"L catalyst core. The reaction was carried at a space velocity of 40,000 hr$^{-1}$ across a 150° C. to 400° C. temperature range.

Hydrothermal stability of the catalyst was measured by hydrothermal aging of the catalyst core in the presence of 10% H$_2$O at 750° C. for 25 hours, followed by measurement of the nitrogen oxides SCR efficiency and selectivity by the same process as outlined above for the SCR evaluation on a fresh catalyst core.

Table 3 below shows the comparison of the hydrothermally aged SCR performance of the CuCHA coated on a filter versus the CuCHA coated on a flow through catalyst carrier.

TABLE 3

| SCR performance comparison (% conversion) of filter and flow through substrates | | | | | |
|---|---|---|---|---|---|
| NO | NO$_2$ | NOx | NH$_3$ | N$_2$O make (ppm) | Sample Temp (degrees C.) |
| CuCHA on Flow through, aged 50 H @ 800 C. w/ 10% water | | | | | |
| 74.6 | 83.5 | 75.0 | 76.9 | 8.4 | 211 |
| 96.3 | 95.6 | 96.2 | 93.9 | 9.2 | 255 |
| 97.6 | 97.5 | 97.6 | 97.3 | 7.6 | 309 |
| 82.7 | 36.5 | 81.0 | 98.1 | 12.3 | 441 |
| CuCHA on filter, aged 25 H @ 750 C. w/ 10% water | | | | | |
| 74.7 | 81.5 | 75.1 | 76.0 | 8.8 | 207 |
| 96.4 | 96.1 | 96.4 | 96.5 | 9.9 | 255 |
| 98.6 | 97.7 | 98.5 | 96.8 | 8.7 | 304 |
| 96.2 | 90.7 | 95.9 | 98.7 | 8.2 | 352 |
| 91.1 | 62.4 | 89.8 | 99.4 | 11.7 | 400 |

In spite of some differences in exact experimental detail, the comparison clearly supports the equivalence of the catalytic performance of CuCHA on the filter core and the flow through monolith catalyst.

## EXAMPLE 16

An NH$_4$+-CHA slurry was prepared by mixing 608 g of NH$_4$+-CHA, having a silica/alumina mole ratio of 30, with 796 mL of deionized water. The mixture was milled using a Netzsch Mill to obtain a slurry which comprised 90% particles smaller than 8.4 μm. 106 g of zirconium acetate in dilute acetic acid (containing 30% ZrO$_2$) was added into the slurry with agitation.

The slurry was coated onto 1"D×3"L cellular ceramic cores, having a cell density of 400 cpsi and a wall thickness of 6.5 mil. The coated cores were dried at 110° C. for 3 hours. The coating process was repeated once to obtain a target washcoat loading of 2.4 g/in$^3$.

This pre-coated monolith was then dipped into a 0.25M solution of copper acetate for 5 minutes at room temperature. The core was gently blown with an air gun and dried at 110°

Umicore AG & Co. KG
Exhibit 1001
Page 24 of 27

US 8,404,203 B2

19                                                           20

C. for 3 hours and then calcined at 400° C. for 1 hour. This provided a CuO loading on CHA of 2.72 wt. % based on the CHA weight on monolith.

The SCR NOx evaluation of the fresh catalyst was the same as outlined for Example 1. Hydrothermal stability of the catalyst was measured by hydrothermal aging of the catalyst core in the presence of 10% steam at 850° C. for 6 hrs, followed by measurement of the SCR NOx efficiency as outlined for the fresh catalyst.

FIG. 7 is graph showing the NOx conversion and N₂O formation versus temperature for this sample.

### EXAMPLE 17

12.1 g of copper acetate monohydrate was dissolved in 420 g deionized water, then 141 g of NH₄⁺-CHA, having a silica/alumina mole ratio of 30, was added in. The mixture was milled using a Netzsch Mill to obtain a slurry which comprised 90% particles smaller than 3.5 μm.

The slurry was coated onto 1"D×3"L cellular ceramic cores, having a cell density of 400 cpsi and a wall thickness of 6.5 mil. The coated cores were dried at 110° C. for 3 hours. The coating process was repeated twice to obtain a target washcoat loading of 2.4 g/in³. The coated cores were then calcined at 400° C. for 1 hour. This provides a CuO loading on CHA of 3.3 wt. %.

The SCR NOx evaluation of the fresh catalyst was the same as outlined for Example 1. Hydrothermal stability of the catalyst was measured by hydrothermal aging of the catalyst core in the presence of 10% steam at 850° C. for 6 hrs, followed by measurement of the SCR NOx efficiency as outlined for the fresh catalyst.

