Nos. 17-1425, -1426, -1427, -1428

IN THE

# United States Court of Appeals for the Federal Circuit

BASF CORPORATION,

*Appellant,*

v.

UMICORE AG & CO. KG,

*Appellee.*

On Appeal from the Patent and Trademark Office
Patent Trial and Appeal Board
Nos. IPR2015-01121, IPR2015-1123, IPR2015-
1124, IPR2015-1125

## ANSWERING BRIEF FOR
## APPELLEE UMICORE

Elizabeth A. Gardner
K. Patrick Herman
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 W. 52nd Street
New York, NY  10019
(212) 506-5000

Eric A. Shumsky
Jeremy Peterman
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

*Counsel for Appellee*

June 21, 2017

## CLAIM LANGUAGE AT ISSUE

A catalyst comprising:

> an aluminosilicate zeolite having the CHA crystal structure and
>
> a mole ratio of silica to alumina from about 15 to about 150 and
>
> an atomic ratio of copper to aluminum from about 0.25 to about 1,
>
> the catalyst effective to promote reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$ selectively.

Appx1369 ('662 patent claim 1).

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

BASF Corp.      **v.**      Umicore AG & Co. KG

Case No.     17-1425

## CERTIFICATE OF INTEREST

Counsel for the:

☐ (petitioner) ☐ (appellant) ☐ (respondent) ☒ (appellee) ☐ (amicus) ☐ (name of party)

Umicore AG & Co. KG

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Umicore AG & Co. KG | n/a | Umicore S.A. |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

n/a

| | |
|---|---|
| 6/21/2017 | /s/ Eric A. Shumsky |
| Date | Signature of counsel |

Please Note: All questions must be answered

Eric A. Shumsky
Printed name of counsel

cc:    counsel of record

Reset Fields

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT OF RELATED CASES ................................................. viii

INTRODUCTION ................................................................................... 1

STATEMENT OF THE ISSUES ............................................................. 3

STATEMENT OF THE CASE ................................................................ 5

    The Use Of CHA Zeolites As Catalysts For Ammonia SCR
    Has Long Been Known .................................................................. 5

    The '662 And '203 Patents Tweak CHA Zeolites For Use As
    Ammonia SCR Catalysts. ........................................................... 11

    Umicore Petitions For Inter Partes Review Of The '662 And
    '203 Patents. .............................................................................. 14

    The Board Institutes Inter Partes Review And Ultimately
    Finds The Challenged Claims Obvious On Some
    Grounds But Not Others. ........................................................... 19

SUMMARY OF ARGUMENT .............................................................. 24

STANDARD OF REVIEW ................................................................... 28

ARGUMENT ........................................................................................ 29

I.    The Board Correctly Held The Challenged Claims
    Obvious In View Of Zones And Maeshima. .......................... 29

    A.    BASF has waived its arguments challenging the
    combination of Zones and Maeshima. ........................ 30

    1.    BASF waived any challenge to the Board's
    factual finding that Zones and Maeshima
    teach that the claimed zeolite catalyst is
    effective for ammonia SCR. ............................... 30

2.    BASF waived any argument that the Board erred in relying on arguments and evidence about Zones that did not appear in Umicore's petition. .............................................. 36

B.    Substantial evidence supports the Board's factual finding that Zones and Maeshima disclose that the claimed zeolite catalyst is effective for ammonia SCR............................................................. 39

1.    Zones and Maeshima together disclose using a copper-promoted CHA zeolite with a high silica-to-alumina ratio for ammonia SCR.................................................................. 40

2.    Alternatively, Zones by itself discloses using a copper-promoted CHA zeolite with a high silica-to-alumina ratio for ammonia SCR.......... 44

3.    BASF's concession that certain of the challenged claims are obvious reinforces the obviousness of the claims that remain in dispute. ............................................................. 51

II.    The Board Correctly Held The Challenged Claims Obvious In View Of Maeshima And Breck. .......................... 53

A.    Substantial evidence supports the Board's factual finding that a person of ordinary skill would be motivated to combine Maeshima and Breck. ............. 54

B.    BASF waived any argument that too much time passed between the prior art and the claimed invention, which is wrong in any event....................... 65

CONCLUSION .................................................................................... 68

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atofina v. Great Lakes Chem. Corp.*,
    441 F.3d 991 (Fed. Cir. 2006) ............................................................. 46

*Belden Inc. v. Berk-Tek LLC*,
    805 F.3d 1064 (Fed. Cir. 2015) .................................................... 28, 36

*In re Corkill*,
    771 F.2d 1496 (Fed. Cir. 1985) ......................................................... 58

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005) ......................................................... 65

*In re DBC*,
    545 F.3d 1373 (Fed. Cir. 2008) ......................................................... 31

*Dell, Inc. v. Acceleron, LLC*,
    818 F.3d 1293 (Fed. Cir. 2016) ......................................................... 38

*Eisai Co. v. Dr. Reddy's Labs., Ltd.*,
    533 F.3d 1353 (Fed. Cir. 2008) ......................................................... 60

*Fresenius USA, Inc. v. Baxter Int'l Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009) ......................................................... 66

*In re Fulton*,
    391 F.3d 1195 (Fed. Cir. 2004) ......................................................... 59

*In re Gartside*,
    203 F.3d 1305 (Fed. Cir. 2000) ......................................................... 28

*Google Inc. v. SimpleAir, Inc.*,
    No. 2016-1901, 2017 WL 1149518 (Fed. Cir. Mar. 28,
    2017) ........................................................................................................ 36

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*,
    821 F.3d 1359 (Fed. Cir. 2016) ......................................................... 38

iv

*IPR Licensing, Inc. v. ZTE Corp.*,
  Nos. 2016-1374, -1443, 2017 WL 1406501 (Fed. Cir. Apr.
  20, 2017) ...................................................................................... 66

*In re Jolley*,
  308 F.3d 1317 (Fed. Cir. 2002) ........................................................ 29

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
  780 F.3d 1376 (Fed. Cir. 2015) .................................................... 46, 47

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007).............................................. 53, 54, 55, 56, 57, 61

*Leo Pharm. Prods., Ltd. v. Rea*,
  726 F.3d 1346 (Fed. Cir. 2013) ........................................................ 67

*Merck & Cie v. Gnosis S.p.A.*,
  808 F.3d 829 (Fed. Cir. 2015) .......................................................... 28

*In re Merck & Co., Inc.*,
  800 F.2d 1091 (Fed. Cir. 1986) .................................................... 39, 41

*Merck & Co. v. Biocraft Labs., Inc.*,
  874 F.2d 804 (Fed. Cir. 1989) ...................................................... 58, 59

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
  370 F.3d 1354 (Fed. Cir. 2004) ........................................................ 46

*In re Mouttet*,
  686 F.3d 1322 (Fed. Cir. 2012) ............................................. 29, 39, 63

*Nike, Inc. v. Adidas AG*,
  812 F.3d 1326 (Fed. Cir. 2016) ......................................... 4, 28, 66, 67

*Novosteel SA v. United States*,
  284 F.3d 1261 (Fed. Cir. 2002) ........................................................ 31

*In re NTP, Inc.*,
  654 F.3d 1279 (Fed. Cir. 2011) ........................................................ 29

*In re Nuvasive, Inc.*,
  842 F.3d 1376 (Fed. Cir. 2016) ....................................... 30, 31, 35, 36

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
   678 F.3d 1280 (Fed. Cir. 2012) .................................................. 60, 61

*Paice LLC v. Ford Motor Co.*,
   No. 2016-1647, 2017 WL 897346 (Fed. Cir. Mar. 7, 2017)................. 45

*Perricone v. Medicis Pharm. Corp.*,
   432 F.3d 1368 (Fed. Cir. 2005) .......................................................58

*Pfizer Inc. v. Teva Pharm. USA, Inc.*,
   555 F. App'x 961 (Fed. Cir. 2014) ................................................... 60

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ....................................................... 49

*Purdue Pharma Prods. L.P. v. Par Pharm., Inc.*,
   377 F. App'x 978 (Fed. Cir. 2010) ................................................... 62

*In re Rouffett*,
   149 F.3d 1350 (Fed. Cir. 1998) .......................................................54

*Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG*,
   856 F.3d 1019 (Fed. Cir. 2017) .................................................. 37, 49

*Securus Techs., Inc. v. Glob. Tel*link Corp.*,
   Nos. 2016-1992, -1993, 2017 WL 1458867 (Fed. Cir. Apr.
   25, 2017)..................................................................... 36, 37, 38

*Shinseki v. Sanders*,
   556 U.S. 396 (2009)......................................................................66

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006) ....................................................... 41

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*,
   492 F.3d 1350 (Fed. Cir. 2007) .................................................. 60, 61

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
   853 F.3d 1272 (Fed. Cir. 2017) .................................................. 38, 46

*In re Wright*,
   569 F.2d 1124 (CCPA 1977).............................................................67

*In re Young,*
  927 F.2d 588 (Fed. Cir. 1991) ...................................................... 39, 43

**Statutes**

35 U.S.C. § 318(a) ........................................................................ 49

## STATEMENT OF RELATED CASES

No other appeal involving this civil action was previously before this or any other appellate court.  There are no pending cases known to counsel that would directly affect or be directly affected by this Court's decision in the pending appeal.

## INTRODUCTION

The two BASF patents at issue in this appeal are directed to a very simple concept: use a known catalyst (called a "zeolite"), in a known process, to remove nitrogen oxide pollutants from exhaust gas. The Board determined that BASF patent claims directed to this concept are obvious in view of two different prior-art combinations: Zones combined with Maeshima, and Maeshima combined with Breck.

There could be no clearer indication of the correctness of the Board's decision than the extent to which BASF has made brand-new arguments on appeal.

During proceedings before the Board, BASF admitted that both combinations teach every limitation of the challenged claims. Given that admission, BASF was left to argue that there was no motivation to combine the prior art. Now, BASF has changed course completely. With respect to the Zones/Maeshima combination, arguments about motivation have all but disappeared. Instead, BASF's principal argument is that the Zones/Maeshima combination is missing one limitation (i.e., that the catalyst be able to "promote the reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$ selectively").

But because BASF did not make this argument in its Patent Owner Response, it cannot do so for the first time on appeal. And the Board's determination is supported by substantial evidence in any event. BASF argues that one reference by itself (Zones) fails to disclose the limitation—but that argument ignores and is nonresponsive to the Board's finding that both Zones and Maeshima, individually and together, disclose the limitation.