FIG. 8 is graph showing the NOx conversion and N₂O formation versus temperature for this sample.

### EXAMPLE 18

A CuCHA powder catalyst was prepared by ion-exchange with copper acetate. A 0.40 M of copper (II) acetate monohydrate solution was prepared by dissolving 89.8 g of the copper salt in 1.125 L of deionized water at 70° C. 300 g of NH₄⁺-form CHA was then added to this solution. An ion-exchange reaction between the NH4⁺-form CHA and the copper ions was carried out by agitating the slurry at 70° C. for 1 hour. The pH was between 4.8 and 4.5 during the reaction. The resulting mixture was then filtered, washed until the filtrate had a conductivity of <200 μScm⁻¹, which indicated that substantially no soluble or free copper remained in the sample, and the washed sample was dried at 90° C. The obtained CuCHA catalyst comprised CuO at 3.06% by weight and Na₂O at 140 ppm.

The slurry preparation, coating and SCR NO$_x$ evaluation were the same as outlined above for Example 1. As shown in FIG. 9, Example 18 exhibited the same SCR performance as Example 3 that was prepared by twice ion-exchanges with copper sulphate plus an incipient wetness impregnation.

### EXAMPLE 19

CuCHA catalyst comprising 2.99% CuO by weight was prepared by the same process as that in Example 18, except that this sample was prepared in 0.30 M Cu solution.

### EXAMPLE 20

CuCHA catalyst comprising 2.69% CuO by weight was prepared by the same process as that in Example 18, except that the ion-exchange was processed at 45° C.

### EXAMPLE 21

CuCHA catalyst comprising 2.51% CuO by weight was prepared by the same process as that in Example 19, except that the ion-exchange was processed at 45° C.

The Cu loadings of Examples 18-21 are compared with that of Example 1 in Table 4. We see that copper acetate is more efficient than copper sulphate to provide desired Cu loading with a low concentration of copper solution at lower reaction temperature.

TABLE 4

| Example | Cu salt | Cu²⁺ Conc., M | Reaction T, ° C. | CuO wt. % |
|---------|---------|---------------|------------------|-----------|
| 1 | Cu sulphate | 1.0 | 80 | 2.41 |
| 18 | Cu acetate | 0.40 | 70 | 3.06 |
| 19 | Cu acetate | 0.30 | 70 | 2.99 |
| 20 | Cu acetate | 0.40 | 45 | 2.69 |
| 21 | Cu acetate | 0.30 | 45 | 2.51 |

### EXAMPLE 22

Hydrothermal Aging and Chemical Analysis of Example 2

The Cu/CHA powder prepared in Example 2 was hydrothermally aged in the presence of 10% H₂O in air at 800° C. for 48 hours. The analyzed material from Example 2 is labeled Example 22 in FIGS. 11 and 12 and Tables 5 and 6. The hydrothermally aged sample is labeled Example 22A in Tables 5 and 6 and FIGS. 11 and 12.

The X-ray powder diffraction patterns were determined by standard techniques. Generator settings are 45 kV and 40 mA. The diffractometer optics consists of a variable divergence slit, incident beam soller slits, a receiving slit, a graphite monochromater, and a scintillation counter using Bragg-Brentano parafocusing geometry. The d-spacings were calculated from the lattice parameters of a=13.58 and c=14.76 Å for Example 22 and a=13.56 and c=14.75 Å for Example 22A. The lattice parameters were determined by scanning the sample with LaB6 mixed in as an internal standard. The data range was 15-38.5 degrees two theta using a step size of 0.01 and counting for 5 seconds. The resulting pattern was run through profile refinement in JADE software. The LaB6 lattice parameters were kept constant at 5.169 A to compensate for sample displacement errors. Table 5 shows the X-ray powder diffraction lines for Example 22 and Example 22A. The CHA crystalline structure retained after 800° C. 48 hours steam aging.

TABLE 5

| | Example 22 | | | Example 22A | | |
|---|---|---|---|---|---|---|
| 2-Theta | d (Å) | I (%) | | 2-Theta | d (Å) | I (%) |
| 9.63 | 9.201 | 100% | | 9.62 | 9.189 | 100% |
| 13.02 | 6.793 | 37% | | 13.04 | 6.782 | 36% |
| 14.15 | 6.252 | 8% | | 14.17 | 6.247 | 7% |
| 16.21 | 5.465 | 28% | | 16.23 | 5.457 | 26% |
| 18.01 | 4.921 | 32% | | 18.03 | 4.917 | 30% |
| 19.28 | 4.600 | 3% | | 19.30 | 4.595 | 3% |
| 20.85 | 4.258 | 89% | | 20.88 | 4.251 | 82% |
| 22.29 | 3.985 | 4% | | 22.31 | 3.981 | 4% |
| 22.65 | 3.922 | 5% | | 22.69 | 3.916 | 4% |
| 23.33 | 3.809 | 8% | | 23.37 | 3.804 | 7% |
| 25.27 | 3.521 | 41% | | 25.29 | 3.519 | 38% |