BASF also contends that the Board erred when assessing the Maeshima/Breck combination. Specifically, it argues, there is no obviousness because Maeshima lists nine different zeolites that can be used for the requisite purpose (i.e., "promot[ing] the reaction of ammonia with nitrogen oxides"), only one of which is claimed by BASF. BASF contends that a person of ordinary skill would have had no reason to select the claimed zeolite from Maeshima's list of nine, and to combine it with Breck. But, Maeshima explains that every single one of these zeolites is suitable for use as a catalyst. This is not a case where the prior art lists thousands of different materials, or unbounded categories of material, without disclosing how any one of them would be used in the obviousness combination. BASF's claimed catalyst is in the

prior art, and the prior art explains that that catalyst can be used for the very purpose BASF now claims: removing nitrogen oxide pollutants from diesel exhaust.

The decision of the Board should be affirmed.

## STATEMENT OF THE ISSUES

1a.    In an inter partes review, the patent owner waives any argument it fails to make in its Patent Owner Response.  Here, BASF did not dispute in its Patent Owner Response that the combination of Zones and Maeshima teaches using a copper-promoted zeolite with a high silica-to-alumina ratio as an ammonia SCR catalyst.  On appeal, the only arguments BASF raises against the Zones/Maeshima combination are directed to this limitation.  Has BASF waived these challenges to the combination of Zones and Maeshima?

b.    The Board relied on the combination of Zones and Maeshima, together with disclosures in BASF's patents themselves and undisputed expert testimony, to find that the prior art discloses the limitation that BASF says is missing here (again, using a copper-promoted CHA zeolite, with the claimed silica-to-alumina ratio, as an ammonia SCR catalyst).  On appeal, BASF only argues that this

limitation is missing from Zones in isolation and does not address the combination. Does substantial evidence support the Board's unchallenged factual finding?

2a.    The Board found a motivation to combine Breck and Maeshima. Specifically, it reasoned that Maeshima discloses using a particular zeolite for a particular catalytic purpose (namely, using a copper-promoted CHA zeolite as an ammonia SCR catalyst), and that Breck discloses that increasing a zeolite's silica-to-alumina ratio improves its stability when it is used in catalytic processes. Does substantial evidence support the Board's factual finding?

b.    This Court has explained that elapsed time between prior art and a claimed invention, without more, is not an objective indicator of nonobviousness. *Nike, Inc. v. Adidas AG,* 812 F.3d 1326, 1338 (Fed. Cir. 2016). BASF contends that the Board erred in failing to address the issue of lapsed time in its final written decision, even though BASF did not make this argument in its Patent Owner Response. Did the Board properly decline to address BASF's argument, and if not, was any error harmless?

# STATEMENT OF THE CASE

## *The Use Of CHA Zeolites As Catalysts For Ammonia SCR Has Long Been Known.*

Both Umicore and BASF manufacture products that remove pollution from diesel operated power sources.  To understand the technology here, it's important to start with some basics about the process that generates those pollutants.

Diesel fuel has long been used to run generators, vehicle engines, and power plants.  When diesel fuel is burned, the resulting byproducts include exhaust gas.  Diesel exhaust gas includes a variety of harmful components, including nitrogen oxides (also known as "NOx").  Treating diesel exhaust to remove NOx therefore is beneficial, and methods for doing so have long been known.  One such method involves converting harmful nitrogen oxides into harmless components: nitrogen and water. This is done using a catalyst—i.e., a substance that promotes the reaction of other substances.  The catalyst at issue here is an aluminosilicate mineral—i.e., a mineral composed of aluminum, silicon, and oxygen—known as a zeolite.  *See* Appx1399, 1:10-25 (Maeshima 1977); Appx1355, 1:30-33 ('662 patent).

Zeolites are porous, crystalline materials. This simply means that, at a microscopic level, the zeolites' atoms are arranged in a crystal lattice shape; and that, at a more macroscopic level, the crystalline material takes on a three dimensional porous structure, like a sponge. *See* Appx3184 ¶ 56.

Zeolites generally (and the ones at issue here) are made of alumina ($Al_2O_3$) and silica ($SiO_2$). Appx1822 ¶ 25. Zeolites occur naturally, and they also can be made synthetically. *See, e.g.*, Appx1400, 4:5-36 (describing natural and synthetic zeolites). They are classified into families, also known as "frameworks," based on their crystal structure. Appx1830-1831 ¶¶ 47-50. This case involves zeolites that belong to the CHA family. One example is chabazite, which is a well-known, naturally occurring zeolite. Zeolites in the CHA family can also be made synthetically. *See, e.g.*, Appx2748, 112:7-22.

Zeolites are effective in catalyzing certain reactions due to both their structure and their chemical composition. In the $Al_2O_3$ (alumina and $SiO_2$ (silica) that make up a zeolite, the Al and Si atoms are positively charged, and the O atoms are negatively charged. The Al, Si, and O atoms arrange themselves into a framework that seeks to

balance out the positive and negative charges.  Specifically, the Al and Si atoms space themselves so that they "share" the oxygen atoms. Appx1408, 1:21-25.  The charges cannot be completely balanced, however (because of a difference in the relative charges of Al and Si). As a consequence, zeolites retain a slightly negative charge throughout all the pore surfaces in the vicinity of the Al atoms.  *See* Appx1400, 3:44-50.  That negative charge can attract any positive species in the vicinity (such as H+ from any water, or Na+ from any salt), which will be loosely retained in the zeolite's pores.  *See* Appx1408, 1:25-34; *see also* Appx3186 ¶ 60 (BASF's expert).  Molecules entering the zeolite's pores—like nitrogen oxides—will encounter this positive species facilitating catalyzation.

Zeolites, including chabazite, are used as catalysts in promoting two well-known chemical reactions that reduce the amount of nitrogen oxides.  In these reactions, the zeolite is used together with a "reducing agent," which is the substance that reacts with the nitrogen oxides in the zeolite's pores.  The first reaction is a "non-selective reduction method in which carbon monoxide, hydrogen or a lower hydrocarbon is used as the reducing agent." Appx1399, 1:15-19.  The second reaction,

which is preferred because it reduces more nitrogen oxides, is "a selective reduction method in which ammonia is used as the reducing agent." *Id.* at 1:19-24. This latter reaction is often referred to as "ammonia SCR," or "$NH_3$ SCR of NOx." ($NH_3$ is the empirical formula for ammonia; SCR stands for "selective catalytic reaction.")

Within a particular "framework," or family, of zeolites, their chemical make-up can vary in two ways that alter their performance as ammonia SCR catalysts.

*First*, metal can be added to a zeolite to "enhance the effectiveness of [the] zeolite when catalyzing the reduction of nitrogen oxides." *See* Appx1536 ¶153 (Umicore's expert); *see also* OB10. Since at least the 1970s, researchers have known how to remove the $H^+$ or $Na^+$ from a zeolite and replace it with metals like copper to improve a zeolite's catalytic activity. *See* Appx1401, 5:44-6:12 (Maeshima); Appx1536-1537 ¶¶ 153, 157 (Umicore's expert); *see also* Appx862 (Patent Owner Response); Appx2749, 114:23-115:19 (BASF's expert). This process is known as "ion exchange" or "metal exchange." Zeolites that have been modified to include copper or another metal are known as "metal-promoted" or "metal-loaded" zeolites. *See* Appx1536 ¶¶ 153-54;

Appx1359, 10:51-59 ('662 patent, acknowledging that the use of ion-exchange to incorporate metals was well known in the art). When a zeolite with the CHA structure is "promoted" with copper (whose chemical symbol is Cu), the zeolite is sometimes referred to as a "CuCHA" zeolite. The amount of added copper can be quantified as the ratio of added copper to the aluminum in the zeolite. This is sometimes referred to as the "Cu/Al ratio."

*Second*, zeolites can have different ratios of silica to alumina. *See* Appx1857 ¶ 160 (Umicore's expert); Appx3203 ¶ 93 (BASF's expert). A particular zeolite's **s**ilica to **a**lumina **r**atio is often referred to as its "SAR." Naturally occurring zeolites often have relatively low SARs. Appx2755. These zeolites can be modified, however, to create a synthetic zeolite that has a "substantially greater" silica-to-alumina ratio. Appx1408, 1:9-17 (Breck). Zeolites with high silica-to-alumina ratios can also be created from scratch. Appx1436, 2:15-65 (Zones).

Zeolites with an increased silica-to-alumina ratio can be used in the same "catalytic processes in which … less siliceous precursors have … been suitably employed." Appx1431, 47:44-47 (Breck); Appx1858 ¶ 162 (Umicore's expert). And such zeolites have distinct advantages.

9

For instance, a higher silica-to-alumina ratio makes a zeolite "more thermally and hydrothermally stable," meaning it has more durability in wet and hot environments.  In addition, it gives the zeolite "increased resistance toward acidic agents" like sulfur oxides.  Appx1431, 47:47-53; *see also* Appx2641, 5:39-44 (Byrne); Appx1858-1859 ¶¶ 161-63.

Although copper-promoted zeolites have been known to be effective as ammonia SCR catalysts since the 1970s, they have continued to be recognized as effective since then.  This is clear from the same papers cited by BASF itself.  OB12-13.  For example, Centi et al. recognized in 1995 that "[c]opper-based catalysts are active in a wide range of reactions of transformation of nitrogen oxides."  They have "excellent … catalytic activities," and for that reason, "interest in copper-zeolites … increased considerably."  Appx3055-3059.  Similarly, a 2005 paper by Tolonen identified "zeolite based catalysts [as] very promising for the ammonia SCR reaction."  Appx3292; *see also* Appx3372, Appx3376-3378 (2004 paper noting that "SCR has for more than a decade been mentioned as a promising technology to reduce NOx on diesel engines … ," and that "urea-SCR technology has a great potential").  And in 2004, Zones recognized that a CHA zeolite—similar

to one he invented as far back as 1983—could be used in "an improved process for the reduction of oxides of nitrogen contained in a gas stream."  Appx1436, 1:54-56; Appx2709 (1983 patent).

### *The '662 And '203 Patents Tweak CHA Zeolites For Use As Ammonia SCR Catalysts.*

At issue here are U.S. Patents Nos. 7,601,662 and 8,404,203, both issued to Bull et al. and now held by BASF.  Appx1342 ('662 Patent); Appx1370 ('203 Patent).[1]  The '203 and '622 patents apply the known teachings about zeolites and ammonia SCR discussed immediately above.  The patents, which share a specification, relate to "copper CHA [zeolite] catalysts and their application in exhaust gas systems such as those designed to reduce nitrogen oxides."  Appx1355, 1:62-64.