Umicore AG & Co. KG
Exhibit 1001
Page 25 of 27

21

TABLE 5-continued

| | Example 22 | | | Example 22A | |
|---|---|---|---|---|---|
| 2-Theta | d (Å) | I (%) | 2-Theta | d (Å) | I (%) |
| 26.22 | 3.397 | 24% | 26.26 | 3.391 | 23% |
| 27.98 | 3.186 | 5% | 28.03 | 3.181 | 5% |
| 28.53 | 3.126 | 6% | 28.56 | 3.123 | 5% |
| 29.91 | 2.985 | 3% | 29.96 | 2.980 | 3% |
| 30.98 | 2.885 | 57% | 31.03 | 2.880 | 53% |
| 31.21 | 2.864 | 17% | 31.23 | 2.862 | 17% |
| 31.48 | 2.840 | 28% | 31.51 | 2.837 | 26% |
| 31.99 | 2.795 | 4% | 32.04 | 2.792 | 4% |
| 32.75 | 2.733 | 3% | 32.80 | 2.728 | 3% |
| 33.73 | 2.655 | 2% | 33.78 | 2.651 | 2% |
| 33.95 | 2.639 | 4% | 33.98 | 2.637 | 4% |
| 34.92 | 2.568 | 13% | 34.98 | 2.563 | 12% |
| 35.38 | 2.535 | 3% | 35.43 | 2.531 | 2% |
| 36.50 | 2.460 | 9% | 36.54 | 2.457 | 8% |
| 38.72 | 2.324 | 2% | 38.78 | 2.320 | 1% |
| 38.90 | 2.313 | 1% | 38.93 | 2.312 | 1% |
| 39.13 | 2.300 | 2% | 39.18 | 2.297 | 2% |
| 39.56 | 2.276 | 1% | 39.62 | 2.273 | 1% |
| 39.78 | 2.264 | 2% | 39.84 | 2.261 | 2% |

UV/VIS diffuse reflectance spectra expressed by F(R) were collected using a diffuse reflectance attachment with an integrating and reference sphere coated with BaSO$_4$ inside a Cary 300 UV-Vis spectrometer. The UV/VIS of Example 22 and 22A are shown in FIG. 11.

Table 6 lists the $^{29}$Si MAS NMR (Magic Angle Spinning Nuclear Magnetic Resonance) data and the calculated framework Si/Al atomic ratio of Example 22 and 22A. The data for the CHA and the 800° C., 48 hours, 10% steam-aged CHA are also included for comparison. The data indicate that a degree of de-alumination takes place upon aging of both CHA and Cu/CHA samples. However, the Cu/CHA sample undergoes much less de-alumination upon aging. It is also observed that the Cu-exchange process itself slightly alters the framework Si/Al atomic ratio from 15 to 17.

FIG. 12 shows the $^{27}$Al MAS NMR (Magic Angle Spinning Nuclear Magnetic Resonance) spectra of Example 22 and 22A, as well as the CHA and aged CHA samples. The spectra indicate that some of the tetrahedral Al species are converted to penta- and octa-coordinated species upon Cu-exchange. The spectra strongly support that the Cu/CHA sample undergoes much less de-alumination upon aging than the CHA sample.

TABLE 6

| | Intensity % | | | | |
|---|---|---|---|---|---|
| Sample | Si(0Al) −114 ppm | Si(0Al) −111 ppm | Si(1Al) −105 ppm | Si(1Al) −101 ppm | Si/Al |
| CHA | 2 | 71 | 16 | 11 | 15 |
| Aged CHA | 0 | 95 | 1 | 4 | 82 |
| Example 22 | 2 | 75 | 19 | 5 | 17 |
| Example 22A | 4 | 85 | 11 | <1 | 34 |

Exemplary embodiments of emission treatment systems are shown in FIGS. 10A, 10B and 10C. One embodiment of the inventive emissions treatment system denoted as 11A is schematically depicted in FIG. 10A. The exhaust, containing gaseous pollutants (including unburned hydrocarbons, carbon monoxide and NOx) and particulate matter, is conveyed from the engine 19 to a position downstream in the exhaust system where a reductant, i.e., ammonia or an ammonia-precursor, is added to the exhaust stream. The reductant is injected as a spray via a nozzle (not shown) into the exhaust

22

stream. Aqueous urea shown on one line 25 can serve as the ammonia precursor which can be mixed with air on another line 26 in a mixing station 24. Valve 23 can be used to meter precise amounts of aqueous urea which are converted in the exhaust stream to ammonia.