The specifications expressly acknowledge that much of the claimed invention was already known at the time of the patents' 2007 provisional applications.  Appx1342, Appx1370.  For instance, they explain that it was known to use zeolites as catalysts in an ammonia

---

[1] Because the patents are similar for present purposes, we cite to only the '662 patent for simplicity.

SCR process to reduce harmful nitrogen oxides from exhaust.[2]  The patents also recognize that it was "well-known" that "[m]etal-promoted zeolites" generally—and copper-promoted zeolites specifically—were suitable as ammonia SCR catalysts.  Appx1355, 1:30-35.  Furthermore, the patents acknowledge that many zeolites with the CHA structure were already known.  Appx1356, 4:31-33.  BASF has acknowledged that several of these known CHA zeolites have high ratios of silica to alumina.  Appx862 (Patent Owner Response).

The '662 and '203 patents acknowledge their similarity to the admitted prior art.  They claim certain zeolites for use in the known ammonia SCR process, and the patents' supposed point of novelty is simply the chemical composition of those zeolites.  Specifically, these patents take one particular known type of zeolite—a zeolite with the CHA crystal structure—and tweak the relative amounts of silica, alumina, and copper using the known methods discussed above.  *See*

---

[2] *See* Appx1358, 8:14-19 ('662 patent) (it was already "known in the art" that "to reduce the emissions of nitrogen oxides from flue and exhaust gases, ammonia is added to the gaseous stream containing the nitrogen oxides and the gaseous stream is then contacted with a suitable catalyst at elevated temperatures in order to catalyze the reduction of nitrogen oxides with ammonia").

Appx1356, 4:34-35 ("Synthesis of the zeolites having the CHA structure can be carried out according to various techniques known in the art."). The patents do not require that the claimed zeolite catalyst possess any particular performance characteristics beyond being generally "effective" for ammonia SCR.[3]

This is reflected in the challenged claims, which simply require a catalyst comprising a zeolite with the CHA structure; that is effective for the process of ammonia SCR; and that has ratios of silica to alumina, and copper to aluminum, that fall within certain broad ranges. Thus, claim 1 of the '662 patent, which is representative, claims:

---

[3] In places the specification identifies embodiments that allegedly perform better as ammonia SCR catalysts than the prior art. But, in each instance the specification attributes any increased effectiveness to the presence of "free copper." *See, e.g.*, Appx1355, 2:27-32, 2:56-67; Appx1357, 5:31-37, 5:46-52; Appx1360, 11:22-25, 11:29-36, 11:52-55, 12:2-5. The inclusion of "free copper" in the catalyst is an element of claims 9-11 of the '662 patent, which are at issue here. Appx1366, 24:23-40.

A catalyst comprising:

[1] an aluminosilicate zeolite having the CHA crystal structure and

[2] a mole ratio[4] of silica to alumina from about 15 to about 150 and

[3] an atomic ratio[5] of copper to aluminum from about 0.25 to about 1,

[4] the catalyst effective to promote reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$ selectively.

Appx1369 (brackets added). BASF's appeal focuses on limitation (4).

### Umicore Petitions For Inter Partes Review Of The '662 And '203 Patents.

In view of the plain obviousness of the claimed subject matter,

Umicore sought inter partes review. *See* Appx279 (IPR2015-01121),

Appx336 (IPR2015-01123), Appx385 (IPR2015-01124), Appx450

(IPR2015-01125).

The -1121 and -1123 petitions argued that the claims of the '662

and '203 patents were obvious in view of U.S. Patent No. 6,709,644 to

Zones (Appx1435) combined with U.S. Patent No. 4,406,888 to

---

[4] The mole ratio is the ratio of the number of one type of molecule (e.g., silica) to the number of another type of molecule (e.g., alumina).

[5] The atomic ratio is the ratio of atoms of one kind (e.g., copper) to atoms of another kind (e.g., aluminum).

Maeshima (Appx1397). The -1124 and -1125 petitions argued that the same claims were obvious over Maeshima combined with U.S. Patent No. 4,503,023 to Breck (Appx1404), and a paper authored by Dececek (Appx1480) combined with Breck.[6] Only the Zones/Maeshima and Maeshima/Breck combinations remain relevant for this appeal. The Zones/Maeshima combination renders obvious every claim at issue in this appeal; Maeshima/Breck covers all of the challenged claims except 3, 4, 7, and 8 of the '662 patent, and claims 17, 18, 21, and 22 of the '203 patent.

Umicore supported its petitions with expert declarations from Dr. Lercher, Appx1492, Appx1598, Appx1695, Appx1815, and a fact declaration discussing testing performed by Umicore, Appx2685. The testing showed that there were no significant or unusual changes in a CHA zeolite's ability to catalyze the reduction of nitrogen oxides within the ranges that are claimed by the '662 and '203 patents. *See* Appx2690-2696.

---

[6] Another reference—U.S. Patent App. Pub. No. 2006/0039843 to Patchett (Appx1440)—was identified in each petition in connection with dependent claims.

***Zones combined with Maeshima***.   Umicore argued that Zones and Maeshima combine to render obvious the challenged claims. Appx293.  Zones and Maeshima each teach using zeolites with the CHA structure as catalysts in order to reduce nitrogen oxides from a gas stream.

Zones discusses methods for making and using a particular zeolite with the CHA structure (known as SSZ-62).  This CHA zeolite has a silica-to-alumina ratio ranging from 20-50.  *See* Appx1436, 1:32-35; 2:30-38.  Zones' zeolite may "contain a metal or metal ions (such as … copper)."  Appx1436, 1:61-65.  Finally, Zones teaches that its catalysts are "capable of catalyzing the reduction of the oxides of nitrogen." Appx1436, 1:63-64.  This, according to Zones, allows its CHA zeolite to be used to remove nitrogen oxides from "the exhaust stream of an internal combustion engine."  Appx1436, 1:65-67.

Zones does not specifically mention the copper-to-aluminum ratio required by the '662 and '203 patents, but Maeshima does.  As an initial matter, like Zones, Maeshima teaches zeolite catalysts that can be used to reduce the concentration of nitrogen oxides in exhaust gas. Appx1399, 1:8-10.  Maeshima explains that zeolite catalysts can be used

with either hydrocarbons or ammonia as the reducing agent. Appx1399, 1:15-21; *see also* Appx1399, 2:4-8.  Ammonia SCR is preferred, because less of the reducing agent can be used, "and nitrogen oxides can be removed at a high ratio."  Appx1399, 1:21-24.

Maeshima lists nine zeolites (including chabazite) that are "suitable" ammonia SCR catalysts.  Appx1400, 4:3-35; *see also* Appx1400, 3:33-43.  Maeshima specifies that copper is an "especially preferred" metal to add to its zeolites and, as noted above (at 16), it specifies that standard copper loading rates should be employed resulting in a copper-to-aluminum ratio falling within the range of the challenged claims.[7]  Appx1400-1401, 3:35-38, 4:51-54, 6:10-13.

Umicore argued that a person of ordinary skill in the art would combine Maeshima with Zones because Zones suggests both adding copper to a CHA zeolite and using the zeolite to catalyze the reduction of nitrogen oxides; and Maeshima says how much copper to add for that purpose.  Appx297-298.

---

[7] In particular, Maeshima instructs that an "ion exchange ratio" of "about 60 to about 100%" is "generally preferred."  Appx1400, 3:35-38, 4:44-54.  The parties do not dispute that this results in a copper-to-aluminum ratio of 0.3 to 0.5, which falls within the claims.  *See* Appx1519-1520.

***Maeshima combined with Breck.*** Umicore additionally argued that the combination of Maeshima and Breck renders obvious most of the challenged claims.

As noted immediately above, Maeshima discloses that zeolites with the CHA crystal structure and a copper-to-aluminum ratio within the claimed ranges are effective catalysts for ammonia SCR.

Breck, Umicore argued, specifies a silica-to-alumina ratio above 15, as the challenged claims require. Breck describes methods for preparing zeolites that "have substantially greater [silica-to-alumina] ratios than the heretofore known zeolite species." Appx1408, 1:9-17. Breck identifies "synthetic analogs of … chabazite," as one of a small collection of "[e]specially preferred zeolite[s]" for its method. Appx1409, 4:60-63. Breck also provides a specific example of a zeolite—designated "LZ-218"—with the CHA crystal structure and a silica-to-alumina ratio "preferably in the range of 8 to 20." Appx1416, 18:3-15. Indeed, "LZ-218" is one of the very same examples of CHA zeolites that is identified in the '662 and '203 patents. *See, e.g.*, Appx1356, 4:31-33.

In addition, Umicore argued that Breck explains why it would be beneficial to increase the silica-to-alumina ratio of a zeolite. Appx469-

470. Doing so produces a material that is not only "useful" in the same "catalytic processes in which … less siliceous precursors have … been suitably employed"; it also is "more thermally and hydrothermally stable than those prior known materials" and has "increased resistance toward acidic agents" like sulfur oxides. Appx1431, 47:44-51.

### *The Board Institutes Inter Partes Review And Ultimately Finds The Challenged Claims Obvious On Some Grounds But Not Others.*

The Board instituted review on most of the challenged claims in view of Zones/Maeshima, and Maeshima/Breck.[8]

In its Patent Owner Response, BASF did not challenge much of the obviousness inquiry. BASF did not dispute that Zones/Maeshima and Maeshima/Breck both teach every element of the instituted claims. Instead, BASF argued that a person of ordinary skill would not be motivated to combine the references; that she would have no reasonable

---

[8] *See* Appx728 (IPR2015-01121 Institution Decision); Appx747 (IPR2015-01123 Institution Decision); Appx765 (IPR2015-01124 Institution Decision); Appx793 (IPR2015-01125 Institution Decision).

The Board declined to institute on several grounds. In particular, the Board determined that the cited prior art does not adequately disclose the incorporation of "free copper" into a zeolite, as claims 9-11 of the '662 patent require. Appx743.

expectation of success in doing so; and that industry skepticism, unexpected results, and commercial success provided objective indicia of nonobviousness.

The Board issued final written decisions that agreed in part with both sides.

Specifically, the Board found all of the instituted claims to be unpatentable over Zones/Maeshima; and all but claims 3, 4, 7, and 8 of the '662 patent, and claims 17, 18, 21, and 22 of the '203 patent, unpatentable over Maeshima/Breck.[9]  The Board, however, agreed with BASF that the combination of Dedecek with Breck did not render obvious the challenged claims.  Appx148.