The exhaust stream with the added ammonia is conveyed to the SCR catalyst substrate 12 (also referred to herein including the claims as "the first substrate") containing CuCHA in accordance with one or more embodiments. On passing through the first substrate 12, the NOx component of the exhaust stream is converted through the selective catalytic reduction of NOx with NH$_3$ to N$_2$ and H$_2$O. In addition, excess NH$_3$ that emerges from the inlet zone can be converted through oxidation by a downstream ammonia oxidation catalyst (not shown) also containing CuCHA to convert the ammonia to N$_2$ and H$_2$O. The first substrate is typically a flow through monolith substrate.

An alternative embodiment of the emissions treatment system, denoted as 11B is depicted in FIG. 10B which contains a second substrate 27 interposed between the NH$_3$ injector and the first substrate 12. In this embodiment, the second substrate is coated with an SCR catalyst composition which may be the same composition as is used to coat the first substrate 12 or a different composition. An advantageous feature of this embodiment is that the SCR catalyst compositions that are used to coat the substrate can be selected to optimize NOx conversion for the operating conditions characteristic of that site along the exhaust system. For example, the second substrate can be coated with an SCR catalyst composition that is better suited for higher operating temperatures experienced in upstream segments of the exhaust system, while another SCR composition can be used to coat the first substrate (i.e., the inlet zone of the first substrate) that is better suited to cooler exhaust temperature which are experienced in downstream segments of the exhaust system.

In the embodiment depicted in FIG. 10B, the second substrate 27 can either be a honeycomb flow through substrate, an open cell foam substrate or a honeycomb wall flow substrate. In configurations of this embodiment where the second substrate is a wall flow substrate or a high efficiency open cell foam filter, the system can remove greater than 80% of the particulate matter including the soot fraction and the SOF. An SCR-coated wall flow substrate and its utility in the reduction of NOx and particulate matter have been described, for instance, in co-pending U.S. patent application Ser. No. 10/634,659, filed Aug. 5, 2003, the disclosure of which is hereby incorporated by reference.

In some applications it may be advantageous to include an oxidation catalyst upstream of the site of ammonia/ammonia precursor injection. For instance, in the embodiment depicted in FIG. 10C, an oxidation catalyst is disposed on a catalyst substrate 34. The emissions treatment system 11C is provided with the first substrate 12 and optionally includes a second substrate 27. In this embodiment, the exhaust stream is first conveyed to the catalyst substrate 34 where at least some of the gaseous hydrocarbons, CO and particulate matter are combusted to innocuous components. In addition, a significant fraction of the NO of the NOx component of the exhaust is converted to NO$_2$. Higher proportions of NO$_2$ in the NOx component facilitate the reduction of NOx to N$_2$ and H$_2$O on the SCR catalyst(s) located downstream. It will be appreciated that in the embodiment shown in FIG. 10C, the first substrate 12 could be a catalyzed soot filter, and the SCR catalyst could be disposed on the catalyzed soot filter. In an alternative embodiment, the second substrate 27 comprising an SCR catalyst may be located upstream from catalyst substrate 34.

Umicore AG & Co. KG
Exhibit 1001
Page 26 of 27

US 8,404,203 B2

23

It will be apparent to those skilled in the art that various modifications and variations can be made to the present invention without departing from the spirit or scope of the invention. Thus, it is intended that the present invention cover modifications and variations of this invention provided they come within the scope of the appended claims and their equivalents.

What is claimed is:

1. A process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen wherein said process comprises contacting the gas stream with a catalyst comprising a zeolite having the CHA crystal structure and a mole ratio of silica to alumina from about 15 to about 100 and an atomic ratio of copper to aluminum from about 0.25 to about 0.50.

2. The process of claim 1, wherein the gas stream is an exhaust gas stream from an internal combustion engine and the catalyst is disposed on a honeycomb flow through substrate.

3. The process of claim 2, wherein the exhaust gas stream further comprises ammonia and at least a portion of the flow through substrate is coated with CuCHA.

4. The process of claim 2, wherein at least a portion of the flow through substrate is coated with Pt and CuCHA to oxidize ammonia in the exhaust gas stream.

5. The process of claim 1, wherein the gas stream is an exhaust gas stream from an internal combustion engine and the catalyst is disposed on a honeycomb wall flow substrate.