The Board took care to note what BASF had not contested.  As to both Zones/Maeshima and Maeshima/Breck, the Board explained that "Patent Owner does not challenge Petitioner's arguments and evidence demonstrating that the prior art discloses or suggests all limitations of the challenged claims.  To the contrary, Patent Owner acknowledges that the limitations in the claims were well-known in the art."  Appx9;

---

[9] In the interest of simplicity, we cite to the decisions in the -1121 and -1125 proceedings, which are substantially similar to the -1123 and -1124 decisions, respectively.

20

*accord* Appx127. Thus, the only remaining dispute was whether one of
ordinary skill in the art would have been motivated to combine these
references, and whether one of ordinary skill in the art would have a
reasonable expectation of success when doing so. *See* Appx9-10; *accord*
Appx128.

With respect to Zones/Maeshima, the Board rejected BASF's
argument that one of ordinary skill would not combine these references
because Zones "includes no teachings regarding the properties of the
CHA framework … with respect to" ammonia SCR. Appx850. The
Board found, based on the expert testimony, that Zones would be
combined with Maeshima's teachings about copper loading to "enhance
the effectiveness of a zeolite when catalyzing the reduction of nitrogen
oxides." Appx15 (citing Appx1536 (Dr. Lercher)). And the Board found
that *both* Zones and Maeshima disclose using their zeolite catalysts for
catalyzing the reduction of nitrogen oxides using ammonia SCR. The
Board explained, relying on expert testimony and the background
teachings of the prior art, that although "Zones does not *explicitly* list
specific reactions for the reduction of oxides of nitrogen," "the evidence
of record suggests that a person of ordinary skill in the art would have

understood" Zones "to include ammonia SCR of NOx." Appx14

(emphasis added). Furthermore, the Board explained, BASF itself had

acknowledged that Maeshima (the reference being combined with

Zones) "teach[es] metal-exchanged zeolites that are active for the $NH_3$

SCR of NOx"—that is, for ammonia SCR. Appx14. Thus, the Board

found that "both the prior art references themselves, as well as the

knowledge of a person of ordinary skill in the art, provide adequate

reasons to combine Zones and Maeshima." Appx14-16.[10]

The Board also found obviousness in view of Maeshima/Breck. It

held that one of ordinary skill would be motivated to apply Breck's

teaching (increasing a zeolite's silica-to-alumina ratio) to Maeshima's

---

[10] The Board also rejected BASF's arguments concerning reasonable
expectation of success and secondary considerations, which BASF does
not press here. For instance, the Board rejected BASF's argument that,
because of purported problems with the "hydrothermal stability" of
commercial catalysts, a person of ordinary skill would not have a
reasonable expectation of success when combining the prior art. The
Board determined that none of the claims requires any particular level
of hydrothermal stability, or any exemplary performance as a catalyst.
Appx17-20. Likewise, the Board rejected BASF's arguments about
secondary considerations. The Board found BASF had failed to show
any nexus between those considerations (*viz.*, commercial success,
skepticism, and unexpected results) and the claimed invention.
Appx29-33.

copper-promoted CHA zeolites, in order to improve their "resistance toward acidic agents such as … $SO_2$." Appx132-133.  As the Board noted, Maeshima itself identifies sulfur poisoning as a potential challenge when using copper-promoted zeolites as ammonia SCR catalysts.  *Id.*  To overcome that difficulty, one of ordinary skill would look to references, like Breck, that teach increasing the zeolite's silica-to-alumina ratio to both reduce the likelihood of sulfur poisoning and to improve the zeolite's stability at high temperatures.  *See id.*

The Board rejected BASF's argument that a person of ordinary skill would not be motivated to combine the methods of Maeshima and Breck to improve a CHA zeolite because Maeshima and Breck teach a number of different zeolites that work with their methods.  Appx1038. "The fact that Maeshima and Breck disclose other types of zeolites does not diminish the fact that they expressly identify chabazite as an acceptable catalyst." Appx133.  And, as with the Zones/Maeshima combination, the Board rejected BASF's arguments about secondary considerations because they lacked the required nexus with the claims, or were unsupported by the evidence.  Appx29-33.

BASF now appeals a portion of the Board's decision. BASF contends that the Board erred in cancelling only some of its claims. BASF concedes that claims 1-14, 26, and 29-30 of the '203 patent are unpatentable over Zones/Maeshima and Maeshima/Breck. OB16.

## SUMMARY OF ARGUMENT

The '662 and '203 patents claim using a zeolite having a specific structure and composition in conjunction with an admittedly known ammonia SCR process. The Board properly found that two prior art combinations (Zones/Maeshima and Maeshima/Breck) teach exactly that. The Board found, and BASF did not dispute, that there was nothing novel about the claimed zeolite's structure and composition: Zeolites with the CHA crystal structure, and with the particular claimed ranges of silica-to-alumina and copper-to-aluminum, were known. The Board also found, and BASF also did not dispute, that the prior art taught using very similar metal-promoted zeolites for ammonia SCR, including zeolites with the CHA crystal structure. And the Board found that both combinations included an explicit motivation that would lead a person of ordinary skill to make a catalyst with the

claimed crystal structure, with the claimed ratios of silica-to alumina and copper-to-aluminum, and to use that catalyst for ammonia SCR.

This is a textbook case of obviousness. BASF's arguments on appeal are mostly waived, and they all are mistaken.

**I.** The Board properly found that all of the challenged claims are obvious in view of Zones and Maeshima. Relevant here, the BASF patents are directed to using the claimed CHA zeolite as a catalyst in the ammonia SCR process to reduce oxides of nitrogen. BASF now faults the Board for finding that the ammonia SCR element of the claims is present in Zones, based on what BASF calls Zones' "generic" reference to "reduction of oxides of nitrogen."

**A.** BASF waived this challenge to the scope and content of the prior art by not making the argument in its Patent Owner Response. Far from having preserved this argument, BASF affirmatively conceded that the prior art teaches every limitation of the claims. Instead, BASF chose to argue, in relevant part, only that there was no motivation to combine the references. BASF also waived its procedural challenge that the Board went beyond the arguments raised in the petition by failing to raise that objection with the Board.

**B.** On the merits, BASF's argument attacks an imagined holding that isn't the one the Board actually issued. Umicore argued in its petition, and the Board concluded, that the relevant claim limitation (using the claimed zeolite catalyst in the ammonia SCR process) is disclosed by both Zones and Maeshima, individually and in combination. BASF leaves two of the three pillars of the Board's finding unchallenged. It argues only that the Board erred in finding that Zones by itself discloses using a zeolite as an ammonia SCR catalyst. It advances no argument about Maeshima, let alone the combined teachings of Zones and Maeshima. BASF's argument fails for this reason alone.

And, indeed, substantial evidence supports the Board's finding. Read together, Maeshima and Zones, as well as the specification of the '662 and '203 patents, teach that CHA zeolites are effective ammonia SCR catalysts. And with respect to Zones alone, the undisputed testimony of two experts provides substantial evidence to support the Board's conclusion that Zones discloses using a CHA zeolite for ammonia SCR.

**II.** Substantial evidence also supports the Board's finding that Maeshima and Breck render most of the challenged claims obvious.

**A.** BASF principally challenges the Board's factual finding of a motivation to combine. It acknowledges that Maeshima identifies a limited universe of zeolites—just nine in all—of which a zeolite with the CHA crystal structure is one. But it argues that the Board failed to consider whether that particular zeolite was the "most promising" one to combine with Breck for use as an ammonia SCR catalyst. Maeshima, however, discloses that *all nine* zeolites, including the CHA zeolite, are "suitable" for ammonia SCR. There is no legal requirement that the CHA zeolite be more "suitable" than the others. And even if there were, Breck singles out CHA zeolites as "especially preferred" for its method of increasing a zeolite's silica-to-alumina ratio to increase its durability in catalytic reactions.

**B.** BASF also argues that the Board erred by failing to consider the age of the Maeshima and Breck references, which it views as an objective indicator of non-obviousness. But BASF's arguments about secondary considerations were limited to skepticism, commercial success, and unexpected results. So BASF's contention about the age of

the references is beside the point, and the Board cannot have erred by ignoring an argument that was never presented to it.  In any event, any error would have been harmless.  "The mere age of the references is not persuasive of the unobviousness of the combination of their teachings, absent evidence that, notwithstanding knowledge of the references, the art tried and failed to solve the problem."  *Nike,* 812 F.3d at 1338.  BASF presented no such argument.

## STANDARD OF REVIEW

Whether an invention is obvious is a question of law based on underlying findings of fact.  *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015).  This Court reviews the Board's underlying factual determinations, including the scope and content of the prior art and whether a person of ordinary skill in the art would be motivated to combine the references, for substantial evidence.  *Merck & Cie v. Gnosis S.p.A.*, 808 F.3d 829, 833 (Fed. Cir. 2015); *see also In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000) ("The presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact.").

"Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence." *In re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012). "If the evidence in record will support several reasonable but contradictory conclusions, [this Court] will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative." *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002); *see also In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011) ("This Court does not reweigh evidence on appeal, but rather determines whether substantial evidence supports the Board's fact findings.")

## ARGUMENT

### I.     The Board Correctly Held The Challenged Claims Obvious In View Of Zones And Maeshima.

BASF mostly does not challenge the Board's finding of obviousness in view of Zones and Maeshima. BASF does not dispute that Zones and Maeshima teach the claimed CHA zeolite catalyst, with the claimed ratios of copper to aluminum and silica to alumina. Instead, BASF's sole argument is that the Board erred in finding that one reference in the combination (Zones) teaches using such a catalyst for ammonia SCR. OB33-41. Before the Board, however, BASF did not

dispute that the prior art teaches this limitation. The argument

therefore is waived. *See* § I.A. BASF is also wrong. The Board

correctly found that both Zones and Maeshima, as well as their

combined teachings, teach using the claimed CHA zeolite for ammonia

SCR. Neither the Board nor Umicore relied exclusively on Zones. So

BASF's argument is simply nonresponsive to what the Board actually

said. *See* § I.B.

### A.    BASF has waived its arguments challenging the combination of Zones and Maeshima.

#### 1.    BASF waived any challenge to the Board's factual finding that Zones and Maeshima teach that the claimed zeolite catalyst is effective for ammonia SCR.

A patent owner in an inter partes review waives any argument

that it does not make in its Patent Owner Response. *See In re*

*Nuvasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016) (argument made in

preliminary response and not repeated in Patent Owner Response is

waived). This rule is no mere formality. It enables the Board to

winnow the issues under consideration, and to reasonably determine

which arguments no longer remain disputed and therefore do not

require considered treatment in the final written decision. When a

patent owner "sandbag[s]" the Board by holding back arguments only to assert error on appeal, *In re DBC*, 545 F.3d 1373, 1380 (Fed. Cir. 2008), it deprives the Board of "a fair opportunity to rule on an issue," *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002). And it thereby "deprives [this] court of the benefit of the [Board]'s informed judgment." *In re Nuvasive*, 842 F.3d at 1380 (internal quotation marks omitted).