6. The process of claim 5, wherein the exhaust gas stream further comprises ammonia and at least a portion of the wall flow substrate is coated with CuCHA.

7. The process of claim 5, wherein at least a portion of the wall flow substrate is coated with Pt and CuCHA to oxidize ammonia in the exhaust gas stream.

8. The process of claim 1, wherein the gas stream is an exhaust gas stream from an internal combustion engine and the process further comprises contacting the exhaust gas stream with a catalyzed soot filter.

9. The process of claim 8, wherein said catalyzed soot filter is upstream of said catalyst.

10. The process of claim 8, wherein said catalyzed soot filter is downstream of said catalyst.

11. The process of claim 8, further comprising contacting the exhaust gas stream with a diesel oxidation catalyst.

12. The process of claim 11, wherein said diesel oxidation catalyst is upstream of said catalyst comprising a zeolite having the CHA crystal structure.

13. The process of claim 12, wherein said diesel oxidation catalyst and catalyzed soot filter are upstream from said catalyst comprising a zeolite having the CHA crystal structure.

14. The process of claim 1, wherein the process further comprises adding a reductant to the gas stream.

15. The process of claim 14, wherein the reductant comprises ammonia or an ammonia precursor.

24

16. The process of claim 14, wherein the reductant comprises urea.

17. The process of claim 15, where the mole ratio of silica to alumina is from about 25 to about 40.

18. The process of claim 15, wherein the mole ratio of silica to alumina is about 30.

19. The process of claim 15, wherein the atomic ratio of copper to aluminum is from about 0.30 to about 0.50.

20. The process of claim 15, wherein the atomic ratio of copper to aluminum is about 0.40.

21. The process of claim 15, wherein the mole ratio of silica to alumina is from about 25 to about 40 and the atomic ratio of copper to aluminum is from about 0.30 to about 0.50.

22. The process of claim 15, wherein the mole ratio of silica to alumina is about 30 and the atomic ratio of copper to aluminum is about 0.40.

23. The process of claim 15, wherein the catalyst is disposed on a honeycomb flow-through substrate.

24. The process of claim 15, wherein the catalyst is disposed on a honeycomb wall flow filter substrate.

25. The process of claim 15, wherein the gas stream is an exhaust gas stream from an internal combustion engine and the process further comprises contacting the exhaust gas stream with a catalyzed soot filter and an oxidation catalyst, wherein the oxidation catalyst is upstream of the catalyst comprising a zeolite with the CHA crystal structure and the catalyzed soot filter are upstream from the catalyst comprising a zeolite with the CHA crystal structure.

26. A process for the reduction of oxides of nitrogen contained in a gas stream in the presence of oxygen wherein said process comprises adding a reductant to the gas stream and contacting the gas stream containing the reductant with a catalyst comprising a zeolite having the CHA crystal structure and a mole ratio of silica to alumina from about 15 to about 150 and an atomic ratio of copper to aluminum from about 0.25 to about 1.

27. The process of claim 26, wherein the reductant comprises ammonia or an ammonia precursor.

28. The process of claim 26, wherein the reductant comprises urea.

29. The process of claim 26, wherein the catalyst is disposed on a honeycomb flow-through substrate.

30. The process of claim 26, wherein the catalyst is disposed on a honeycomb wall flow filter substrate.

31. The process of claim 27, wherein the gas stream is an exhaust gas stream from an internal combustion engine and the process further comprises contacting the exhaust gas stream with a catalyzed soot filter and an oxidation catalyst, wherein the oxidation catalyst and the catalyzed soot filter are upstream from the catalyst comprising a zeolite with the CHA crystal structure.

*    *    *    *    *

Umicore AG & Co. KG
Exhibit 1001
Page 27 of 27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of April, 2017, I filed the foregoing OPENING BRIEF OF APPELLANT with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send a notice of such filing to all registered CM/ECF users.

Respectfully submitted,

Dated: April 28, 2017

/s/ Anish R. Desai
Anish R. Desai
Weil Gotshal & Manges LLP
1300 Eye Street N.W., Suite 900
Washington, DC 20005
(202) 682-7000

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitations of Fed. R. App. P. Rule 32(a)(7)(B) and Circuit Rule 32(b).  The Brief contains 10,852 words as determined by Microsoft Word.


Respectfully submitted,


Dated: April 28, 2017                    /s/ Anish R. Desai
                                         Anish R. Desai
                                         Weil Gotshal & Manges LLP
                                         1300 Eye Street N.W., Suite 900
                                         Washington, DC 20005
                                         (202) 682-7000