The Board alerted BASF to this rule. Following its decision to institute, the Board admonished BASF that "any arguments for patentability not raised in the [patent owner] response will be deemed waived." Appx3720. BASF ignored this warning, and now seeks to challenge the Board's final written decision on the basis of an argument that it did not include in its Patent Owner Response.

Start with what BASF initially argued, before the Board instituted review. In its preliminary response to Umicore's petition, BASF disputed that "Zones discloses a [copper-promoted] zeolite that is effective to promote the reaction of ammonia with nitrogen oxides." Appx540-541. Its theory was that Zones' disclosure of using the catalyst for "reduction of oxides of nitrogen" did not disclose using it for

31

ammonia SCR—because Zones did not specifically mention ammonia SCR. Appx540-541. In support of its argument, BASF cited a declaration by Zones' inventor, and a decision in an earlier inter partes reexamination. Appx540-542.

The Board's institution decision rejected BASF's argument for multiple reasons. It held that when Zones disclosed using its zeolite catalyst for "reduction of oxides of nitrogen," that disclosed doing so with the ammonia SCR process. Appx741. *First*, citing BASF's brief and the Zones declaration that BASF itself submitted and relied upon, the Board held that BASF "acknowledges that the 'reduction of oxides of nitrogen' language in Zones refers to, inter alia, the selective catalytic reduction of NO in the presence of ammonia." Appx741. In short, Zones speaks to a process that includes using ammonia to reduce NOx. Indeed, the Zones declaration explains that ammonia SCR is one of five reactions "refer[red] to and t[aught by]" the phrase "reduction of oxides of nitrogen." Appx3033 ¶ 8. *Second*, the Board found that BASF's own '662 patent recognizes that copper-promoted zeolites are known ammonia SCR catalysts. *See* Appx741. And, *third*, the Board found

that Maeshima explicitly teaches a copper-promoted CHA zeolite for use as an ammonia SCR catalyst.  *See* Appx741-742.

Having lost this argument three times over, when it came time for BASF to file its Patent Owner Response, it abandoned the argument.  It did not dispute that Zones and Maeshima disclose using the claimed CHA zeolites for ammonia SCR.  On the contrary, BASF admitted that Zones' reference to the "reduction of oxides of nitrogen" teaches ammonia SCR.  *See* Appx845 (Patent Owner Response) ("Zones … provides no teachings regarding the use of a metal-exchanged CHA zeolite for the $NH_3$ SCR of NOx *aside from the one sentence above.*" (emphasis added)).  BASF also admitted that Maeshima taught using CHA zeolites for ammonia SCR:  It acknowledged that "Maeshima is a patent about the $NH_3$ SCR of NOx [(ammonia SCR)]," and BASF did not dispute that Maeshima lists CHA zeolites as "suitable" for ammonia SCR.  Appx852.[11]

---

[11] BASF's expert likewise conceded that the prior art disclosed using copper-promoted zeolites as ammonia SCR catalysts.  Appx3203 ¶ 94 (it was "well known in the art" that "exchanging metal ions into the zeolite framework can make a zeolite active for the SCR of NOx.").

These concessions made sense, because instead of challenging what the prior art taught, BASF's response now focused on whether a person of ordinary skill in the art would have been motivated to combine Zones and Maeshima. *See generally* Appx850-855. BASF's argument was that a person of ordinary skill would not have been motivated to combine Zones' and Maeshima's teachings about using CHA zeolites for ammonia SCR because the references provided no indication that CHA zeolites were particularly good ammonia SCR catalysts. *See* Appx850-851. Thus, BASF contended that "neither reference suggests that the CHA structure, high SAR, or … ratio [of copper to aluminum] will improve the activity or stability of the zeolite" for ammonia SCR. Appx853.

At the oral hearing, BASF made its abandonment even more explicit. BASF said that there were three "pieces" of the obviousness "puzzle": "the CHA zeolite, the copper, [and] ammonia SCR." Appx194. But it did not "dispute that these separate pieces of the puzzle were known. In fact, [its] position [was] that these separate pieces in the puzzle were quite old." *Id.* Indeed, when asked by the Board whether the prior art discloses using copper-promoted CHA zeolites as ammonia

34

SCR catalysts, BASF acknowledged that it does. It admitted that even its own exhibits showed "that people were using metal exchanged zeolites with high SAR in some type of research for ammonia reductive NOx reactions." Appx197.

The Board took BASF at its word. It concluded in the final written decision that BASF "does not challenge Petitioner's arguments and evidence demonstrating that the prior art discloses or suggests all limitations of the challenged claims." Appx9. BASF has accordingly waived any argument about whether Zones and Maeshima teach using the claimed catalysts for ammonia SCR. *See In re Nuvasive*, 842 F.3d at 1380.

BASF is not saved from waiver merely because the Board took note of the fact that Zones discloses ammonia SCR. *See* Appx12. The Board addressed BASF's arguments regarding Zones in the (very different) context in which BASF presented them: whether one of ordinary skill in the art would be motivated to combine Zones with Maeshima, and not (as BASF now argues here) in service of an argument about the scope and content of the prior art. *See* Appx12. A party may not "pursue a new … argument on appeal, after failing to

raise it adequately with the … tribunal in the first instance." *Google Inc. v. SimpleAir, Inc.*, No. 2016-1901, 2017 WL 1149518, at *4 (Fed. Cir. Mar. 28, 2017) (rejecting argument that party "can appeal any issue that was 'actually decided' in the IPR proceedings").

> **2.    BASF waived any argument that the Board erred in relying on arguments and evidence about Zones that did not appear in Umicore's petition.**

BASF also now argues that Umicore failed to properly discuss Zones' disclosure in its petition, and that the Board therefore erred in considering the point.  OB33-38.  This argument is waived three times over.

*First*, by not disputing that Zones and Maeshima teach using the claimed catalyst for ammonia SCR before the Board, BASF has necessarily waived any claim of procedural error as well.  *See In re Nuvasive*, 842 F.3d at 1380.

*Second*, "it is incumbent upon the party complaining of some procedural violation … to first raise the issue below." *Securus Techs., Inc. v. Glob. Tel*link Corp.*, Nos. 2016-1992, -1993, 2017 WL 1458867, at *4 (Fed. Cir. Apr. 25, 2017); *see also Belden*, 805 F.3d at 1082 ("With no Board denial of concrete, focused requests before us, we are not

prepared to find that [the appellant] was denied a meaningful opportunity to respond.").  BASF, however, made no effort to raise its procedural objection before the Board, despite having ample opportunity to do so.  Its contention is that the Board shouldn't have considered Zones' disclosure of using CHA zeolites for ammonia SCR because Umicore allegedly failed to make that argument in its petition. But the Board explained the import of Zones' disclosure in its decision to institute, Appx741, and BASF did not object in its Patent Owner Response or at any other time.  Not surprisingly, then, the Board similarly discussed Zones in its final written decision, Appx14, and BASF again did not object.

*Third*, even if it were true that Umicore failed to sufficiently present this argument in the petition, the Board's reliance on this argument would be reversible error only if BASF could demonstrate that it "was denied notice or an opportunity to be heard in the proceedings below."  *Securus Techs.,* 2017 WL 1458867, at *4; *see also Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG,* 856 F.3d 1019, 1027 (Fed. Cir. 2017).  In *Securus Technologies*, this Court explained that the Board may "formulate an understanding of [the prior art's]

37

teachings that is different from what was set forth in [the] Petition or in the Institution Decision." 2017 WL 1458867, at *4. In such a case, the only question is whether the patent owner "had a fair opportunity to respond to [the] argument that was adopted by the Board in the final decision." *Id*. BASF has advanced no argument that it was denied a fair opportunity to address Zones' disclosure of ammonia SCR, which it plainly did have.

BASF does not acknowledge the cases requiring it to show it was denied an opportunity to respond. And the cases BASF does cite in support of its argument that the "evidence and arguments … must be set forth in the Petition," OB37, are not to the contrary. In each case, this Court either found that the patent owner was denied an opportunity to "meaningfully respond," *Dell, Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1301 (Fed. Cir. 2016), or this Court affirmed the Board's discretionary decision *not to* consider a late-raised argument. *See Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1287 (Fed. Cir. 2017); *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1370 (Fed. Cir. 2016). In no case did this Court reverse the

Board for going beyond arguments made in the petition where the patent owner was not deprived of an opportunity to respond.

### B. Substantial evidence supports the Board's factual finding that Zones and Maeshima disclose that the claimed zeolite catalyst is effective for ammonia SCR.

BASF's argument also fails on the merits because it ignores settled principles of obviousness. In an obviousness case, each piece of art "must be read, not in isolation, but for what it fairly teaches in combination with the prior art as a whole." *In re Merck & Co., Inc.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986); *see also In re Young*, 927 F.2d 588, 591 (Fed. Cir. 1991) ("The test for obviousness is what the combined teachings of the references would have suggested to one of ordinary skill in the art."); *In re Mouttet*, 686 F.3d at 1333.

BASF, however, does not analyze the disclosure of Zones and Maeshima in combination. Instead, it argues that Zones does not, by itself, teach using its CHA zeolites for ammonia SCR. *See* OB3-4, 38-43. In so doing, BASF leaves unchallenged the Board's rationale that the *combined* teachings of the prior art disclose the use of the claimed CHA zeolites for ammonia SCR. That alone is ample basis to affirm. Moreover, BASF's argument is wrong in any event: Substantial

evidence supports the conclusion that Zones discloses using its CHA

zeolite for ammonia SCR.

> **1.    Zones and Maeshima together disclose using a copper-promoted CHA zeolite with a high silica-to-alumina ratio for ammonia SCR.**

In its petition, Umicore argued that "[t]he *combination* of Zones

and Maeshima … teach a zeolite catalyst that is effective to promote the

reaction of ammonia with nitrogen oxides to form nitrogen and $H_2O$

selectively, as required by claim 1."  Appx294 (petition) (emphasis

added); *see also* Appx1525 (Umicore's expert).  Specifically, Umicore

explained, Zones teaches that its zeolite catalyst "is useful for reducing

oxides of nitrogen," and Maeshima "expressly provides its catalysts can

be used in an SCR process to selectively reduce nitrogen oxides."

Appx294.

The Board agreed.  It found that the "*combined teachings* of Zones

and Maeshima disclose using a high SAR CHA zeolite for ammonia

SCR."  Appx16 (final written decision) (emphasis added); *see* Appx735-

736 (institution decision) ("Petitioner argues that the combination of

Zones and Maeshima discloses this requirement, noting that Zones

describes a catalyst useful for reducing oxides of nitrogen and

Maeshima expressly discloses that its catalysts may be used in an SCR process to selectively reduce nitrogen oxides.").

BASF's argument, which attacks Zones alone, therefore fails for three separate reasons.

*First*, it fails as a matter of law.  BASF cannot establish nonobviousness "by attacking [only one] reference[] individually where the rejection is based upon the teachings of a combination of references."  *In re Merck*, 800 F.2d at 1097.

*Second*, this failure amounts to waiver.  By failing to make any argument about the combined teachings in the opening brief, BASF has failed to preserve any challenge to the Board's actual finding.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).

*Third*, even if BASF had preserved a challenge to the Zones/Maeshima combination, the Board's decision is supported by more than substantial evidence.  Recall that at issue here is whether the combination of Zones and Maeshima teaches using the claimed CHA zeolites as ammonia SCR catalysts.  It plainly does.  As the Board explained, the '662 patent itself acknowledges that the prior art taught

using very similar zeolites to those claimed as catalysts in order to reduce oxides of nitrogen using ammonia SCR. The patent specifies that it was "well known" that copper-promoted zeolites could be used as ammonia SCR catalysts. Appx3.

With this background in mind, the Board turned to Zones. The Board found "[i]t is undisputed that Zones discloses … a high SAR CHA zeolite that may contain copper, which is 'capable of catalyzing the reduction of the oxides of nitrogen.'" Appx14. Based on "the evidence of record"—in particular, the testimony from two witnesses that one of ordinary skill would understand that the phrase "the reduction of oxides of nitrogen" refers to ammonia SCR (discussed further below, at 44-51)—the Board concluded that a person of ordinary skill would understand Zones' teaching "to include ammonia SCR of NOx." *Id.*

Finally, the Board turned to Maeshima, which it found also discloses using copper-promoted CHA zeolites for ammonia SCR. Appx14-15. Maeshima explains, as the Board noted, that ammonia SCR is a preferred method for NOx reduction, and that the very same type of zeolite disclosed in Zones—a zeolite with the CHA crystal structure—is suitable for use as an ammonia SCR catalyst. Appx14.

42

Consistent with the Board's finding, BASF conceded (and its expert testified) that "Maeshima itself … teach[es] metal-exchanged zeolites that are active for the $NH_3$ SCR of NOx."  Appx14 (quoting Appx854 (Patent Owner Response)); *see also* Appx15 (discussing the concession of BASF's expert "that it was well-known that metals, such as copper, can be introduced into zeolites and make a zeolite active for the SCR of NOx").  Thus, substantial evidence plainly supports the Board's conclusion that "the combined teachings of Zones and Maeshima disclose using a high SAR CHA zeolite for ammonia SCR."  Appx16.

It makes no difference that Maeshima does not itself disclose a copper-promoted CHA zeolite with a high silica-to-alumina ratio, or that Zones does not explicitly refer to ammonia SCR.  This is a challenge based on obviousness, not anticipation.  Every claim limitation need not appear in a single reference.  Rather, "[t]he test for obviousness is what the combined teachings of the references would have suggested to one of ordinary skill in the art."  *In re Young*, 927 F.2d at 591.

### 2. Alternatively, Zones by itself discloses using a copper-promoted CHA zeolite with a high silica-to-alumina ratio for ammonia SCR.

In any event, BASF is wrong about Zones: That reference indeed discloses using its CHA zeolite for ammonia SCR. BASF's sole dispute is whether substantial evidence supports the Board's finding that when Zones discloses a catalyst effective for the "reduction of oxides of nitrogen," this constitutes a disclosure of the reduction of oxides of nitrogen *using ammonia as a reactant*. *See* OB38-39. On this point, *all* of the evidence—including the undisputed testimony of Umicore's expert, the Zones declaration, and BASF's own admissions—supports the Board's finding that one of ordinary skill would understand Zones' reference to the "reduction of oxides of nitrogen" to include ammonia SCR. *No* evidence supports BASF's contrary contention. And BASF's argument that Umicore somehow conceded the point depends on wrenching words from their context.

**a. Dr. Lercher.** As the Board noted, Umicore's expert Dr. Lercher testified without contradiction that Zones' phrase "reduction of oxides of nitrogen" includes "[a]t least two" reactions, one of which is "reduc[ing] NOx with ammonia." Appx3389. Dr. Lercher further

44

pointed to Zones' disclosure of reducing oxides of nitrogen "in the presence of a stoichiometric excess of oxygen," as would be encountered in the "exhaust stream of an internal combustion engine," as specifically directing one of ordinary skill to well-known nitrogen oxide reducing processes such as ammonia SCR. *See* Appx1525 ¶ 114.

Dr. Lercher's testimony was consistent with other prior art, including Maeshima and the '662 patent itself, each of which states that ammonia SCR is one of two commonly known methods for reducing nitrogen oxides. Appx1399, 1:14-21 (Maeshima); Appx1357, 6:41-54 ('662). BASF introduced no evidence to the contrary. *See* Appx3214 (BASF's expert stating only that Zones does not "*specifically discuss* the NH$_3$ SCR of NOx"). That expert testimony constitutes substantial evidence. *Paice LLC v. Ford Motor Co.*, No. 2016-1647, 2017 WL 897346, at *3 (Fed. Cir. Mar. 7, 2017) (affirming Board decision based on an expert's testimony).

BASF responds that Dr. Lercher's testimony cannot support the Board's decision because he did not recite the full list of possible reactions that, according to BASF, are included in the phrase "reduction of oxides of nitrogen." OB40-41. In BASF's view, a genus (here,

45

"reduction of oxides of nitrogen") only discloses a species within it (here, ammonia SCR), if a person of ordinary skill can recall *every* species in the genus. *Id.* No case imposes such a requirement. Umicore and Dr. Lercher simply had to show that the prior art discloses ammonia SCR. It makes no difference what *other* reactions the prior art disclosed or did not disclose. *See Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381-83 (Fed. Cir. 2015) (examining only whether broad disclosure in prior art included the specific limitation at issue).

BASF cites a number of cases to support its point, but they all involved anticipation rather than obviousness, and to the extent they are relevant at all, they only prove our point. *See* OB41. These cases simply stand for the common sense proposition that a "prior art reference that discloses a genus still does not inherently disclose *all* species within that broad category." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1367 (Fed. Cir. 2004) (emphasis added); *see also Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006); *Wasica Fin.*, 853 F.3d at 1287. But, contrary to BASF's insinuation, no case holds that disclosing a genus is categorically insufficient to disclose a commonplace and readily known

species within that genus unless the more esoteric members are readily known as well. On the contrary, a prior art genus discloses every species that a person of ordinary skill would "immediately envisage." *See Kennametal*, 780 F.3d at 1381-83 (genus with 10,881 possibilities disclosed claim limitation because a "reasonable mind could find that a person of skill in the art, reading [the general disclosure], would immediately envisage" the limitation).

Just as a person can know that "M&Ms" includes milk chocolate M&Ms, even if she doesn't know that the M&Ms family also includes Pretzel and Mint M&Ms, a person of ordinary skill can know that "reduction of oxides of nitrogen" includes ammonia SCR without knowing every other conceivable reaction for reducing nitrogen oxides.

**b. Zones.** In addition to Dr. Lercher, the Board also relied on a declaration by Zones' inventor. Appx14 (citing Appx3033). The Zones declaration is part of the prosecution history of the '662 patent, and BASF resubmitted it as part of its preliminary response. *See* Appx3032-3035. As Dr. Lercher did, the declaration explains that Zones' disclosure of "reduction of oxides of nitrogen," includes at least "the selective catalytic reduction of NO in the presence of … ammonia"

47

(i.e., ammonia SCR).  Appx3033.  BASF does not deny this.  *See* OB39-40.

Instead, BASF criticizes the Board for relying on Zones because, according to BASF, "Zones is a person of *extraordinary* skill in the art." OB39.  But BASF failed to raise this objection in its Patent Owner Response, as it was required to do.  Appx844, Appx847-856.  Nor did BASF raise the objection when the Board again brought up Zones' declaration at the oral hearing.  Appx202.  BASF has now waived any argument regarding the impact of Zones' level of skill.  In any event, the only effect Zones' "extraordinary skill" had was to allow him to list less well-known reactions in addition to the two reactions identified by Maeshima, Dr. Lercher, and the '662 patent—ammonia SCR and reduction with hydrocarbons.

BASF also suggests, without arguing directly, that it was error for the Board to rely on Zones because it was BASF rather than Umicore that introduced Zones into evidence.  OB39.  BASF is mistaken. Nothing "preclude[s] the Board from relying on arguments made by a party and doing its job, as adjudicator, of drawing its own inferences and conclusions from those arguments, even when the result is use of

48

the party's submissions against it—subject, of course, to the provision of adequate notice and opportunity to be heard." *Rovalma*, 856 F.3d at 1027. The Board may rely on "patent owner's own submissions to determine how a skilled artisan would have read the very prior-art references on which the petitioner's obviousness challenge was based." *Id.* It would be particularly strange to hold that the Zones declaration cannot be considered here, given that BASF submitted it during an earlier reexamination, making it part of the prosecution history of the '662 and '203 patents. *Cf. Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).[12]

**c. BASF's Admissions.** The Board also noted that BASF itself conceded that the phrase "reduction of oxides of nitrogen" in Zones extends to ammonia SCR. *See* Appx14 (citing Appx202, 46:21-23). This concession is consistent with and buttresses the Zones declaration,

---

[12] BASF notes in passing (at 33) that the Examiner during a prior inter partes reexamination of the challenged claims determined that "Zones does not teach using its catalyst for ammonia SCR of NOx." Appx2896-2897. But the Board reviews the Examiner's work; it is not bound by the Examiner's findings. *See* 35 U.S.C. § 318(a) (requiring Board to resolve "the patentability of any patent claim challenged"). BASF does not explain why the Examiner's contrary conclusion is relevant. Moreover, BASF waived the argument by failing to present it in its Patent Owner Response.

which lists ammonia SCR as one of the contemplated reactions; with Dr. Lercher's testimony, which identified ammonia SCR as one of two reactions that would come to mind upon reading Zones; and with Maeshima, which also identifies ammonia SCR as a preferred method for reducing nitrogen oxides.

**d.**  Notwithstanding all of this evidence, BASF suggests that its point was undisputed.  *See* OB33 (contending that it was "unanimous that the disclosure in Zones of using [a CHA zeolite] for 'reduction of oxides of nitrogen' is not an explicit or inherent disclosure of using a high SAR CHA zeolite for $NH_3$-SCR of NOx").  Umicore never conceded any such thing, and the Board certainly never found as much.

What BASF cites for this supposed concession is Umicore simply acknowledging that it couldn't establish *anticipation* because "none of the references mention high SAR copper chabazites for ammonia SCR." Appx253.  But, Umicore went on to explain, the element missing from Zones is not (as BASF now argues) ammonia SCR; rather, the missing component was a copper-to-aluminum ratio within the claimed range. *See id.* (Zones teaches "almost the entire claim *except for whatever particular copper range you are talking about*." (emphasis added)).  And,

Umicore reiterated, Zones *does* contemplate using its materials for ammonia SCR: "Zones, in teaching two possible reductions … [i]n that circumstance under the case law, it is teaching nitrogen—NH-3 or ammonia reduction." Appx256. The Board agreed. Thus, even if the Board had relied exclusively on Zones for the ammonia SCR limitation, as BASF contends, substantial evidence supports the Board's finding of obviousness.

### 3.    BASF's concession that certain of the challenged claims are obvious reinforces the obviousness of the claims that remain in dispute.

As part of this appeal, BASF has abandoned any challenge to the Board's finding that claims 1-14, 26, and 29-30 of the '203 patent are unpatentable over Zones/Maeshima and Maeshima/Breck. OB16. The very narrow difference between these now-abandoned claims, and the claims at issue in this appeal, is compelling evidence of obviousness.

Like the claims at issue in this appeal, the abandoned claims require a catalyst comprising a zeolite with the CHA crystal structure, a silica-to-alumina ratio greater than 15, and a copper-to-aluminum ratio greater than 0.25. The only difference between those claims, and the ones that remain at issue, is that the abandoned claims do not

specifically mention "ammonia" and instead just require the "reduction of oxides of nitrogen."  Appx1396.

In short, therefore, BASF's position boils down to the idea that its claims are nonobvious solely because they require ammonia SCR, rather than some other means for reducing nitrogen oxides.

But that is highly improbable because the patents admit—and the prior art confirms—that using zeolites as ammonia SCR catalysts to reduce nitrogen oxides was well known at the time the '662 and '203 patents were filed.  Appx1355, 1:26-29; Appx1358, 8:14-19.  Indeed, even BASF itself repeatedly conceded that this was the case.  *See, e.g.*, Appx3188 ¶ 64 ("Zeolites, and more specifically, metal-exchanged zeolites have been known to be active for the reduction of NOx, *including NH₃ SCR of NOx*.  This fact is acknowledged in the Background section of the 662 Patent." (emphasis added)); Appx2747, 107:19-108:15 (it was "well known" in the prior art that metal-promoted zeolites could be used as ammonia SCR catalysts).

In sum, by abandoning the broader claims in the '203 patent, BASF effectively conceded that it was obvious to use a CHA zeolite, with the claimed ratios of silica to alumina ratio and copper to

aluminum, to reduce nitrogen oxides.  Merely adding a requirement to
reduce the nitrogen oxides using a concededly well-known process for
doing so does not transform those claims into something patentable.
*See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007) ("The
combination of familiar elements according to known methods is likely
to be obvious when it does no more than yield predictable results.").

## II. The Board Correctly Held The Challenged Claims Obvious In View Of Maeshima And Breck.

If the Court finds the challenged claims obvious in view of Zones
and Maeshima, it need proceed no further.  Zones and Maeshima render
obvious every challenged claim of the '662 and '203 patents.  *See* OB7-8.
In addition, however, the Board also properly found that the
combination of Maeshima and Breck renders obvious claims 1, 2, 5, 6,
and 30 of the '662 patent, and claims 1, 14, 15, 19, 20, 26, and 27 of the
'203 patent.  *See* Appx115; Appx153.  Notably, BASF does not dispute
that Maeshima and Breck teach every limitation of these claims.  So
BASF is principally left to argue that there was no motivation to
combine Breck with Maeshima.  On the contrary, there is ample
evidence to support the Board's factual finding that a motivation to
combine is plain on the face of the references.  § II.A.  In addition, BASF

53

now contends that nonobviousness can be inferred because time elapsed between the publication of the prior art and the advent of the claimed invention. But BASF never made that argument to the Board, so it is waived. And in any event, elapsed time, on its own, is not persuasive evidence of nonobviousness. § II.B.

### A. Substantial evidence supports the Board's factual finding that a person of ordinary skill would be motivated to combine Maeshima and Breck.

Because BASF admitted that the prior art disclosed every claim limitation, Appx127, the Board focused on whether one of ordinary skill in the art would be motivated to combine the teachings of Maeshima and Breck to arrive at the claimed subject matter. A motivation to combine may arise from "interrelated teachings of multiple patents … and the background knowledge possessed by a person having ordinary skill in the art." *KSR*, 550 U.S. at 418; *see also In re Rouffett*, 149 F.3d 1350, 1355 (Fed. Cir. 1998) (suggestion to combine "more often comes from the teachings of the pertinent references"). "[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same

way, using the technique is obvious unless its actual application is beyond his or her skill." *KSR*, 550 U.S. at 417.

That is precisely what occurred here. The Board properly held that a person of ordinary skill would be motivated to apply the teachings of Breck (increasing a zeolite's silica-to-alumina ratio) to Maeshima (which uses copper-promoted CHA zeolites for ammonia SCR) to make the zeolite more stable when it catalyzes reactions like ammonia SCR.

**1.** "After considering the record as a whole," the Board found "that a person of ordinary skill in the art would have been motivated to use a copper-promoted CHA zeolite for [ammonia SCR] based on the teachings of Maeshima and Breck." Appx132. As the Board explained (and BASF does not dispute), Maeshima teaches that copper-promoted CHA zeolites can be used as catalysts for ammonia SCR. Appx132. But Maeshima also comes with a warning. When using its catalysts, it is important to be mindful that an exhaust gas stream "'generally contains … sulfur oxides and oxygen in addition to nitrogen oxides' and it is 'necessary to perform removal of nitrogen oxides *while eliminating*

*influences of sulfur oxides.*'" Appx133 (quoting Appx1399, 2:34-38) (emphasis added).

Thus, a person of ordinary skill reading Maeshima would look for better ways to "eliminate[] the influences of sulfur oxides." *See KSR*, 550 U.S. at 402 ("any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed").

The Board recognized—and again BASF does not dispute—that a person of ordinary skill in the art would understand that Breck presents a solution to the issue identified by Maeshima. Specifically, Breck explains that increasing the silica-to-alumina ratio of a zeolite results in "increased resistance toward acidic agents such as" sulfur oxides. Appx133 (final written decision) (quoting Appx1431, 47:44-53 (Breck)). Breck also explains that an increased silica-to-alumina ratio provides an additional advantage of making the zeolite "more thermally and hydrothermally stable than … prior known materials." Appx1431, 47:49-50. And, Breck explains that increasing the silica-to-alumina ratio does not diminish the zeolite's usefulness. Zeolites with high silica-to-alumina ratios will remain "useful in 'catalytic processes in

56

which their less siliceous precursors have heretofore been suitably employed.'" Appx133 (quoting Appx1431, 47:44-53); *see also* Appx1838-1839 ¶ 89 (Dr. Lercher).

What's more, Breck specifically identifies chabazite—one of the very same CHA zeolites identified in Maeshima (Appx1400, 4:11)—as an "[e]specially preferred" zeolite to use with its method of increasing a zeolite's silica-to-alumina ratio. Appx1409, 4:60-63. Thus, Dr. Lercher testified, a person of "ordinary skill in the art [reading Maeshima] would immediately recognize that a higher SAR zeolite, including the zeolites of Breck … would be useful in Maeshima's process." Appx1858 ¶ 161; *see also* Appx1857-1859 ¶¶ 160-64.

These teachings, coupled with Umicore's supporting expert testimony, provide substantial evidence that a person of ordinary skill in the art would apply Breck's teachings to Maeshima's catalysts to improve their usefulness for ammonia SCR. *See KSR*, 550 U.S. at 417.

**2.** BASF challenges the Board's factual finding of a motivation to combine. In particular, it argues, a person of ordinary skill would not have been motivated to apply Breck's teachings to Maeshima because Maeshima lists nine zeolites, and only one of them has the CHA crystal

structure.  OB46.  According to BASF, the Board needed to explain "why a person of ordinary skill in the art would have chosen [the combination of copper and a CHA zeolite from Maeshima] as '[the] *most promising* to modify in order to improve upon its … activity to obtain a compound with better activity.'"  OB45 (emphasis added).

There is no such requirement of a "most promising" teaching.  On the contrary, the fact that a combination "discloses a multitude of effective combinations does not render any particular formulation less obvious."  *Merck & Co. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989).  That is particularly true when "the claimed composition" (here, the zeolite) "is used for the identical purpose taught by the prior art" (here, ammonia SCR).  *Id.*; *In re Corkill*, 771 F.2d 1496, 1500 (Fed. Cir. 1985) (obviousness rejection affirmed in light of prior art teaching that "hydrated zeolites will work" in detergent formulations, even though "the inventors selected the zeolites of the claims from among 'thousands' of compounds"); *see also Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005) ("This court rejects the notion that

one of [14 listed] ingredients cannot anticipate because it appears without special emphasis in a longer list.").[13]

Thus, in *Merck*, this Court held obvious one of "1200 disclosed" combinations because the prior art taught "that any of the 1200 disclosed combinations" would achieve the intended result. 874 F.3d at 807. The result here follows *a fortiori* from *Merck*. Maeshima teaches only a small handful of zeolites, and it explains that *all* of them can be used as ammonia SCR catalysts. Appx1400, 3:33-35, 4:6 (Maeshima).[14]

BASF draws its "most promising" requirement from a misreading of cases addressing a problem common to pharmaceutical patents.

---

[13] *Cf. In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004) ("The prior art's mere disclosure of more than one alternative does not constitute a teaching away from any of these alternatives" where the reference does not "criticize, discredit, or otherwise discourage the solution claimed.") Far from disparaging the use of copper-chabazite for ammonia SCR, Maeshima says its "suitable."

[14] BASF suggests that Maeshima teaches a total of 99 possible combinations of zeolites and metals—9 zeolites and 11 metals. Although it makes no difference under a proper application of the law, in fact the number of possible combinations is far more limited than BASF suggests. Of Maeshima's 9 zeolites, Breck singles out only 5 of them for its method. Appx1409, 4:60-64. Thus, a person of ordinary skill seeking to apply Breck's teaching to Maeshima's method would reasonably chose one of those five zeolites and one of Maeshima's four "most preferred metals" (copper, iron, chromium, and vanadium), for a total of just 20 possibilities.

OB45 (citing *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1291-92 (Fed. Cir. 2012); *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1357 (Fed. Cir. 2007)).  Potential drug compounds often have very similar molecular structures yet produce drastically different therapeutic effects.  *See Eisai Co. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1359 (Fed. Cir. 2008) (noting unpredictability).  As a result, for any claimed molecule, the prior art likely discloses large classes of molecules that share some structural features, but which will not provide the claimed molecule's novel therapeutic effect.  *E.g., Takeda Chem.*, 492 F.3d at 1357 (prior art reference "discloses hundreds of millions" of similar compounds).  To avoid the problem of "a hindsight-driven search for structurally similar compounds," *Pfizer Inc. v. Teva Pharm. USA, Inc.*, 555 F. App'x 961, 970 (Fed. Cir. 2014), when this Court considers obviousness, it therefore generally has required an explanation (other than mere structural similarity) for why a person of ordinary skill would have considered the similar compound a promising starting point.  *Eisai*, 533 F.3d at 1357 ("Obviousness based on structural similarity thus can be proved by identification of some motivation that would have led one of ordinary skill in the art to select

60

and then modify a known compound (i.e., a lead compound) in a particular way to achieve the claimed compound.").

In short, this requirement is a context-specific application of the standard rule that obviousness requires "a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *Takeda Chem.*, 492 F.3d at 1356-57 (quoting *KSR*, 550 U.S. at 401). The drug cases create no hard and fast rule that requires identifying a single compound that would be the *most* promising to modify. *See Otsuka Pharm.*, 678 F.3d at 1291-92 (recognizing multiple compounds can be promising). Such an approach would disregard the teaching that obviousness is an "expansive and flexible approach inconsistent" without any "rigid" test. *KSR*, 550 U.S. at 401.

Here, however, Umicore is not pointing to mere structural similarity between the prior art and the claimed subject matter. Maeshima does not merely list a large class of zeolites, nor (as in the pharmaceutical cases) does it fail to identify the species that is claimed, or fail to provide information about how the claimed zeolite can be used. To the contrary, the list here is short, and the information is extensive.

61

The prior art teaches using copper-promoted CHA zeolite catalysts, which are known in the art to be effective for the same purpose specified by the challenged claims—i.e., as ammonia SCR catalysts. Even more particularly, the base reference (Maeshima) discloses the very same zeolite crystal structure claimed by BASF's patents (CHA), and explains that zeolites with this structure can be used for the claimed purpose (ammonia SCR). The secondary reference (Breck) then explains that zeolites with this same CHA crystal structure can be modified in the very way the claims require (increasing the silica-to-alumina ratio) to achieve a beneficial effect without destroying catalytic ability. *See Purdue Pharma Prods. L.P. v. Par Pharm., Inc.*, 377 F. App'x 978, 982 (Fed. Cir. 2010) (secondary reference "renders the selection of [compound from primary reference] obvious" where it "makes that very selection").

Put another way, there was no need for the Board to determine which of Maeshima's copper-promoted zeolites would be most promising to combine with Breck because *all* of Maeshima's zeolites identified in Breck are promising. Maeshima expressly states that all of its zeolites are "suitable" for the '662 and '203 patents' claimed purpose: ammonia

SCR.  Appx1400, 3:33-35, 4:6.  And Breck suggests that all of the zeolites would be improved by increasing the zeolite's silica-to-alumina ratio.  Appx1431, 47:44-65.

Nor did "the Board fail[] to account for the preference in Maeshima for large pore size zeolites, which would exclude chabazite." OB47.  The Board noted BASF's argument, Appx131, and rejected it because "Maeshima describes chabazite as a suitable catalyst," Appx132.  As the Board properly recognized, the existence of even "better alternatives ... in the prior art" do not render an "inferior combination … inapt for obviousness purposes."  *In re Mouttet*, 686 F.3d at 1334.

**3.**  Finally, BASF contends that when the Board considered motivation to combine, it "entirely failed to address the disclosure in … Byrne, which specifically counsels against the use of copper-exchanged naturally occurring chabazite for $NH_3$-SCR of NOx because of its poor catalytic activity attributed to the small pore size."  OB47.  This is yet another argument that BASF failed to properly present to the Board. BASF did not argue that Byrne taught away from combining Maeshima and Breck.  In fact, BASF did not even *cite* Byrne in the three pages it

spent analyzing the Maeshima/Breck combination.  *See* Appx1038-1040.  BASF did cite Byrne in connection with another prior art combination (Maeshima, Breck, and Patchett), but it did so only for a different purpose entirely—to argue that Byrne taught away from copper-promoted chabazite zeolites because of a risk of sulfur poisoning, not poor catalytic activity.  *E.g.*, Appx1015.  The Board extensively addressed and rejected *those* arguments when discussing the combination of Maeshima, Breck, and Patchett.  Appx140-143.

In any event, Byrne teaches *towards* the combination rather than away from it.  "Byrne discloses that copper-exchanged naturally occurring zeolites perform poorly for the SCR of NOx because of susceptibility to sulfate poisoning."  Appx1054 (Patent Owner Response).  But, as the Board found, Byrne "also teaches that 'the utilization of high ratios of silica to alumina is known to enhance acid resistance of the zeolite and to provide enhanced resistance of the zeolite to acid sulfur poisoning."  Appx142.  Thus, Byrne directs a person of ordinary skill to Breck's "teach[ing] that an increased level of

silica … in the chabazite zeolites of Maeshima results in improved resistance to sulfur poising and hydrothermal stability." Appx141.[15]

## B.   BASF waived any argument that too much time passed between the prior art and the claimed invention, which is wrong in any event.

**1.** BASF faults the Board for failing to consider its argument concerning the "objective indicia of time elapsed between the prior art and the claimed invention." OB5. But BASF failed to develop this argument to the Board, notwithstanding the fact that it dedicated an entire section of its Patent Owner Response to other "objective indicia" of nonobviousness. In that section, it pointed to three things: commercial success, skepticism, and unexpected results. *See* Appx1014, Appx1048-1057. In discussing secondary considerations, however, BASF made no mention of the age of the references identified by Umicore, or the amount of time that elapsed between the publication of

---

[15] In a footnote, BASF also contends the Board "neglected to account for … Byrne showing that higher SAR does not correlate with increased catalytic activity." OB47 n.10. But an argument made only in a footnote is not sufficiently preserved. *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1320-21 n.3 (Fed. Cir. 2005). And the Board did address—and rejected—BASF's argument, finding that increasing the SAR of a zeolite can potentially have some positive impact on catalytic ability. *See* Appx135-136.

that prior art and BASF's own filing date.  *Id.*  Thus, the Board

responded to—and rejected—the three arguments BASF actually made.

*See* Appx149-153.[16]

**2.**  Even if BASF had properly preserved this argument, it is no

basis for overturning the final written decision.  Review of the Board "is

subject to a harmless-error rule by virtue of the directive of 5 U.S.C.

§ 706 that 'due account shall be taken of the rule of prejudicial error.'"

*IPR Licensing, Inc. v. ZTE Corp.*, Nos. 2016-1374, -1443, 2017 WL

1406501, at *2 (Fed. Cir. Apr. 20, 2017) (citing *Shinseki v. Sanders*, 556

U.S. 396, 406, 409 (2009)).  Here, any error was harmless because

elapsed time by itself does not render the challenged claims nonobvious.

BASF is wrong that "[t]he length of the intervening time between

the publication dates of the prior art and the claimed invention can also

---

[16] To the extent BASF mentioned the age of the references at all, it did so only in passing, and in service of a different point.  In the introduction to its obviousness section, but not in the body, BASF pointed to the amount of time that elapsed after publication of the prior art references to intimate that there wouldn't have been a motivation to combine them.  OB26-27.  To the extent this amounted to an argument at all, the Board wasn't obliged to address it.  *Nike,* 812 F.3d at 1338. The Board wasn't obligated to transform BASF's passing suggestions into something more.  *Fresenius USA, Inc. v. Baxter Int'l Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) (holding underdeveloped arguments waived).

qualify as an objective indicator of nonobviousness." OB48 (citing *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1359 (Fed. Cir. 2013)).  As this Court recently explained, *Leo Pharmaceuticals* did not change the established rule that "[t]he mere age of the references is not persuasive of the unobviousness of the combination of their teachings, *absent evidence that, notwithstanding knowledge of the references, the art tried and failed to solve the problem*." *Nike,* 812 F.3d at 1338 (emphasis added) (quoting *In re Wright*, 569 F.2d 1124, 1127 (CCPA 1977)).

At most, therefore, "the number of years that passed between the prior art and the claimed invention may be a relevant factor to underscore that skilled artisans had long failed to appreciate the problem solved by that invention." *Nike*, 812 F.3d at 1338.  But that is not the case here.  BASF does not argue that "artisans had long failed to appreciate the problem solved by th[e] invention." *See* OB50.  BASF does not point out any problem solved by its patent that was not already known and solved in the prior art.

BASF does cite references that questioned whether "metal-exchanged zeoltites could be applied commercially," particularly in the stressful environment of diesel engines.  OB48-49.  But, as the Board

explained, "the challenged claims do not require a commercially viable catalyst," let alone one that performs in the stressful environment of a diesel engine.  Appx150-151.  BASF could have claimed such a catalyst when it wrote its claims; instead, it elected to broadly claim catalysts that were already known.  BASF is now bound by that choice.

## CONCLUSION

For the foregoing reasons, the Court should affirm the Board's decision.

Respectfully submitted,

/s/ Eric A. Shumsky

| | |
|---|---|
| Elizabeth A. Gardner | Eric A. Shumsky |
| K. Patrick Herman | Jeremy Peterman |
| ORRICK, HERRINGTON & | ORRICK, HERRINGTON & |
| SUTCLIFFE LLP | SUTCLIFFE LLP |
| 51 W. 52nd Street | 1152 15th Street NW |
| New York, NY 10019 | Washington, DC 20005 |
| (212) 506-5000 | (202) 339-8400 |

*Counsel for Appellee*

June 21, 2017

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on June 21, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/* Eric A. Shumsky
Eric A. Shumsky
*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 13,116 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/* Eric A. Shumsky
Eric A. Shumsky
*Counsel for Appellee*